UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FILED
U.S. DIST. COURT
MIDDLE DIST. OF LA.

00 MAY -9 PM 4: 00

| | | |
|---|---|---|
| **ROBERT KING WILKERSON** (DOC# 80966), **ALBERT WOODFOX** (DOC# 72148), and **HERMAN WALLACE** (DOC# 76759) | : | **CIVIL ACTION** |
| | : | **NUMBER 00-0304-C-M3** |
| **VERSUS** | : | **JUDGE TYSON** |
| **RICHARD STALDER, ET AL.** | : | **MAGISTRATE JUDGE DALBY** |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

The moving defendants, Richard Stalder, Burl Cain, Darrell Vannoy, Major Ned Tolliver, and Tom Norris, urge this Court to dismiss plaintiffs' claims against them since:

1. Plaintiffs fail to allege that they have exhausted their administrative remedies with regard to their 8th Amendment conditions of confinement claims as required by 42 USC §1997e(a).

2. All of plaintiffs' federal law claims that arose prior to 30 March 1999 are prescribed.

3. The defendants are entitled to qualified immunity on plaintiffs' federal law claims for damages.

DATE: 05/09/00

3:00-cv-00304 5 - 1

DEPUTY CLERK: NL

4.    Plaintiffs' federal law claims for injunctive relief fail to state a claim for which relief can be granted pursuant to the limitations on prospective relief contained in 18 USC § 3626.

5.    Plaintiffs fail to allege that they have exhausted their administrative remedies with regard to their Louisiana law conditions of confinement claims as required by La.R.S. 15:1171 *et seq.* and La.R.S. 15:1184.

6.    The defendants are entitled to qualified immunity on plaintiffs' state law claims for damages.

7.    Plaintiffs' state law claims for injunctive relief fail to state a claim for which relief can be granted pursuant to the limitations on prospective relief contained in La.R.S. 15:1182.

## I.    <u>STATEMENT OF THE CASE.</u>

The plaintiffs are:

1.  Robert King Wilkerson, DOC# 80966;

2.  Albert Woodfox, DOC# 72148; and

3.  Herman Wallace, DOC# 76759.

The plaintiffs are all inmates sentenced to the custody of the Louisiana Department of Public Safety and Corrections (Department), are all confined at the Louisiana State Penitentiary (LSP) at Angola Louisiana, and were all confined at LSP at all times relevant hereto.

The appearing defendants are:

1.  Richard Stalder, Secretary of the Department;

2. Burl Cain, Warden of LSP;

3. Darrell Vannoy, Assistant Warden for Security at LSP;

4. Major Ned Tolliver, a Corrections Officer at LSP; and

5. Tom Norris, a Corrections Classification Officer II at LSP.

Plaintiffs filed this suit pursuant to 42 USC §1983, alleging that their continued confinement in extended lockdown at the Louisiana State Penitentiary (LSP) violates their rights under the 8th Amendment (conditions of confinement) and 14th Amendment (due process). They also assert similar claims under the analogous provisions of the Louisiana Constitution, Art. 1, §20 (conditions of confinement) and Art. 1, §2 (due process).

In general, plaintiffs allege that:

- They have been in extended lockdown at LSP for 28 years.

- They appear before the lockdown review board every 90 days.

- The lockdown review board does not release them from lockdown.

## II.    **STANDARD OF REVIEW.**

On a FRCP Rule 12(b)(6) motion, the Court must accept as true the plaintiff's allegations and may not dismiss the complaint for failure to state a claim unless is appears beyond doubt that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief. Boudeloche v. Grow Chemical Coatings Corp., 728 F.2d 759 (5th Cir. 1984).

However, when a plaintiff sues a public official under 42 USC §1983, the district court must insist on heightened pleading by the plaintiff. Schultea v. Wood, 47

F.3d 1427 (5th Cir. 1995)(en banc).  The court must first demand that the plaintiff file "a short and plain statement of his complaint, a complaint that rests on more than conclusions alone".  47 F.3d at 1433.  Next, the court, in its own discretion, may insist that the plaintiff file a reply tailored to the assertion of the qualified immunity defense.  Id.  The court's discretion not to order such a reply is very narrow, however, when greater detail might assist.  47 F.3d at 1434.  The plaintiff must support his claim:

> with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts.
>
> - 47 F.3d at 1434.

The Court may insist that the plaintiff file a FRCP Rule 7(a) reply that puts forward specific, nonconclusory factual allegations.  Crawford-El v. Britton, 118 S.Ct. 1584, 1596-97 (1998).

## III.  PLAINTIFFS FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES ON THEIR 8TH AMENDMENT CONDITIONS OF CONFINEMENT CLAIMS.

The plaintiffs do not allege that they have exhausted their administrative remedies on their 8th Amendment conditions of confinement claim.  Pursuant to 42 USC §1997e(a), exhaustion of administrative remedies is mandatory under federal law.

### A.  The legal standard on exhaustion of administrative remedies.

Effective 26 April 1996, 42 USC §1997e(a) was amended by the Prison Litigation Reform Act to read as follows:

> No action shall be brought with respect to any prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

As discussed below, any claims which arose prior 30 March 1999 are prescribed. Therefore, only the current version of §1997e(a) need be considered.

Under the current version of 42 USC §1997e(a), exhaustion of administrative remedies is mandatory. Underwood v. Wilson, 151 F.3d 292, 293-94 (5th Cir. 1998), citing, Garrett v. Hawk, 127 F.3d 1263, 1265 (10th Cir. 1997). The district court is no longer required to determine whether a prisoner has reasonably and in good-faith pursued his administrative remedies. Underwood, 151 F.3d at 294.

**B.    Discussion.**

As noted above, plaintiffs filed this suit pursuant to 42 USC §1983, alleging that their continued confinement in extended lockdown at the Louisiana State Penitentiary (LSP) violates their rights under the 8th Amendment (conditions of confinement) and 14th Amendment (due process). Under the Administrative Remedy Procedure in place in Louisiana's prisons, decisions of the lockdown review board are not grievable under that procedure. *Louisiana Register*, Vol. 17, No. 1 (20 January 1991), p. 68, §325(C)(3)(c).

However, plaintiffs' 8th Amendment claims concerning the conditions of their confinement are within the scope of matters covered by the Administrative Remedy Procedure. Therefore, they may not bring their 8th Amendment claims "until such

administrative remedies as are available are exhausted". 42 USC §1997e(a). Exhaustion is an essential element of their 8[th] Amendment claims.

In their suit, the plaintiffs do not allege that they have exhausted their administrative remedies on their 8th Amendment claims. Plaintiffs should be ordered to amend their suit on this issue or have their 8th Amendment claims dismissed.

## IV.    ALL CLAIMS WHICH AROSE PRIOR TO 30 MARCH 1999 ARE PRESCRIBED.

Plaintiffs' suit was filed on 30 March 2000.[1] Accordingly, all claims which arose prior to 30 March 1999 are prescribed.

### A.    The legal standard.

As 42 USC §1983 contains no statute of limitations of its own, the courts are to borrow the state law general or residual statute of limitations for personal injury actions. Owens v. Okure, 109 S.Ct. 573, 582 (1989); Wilson v. Garcia, 105 S.Ct. 1938, 1947-49 (1985). Accordingly, the statute of limitations for tort actions in Louisiana applies. That is 1 year. Elzy v. Roberson, 868 F.2d 793, 794 (5th Cir. 1989).

### B.    Discussion.

Plaintiffs' suit was filed on 30 March 2000. All claims which arose more than 1 year prior to that date are prescribed.

Accordingly, all claims which arose prior to 30 March 1999 should be dismissed because they are prescribed.

---

[1] The suit was originally filed in state court and later removed to this court.

## V. THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' DUE PROCESS CLAIMS.

The defendants are entitled to qualified immunity on the plaintiffs' 14th Amendment due process claims because they were not deprived of a protected liberty interest the existence of which is clearly established today or was clearly established at the time of the events in question.

### A. The law on qualified immunity.

Government officials, performing discretionary functions, "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 102 S.Ct. 2727, 2738 (1982). The protection afforded by the defense is an "immunity from suit, not simply immunity from liability". Babb v. Dorman, 33 F.3d 472, 477 (5th Cir. 1994). Consequently, the immunity issue must be resolved at the earliest possible stage of the litigation since it entails an entitlement to immunity from suit and not merely a defense to liability. See: Hunter v. Bryant, 112 S.Ct. 534, 536 (1991).

Qualified immunity allows officials the freedom to exercise fair judgment, protecting "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 106 S.Ct. 1092, 1096 (1986). A defendant is immune if reasonable public officials could differ on the lawfulness of the actions. Hassan v. Lubbock Independent School District, 55 F.3d 1075, 1079 (5th Cir. 1995). Officials are not

expected to determine the manner in which the law's gray areas might be clarified or defined. Davis v. Scherer, 104 S.Ct. 3012, 3019-20 (1984).

The bifurcated test for qualified immunity is quite familiar: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and, (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident. Hare v. City of Corinth, Miss., 135 F.3d 320, 325 (5th Cir. 1998); Harper v. Harris County, 21 F.3d 597, 600 (5th Cir. 1994).

**First prong:** The first step is to determine whether the plaintiff has alleged a "violation of a clearly established constitutional right". Hare, 135 F.3d at 325-26; Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir. 1995), cert. denied, 116 S.Ct. 800 (1996). This a "purely legal question" to be determined by the Court. Siegert v. Gilley, 111 S.Ct. 1789, 1793 (1991). The court uses "currently applicable constitutional standards to make this assessment". Hare, 135 F.3d at 326. The plaintiff bears the burden of pleading such a violation of clearly established law. See: Mitchell v. Forsyth, 105 S.Ct. 2806, 2815 (1985); Foster v. City of Lake Jackson, 28 F.3d 425, 428 (5th Cir. 1994).

**Second prong:** The second prong of the qualified immunity test is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law. Hare, 135 F.3d at 326. See also: Woods, 60 F.3d at 1164. The court must determine whether an alleged right was established with sufficient particularity that a reasonable

- 8 -

official could anticipate his actions would violate that right. <u>Anderson v. Creighton</u>, 107

S.Ct. 3034, 3039 (1987); <u>Davis v. Scherer</u>, 104 S.Ct. at 3019-20.

Objective reasonableness is a question of law for the court. <u>Hare</u>, 135 F.3d

at 328. The reasonableness of the conduct must be assessed in light of the law as it

existed at the time of the conduct in question. <u>Harper</u>, 21 F.3d at 601.

**When is a right "clearly established"?**: While it is not necessary that the

very action in question has previously been held unlawful, the facts of the previous case

need to be materially similar in order for the defendant to be denied qualified immunity.

<u>Pierce v. Smith</u>, 117 F.3d 866, 882 (5th Cir. 1997). For qualified immunity to be

surrendered:

> pre-existing law must dictate, that is, truly compel (not just
> suggest or allow or raise a question about), the conclusion for
> every like-situated, reasonable government agent that what
> defendant is doing violates federal law in the circumstances.
>
> - <u>Sorenson v. Ferrie</u>, 134 F.3d 325, 330 (5th Cir. 1998),
>   citing, <u>Pierce</u>, 117 F.3d at 882.

**B.**     **The law on procedural due process.**

As the United States Supreme Court recently stated:

> The first inquiry in every due process challenge is whether
> the plaintiff has been deprived of a protected interest in
> "property" or "liberty." See U.S. Const., Amdt. 14 ("nor shall
> any State deprive any person of life, liberty, or property,
> without due process of law"); *Mathews v. Eldridge*, 424 U.S.
> 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Only after
> finding the deprivation of a protected interest do we look to

see if the State's procedures comport with due process.  Id., at 332, 96 S.Ct. 893.

- American Manufacturers Mutual Insurance Company v. Sullivan, 119 S.Ct. 977, 989 (1999).

The finding of an interest protected by the Due Process Clause is a threshold inquiry in any procedural due process claim.  The deprivation of a protected interest is an essential element of a procedural due process claim.

## C.   The law on liberty interests protected by the 14th Amendment.

In Sandin v. Conner, 115 S.Ct. 2293 (1995) the Supreme Court held that an inmate's placement in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest. Sandin, 115 S.Ct. at 2301.  In interpreting Sandin, the U.S. 5th Circuit held that:

> It is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional "liberty" status.

> - Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995).

Prisoners have no liberty interest in avoiding disciplinary segregation, at least where the status does not inevitably affect the duration of the sentence.  Carson v. Johnson, 112 F.3d 818, 821 (5th Cir. 1997), citing, Sandin v. Connor, 115 S.Ct. at 2302.

## D.   Discussion – no liberty interest in staying out of lockdown.

The defendants are entitled to qualified immunity on the plaintiffs' 14th Amendment due process claim.  The plaintiffs complain that they received insufficient process when the lockdown review boards did not release them from extended lockdown.

## 1. **First Prong**.

The first step is to determine whether the plaintiff has alleged a "violation of a clearly established constitutional right" under "currently applicable constitutional standards". Hare, 135 F.3d at 325-26. It is not clearly established that the plaintiffs were deprived of a liberty interest protected by the Due Process Clause when they were not released from extended lockdown. The plaintiffs do not allege that the failure to release them from lockdown will in any way automatically lengthen their prison sentences. As the 5th Circuit held in Orellana,

> It is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional "liberty" status.
>
> - 65 F.3d at 31-32.

Given that statement, pre-existing law does not "dictate, that is, truly compel (not just suggest or allow or raise a question about)" the conclusion that the plaintiffs had a protected liberty interest in being released from extended lockdown or that they were deprived of a protected liberty interest by not being released. Sorenson, 134 F.3d at 330.

Accordingly, the defendants are entitled to qualified immunity on plaintiffs' 14th Amendment due process claims. At a minimum, they should be ordered to file a Schultea reply pleading such a violation of clearly established law. Mitchell v. Forsyth, 105 S.Ct. at 2815.

## 2.    <u>Second Prong</u>.

The second step is to determine whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law.  <u>Hare</u>, 135 F.3d at 326.

As noted above, it is not clearly established under current law that the plaintiffs had a protected liberty interest in being released from extended lockdown or that they were deprived of a protected liberty interest by not being released.  As a result, the existence of such a protected liberty interest was not clearly established at the time of the Lockdown Review Board hearings at issue.

Accordingly, the defendants are entitled to qualified immunity on plaintiffs' 14th Amendment due process claims.

## E.    <u>Discussion – no liberty interest in being release from lockdown</u>.

Even if an inmate had a liberty interest in avoiding placement in lockdown, the deprivation occurs when the inmate is initially placed in lockdown, much like a criminal defendant's liberty deprivation takes place when he is convicted and sentenced. It is not clearly established that an inmate has a liberty interest in being <u>released</u> from lockdown once he is placed there.  Accordingly, there is no additional deprivation when prison authorities decline to grant discretionary release from lockdown.

Further, prison regulations may create a liberty interest (assuming that the deprivation is of <u>Sandin</u> significance) by "placing substantive limitations on official discretion".  <u>Kentucky Dept. of Corrections v. Thompson</u>, 109 S.Ct. 1904, 1909 (1989),

citing, Olim v. Wakinekona, 103 S.Ct. 1741, 1747 (1983).  The most common manner in which a State creates a liberty interest is by establishing substantive predicates to govern official decision-making and then mandating the outcome to be reached upon a finding that the relevant criteria have been met.  Thompson, 109 S.Ct. at 1909.  Further, there must be explicitly mandatory language, i.e., "specific directives to the decision maker that if the regulations' substantive predicates are present, a particular outcome must follow, in order to create a liberty interest."  Thompson, 109 S.Ct. at 1910.

The plaintiffs allege that there are no guidelines or policies governing release from extended lockdown and that such release is entirely discretionary on the part of the lockdown review board.  Complaint, ¶12.  There are no "substantive limitations on official discretion", that is, release from lockdown is not mandatory upon certain substantive predicates being met.  Therefore, an inmate has no protected liberty interest in being released from lockdown.

As a result, plaintiffs fail to allege specific facts which constitute either a violation of clearly established constitutional rights under current law (qualified immunity, 1st prong) or under the law as clearly established at the time of the events in question (qualified immunity, 2nd prong).

Accordingly, the defendants are entitled to qualified immunity.

## VI.   DEFENDANTS STALDER, CAIN, AND VANNOY ARE ENTITLED TO QUALIFIED IMMUNITY – CAUSAL CONNEXITY.

Defendants Richard Stalder, Burl Cain, and Darrell Vannoy are entitled to qualified immunity because the plaintiffs fail to support their claim with the sufficient

precision and factual specificity required by <u>Schultea</u> to establish that these defendants were causally related to any violation of the plaintiffs' clearly established rights. See the full discussion on qualified immunity at Part V(I), above.

**A.     <u>The law on causal connexity.</u>**

In order to impose personal liability on a defendant under §1983, the plaintiff must show that the defendant's actions somehow caused the deprivation of the plaintiff's constitutional rights. <u>See generally</u>: <u>Alton v. Texas A&M University</u>, 168 F.3d 196, 200 (5th Cir. 1999).

Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under §1983. <u>See</u>: <u>Coleman v. Houston Independent School District</u>, 113 F.3d 528, 534 (5th Cir. 1997).   Supervisory officers, cannot be held liable under §1983 for the actions of subordinates on any theory of vicarious liability. <u>Alton</u>, 168 F.3d at 200; <u>Monell v. Department of Social Services</u>, 98 S.Ct. 2018, 2036-38 (1978); <u>Bennett v. City of Slidell</u>, 728 F.2d 762, 767 (5th Cir. 1984) (en banc).

The officials, however, may be liable when enforcement of a policy or practice results in a deprivation of federally protected rights. <u>See</u>:   <u>Doe v. Dallas Independent School District</u>, 153 F.3d 211, 215-16 (5th Cir. 1998). The U. S. 5th Circuit Court of Appeals has established a 3-part test for determining when a supervisory official can be held liable for the conduct of a subordinate. In order to prevail, the plaintiff must show that:

1.   The official knew of facts or a pattern of inappropriate behavior by a subordinate pointing plainly toward the conclusion that the subordinate was violating the plaintiff's constitutional rights; [actual knowledge]

2.   The officials demonstrated deliberate indifference toward the constitutional rights of the inmate by failing to take action that was obviously necessary to prevent or stop the constitutional violation; [deliberate indifference] and

3.   The official's failure caused a constitutional injury to the inmate. [causation]

See: Alton, 168 F.3d at 200.

The test for supervisory liability contains a substantial requirement that a causal connection be established.   As stated above, the doctrine of vicarious liability and respondeat superior have no application in a Section 1983 case.   Alton, 168 F.3d at 200; Monell, 98 S.Ct. at 2036-38.

Once a defendant raises the defense of qualified immunity, Schultea "requires allegations of fact focusing specifically on the conduct of the individual who caused the plaintiffs' injury".   Reyes v. Sazan, 168 F.3d 158, 161 (5th Cir. 1999).   Bare conclusory allegations of supervisory liability are insufficient.   Id.

**B.     Richard Stalder.**

Plaintiffs make no factual allegations of any personal acts by Richard Stalder that violated their constitutional rights.   Other than listing Stalder's name in the caption, the list of defendants in ¶1, and in the prayer for relief, the only other mention is in ¶8, which states:

Richard Stalder is the duly appointed Secretary of Public Safety and Corrections and, in this official capacity, is responsible for the overall operation of the department, including the Louisiana State Penitentiary at Angola, Louisiana.

- Petition, ¶7.

Plaintiffs make no factual allegations of any personal acts by Richard Stalder that violated their constitutional rights. It appears that the plaintiffs are attempting to impose liability upon Richard Stalder merely because he is the Secretary of the Department. However, there is no vicarious liability under §1983. <u>Alton</u>, 168 F.3d at 200.

As a result, plaintiffs fail to allege specific facts which constitute either a violation of clearly established constitutional rights under current law (qualified immunity, 1st prong) or under the law as clearly established at the time of the events in question (qualified immunity, 2nd prong).

Further, to the extent that the plaintiffs sue Richard Stalder in his official capacity as Secretary, he is not a "person" subject to any monetary liability under 42 USC §1983. <u>Will v. Michigan Department of State Police</u>, 109 S.Ct. 2304, 2312 (1989).

Pre-existing law does not "dictate, that is, truly compel (not just suggest or allow or raise a question about)" a finding of liability under §1983 as to Richard Stalder. <u>Sorenson v. Ferrie</u>, 134 F.3d at 330. Therefore, Richard Stalder is entitled to qualified immunity on plaintiffs' federal law claims for damages.

C.    **Burl Cain.**

Plaintiffs make no factual allegations of any personal acts by Burl Cain that violated their constitutional rights. Other than listing Cain's name in the caption, the list

of defendants in ¶1, and in the prayer for relief, the only other mention is in ¶8, which states:

> Burl Cain is the Warden of the Louisiana State Penitentiary and, therefore, is, in that official capacity, responsible for the operation of that penal institution.
>
> - Petition, ¶8.

Plaintiffs make no factual allegations of any personal acts by Burl Cain that violated their constitutional rights. It appears that the plaintiffs are attempting to impose liability upon Burl Cain merely because he is the Warden of LSP. However, there is no vicarious liability under §1983. Alton, 168 F.3d at 200.

As a result, plaintiffs fail to allege specific facts which constitute either a violation of clearly established constitutional rights under current law (qualified immunity, 1st prong) or under the law as clearly established at the time of the events in question (qualified immunity, 2nd prong).

Further, to the extent that the plaintiffs sue Burl Cain in his official capacity as Warden of LSP, he is not a "person" subject to any monetary liability under 42 USC §1983. Will, 109 S.Ct. at 2312.

Pre-existing law does not "dictate, that is, truly compel (not just suggest or allow or raise a question about)" a finding of liability under § 1983 as to Burl Cain. Sorenson v. Ferrie, 134 F.3d at 330. Therefore, Burl Cain is entitled to qualified immunity on plaintiffs' federal law claims for damages.

**D.    Darrell Vannoy.**

Plaintiffs make no factual allegations of any personal acts by Darrell Vannoy that violated their constitutional rights. Other than listing Vannoy's name in the caption, the list of defendants in ¶1, and in the prayer for relief, the only other mention is in ¶8, which states:

> Darrell Vannoy is a Deputy Warden of the Louisiana State Penitentiary who is in charge of security matters at the prison.
>
> - Petition, ¶8.

Plaintiffs make no factual allegations of any personal acts by Darrell Vannoy that violated their constitutional rights.

As a result, plaintiffs fail to allege specific facts which constitute either a violation of clearly established constitutional rights under current law (qualified immunity, 1st prong) or under the law as clearly established at the time of the events in question (qualified immunity, 2nd prong).

Pre-existing law does not "dictate, that is, truly compel (not just suggest or allow or raise a question about)" a finding of liability under § 1983 as to Darrell Vannoy. Sorenson v. Ferrie, 134 F.3d at 330. Therefore, Darrell Vannoy is entitled to qualified immunity.

**VII.    THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' CLAIMS FOR PSYCHOLOGICAL HARM.**

The defendants are entitled to qualified immunity on plaintiffs' claims for psychological harm arising out of their confinement in lockdown. See the full discussion on qualified immunity at Part V(I), above.

**A.    The law on damages for emotional harm.**

28 USC §1997e(e) provides:

(e) Limitation on recovery

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

**B.    Discussion.**

In their lawsuit, the plaintiffs allege that their continued confinement in lockdown has "exacerbated the psychological pain and suffering they have endured". Complaint; ¶6. They further allege that as a result of their continued confinement in lockdown they have "sustained severe mental anguish and other psychological damage", suffered "daily mental anguish", and been placed at "an unduly high risk of psychological harm". Complaint, ¶15.

The plaintiffs make no allegation that they have suffered any physical injury as a result of their confinement in lockdown. Therefore, pursuant to §1997e(e), they fail to state a federal claim based upon these alleged psychological injuries.

As a result, plaintiffs fail to allege specific facts which constitute either a violation of clearly established current law (qualified immunity, 1st prong) or under the law as clearly established at the time of the events in question (qualified immunity, 2nd prong).

Pre-existing law does not "dictate, that is, truly compel (not just suggest or allow or raise a question about)" a finding of liability under §1983 as to the defendants on plaintiffs' claims for psychological harm.    Sorenson v. Ferrie, 134 F.3d at 330. Therefore, the defendants are entitled to qualified immunity from any claim for damages arising out of plaintiffs' allegations of psychological harm.

## VIII.    THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' ACCESS TO LEGAL MATERIALS CLAIMS.

The defendants are entitled to qualified immunity on plaintiffs' claims concerning access to legal materials.  See the full discussion on qualified immunity at Part V(I), above.

### A.    The law on an inmate's right of access to court.

While inmates have a constitutional right of access to the court, this right is not unlimited, however.  It encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement. Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999), citing, Lewis v. Casey, 116 S.Ct. 2174, 2182 (1996). Inmates are "not guarantee[d] the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims".  Instead, they are guaranteed "the conferral of

a capability--the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts". <u>Jones</u>, 188 F.3d at 325, citing, <u>Lewis</u>, 116 S.Ct. at 2182.

Before a prisoner may prevail on a claim that his constitutional right of access to the courts was violated, he must demonstrate that his position as a litigant was prejudiced by his denial of access to the courts. <u>McDonald v. Steward</u>, 132 F.3d 225, 230-31 (5th Cir. 1998).

**B.    Discussion.**

In their lawsuit, the plaintiffs allege that

Access to legal materials and to inmate counsel is also substantially more restricted than in the general prison population.

- Complaint, ¶15.

The plaintiffs make no allegation that as a result of the restrictions in lockdown any one of them suffered any detriment to his position as a litigant in a suit that raised nonfrivolous legal claims challenging his conviction or conditions of confinement. As a result, plaintiffs fail to allege specific facts which constitute either a violation of clearly established current law (qualified immunity, 1st prong) or under the law as clearly established at the time of the events in question (qualified immunity, 2nd prong).

Pre-existing law does not "dictate, that is, truly compel (not just suggest or allow or raise a question about)" a finding of liability under §1983 as to the defendants on plaintiffs' access to legal materials and legal assistance allegations. <u>Sorenson v. Ferrie</u>, 134 F.3d at 330. Therefore, the defendants are entitled to qualified immunity from any

claim for damages arising out of plaintiffs' allegations restrictions to their access to legal

materials and legal assistance.

**IX.**    **THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' CLAIMS FOR PUNITIVE DAMAGES.**

The defendants are entitled to qualified immunity on plaintiffs' claims for

punitive damages.  See the full discussion on qualified immunity at Part V(I), above.

**A.**    **The PLRA changed the requirments for an inmate's punitive damage claims.**

The Prison Litigation Reform Act changed the law on when a prison inmate

is entitled to recover punitive damages.  Prior to the enactment of the PLRA, punitive

damages were available to an inmate in a §1983 action as for any other plaintiff.  "Under

§1983, punitive damages may be awarded only if the official conduct is 'motivated by

evil intent' or demonstrates 'reckless or callous indifference' to a person's constitutional

rights."  Sockwell v. Phelps, 20 F.3d 187, 192 (5th Cir. 1994), citing, Smith v. Wade, 103

S.Ct. 1625, 1640 (1983).

However, 18 USC §3626 changes the substantive law on an inmate's

punitive damages claim.  As a part of the PLRA, 18 USC Section 3626 was amended to

place new requirements for relief in inmate suits.  The new requirements for relief in a

prisoner suit are contained in 18 USC §3626(a), which provides:

> (1) Prospective relief.--(A) Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narowly drawn, extends no further than

> necessary to correct the violation of the Federal right, and is
> the least intrusive means necessary to correct the violation of
> the Federal right. The court shall give substantial weight to
> any adverse impact on public safety or the operation of a
> criminal justice system caused by the relief.

The term "prospective relief" is defined in Section 3626(g)(9) as "all relief other than compensatory monetary damages". By definition, this includes claims for non-compensatory monetary relief, such as punitive damages. Therefore, plaintiffs' claims for punitive damages are claims for "prospective relief" and are governed by the requirements of §3626.[2]

Accordingly, in order to recover an award of punitive damages, the plaintiffs must: (1) prove a §1983 violation; (2) meet the test from Smith v. Wade; and (3) satisfy the requirements of 18 USC §3626(a)(1).

### B.    The defendants are entitled to qualified immunity on plaintiffs' claim for punitive damages.

Applying the new rules for punitive damages to plaintiffs' claims for punitive damages, it is clear that the defendants are entitled to qualified immunity on those claims because the requirements of 18 USC §3626(a)(1) are not met.

Under §3626(a)(1), the plaintiffs may collect punitive damages only if they prove that:

1.  such relief is narrowly drawn,

---

[2] Plaintiffs' suit is a "civil action with respect to prison conditions" as defined by 18 USC §3626(g)(2).

2. extends no further than necessary to correct the violation of the Federal right, and

3. is the least intrusive means necessary to correct the violation of the Federal right.

Relief in the form of punitive damages will extend "further than necessary to correct the violation of the Federal right" and is not "the least intrusive means necessary to correct the violation of the Federal right".

In their suit, plaintiffs allege that their continued confinement in lockdown violates their federal rights. They seek an injunction prohibiting the defendants from confining the plaintiffs in lockdown without independent intervening cause and directing that the plaintiffs be placed in the general prison population. Complaint, ¶16. Injunctive relief – in the form of an order directing release from lockdown - will "correct the violation" of their federal rights (if, in fact, their rights were violated). An award of punitive damages will go "further than necessary to correct the violation". An injunction will directly put an end to the alleged violations by the defendants and their successors in office. An award of punitive damages will have only an indirect deterrent effect on future Secretaries, Wardens, and lockdown review board members.

As a result, plaintiffs fail to allege specific facts which constitute either a violation of clearly established current law (qualified immunity, 1st prong) or under the law as clearly established at the time of the events in question (qualified immunity, 2nd prong). Pre-existing law does not "dictate, that is, truly compel (not just suggest or allow or raise a question about)" a finding of liability for punitive damages. Sorenson v. Ferrie,

134 F.3d at 330. Therefore, the defendants are entitled to qualified immunity from any claim for punitive damages.

## X. PLAINTIFFS' FEDERAL LAW CLAIMS FOR INJUNCTIVE RELIEF FAIL TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED PURSUANT TO THE LIMITATIONS ON PROSPECTIVE RELIEF CONTAINED IN 18 USC § 3626.

In their Complaint, the plaintiffs seek a permanent injunction:

> enjoining and restraining the above captioned officials and their successors from incarcerating Plaintiffs in extended lockdown or other similar condition without independent intervening cause therefor and, further, ordering their placement in the general prison population.

- Complaint; Prayer for Relief.

Plaintiffs fail to state a claim upon which such injunctive relief can be granted pursuant to the limitations on prospective relief contained in 18 USC § 3626.

### A. Limitations on prospective relief.

As noted above, 18 USC §3626(a) provides limitations on prospective relief available to inmates:

> (1) Prospective relief.--(A) Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

**B.**     **Discussion.**

The injunctive relief sought by the plaintiffs will extend further than necessary to correct the violation of a federal right.

With regard to the plaintiffs' due process claims, any relief will extend further than necessary to correct the violation of a federal right because as discussed at Part V, above, plaintiffs do not plead any violation of their due process rights.     An inmate has no liberty interest protected by the Due Process Clause in avoiding extended lockdown.  Even if such a liberty interest exists, the deprivation occurred when they were initially placed in lockdown.  Finally, an inmate has no protected liberty interest in being released from lockdown by the lockdown review board.

With regard to the plaintiffs' conditions of confinement claims, the requested relief – placement in the general inmate population - will extend further than necessary means to correct the violation of the alleged federal right.  If their conditions of confinement violate the 8th Amendment, §3626(a)(1) limits their relief to the minimum necessary to eliminate the violation.  The alleged 8th Amendment violations, should they exist, could be corrected by remedies far less sweeping than release to the general prison population.  These remedies could include additional exercise time, additional personal property, and additional interaction with others.

As a result, the plaintiffs fail to state a claim upon which relief can be granted as to their requested injunctive relief.

**XI.   PLAINTIFFS FAILED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES ON THEIR LOUISIANA LAW CONDITIONS OF CONFINEMENT CLAIMS.**

Plaintiffs fail to allege that they have exhausted their administrative remedies with regard to their Louisiana law conditions of confinement claims as required by La.R.S. 15:1171 *et seq*. and La.R.S. 15:1184.   Under Louisiana law, exhaustion of administrative remedies is mandatory.

**A.   Louisiana law on exhaustion of administrative remedies.**

A federal court exercising supplemental jurisdiction over state law claims must apply the substantive law of the state in which it sits.   Sommers Drug Store Co. Employee Profit Sharing Trust v. Corrigan, 883 F.2d 345, 353 (5th Cir. 1989); Fluor Engineers and Constructors v. Southern Pacific Transportation, 753 F.2d 444, 448 (5th Cir. 1985), rehearing denied, 760 F.2d 269.   Accordingly, substantive Louisiana law governs the plaintiffs' state law claims.

Under Louisiana law, exhaustion of administrative remedies by an inmate is mandatory before suit may be filed. La.R.S. 15:1171 *et seq*.; Marler v. Petty, 94-1851, pp. 4-6 (La. 4/10/95), 653 So.2d 1167, 1170-71.   Louisiana law also contains a provision that is analogous to 42 USC §1997e(a):

> No prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted.
>
> - La.R.S. 15:1184(A).

**B.**    **Discussion.**

As discussed at Part III, above, the plaintiffs 8th Amendment conditions of confinement claims should be dismissed for failure to exhaust their administrative remedies. For the same reasons, their Louisiana law conditions of confinement claims should be dismissed for failure to exhaust administrative remedies as required by Louisiana law.

**XII.    THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' LOUISIANA CONSTITUTIONAL CLAIMS.**

The plaintiffs assert constitutional claims arising under the U. S. Constitution (8th Amendment and 14th Amendment) and parallel provisions of the Louisiana Constitution (Art. 1, §20 and Art. 1, §2). The defendants are entitled to qualified immunity on plaintiffs' claims arising under the Louisiana Constitution.

**A.    Qualified immunity under Louisiana law.**

As noted in Part XI(A), above, substantive Louisiana law governs the plaintiffs' state law claims.

The Louisiana Supreme Court has held that the same qualified immunity defense available to a defendant on a federal constitutional claim is likewise available to a defendant on a Louisiana constitutional claim. The Court stated that the same factors that compelled the United States Supreme Court to recognize the qualified immunity defense for state officers under 42 USC §1983 "require us to recognize a similar immunity for them under any action arising from the state constitution". Moresi v. State Department of Wildlife and Fisheries, 567 So.2d 1081, 1094 (La. 1990).

- 28 -

**B.**    **Discussion.**

As discussed above, the defendants are entitled to qualified immunity on the plaintiffs' federal constitutional claims.  For the same reasons, they are entitled to qualified immunity on plaintiffs' Louisiana constitutional claims.

**XIII.**    **PLAINTIFFS' LOUISIANA LAW CLAIMS FOR INJUNCTIVE RELIEF FAIL TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED PURSUANT TO THE LIMITATIONS ON PROSPECTIVE RELIEF CONTAINED IN La.R.S. 15:1182.**

Plaintiffs fail to state a claim upon which such injunctive relief under Louisiana law can be granted pursuant to the limitations on prospective relief contained in La.R.S. 15:1182.

**A.**    **Limitations on prospective relief.**

As noted in Part XI(A), above, substantive Louisiana law governs the plaintiffs' state law claims.

La.R.S. 15:1182(A) contains the same limitations on prospective relief available to inmates under Louisiana law as exist in 18 USC §3626(a) for prospective relief under federal law.

**B.**    **Discussion.**

As discussed in Part X, above, the plaintiffs fail to state a federal claim upon which relief can be granted as to their requested injunctive relief.  For the same reasons, the plaintiffs fail to state a Louisiana law claim upon which relief can be granted as to their requested injunctive relief.

## XIV.    CONCLUSION.

Accordingly, this motion should be granted and plaintiffs' suit should be dismissed. In the alternative, they should be ordered to file a <u>Schultea</u> reply.

Respectfully submitted,

RICHARD P. IEYOUB
ATTORNEY GENERAL

BY:    _____
ANDRÉ CHARLES CASTAING
ASSISTANT ATTORNEY GENERAL
BAR ROLL # 17509

LOUISIANA DEPARTMENT OF JUSTICE
LITIGATION DIVISION
P.O. BOX 94095, CAPITOL STATION
BATON ROUGE, LA 70804-9095
TELEPHONE: (225) 342-8495
FAX: (225) 342-4952

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been served upon counsel for all represented parties and has been served upon all <u>pro se</u> parties to this proceeding by mailing the same to each by first class United States mail, properly addressed and postage prepaid on this _9__ day of _May_____, 1999.

_____
ANDRÉ CHARLES CASTAING