

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROBERT KING WILKERSON, ALBERT WOODFOX, and HERMAN WALLACE | * * | CIVIL ACTION NUMBER 00-0304"C"M3 |
| VERSUS | * | JUDGE TYSON |
| RICHARD STALDER et al. | * | MAG. JUDGE DALBY |

\* \* \* \* \* \* \*

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiffs Robert King Wilkerson, Albert Woodfox, and Herman Wallace allege that they have been confined in the effective equivalent of solitary confinement for 28 years. Since 1972, they have spent 23 hours of each day alone in a 60-square-foot cell. For one hour each day, they may shower and walk along the tier hallway. Three days a week, they may spend that hour in an outdoor run. In evaluating defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take these allegations as true.

The gravamen of plaintiffs' complaint is that 28 years of confinement under these conditions constitutes cruel and unusual punishment. They also contend that the only review they receive of their continued confinement in extended lockdown – review every 90 days by the Lockdown Review Board – is a sham, and hence violative of due process.



1

Defendants assert a plethora of grounds for dismissing plaintiffs' claims. Some are clearly baseless, some are premature, and others are cured by the Amended Complaint which plaintiff seeks leave to file simultaneously with this Opposition. Most do not affect the viability of plaintiffs' Eighth Amendment claim for injunctive relief. Defendants characterize many of their objections to plaintiffs' claim as "qualified immunity defenses," apparently to have the benefit of interlocutory review, when in fact their objections do not relate to whether they reasonably thought their conduct legal under clearly established law. This Court should reject defendants' motion in its entirety and allow factual development of plaintiffs' case.

### 1. Plaintiffs have tried to exhaust administrative remedies but none is available.

As Kimberley Lemaire's Affidavit and Supplemental Affidavit indicate,[1] all three plaintiffs filed grievances complaining of their confinement for 28 years in extended lockdown. Messrs. Wallace and Wilkinson's grievances were rejected at the first step because decisions of the Lockdown Review Board are not reviewable by the Administrative Remedy Procedure. As the Fifth Circuit has recognized, 42 U.S.C. § 1997e(a) does not require exhaustion of unavailable administrative remedies. Whitley v. Hunt, 158 F.3d 882, 886 (5th Cir. 1998).

---

[1] After plaintiffs' counsel informed Ms. Lemaire by telephone that Mr. Woodfox had indeed filed a grievance, Ms. Lemaire checked her records, confirmed that this was so, and promised to file a supplemental affidavit.

Oddly, Mr. Woodfox's grievance was processed to the third step, where it has remained without resolution since May 15, 2000. By Department of Corrections' procedures, the Secretary has 40 days to respond to a third step grievance. See Third Step Response Form, LSP-00-0408, attached hereto as Exhibit A. Those 40 days have long since passed. "[A]vailable administrative remedies are exhausted when the time limits for the prison's response set forth in prison Grievance Procedures have expired." Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998), cert. denied, 526 U.S. 1133 (1999). Therefore, Mr. Woodfox, like his co-plaintiffs, has exhausted his administrative remedies.

Attempting to separate those parts of plaintiffs' complaint concerning conditions of confinement in extended lockdown from the parts of the complaint addressing the duration of their confinement, defendants argue that plaintiffs should have grieved conditions of confinement. This argument has no merit. The two aspects of the complaint are not separable. Plaintiffs are not complaining that the conditions in extended lockdown *per se* constitute cruel and unusual punishment. Plaintiffs claim only that incarceration under those conditions *for 28 years* violates the Eighth Amendment. The complaint describes the conditions in extended lockdown merely to show why 28 years of confinement in that classification is inhumane. Plaintiffs are not seeking better conditions in extended lockdown. They are seeking release into the general prison population. A grievance over conditions of confinement in extended lockdown could not provide this relief. Therefore, the Prison Litigation Act does not require that such a grievance be filed. Cf. Whitley (where administrative remedies provide no monetary

3

relief, inmate seeking only money damages need not exhaust). Defendants' exhaustion of remedies argument is groundless.

### 2. Plaintiffs' claims accrue anew with decision of the lockdown review board and hence are not prescribed.

Plaintiffs' complaint goes to the duration of their confinement. They claim that their incarceration in extended lockdown is unconstitutional because 28 years of solitary confinement is inhumane. As the Fifth Circuit acknowledged in Davis v. Scott, 157 F.3d 1003, 1006 (5th Cir. 1998), "A filthy overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months." (quoting Hutto v. Finey, 437 U.S. 678, 686-87 (1978). Since the duration of the confinement is the crux of the claim, the claim accrues as times passes. At the least, a new claim arises with each decision to continue the classification, and with each refusal to release plaintiffs into the general prison population. The Lockdown Review Board makes such decisions every 90 days. Several such decisions were made in the year before suit was filed and more are being made while suit is pending. Therefore, plaintiffs' claims are not prescribed.

### 3. Plaintiffs have a liberty interest in release from 28 years of confinement in extended lockdown and in not spending the rest of their lives in that classification.

Misreading Sandin v. Connor, 515 U.S. 472 (1995), defendants deny that plaintiffs have a liberty interest in release from extended lockdown and assert qualified immunity. Sandin, however, asserts no such blanket proposition. To the contrary, as the Third Circuit recognized in Shoats v. Horn, 213 F.3d 140 (3d Cir. 2000), it requires a case-by-case inquiry into whether plaintiffs are asserting atypical and significant hardship.

Sandin involved a due process challenge to 30 days confinement in disciplinary segregation. The Court found no liberty interest because the duration was brief and the degree of restriction not much different from that imposed on other inmates. In so holding, the Court explained that liberty interests in the prison context

> will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id. at 484 (internal citations omitted).[2]

In Shoats, the Third Circuit applied Sandin to a claim by an inmate who had spent eight years in administrative segregation. Like the plaintiffs at bar, he spent 23

---

[2] Language in Fifth Circuit cases reading Sandin to establish a bright-line rule that prisoners have no liberty interest in avoiding disciplinary segregation is dicta. See Carson v. Johnson, 112 F.3d 818, 821 (5th Cir. 1997); Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995).

5

hours a day alone in his cell. The court held that the inmate had a liberty interest in release from administrative segregation because of the duration of his confinement and the significant hardships that it imposed.

The case at bar presents an even stronger case of "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Plaintiffs effectively face a life sentence to the functional equivalent of solitary confinement. Plaintiffs have already spent 28 years in extended lockdown. Without court relief, they probably will never be reclassified. On paper, the extended lockdown classification is reviewed every 90 days. In reality, there is no review at all. For the last 28 years, each lockdown review board has continued the classification on the basis of the original ground for the classification – with absolutely no rational discussion or deliberation on the substance of the decision. Without Court intervention, plaintiffs will spend the rest of their lives in extended lockdown. As plaintiffs allege in their Amended Complaint, Board members commonly chat among themselves about unrelated matters such as hunting or fishing or a second-hand motor purchase when the inmate comes before them for review. If the inmate tries to talk about the merits of his case, the Board tells him that this is not the place to litigate; he should litigate elsewhere. If this Court finds no liberty interest, there will be nowhere to litigate.

Plaintiffs' confinement is atypical not only in duration but also in the degree of hardship. In the general prison population, inmates work and socialize. They live in dormitories. They have educational and training opportunities. In extended lockdown, inmates are isolated in their cells for 23 hours a day, and spend the remaining hour in the

6

tier hallway, except for the thrice-weekly hour in the exercise run. The difference in conditions is stark. As in Shoat, this Court should find that plaintiffs have a liberty interest in their release into the general prison population.

Moreover, defendants are not entitled to qualified immunity. A reasonable prison official would know that plaintiffs suffer "atypical and significant hardship" which triggers a constitutional requirement of at least reasoned consideration of whether they could safely return to the general prison population. Indeed, plaintiffs' plight is well known among prison staff for the duration and harshness of their punishment. Prison officials know it is past time to release plaintiffs from extended lockdown, but no one wants to take responsibility for doing it.

### 4. Plaintiffs' Amended Complaint alleges a causal connection.

With this response, plaintiffs seek leave to file an Amended Complaint alleging conduct on the part of defendants Stalder and Cain causally related to their constitutional deprivations, and eliminating Deputy Warden Vannoy as a defendant.

Warden Cain is and has been personally aware that plaintiffs have been confined to extended lockdown for 28 years. Indeed, plaintiffs' situation is generally known throughout the institution. The Warden also knows the conditions in extended lockdown, and knows that the Lockdown Review Board will not release plaintiffs into the general prison population without direction from above. In the face of this knowledge, Warden Cain demonstrated deliberate indifference by failing to take any action to have

7

plaintiffs released from extended lockdown or at least to give them a fair hearing to determine whether they would pose a danger if released into the general prison population. As a result, plaintiffs remain in extended lockdown. Secretary Stalder also was aware of plaintiffs' situation, but failed to intervene, even when Mr. Woodfox's case came before him at the third step of the grievance procedure. Under <u>Alton v. Texas A&M Univ.</u>, 168 F.3d 196, 200 (5th Cir. 1999), these allegations suffice to hold defendants Cain and Stalder in their individual capacities at this early stage of the case. In any event, Secretary Stalder is vicariously liable in his official capacity under state law for the acts of his subordinates. La. Civ. Code art. 2320.

Contrary to defendants' representations, the issue here is not one of qualified immunity. Either defendants Cain and Stalder conducted themselves in such a way as to causally contribute to the constitutional deprivations of which plaintiffs complain – or they did not. Whether they reasonably believed their conduct was lawful under clearly established law is another issue.

### 5. The Court should defer ruling on whether plaintiffs may recover emotional distress damages.

Under clearly established Fifth Circuit law, 42 U.S.C. § 1997e(e) is merely a limitation on recovery. Failure to allege physical injury may prevent recovery of emotional distress damages, but such omission does not undermine a constitutional claim for declaratory and injunctive relief. <u>Harper v. Showers</u>, 174 F.3d 716, 719 (5th Cir. 1999).

In any event, plaintiffs are seeking leave to file an Amended Complaint alleging physical injury. They contend that the conditions of their confinement have damaged their eyesight and caused high blood pressure. Accordingly, defendants' objection to their prayer for emotional distress damages is moot.

The developing state of the jurisprudence also counsels caution. Several courts have held that a claim for a constitutional violation is not a claim for emotional distress damages within the meaning of 42 U.S.C. § 1997e(e): Liner v. Goord, 196 F.3d 132, 135-36 (2d Cir. 1999) (claims for sexual abuse may state an Eighth Amendment claim in addition to a claim for emotional distress damages); Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998) (a claim for violation of First Amendment rights, regardless of the type of damages sought, is not a claim for emotional distress damages); Friedland v. Fauver, 6 F. Supp. 2d 292, 309-310 (D.N.J. 1998) (damages for incarceration following arrest without probable cause are not damages for emotional distress). At this early stage in the litigation, this Court should defer ruling until the Fifth Circuit or the U.S. Supreme Court has the opportunity to address this line of cases.[3]

---

[3] Again, defendants err in characterizing this issue as one of qualified immunity. It does not implicate whether defendants reasonably believed their conduct was lawful.

### 6. Plaintiffs do not assert a claim of denial of access to legal materials.

Plaintiffs do not assert a claim for denial of access to legal materials. They allege lack of access to legal materials only as an illustration of the conditions that make 28 years of confinement in extended lockdown inhumane.

### 7. It is premature to decide whether punitive damages are unnecessary to correct the constitutional violation in this case.

Defendants ask this Court to strike plaintiffs' demand for punitive damages on the ground that punitives constitute broader than necessary "prospective relief," and hence are impermissible under 18 U.S.C. § 3626. Defendants cite no case holding that the congressional restrictions on prospective relief extend to punitive damages. To the contrary, the legislative history indicates that Congress was concerned with consent decrees and broad-based mandatory injunctions. See Gilmore v. People, Nos. 98-15198, 98-15160, ___ F.3d ___, 2000 WL 1070235, at *7 (9th Cir. Aug. 4, 2000) (sponsors of Prison Litigation Reform Act decried "overzealous Federal courts . . . micromanaging our Nation's prisons" and "judicial orders entered under Federal law [which] have effectively turned control of the prison system away from elected officials accountable to the taxpayer, and over to the courts.") (internal citations omitted); see also Miller v. French, ___ U.S. ___, 120 S. Ct. 2246, 2254 (2000) ("curbing the equitable discretion of district courts was one of the PLRA's principal objectives").

Alternatively, at this early stage in the proceedings, it would be premature for the Court to decide that punitive damages were unnecessary to correct the constitutional

violations. Punitive damages serve a deterrent function, and the Court should hear the evidence before it decides whether deterrence is necessary in this case.[4]

### 8. Release from extended lockdown is the narrowest injunctive relief that would remedy the constitutional violations.

Defendants persist with their misguided effort to characterize this complaint as an attack on the conditions in extended lockdown. That is not what this case is about. This case is about the duration of plaintiffs' confinement in extended lockdown. The narrowest possible injunctive relief that would correct the constitutional violation would be release into the general prison population. Defendants suggest that an injunction changing the conditions in extended lockdown would be narrower. That approach would involve the Court in exactly the kind of prison micro-management that the Prison Litigation Reform Act sought to avoid.[5]

### 9. Louisiana state law claims

On pages 27-29 of their Memorandum, defendants seek dismissal of plaintiffs' Louisiana state law claims on many of the same grounds on which they seek dismissal of plaintiffs' federal claims. In support, defendants cite the corresponding section of their brief on federal law issues. Plaintiffs oppose dismissal of their state law claims on the same grounds that they oppose dismissal of their federal law claims, and refer the Court to the corresponding federal law sections of this brief.

---

[4] This is another issue that defendants mistakenly cast as one of qualified immunity.
[5] Again, defendants err in characterizing this as a qualified immunity issue.

11

For the foregoing reasons, plaintiffs respectfully request that the Motion to Dismiss be denied in its entirety.

>Respectfully submitted,
>
>ROBIN E. SCHULBERG, P.L.C.
>Attorney for Plaintiffs
>
>*Robin C. Schulberg*
>Robin E. Schulberg LSBN 20365
>Cooperating Attorney – ACLU Foundation
>    of Louisiana
>Post Office Box 1483
>Covington, Louisiana 70434
>(504) 871-8213
>
>and
>
>William Quigley LSBN 7769
>General Counsel
>ACLU Foundation of Louisiana
>7214 St. Charles Avenue
>Campus Box 902
>New Orleans, LA 70118

## CERTIFICATE OF SERVICE

I certify that I served a copy of the foregoing Plaintiffs' Opposition to Defendants' Motion to Dismiss on Andre Charles Castaing, Louisiana Department of Justice, Litigation, P.O. Box 94095, Capitol Station, Baton Rouge, LA 70804-9095, by deposit in the U.S. mail, properly addressed and postage prepaid, this 14th day of August, 2000.

*Robin C. Schulberg*
Robin E. Schulberg

FORM ARP-4

**LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS**
**CORRECTIONS SERVICES**

NUMBER __LSP__ - __00__ - __0408__

# THIRD STEP RESPONSE FORM
### (HEADQUARTERS)

You must respond to the OFFENDER within 40 days of receipt of the appeal of the STEP 2 Response.

TO: __Albert Woodfox  #72148__                                                         __LSP__
       Offender's Name and Number                                                  Living Unit

Response to Request Dated _____ , Received in this Office on __5/15/00__ :

This will advise that the above mentioned Administrative Remedy Procedure is still receiving consideration at the Headquarters level. You will be provided a final response reflecting our decision in the near future.

__6-20-00__                                                          __[signature]__
Date                                                                           Signature

**INSTRUCTIONS TO OFFENDER:** This original is for you to keep.

IF YOU ARE NOT SATISFIED WITH THIS RESPONSE, YOU MAY WITHIN THIRTY (30) DAYS AFTER RECEIPT OF THIS DECISION, SEEK JUDICIAL REVIEW PURSUANT TO R.S. 15:1177.

**OFFENDER'S ORIGINAL**

Exhibit A

DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS         FORM ARP-1
                CORRECTIONS SERVICES                (ACCEPTED)

NUMBER:   LSP  -2000-0408

OFFENDER'S RELIEF REQUEST FORM
(Type or use ball-point pen)

TO:   ALBERT WOODFOX  72148              LSP (CCR UPPER B)
      (Offender's Name & Number)         (Offender's Living Unit)

The following individual has been named as the first step respondent:
DAVY KELONE, M.P. EAST

XXX   **ACCEPTED.**  The First Step Respondent has 15 days from date of acceptance to respond. The First Step Respondent may request and receive a five day extension of time to respond if necessary. If the request was accepted at the second step, respondent has 40 days from date of acceptance to respond and may request and receive a five day continuance to respond if necessary.

   1/14/200              2/24/200                 DORA RABALAIS
DATE OF INCIDENT       DATE OF ACCEPTANCE         WARDEN'S DESIGNEE

==========================================================================
### SECOND STEP (Pink copies)

On 3-8-2000 (date), I received a written response to my First Step request. I am not satisfied with this response because IT DOES NOT FULLY ADDRESS THE ISSUES ON LONG TIME CONFINEMENT IN MAXIMUM SECURITY FOR ALMOST 30 YEARS!

Therefore, I am commencing the Second Step by sending the pink copy of this form (ARP-1), and the pink copy of the First Step response (ARP-2) to the Unit Head. This request must reach the Unit Head's Office within 5 days of my receiving the First Step response.

3-8-2000                                 Albert Woodfox
  DATE                                      SIGNATURE
==========================================================================
### THIRD STEP (Yellow copies)

On 4-3-2000 (date), I received a written response to my Second Step request. I am not satisfied with this response because I AM NOT SATISFIED WITH MY 2ND STEP RESPONSE.

I am commencing the Third Step by sending the yellow copy of this form (ARP-1) and the yellow copies of the First and Second Step responses (ARP-2 and ARP-3) to the Secretary of Corrections. This request must be sent within 5 days of my receiving the Second Step response.

4-3-2000                                 Albert Woodfox
  DATE                                      SIGNATURE
==========================================================================
NOTE TO OFFENDER:  Please do not attempt to proceed to the next step until you have received your response or the time limit for the response and applicable extensions of time have lapsed. If you inquire about an ARP, list the ARP number in your inquiry.

DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS        FORM ARP-1
            CORRECTIONS SERVICES                    (ACCEPTED)

NUMBER:   LSP -2000-0408

OFFENDER'S RELIEF REQUEST FORM
(Type or use ball-point pen)

TO:   ALBERT WOODFOX   72148              LSP (CCR UPPER B)
         (Offender's Name & Number)       (Offender's Living Unit)

The following individual has been named as the first step respondent:
DAVY KELONE, M.P. EAST

XXX   **ACCEPTED.**   The First Step Respondent has 15 days from date of acceptance to respond. The First Step Respondent may request and receive a five day extension of time to respond if necessary. If the request was accepted at the second step, respondent has 40 days from date of acceptance to respond and may request and receive a five day continuance to respond if necessary.

_1/14/200_                _2/24/200_                   DORA RABALAIS
DATE OF INCIDENT        DATE OF ACCEPTANCE            WARDEN'S DESIGNEE

===========================================================================

**SECOND STEP (Pink copies)**

On _3-8-2000_ (date), I received a written response to my first step request. I am not satisfied with this response because _IT DOES NOT FULLY ADDRESS THE ISSUES ON LONG TIME CONFINEMENT IN MAXIMUM SECURITY FOR ALMOST 30 YEARS!_

Therefore, I am commencing the Second Step by sending the pink copy of this form (ARP-1), and the pink copy of the First Step response (ARP-2) to the Unit Head. This request must reach the Unit Head's Office within 5 days of my receiving the First Step response.

_3-8-2000_                          _Albert Woodfox_
DATE                                SIGNATURE

===========================================================================

**THIRD STEP (Yellow copies)**

On _4-3-2000_ (date), I received a written response to my Second Step request. I am not satisfied with this response because _I AM NOT SATISFIED WITH THE 2ND STEP RESPONSE._

I am commencing the Third Step by sending the yellow copy of this form (ARP-1) and the yellow copies of the First and Second Step responses (ARP-2 and ARP-3) to the Secretary of Corrections. This request must be sent within 5 days of my receiving the Second Step response.

_4-3-2000_                          _Albert Woodfox_
DATE                                SIGNATURE

===========================================================================

NOTE TO OFFENDER: Please do not attempt to proceed to the next step until you have received your response or the time limit for the response and applicable extensions of time have lapsed. If you inquire about an ARP, list the ARP number in your inquiry.

DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS        FORM ARP-2
              CORRECTIONS SERVICES

              NUMBER:   LSP    2000    0408

                FIRST STEP RESPONSE FORM

Type or use a ball-point pen.  You must submit your response to the Legal
Programs Department within 10 days of the date the request for remedy was
accepted.

TO:   #72148 ALBERT WOODFOX                    LSP (CCR UPPER B)
      (Offender's Name and Number)             Offender's Living Unit


FROM: DAVY KELONE                              M.P. EAST
      (First Step Respondent)                  (Respondent's Location)


Response to Request Dated 1/14/200, Received by me on 2/24/200:

In response to your claim, you state that you are being subjected to cruel and unusual punishment by being housed in Extended Lockdown after the murder of a Correctional Officer in 1972.

You are being held in the Extended Lockdown due to the nature and extreme seriousness of your offense. You appear every 90 days before the Cellblock Review Board. At this time your Master Prison Record is reviewed by the Unit major and the unit Classification officer. It is their discretion whether or not to release you from Extended Lockdown. While housed on CCR, you are afforded access to inmate counsels for legal services, inmate tutors, librarians, and Mental Health workers. Nothing can be found to substantiate your claim.

Your request is denied.


3-1-2000                                       Signature of First Step Respondent
Date of Response

=================================================================
Instructions to Offender: If you are not satisfied with this response,
you may go to STEP 2 by filling out the second step section of Form
ARP-1 and sending the pink copies of ARP-1 and ARP-2 (in the brown
envelope which accompanied the first step response) to the Unit Head.
It must be received in the Unit Head's Office within 5 days of the
date you received this response. The original (white copy) is for you
to keep.

FORM ARP-3

**LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS**
**CORRECTIONS SERVICES**

NUMBER  LSP _ 2000 _ 0408

# SECOND STEP RESPONSE FORM
(UNIT HEAD)

Type or use ball-point pen. You must respond to the offender within 25 days of receipt of the offender's request.

TO:  72148   ALBERT WOODFOX                    LSP CCR UPPER B
     Offender's Name and Number                 Living Unit

FROM:  BURL CAIN                                WARDEN
       Unit Head                                Title

Response to Request Dated  03/08/2000 , Received in this Office on  04/01/2000 :

I have reviewed the above referenced ARP. You allege that you are being subjected to cruel and unusual punishment because of being housed in Extended Lockdown due to the murder of a Correctional Officer in 1972. Assistant Warden Kelone had this matter investigated at First Step and responded appropriately. You are treated the same as other inmates in Extended Lockdown. You appear before the Cellblock Review Board every 90 days and your Master Prison Record is reviewed by the Board. The Board's decision may not be challenged and is not subject to review through the Administrative Remedy Procedure.

Your request for Administrative Remedy is denied.

Prepared by: Leslie Dupont
AW/2/Main Prison

LD:dwh      5/27/00
            Date                                Unit Head's Signature

If you are not satisfied with this response, you may go to STEP 3 by filling out the third step section of ARP-1 and sending the light yellow copies of ARP-1, ARP-2, and ARP-3 to the Chief, Correctional Services, at headquarters in Baton Rouge. These forms must reach his office within 5 days of the date of this response.

**INSTRUCTIONS TO UNIT HEAD:** Send original and STEP 3 copy to the inmate. Keep Unit Head copy.

**INSTRUCTIONS TO OFFENDER:** This original is for you to keep.

**OFFENDER'S ORIGINAL**