FILED
U.S. DIST. COURT
MIDDLE DIST. OF LA.

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ROBERT KING WILKERSON** (DOC# 80966), **ALBERT WOODFOX** (DOC# 72148), and **HERMAN WALLACE** (DOC# 76759) | : | CIVIL ACTION |
| | : | NUMBER 00-0304-C-M3 |
| **VERSUS** | : | JUDGE TYSON |
| **RICHARD STALDER, ET AL.** | : | MAGISTRATE JUDGE DALBY |

## MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

The moving defendants, Richard Stalder, Burl Cain, and Tom Norris,[1] urge this Court to dismiss plaintiffs' claims against them since:

1. All of plaintiffs' federal law claims that arose prior to 30 March 1999 are prescribed.

2. The defendants are entitled to qualified immunity on plaintiffs' federal law claims for damages.

---

[1] Darrell Vannoy and Major Ned Tolliver were named as defendants in the plaintiffs' original complaint. In their amended complaint, the plaintiffs have eliminated their claims against Vannoy and Tolliver.

- 1 -

3. Plaintiffs' federal law claims for injunctive relief fail to state a claim for which relief can be granted pursuant to the limitations on prospective relief contained in 18 USC § 3626.

4. The defendants are entitled to qualified immunity on plaintiffs' state law claims for damages.

5. Plaintiffs' state law claims for injunctive relief fail to state a claim for which relief can be granted pursuant to the limitations on prospective relief contained in La.R.S. 15:1182.

I.  **STATEMENT OF THE CASE.**

The identity of the parties and the nature of the plaintiffs' claims are set forth in the defendants' memorandum in support of their motion to dismiss the plaintiff's original complaint (docket no. 5).

In the plaintiffs' amended complaint, they have dismissed all claims against defendants Darrell Vannoy and Major Ned Tolliver. The amended complaint asserts the same basic legal claims against defendants Stalder, Cain, and Norris as contained in their original compliant.

The defendants re-allege and re-aver the contents of their original motion except as either modified or elaborated on herein.

II.  **STANDARD OF REVIEW.**

On a FRCP Rule 12(b)(6) motion, the Court must accept as true the plaintiff's allegations and may not dismiss the complaint for failure to state a claim unless is appears beyond doubt that the plaintiff cannot prove any set of facts in support of his

claim which would entitle him to relief. Boudeloche v. Grow Chemical Coatings Corp., 728 F.2d 759 (5th Cir. 1984).

However, when a plaintiff sues a public official under 42 USC §1983, the district court must insist on heightened pleading by the plaintiff. Schultea v. Wood, 47 F.3d 1427 (5th Cir. 1995)(en banc). The court must first demand that the plaintiff file "a short and plain statement of his complaint, a complaint that rests on more than conclusions alone". 47 F.3d at 1433. Next, the court, in its own discretion, may insist that the plaintiff file a reply tailored to the assertion of the qualified immunity defense. Id. The court's discretion not to order such a reply is very narrow, however, when greater detail might assist. 47 F.3d at 1434. The plaintiff must support his claim:

> with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts.
>
> - 47 F.3d at 1434.

The Court may insist that the plaintiff file a FRCP Rule 7(a) reply that puts forward specific, nonconclusory factual allegations. Crawford-El v. Britton, 118 S.Ct. 1584, 1596-97 (1998).

### III.   ALL CLAIMS WHICH AROSE PRIOR TO 30 MARCH 1999 ARE PRESCRIBED.

Plaintiffs' suit was filed on 30 March 2000. Accordingly, all claims which arose prior to 30 March 1999 are prescribed.

In their opposition to the defendants motion to dismiss the original complaint, the plaintiffs shoot down the straw man argument that their suit is entirely

prescribed. However, the defendants only argued that all claims that arose more than one year before the suit was filed are prescribed. This would include lockdown review boards held prior to 30 March 1999. The defendants did not argue that any claims that arose on or after 30 March 1999 were prescribed.

IV. **THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' DUE PROCESS CLAIMS.**

The defendants are entitled to qualified immunity on the plaintiffs' 14th Amendment due process claims because they were not deprived of a protected liberty interest the existence of which is clearly established today or was clearly established at the time of the events in question.

The plaintiffs' opposition to the defendants' motion to dismiss the original complaint ignores the proper analysis of the qualified immunity defense. The plaintiffs' completely ignore the requirement of Schultea that a plaintiff must support his claim:

> with sufficient precision and factual specificity to raise a genuine issue as to the illegality of defendant's conduct at the time of the alleged acts.
>
> - 47 F.3d at 1434.

For qualified immunity to be surrendered:

> pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances.
>
> - Sorenson v. Ferrie, 134 F.3d 325, 330 (5th Cir. 1998), citing, Pierce, 117 F.3d at 882.

The strongest argument the plaintiffs muster is that currently unclear issues of law should be resolved in their favor. That argument is insufficient to defeat the qualified immunity defense.

### A. There is no clearly established liberty interest at issue.

The plaintiffs cite no controlling post-Sandin 5th Circuit or Supreme Court jurisprudence that holds that confinement in lockdown involves deprivation of a liberty interest protected by the Due Process Clause. None.

They breezily dismiss inconvenient statements from Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995) and Carson v. Johnson, 112 F.3d 818, 821 (5th Cir. 1997) as *dicta*. Whatever the force of the language in Orellana, the language in Carson is simply not *dicta* as it deals with whether a prisoner has a "liberty interest in avoiding disciplinary segregation".

More important, the plaintiffs' quibbling misses the whole import of the qualified immunity analysis. In light of the 5th Circuit's holding in Carson and statement in Orellana, how in the world is it "clearly established" that a Louisiana inmate has a protected liberty interest in avoiding lockdown in Louisiana? The plaintiffs cite no controlling case law to this effect. Instead, the plaintiffs cite a single U. S. 3rd Circuit case for the proposition that post-Sandin, the plaintiffs have a liberty interest in avoiding lockdown. A decision from another Circuit hardly makes the law in this Circuit "clearly established".

Given the lack of a specific Supreme Court case on the exact point, the existence of at least one 5th Circuit case (Carson) that holds the purported liberty interest

does not exist, and a second 5th Circuit case (Orellana) that at least advises that the purported liberty interest does not exist, how in the world is the existence of the purported liberty interest "clearly established"? Of course, the answer is that it is not clearly established.

>Unsurprisingly, the 5th Circuit has held that:
>
>Our inquiry [into what is clearly established law] ends, if we find from examining the decisions of the Supreme Court and our own decisions that the law was clearly established in this circuit.
>
>- Brady v. Fort Bend County, 53 F.3d 173, 175 (5th Cir. 1998).

It is simply not clearly established in Louisiana that the purported liberty interest exists.

Additionally, even if the plaintiffs are correct and it is clearly established that remaining out of lockdown is of Sandin significance and therefore a liberty interest exists, Schultea still requires that the plaintiffs must plead specific facts that establish that they suffered an atypical and significant hardship "in relation to the ordinary incidents of prison life". Sandin, 115 S.Ct. at 2300. What are the ordinary incidents of prison life for someone like the plaintiffs? Why are they in lockdown in the first place? They neglect to say. Certainly an inmate who does something bad can expect to be punished. Likewise, an inmate who does something really bad can expect to be punished severely. The words "in relation to" presume a baseline against which the current deprivation is to be compared in order to determine if it is "significant" and "atypical". Prison life where? In the United States? In Louisiana? At LSP? At Camp J? Ordinary incidents of prison life for which prisoners? All prisoners? Prisoners similarly situated to these inmates and

who have committed the same misconduct? None of this is clearly established for qualified immunity purposes. The plaintiffs completely fail to satisfy the Schultea requirement of pleading specific facts in this regard.

**B.     Plaintiffs ignore the second prong of the liberty interest analysis.**

As the defendants discussed in their motion to dismiss the original complaint, post-Sandin, the liberty interest analysis has two prongs:

1. First, the deprivation must be of Sandin significance; and

2. Second, the State must have in fact created a liberty interest.

Prior to Sandin, the liberty interest analysis focused solely on whether the state placed "substantive limitations on official discretion". Kentucky Dept. of Corrections v. Thompson, 109 S.Ct. 1904, 1909 (1989), citing, Olim v. Wakinekona, 103 S.Ct. 1741, 1747 (1983). In Sandin, the Supreme Court grafted a new element onto the existing liberty interest analysis. This is demonstrated by the language in Sandin that a State:

> may under certain circumstances create liberty interest which are protected by the Due Process Clause.

- Sandin, 115 S.Ct. at 2300 (emphasis added).

Further, the Court held that inmate Conner's confinement in segregation did not present the type of deprivation "in which a State might conceivably create a liberty interest". Sandin, 115 S.Ct. at 2301 (emphasis added). Obviously, the action of the State in actually creating a liberty interest is still relevant. Establishing a deprivation of Sandin significance is a necessary but not a sufficient condition for the plaintiffs to prevail on

their liberty interest claims. To prevail, the plaintiffs must also establish that a liberty interest was in fact created by the State of Louisiana.

The plaintiffs have alleged no facts whatsoever that there are any statutes, rules, or regulations that establish any substantive predicates governing official decision-making and then mandating the outcome to be reached upon a finding that the relevant criteria have been met. <u>Thompson</u>, 109 S.Ct. at 1909. Further, to create a liberty interest, there must be explicitly mandatory language, i.e., "specific directives to the decision maker that if the regulations' substantive predicates are present, a particular outcome must follow, in order to create a liberty interest." <u>Thompson</u>, 109 S.Ct. at 1910.

In neither their opposition to the defendants' motion to dismiss the original complaint nor in their amended complaint do the plaintiffs identify any source wherein the liberty interest was created. For example, they have not identified a rule that states that they are entitled to release from lockdown should certain criteria be reached. <u>Schultea</u> usually allows the plaintiff a chance to correct a deficiency. In this case, the plaintiffs have filed an opposition to the motion to dismiss and an amended complaint and have still failed to identify the source of the purported liberty interest. The defendants are entitled to have this claim dismissed.

C.   **<u>There is no liberty interest in release from lockdown</u>.**

There is no liberty interest in <u>release</u> from lockdown. Even if an inmate's initial placement in lockdown is of <u>Sandin</u> significance and if the state creates a liberty interest in being free from lockdown, the deprivation occurs when the inmate is placed in lockdown. There is no further process due after that point.

The plaintiffs point to no clearly established law which holds that due process is implicated in the decision not to release an inmate from lockdown when, as here, there are no allegations that release is mandatory upon the establishment of certain criteria. Rather, release from lockdown is discretionary, much like parole and pardon in Louisiana. Plaintiffs have nothing more than a unilateral hope of release.

## VI. DEFENDANTS STALDER AND CAIN ARE ENTITLED TO QUALIFIED IMMUNITY – CAUSAL CONNEXITY.

Defendants Richard Stalder and Burl Cain are entitled to qualified immunity because the plaintiffs fail to support their claims with the sufficient precision and factual specificity required by Schultea to establish that these defendants were causally related to any violation of the plaintiffs' clearly established rights.

In their amended complaint, the plaintiffs add only conclusory allegations that Cain "knows of" the situation and "with deliberate indifference" fails to remedy the situation. Amended Complaint, ¶21. Likewise, the plaintiffs conclusorily allege that Stalder "is aware" of the situation and "has refused" to take any action to remedy the situation. Amended Complaint, ¶22. These are legal conclusions, unsupported by any specific factual allegations as required by Schultea.

Further, plaintiffs allege that Stalder in his official capacity is vicariously liable on the state law claims pursuant to La. Civil Code Art. 2320, which provides in relevant part:

> **Art. 2320. Acts of servants, students or apprentices**
>
> Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
>
> Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.
>
> In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it.
>
> The master is answerable for the offenses and quasi-offenses committed by his servants, according to the rules which are explained under the title: Of quasi-contracts, and of offenses and quasi-offenses.

Frankly, this theory lacks any arguable merit and is legally frivolous.

The official/individual capacity dichotomy is a federal pleading device for claims under 42 USC §1983. The very definition of individual capacity is in terms of federal civil rights claims:

> personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken <u>under color of state law</u>.
>
> - <u>Hafer v. Melo</u>, 112 S.Ct. 358, 362 (1991) (emphasis added).

The official/individual capacity dichotomy simply is not a part of the Louisiana Civil Code, and is certainly not part of the regular rules of employer vicarious liability for the torts of the employee. Plaintiffs theory is not limited to only governmental employers. Rather, plaintiffs assert this theory arises under La. Civil Code Art. 2320 – the general rule of employer vicarious liability for all employers in Louisiana, public and private.

Under plaintiffs' theory, you can sue the president of Exxon as vicariously liable for the on-the-job torts of Exxon employees. The plaintiffs' theory represents an unprecedented and totally unsupportable interpretation of Louisiana law.

Under Louisiana law, the employer – in this case the State of Louisiana – has employer liability under Civil Code Art. 2320. There is no legal basis under Louisiana law for the plaintiffs' novel theory that Stalder can be sued under Louisiana state law in some "official capacity" as the employer of the employees of the State of Louisiana.

### VII. PLAINTIFFS' FEDERAL CLAIMS FOR PSYCHOLOGICAL HARM.

In their motion to dismiss the original complaint, the defendants urged that since the plaintiffs made no allegation that they suffered any physical injury as a result of their confinement in lockdown, 42 USC §1997e(e), barred their claims for recovery for those injuries.

In their amended complaint, the plaintiffs have added claims of physical injury. Amended Complaint, ¶25. Accordingly, for pleading purposes, the defendants' objection is satisfied.

### VIII. THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFFS' CLAIMS FOR PUNITIVE DAMAGES.

The defendants are entitled to qualified immunity on plaintiffs' claims for punitive damages. Plaintiffs' opposition to the defendants' motion to dismiss the original

complaint is almost totally non-responsive on this issue, argues the old law, and in effect asks this Court to simply ignore the clear wording of the statute.

IX. **PLAINTIFFS' FEDERAL LAW CLAIMS FOR INJUNCTIVE RELIEF FAIL TO STATE A CLAIM FOR WHICH RELIEF CAN BE GRANTED PURSUANT TO THE LIMITATIONS ON PROSPECTIVE RELIEF CONTAINED IN 18 USC § 3626.**

In their Complaint, the plaintiffs seek a permanent injunction:

> enjoining and restraining the above captioned officials and their successors from incarcerating Plaintiffs in extended lockdown or other similar condition without independent intervening cause therefor and, further, ordering their placement in the general prison population.

- Complaint; Prayer for Relief.

Plaintiffs fail to state a claim upon which such injunctive relief can be granted pursuant to the limitations on prospective relief contained in 18 USC § 3626.

Plaintiffs' opposition to the defendants' motion is almost bizarre. It states:

> Defendants persist with their misguided effort to characterize this complaint as an attack on the conditions in extended lockdown. That is not what this case is about. This case is about the duration of plaintiffs' confinement in extended lockdown.

- Plaintiffs' Opposition to Defendants' Motion to Dismiss, p. 11.

Yet, in their amended complaint, the plaintiffs clearly assert an 8th Amendment claim. See: Amended Complaint, ¶31. Their 8th Amendment claim has to challenge sustative conditions, not just procedures. But, plaintiffs assert, theirs is not an attack on the conditions of confinement in extended lockdown. Rather, it is an attack on the duration of confinement in extended lockdown, which is unconstitutional because of the

conditions in extended lockdown. But this is not an attack on the conditions of confinement in extended lockdown. And the circular logic goes round and round.

For instance, if it is the duration of confinement in restrictive lockdown conditions that is the source of their claim, why is release to a working cellblock not sufficient to remedy the purported violation? The plaintiffs fail to say, other than their naked conclusion that "the narrowest possible injunctive relief that would correct the constitutional violation would be release into the general prison population". Plaintiffs' Opposition, p. 11. Why? Their simple answer is the equivalent of "because I say so". They give no reasons or discussion, simply declarations.

Again, the Plaintiffs' opposition to the defendants' motion to dismiss the original complaint is almost totally non-responsive on this issue and in effect asks this Court to simply ignore the clear wording of the statute.

## X.  STATE LAW CLAIMS.

The defendants reassert the grounds for dismissal of the state law claims against them, including the state qualified immunity defense.

## XI.  CONCLUSION.

For the reasons stated herein and for the reasons stated in the defendants' original motion, plaintiffs' claims should be dismissed. As the plaintiffs have filed an amended complaint in response to the defendants' motion to dismiss the original

complaint, there is no need to allow them yet another chance to correct the deficiencies in their pleading.

        Respectfully submitted,

        RICHARD P. IEYOUB
        ATTORNEY GENERAL

BY: _____
        ANDRÉ CHARLES CASTAING
        ASSISTANT ATTORNEY GENERAL
        Bar Roll # 17509

LOUISIANA DEPARTMENT OF JUSTICE
LITIGATION DIVISION
P. O. Box 94095, Capitol Station
Baton Rouge, LA 70804-9095
Telephone: (225) 342-8495
Fax: (225) 342-4952

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been served upon counsel for all represented parties and has been served upon all pro se parties to this proceeding by mailing the same to each by first class United States mail, properly addressed and postage prepaid on this 26th day of October, 2000.

Robin E. Schulberg, Esq.
ROBIN E. SCHULBERG, P.L.C.
P. O. Box 1483
Covington, LA 70434

        _____
        ANDRÉ CHARLES CASTAING