

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROBERT KING WILKERSON, ALBERT WOODFOX, and HERMAN WALLACE | * * | CIVIL ACTION NUMBER 00-0304"C"M3 |
| VERSUS | * | JUDGE TYSON |
| RICHARD STALDER et al. | * | MAG. JUDGE DALBY |

\* \* \* \* \* \* \*

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

Plaintiffs contend that 28 years of solitary confinement constitutes cruel and unusual punishment in violation of the Eighth Amendment. They also contend that the periodic reviews of their classification are sham, and hence violative of due process. They maintain that Warden Burl Cain, Corrections Secretary Richard Stalder, Assistant Warden Richard Peabody and the members of the Lockdown Review Board are responsible for their continued segregation from the general prison population. By way of relief, plaintiffs seek reclassification, and secondarily, damages.

Defendants' assertion of qualified immunity DOES NOT apply to plaintiffs' claims insofar as they seek declaratory and injunctive relief. Consequently, plaintiffs need not satisfy the <u>Schultea</u> pleading requirements with respect to those claims.



1

DLD

Defendants' only attack on plaintiffs' equitable claims – that the relief requested is overly broad – is premature. In all other respects, the Motion to Dismiss does not implicate the claims for equitable relief.

Furthermore, the Motion to Dismiss does not raise a qualified immunity defense to plaintiffs' Eighth Amendment claim, except insofar as it argues lack of causal connection in the supervisory liability claims against Warden Cain and Secretary Stalder. Causal connexity is not an issue of qualified immunity; therefore, once again, the Schultea pleading requirements to not apply. However, even if they do, plaintiffs' allegations satisfy the Schultea test.

"A motion to dismiss under rule 12(b)(6) is viewed with disfavor and is rarely granted." Shipp v. McMahon, 199 F.3d 256, 260 (5th Cir. 2000) (internal citation omitted). The court must construe the complaint liberally in favor of the plaintiff, and all facts alleged must be taken as true. Id. The court may not dismiss a complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

1. **Plaintiffs' claims are not prescribed.**

Defendants assert prescription as to only those claims that arose prior to March 30, 1999. Plaintiffs bring no claims that arose prior to that date. Therefore, defendants' prescription defense is inapplicable.

2. **Plaintiffs state a claim for deprivation of a liberty interest and defendants are not entitled to qualified immunity.**

*(a) Plaintiffs have alleged a constitutional violation.*

The first step in the qualified immunity analysis is whether the plaintiffs have alleged a due process violation. Siegert v. Gilley, 500 U.S. 226, 231 (1991). Defendants maintain they have not because, as a matter of law, 28 years of solitary confinement does not deprive plaintiffs of a liberty interest. There is no authority for this extreme proposition. In Sandin v. Conner, 515 U.S. 472 (1995), the Supreme Court addressed solitary confinement of only 30 days duration. Id. at 486. Notably, the Court explicitly cited duration as a factor in its decision. "Conner's confinement," it stated, "did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction." Id.

Thirty days is very different than 28 years. The Fifth Circuit has not squarely addressed the constitutionality of confinement of the latter duration. Defendants impliedly admit that the language in Orellana v. Kyle, 65 F.2d 29, 31-32 (5th Cir. 1995), was not a holding. See defendants' second memorandum at p. 5. Carson v. Johnson, 112 F.3d 818 (5th Cir. 1997), held only that confinement in administrative segregation was not the type of interest that constitutionally compelled permission to proceed *in forma pauperis* under M.L.B. v. S.L.J., 519 U.S.102 (1996). As the M.L.B. Court made clear, those interests are extremely limited in the civil context; they involve "state controls or intrusions on family relationships." Id. at 116. The Carson court discussed Sandin in only one sentence, stating without explanation: "[p]risoners have no liberty interest in avoiding disciplinary segregation." Carson, 112 F.3d at 821. That is not enough to bind

3

the circuit on a question that was <u>not</u> decided in <u>Sandin</u>: whether 28 years in solitary confinement, as opposed to 30 days, "imposes atypical and significant hardship . . . in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 484. Furthermore, the <u>Carson</u> opinion did not specify how long the plaintiff had been in administration segregation. Presumably the court would have so stated if it intended to extend <u>Sandin</u> to solitary confinement of anywhere near 28 years. Thirty days to 28 years is too big a leap to make *sub silentio*.

By contrast, the Third Circuit addressed a similar question to that at issue here – eight-year-long solitary confinement – in <u>Shoats v. Horn</u>, 213 F.3d 140 (3d Cir. 2000). For the reasons stated in plaintiffs' original opposition memorandum, this Court should follow <u>Shoats</u> and find a protected liberty interest.

Defendants also challenge whether Louisiana had created a liberty interest by statute or regulation under the pre-<u>Sandin</u> test. In <u>McCrae v. Hankins</u>, 720 F.2d 863, 866-68 (5th Cir. 1983), the Fifth Circuit held that Louisiana had indeed done so.

### *(b) A reasonable prison official would know he is violating clearly established law.*

The second step in the qualified immunity inquiry is whether a reasonable prison official would know that his conduct violated clearly established law. Defendants raise two objections: the law was not clearly established that plaintiffs had a liberty interest in being reclassified out of solitary confinement after 28 years, and plaintiffs failed to allege with sufficient particularity why extended confinement in lockdown imposed "atypical and significant hardship." Neither objection has merit.

4

        (i) Inmates had a clearly established liberty interest in release from solitary confinement before <u>Sandin</u>; the extent to which <u>Sandin</u> abridged that interest is unclear.

The law prior to <u>Sandin</u> was that inmates had a liberty interest in release from extended lockdown. <u>See</u> <u>McCrae</u>, <u>supra</u>. It is not clearly established that <u>Sandin</u> abridged this right, at least in the present circumstances. As discussed above, <u>Sandin</u> addressed 30-day confinement in lockdown. That holding does not "dictate" or "truly compel" the conclusion that the previously recognized liberty interest no longer existed with respect to release from 28 years of extended lockdown. <u>See</u> <u>Sorenson v. Ferrie</u>, 134 F.3d 325, 330 (5th Cir. 1998). That <u>Sandin</u> created a safe harbor for 30-day confinements in lockdown would not lead a reasonable prison official to believe that 28 years of confinement in lockdown likewise lacked constitutional significance.

        (ii) The <u>Schultea</u> pleading requirements are satisfied.

The <u>Schultea</u> pleading requirements call for specificity sufficient to conduct a qualified immunity analysis of whether a reasonable law enforcement officer would have known that his conduct was illegal. 47 F.2d 1427, 1432 (5th Cir. 1995) (citing <u>Anderson v. Creighton</u>, 483 U.S. 635 (1987)). Under <u>Schultea</u>, a bare allegation that plaintiffs had been confined in administrative segregation for 28 years would not suffice because the lack of specifics about life in administrative segregation, as compared to life for inmates in the general prison population at Louisiana State Penitentiary at Angola, precludes an analysis of whether a reasonable prison official would know that plaintiffs were suffering

"atypical and significant hardship." However, plaintiffs have not rested on a bare allegation. They have alleged specific hardships in their Amended Complaint.

> 15. The conditions under which plaintiffs are incarcerated in extended lockdown are the effective equivalent of solitary confinement. Each plaintiff has been continuously incarcerated alone in a cell of approximately 55 to 60 square feet for 23 hours each day. One hour a day, plaintiffs may shower and walk along the tier on which their cell is located. During this hour, three times a week, weather permitting, plaintiffs may elect to be escorted to a fenced exercise yard, where they may exercise without companions. Severe restrictions are placed on items of personal property, the number of books, and types of reading material allowed. Access to legal materials and to inmate counsel is also substantially more restricted than in the general prison population, as is contact visitation.
>
> 16. The conditions of plaintiffs' incarceration in extended lockdown almost totally deprive them of human contact, mental stimulus, physical activity, personal property and human dignity. . . .

See Amended Complaint, ¶¶ 15, 16. To the extent plaintiffs know what life is like in the general prison population, they have so described the distinction in their original Opposition memorandum, and in an abundance of caution, will seek to add this description to their pleadings in a Second Amended Complaint. See Second Amended Complaint, ¶16.

> Plaintiffs' confinement is atypical not only in duration but also in degree of hardship. In the general prison population, inmates work and socialize. They live in dormitories. They have educational and training opportunities.

Plaintiffs' Opposition to Defendants' Motion to Dismiss at page 6.

These allegations are sufficiently specific for the court to determine whether a reasonable official would know that he is violating a liberty interest by not reclassifying plaintiffs. If the court wishes further details about differences in conditions, discovery

6

might be necessary, as plaintiffs have not lived in the general prison population for many years and those conditions are "peculiarly within the knowledge of the defendants." Schultea v. Wood, 47 F.3d 1427, 1432 (5th Cir. 1995) (*en banc*).

### 3. **Plaintiffs have adequately alleged supervisory liability claims.**

Warden Cain and Secretary Stalder erroneously characterize plaintiffs' factual allegations as legal conclusions to argue that plaintiffs have not sufficiently alleged causal connexity in their supervisory liability claims. To the contrary, allegations that Warden Cain and Secretary Stalder failed to act despite their knowledge that plaintiffs have been held in extended lockdown for 28 years without real possibility of release are allegations of fact. These allegations suffice to state supervisory liability claims, both for purposes of plaintiffs' official capacity claims for injunctive relief, where Schultea heightened pleading requirements clearly do not apply, Anderson v. Pasadena Inde. Sch. Dist., 184 F.3d 439, 443 (5th Cir. 1999), and the individual capacity claims for damages. In any event, further details with respect to these allegations are "facts peculiarly within the knowledge of the defendants," and thus are subject to discovery before dismissal for lack of specificity. Schultea, 47 F.3d at 1432 (citing Anderson v. Creighton).

The Fifth Circuit applies a three-part test for supervisory liability: (1) the supervisor learned of facts pointing to the conclusion that the subordinate was violating the plaintiff's constitutional rights; (2) the supervisor demonstrated deliberate indifference toward the constitutional rights of the plaintiff by failing to take action that was obviously necessary to prevent or stop the abuse; and (3) such failure caused a

constitutional injury to the plaintiff. Doe v. Taylor Inde. Sch. Dist., 15 F.3d 443, 454 (5th Cir. 1994) (*en banc*). Contrary to the implications of defendants' argument, the claim does not require specific acts by the supervisor; failure to act can be enough.

Plaintiffs allege each element of the claim. First, they assert that the Lockdown Review Board proceedings are a sham. See Amended Complaint, ¶ 19. In other words, the real decision to keep plaintiffs' in solitary confinement is made elsewhere. Then, after identifying defendant Cain as the Warden of Louisiana State Penitentiary and defendant Stalder as the Secretary of Corrections, id. at ¶¶ 6, 7, plaintiffs allege:

> 21. Defendant Cain knows of plaintiffs' 28-year confinement in extended lockdown, and also knows that the Lockdown Review Board will not release plaintiffs into the general prison population without direction from higher up. Nevertheless, with deliberate indifference to plaintiffs' rights, he failed to take any action to facilitate plaintiffs' release from extended lockdown or to secure them a fair hearing on whether they would pose a danger in the general prison population.
>
> 22. On information and belief, defendant Stalder is aware that plaintiffs have been confined in extended lockdown for 28 years and has refused to take any action to end this inhumane situation. Plaintiffs base this belief on the high-profile nature of their case, on previous litigation, and on the third-step consideration of plaintiff Woodfox's grievance.

Amended Complaint, ¶¶ 21, 22. In ¶ 24, plaintiffs allege that the defendants acted with deliberate indifference.

These allegations satisfy the first element of a supervisory liability claim by contending that Cain and Stalder knew that plaintiffs have been kept in solitary confinement for 28 years. They satisfy the second element by claiming that Cain and Stalder did nothing to end this inhumane situation, even though the normal route for reclassification – the Lockdown Review Board – was dysfunctional. They satisfy the

8

third element by alleging that without intervention by "higher ups," plaintiffs will not be reclassified.

In the name of "specificity," defendants demand that plaintiffs present proof of their claims in their complaint. They would require plaintiffs to allege evidence that Cain and Stalder knew of plaintiffs' situation, and did nothing in the face of this knowledge. Plaintiffs recently discovered evidence of this nature, and in an abundance of caution, will include it in their Second Amended Complaint, ¶ 23:

> In mid-October, 2000, Warden Cain spoke with students at a school in New Orleans. After the speech, a teacher approached Cain and asked about the "Angola Three," as plaintiffs are publicly known. Cain immediately indicated that he knew of whom the teacher spoke and explained that they would not be released from extended lockdown because they had not reformed their political beliefs.

However, this allegation merely **evidences** the previously pled allegations that Cain knew of plaintiffs' situation and failed to intercede with his subordinates, thereby permitting plaintiffs' continued solitary confinement. As such, it is not a necessary element of a complaint. Issues of proof must be deferred until summary judgment, particularly when the evidence is in the hands of the defendants. Failure to plead evidence in the complaint does not warrant dismissal for failure to state a claim.

In any event, Schultea pleading requirements do not apply, even to plaintiffs' individual capacity claims against Cain and Stalder for damages. That is because defendants' assertion that causal connexity is lacking does not raise a qualified immunity defense to a supervisory liability claim. Qualified immunity asks whether a reasonable official would know that his conduct violates clearly established law. The *en banc* Fifth

Circuit noted that it has long been established that supervisors could not be deliberately indifferent to a subordinate's unconstitutional conduct. Doe v. Taylor Inde. Sch. Dist., 15 F.3d at 456. Hence, the qualified immunity inquiry boils down to whether the supervisor would know that his subordinate's conduct was unconstitutional. That is a different question than whether the supervisor's inaction was causally connected to the constitutional injury. The latter question is not part of a qualified immunity defense and hence is not subject to the Schultea pleading requirements.

After further research, plaintiffs withdraw their claim against Secretary Stalder for relief on the state law claims under La. Civ. Code article 2320, as reflected in the Second Amended Complaint.

### 4. The PLRA limitations on injunctive relief do not bar punitive damages; alternatively, it is premature to decide whether punitive damages are necessary.

Plaintiffs stand on their original memorandum, even though defendants find it unpersuasive. Plaintiffs are mystified by defendants' assertion that they argue old law, defendants' second memorandum at p. 12, when both cases cited by plaintiffs in this section were decided in 2000.

### 5. The PLRA limitations on injunctive relief do not bar plaintiffs' claims.

Incongruously, defendants invoke 18 U.S.C. § 3626 – a limitation on relief – to argue that plaintiffs fail to state a claim. 18 U.S.C. § 3626(a)(1) provides in relevant part:

> Prospective relief in any civil action with respect to
> prison conditions shall extend no further than necessary

> to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct to the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

By its plain terms, the statute has nothing to do with the whether plaintiffs state a claim.

It addresses relief. The provisions of section 3626 will not be triggered unless and until the trier-of-fact finds a constitutional violation. As the Fifth Circuit explained in Williams v. Edwards, 87 F.2d 126, 133 (5th Cir. 1996),

> The district court has fashioned no prospective relief and the provisions of the Act have yet to be triggered in this case. In the future, however, if the district court should undertake this examination, and if it should find a violation of "Federal right," then any remedy it might fashion must conform to the standards set forth in the Act. But for now, the Act does not affect this case.

Defendants' invocation of 18 U.S.C. § 3626 in their Motion to Dismiss is premature.

6. **State law claims.**

Plaintiffs stand on their original memorandum.

11

## CONCLUSION

For the foregoing reasons, plaintiffs request that this Court deny defendants' Motion to Dismiss in its entirety.

Respectfully submitted,

ROBIN E. SCHULBERG, P.L.C.
Attorney for Plaintiffs

Robin E. Schulberg, LSBN 20365
Cooperation Attorney, ACLU
       Foundation of Louisiana, Inc.
Post Office Box 1483
Covington, Louisiana 70434
Telephone (504) 871-8213
Telefax (504) 893-7630


WILLIAM P. QUIGLEY
General Counsel
ACLU Foundation of Louisiana, Inc.
7214 St. Charles Avenue
Campus Box 902
New Orleans, LA 70118
(504) 861-5590


## CERTIFICATE OF SERVICE

I certify that I served a copy of the foregoing on Andre Charles Castaing, Assistant Attorney General, Louisiana Department of Justice, Litigation, P.O. Box 94095 Capitol Station, Baton Rouge, LA 70804-9095, by deposit in the U.S. mail, properly addressed and postage prepaid, this 4th day of December, 2000.

Robin E. Schulberg