# United States Court of Appeals

FIFTH CIRCUIT
OFFICE OF THE CLERK

FILED
U.S. DIST. COURT
MIDDLE DIST. OF LA.

03 JUN -6 PM

CHARLES R. FULBRUGE III
CLERK

TEL. 504-310-7700
600 CAMP STREET
NEW ORLEANS, LA 70130

SIGN_____
by DEPUTY CLERK

June 5, 2003

Mr Lawrence Talamo, Clerk
Middle District of Louisiana, Baton Rouge
United States District Court
777 Florida Avenue
Room 139
Baton Rouge, LA 70801

No. 02-30516  Wilkerson v. Stalder
   USDC No.  00-CV-304

Enclosed, for the district court only, is a certified copy of the judgment issued as the mandate.

Enclosed, for the district court only, is a copy of the court's opinion.

Record/original papers/exhibits are returned:

( 4 ) Volumes

Sincerely,

CHARLES R. FULBRUGE III, Clerk

By:_____
Margery T. St. Pierre, Deputy Clerk
504-310-7676

cc: (letter only)
    Honorable Ralph E Tyson
    Mr Thomas Welch Milliner
    Mr Andre' Charles Castaing

MDT-1

Date Docketed
JUN - 6 2003
Notices Mailed To:

# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 02-30516

D.C. Docket No. 00-CV-304

U.S. COURT OF APPEALS
FILED
MAY 14 2003
CHARLES R. FULBRUGE III
CLERK

ROBERT KING WILKERSON; ALBERT WOODFOX; HERMAN WALLACE

    Plaintiffs - Appellees

v.

RICHARD L STALDER; ET AL

    Defendants

RICHARD L STALDER; BURL CAIN; TOM NORRIS; RICHARD PEABODY; R RACHAL; SAM SMITH; PAUL J MYERS

    Defendants - Appellants

Appeal from the United States District Court for the
Middle District of Louisiana, Baton Rouge.

Before KING, Chief Judge, DAVIS, Circuit Judge, and ROSENTHAL*, District Judge.

## JUDGMENT

This cause was considered on the record on appeal and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is affirmed.

ISSUED AS MANDATE: JUN 0 5 2003

---

*District Judge of the Southern District of Texas, sitting by designation.

A true copy
Test
Clerk, U. S. Court of Appeals, Fifth Circuit
By _____ Deputy
New Orleans, Louisiana
JUN 0 5 2003

United States Court of Appeals
Fifth Circuit
**FILED**
May 14, 2003
Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 02-30516

ROBERT KING WILKERSON; ALBERT WOODFOX; HERMAN WALLACE

　　　　　　　　　　　　　　　　　Plaintiffs - Appellees

v.

RICHARD L. STALDER; ET AL

　　　　　　　　　　　　　　　　　Defendants

RICHARD L. STALDER; BURL CAIN; TOM NORRIS; RICHARD PEABODY; R. RACHAL; SAM SMITH; PAUL J. MYERS

　　　　　　　　　　　　　　　　　Defendants - Appellants

Appeal from the United States District Court
for the Middle District of Louisiana

Before KING, Chief Judge, DAVIS, Circuit Judge and ROSENTHAL*, District Judge.

W. EUGENE DAVIS, Circuit Judge:

I.

Louisiana State Penitentiary officials challenge the district court's order denying in part their Motion to Dismiss on

---

*District Judge of the Southern District of Texas, sitting by designation.

grounds of qualified immunity a § 1983 suit filed against them by three inmates. The district court ruled that the evidence, when viewed in a light most favorable to the inmates, showed that the prison officials violated due process rights secured to the inmates under the Fourteenth Amendment, and that the law was clearly established at the time of the violation. For the reasons provided below, we affirm the district court's denial of the prison officials' Motion to Dismiss.

II.

Robert Wilkerson, Albert Woodfox and Herman Wallace (collectively "inmates") sued a number of prison officials and alleged that their confinement in extended lockdown for approximately thirty years violates the Eighth Amendment's guarantee against cruel and unusual punishment. They further alleged that the "sham" reviews of their continued confinement in extended lockdown violate their right to procedural due process guaranteed by the Fourteenth Amendment. The inmates sought compensatory damages, punitive damages, and declaratory and injunctive relief.

Before 1972, the inmates were sentenced to the custody of the Louisiana Department of Public Safety and Corrections ("Corrections") and were confined at the Louisiana State Penitentiary at Angola, Louisiana ("Angola"). The inmates named as defendants seven officials, including the Secretary of

Corrections, the Warden and Deputy Warden of Angola, and other corrections officers (collectively "prison officials").

Prison officials placed the inmates in extended lockdown in 1972. Wallace remains in lockdown. Wilkerson remained in extended lockdown until his conviction was overturned in 2001. Woodfox remains in extended lockdown and has been there continuously except for a three year period when he was housed in the county jail.

As the magistrate judge explained:

> Extended lockdown is the effective equivalent of solitary confinement. Prisoners in extended lockdown remain alone in a cell approximately 55 to 60 square feet in size of [sic] 23 hours each day. One hour each day, the prisoner may shower and walk along the tier on which his cell is located. Three times a week, weather permitting, the prisoner may use this hour to exercise alone in a fenced yard. Additional restrictions are placed on generally available inmate privileges including those pertaining to personal property, reading materials, access to legal resources, work and contact visitation.
>
> In contrast, inmates in the general prison population live in a dormitory setting where they can interact with one another. They have educational opportunities, training and other privileges that are not available to inmates in extended lockdowm.

The inmates in extended lockdown appear before the Lockdown Review Board ("Board") every 90 days. The inmates allege that they received only "sham" reviews before the Board. The inmates

insist that the Board members discussed immaterial matters such as hunting and fishing rather than the inmates' cases. The inmates alleged that when they attempted to discuss the merits of their cases, a Board member told them that the Board hearing is not the place to litigate. The inmates also alleged that the Board members told them that they must remain in extended lockdown due to the "nature of original reason for lockdown."

The inmates originally filed this suit pursuant to 42 U.S.C. § 1983 against the prison officials in a Louisiana state district court. The prison officials removed the suit to federal district court. Stalder, Cain and Norris promptly filed a Motion to Dismiss and asserted qualified immunity.[1] After being released from prison, Wilkerson filed an unopposed motion to dismiss his claims for injunctive relief.

The prison officials' motion was submitted to a magistrate judge. In her report, the magistrate judge recommended that Defendants' Motion to Dismiss be denied.[2]

The prison officials filed a timely Objection to the Magistrate Judge's Report, but the district court issued a ruling adopting the Magistrate Judge's Report as the court's opinion.

---

[1] The prison officials did not move to dismiss the inmates' Eighth Amendment claim, so that claim remains in the trial court.

[2] The magistrate judge recommended (and the district court accepted that recommendation) that the suit against the Secretary of Corrections be dismissed because of his lack of direct involvement in providing process to the inmates.

-4-

The district court agreed with the magistrate judge's analysis and denied the prison officials' Motion to Dismiss on grounds of qualified immunity.  Applying <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), the district court concluded that the confinement in extended lockdown for the long duration experienced by these prisoners presented an "atypical and significant hardship" and "extraordinary circumstances" such that the pleadings established that a liberty interest was implicated.  The district court also concluded that no reasonable officer could believe that such confinement for an extended period of time approaching three decades was not atypical under Supreme Court and Fifth Circuit standards.  The prison officials filed a timely notice of appeal.

### III.

We have jurisdiction to review the district court's denial of the prison officials' Rule 12(b)(6) motion under the collateral order doctrine.  <u>See</u> <u>Morin v. Caire</u>, 77 F.3d 116, 119 (5th Cir. 1996).  We review the district court's refusal to dismiss the inmates' Fourteenth Amendment claim on the basis of qualified immunity <u>de novo</u>.  <u>See</u> <u>Morin v. Caire</u>, 77 F.3d 116, 120 (5th Cir. 1996).  <u>Id</u>. at 120.

### IV.

In their appeal, the prison officials ask us to reverse the portion of the district court's ruling that denies them qualified immunity on the inmates' federal due process claim, state due

process claim, and claim for punitive damages.  The only issue that requires discussion is the inmates' Fourteenth Amendment due process claim.[3]

### A.

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The court must engage in a two-step analysis to determine whether an official is entitled to qualified immunity.  First, the court must determine whether the plaintiff's allegations make out a violation of a clearly established constitutional right.  If such a right is shown, the court must determine if the right was clearly established at the time of the events in question. Saucier v. Katz, 533 U.S. 194, 201 (2001).

### B.

The inmates argue that the district court correctly applied Sandin v. Conner, 515 U.S. 472 (1995), to the facts in this case. In Sandin, the Supreme Court held that no state-created liberty

---

[3] The inmates' state due process claim follows the federal due process claim.  The district court chose to defer ruling on the prison officials' claim that the Prison Litigation Reform Act bars the inmates' claim for punitive damages until such time as liability is found.  Therefore, this issue is not properly before the court on appeal.  28 U.S.C. § 1291.

interest was implicated when an inmate was placed in administrative segregation for thirty days for disciplinary reasons. The Court explained:

> Following <u>Wolff</u>, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

<u>Id</u>. at 483-84.

The district court concluded that the State had imposed "atypical and significant hardship" on these inmates sufficient to implicate a liberty interest. The prison officials' 12(b)(6) motion was, of course, presented to the district court without contextual facts concerning the reasons the inmates were initially confined to extended lockdown or why they remained confined in extended lockdown for such an inordinate period of time. At argument, counsel informed us that Wallace and Woodfox were placed in extended lockdown after being convicted in state court of killing a prison guard. Wilkerson was placed in extended lockdown after being convicted in state court of killing a fellow inmate, and he was released from Angola after his conviction was overturned in 2001. Assuming counsel's

uncontradicted statement at oral argument is true, we surmise that the three inmates, following their convictions, were likely classified as maximum custody inmates under the Louisiana Department of Public Safety and Corrections regulations.[4] Louisiana Dep't of Public Safety and Corrections, Inmate Classification, Sentencing, and Service Functions, § 5(C)(3) (June 1998).

In resolving the nature of the liberty interest and the process that is due for confinement of prisoners in extended lockdown under these circumstances, it is crucial to know whether, based on their crimes of conviction, the inmates' confinement is the result of an initial classification by prison officials as opposed to confinement for violations of less serious prison disciplinary rules.  Generally, courts are not

---

[4]  "Maximum Custody" is defined as:
>  Assignment of an inmate to a cell based upon the need to protect the inmate, other inmates, the public, staff or the institution. This includes temporary assignment to Administrative Segregation or permanent assignment to Disciplinary Detention/Extended Lockdown and Working Cellblock and may include Protective Custody/Extended Lockdown.

Louisiana Dep't of Public Safety and Corrections, Inmate Classification, Sentencing, and Service Functions, § 5(C)(3) (June 1998).

The Louisiana Department of Public Safety and Corrections has developed a set of regulations to address "Inmate Classification, Sentencing, and Service Functions" and an entirely different set of regulations to address "Disciplinary Rules and Procedures for Adult Inmates."

concerned with a prisoner's initial classification level based on his criminal history before his incarceration. This circuit has continued to hold post-<u>Sandin</u> that an inmate has no protectable liberty interest in his classification. <u>See</u> <u>Harper v. Showers</u>, 174 F.3d (716, 719 (5th Cir. 1999); <u>Whitley v. Hunt</u>; 158 F.3d 882, 889 (5th Cir. 1998); <u>Woods v. Edwards</u>, 51 F.3d 577, 581-82 (5th Cir. 1995) (citing <u>Wilkerson v. Maggio</u>, 703 F.2d 909, 911 (5th Cir. 1983)) ("Classification of inmates in Louisiana is a duty of the Louisiana Department of Corrections and an inmate has no right to a particular classification under state law."). "Classification of prisoners is a matter left to the discretion of prison officials." <u>McCord v. Maggio</u>, 910 F.2d 1248, 1250 (5th Cir. 1990) (citing <u>Wilkerson v. Maggio</u>, <u>supra</u>). "[I]t is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status'" <u>Id</u>. "Prison officials should be accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order." <u>Id.</u> at 1251 (citing <u>Bell v. Wolfish</u>, 441 U.S. 520, 547 (1979)).

Thus, if the inmates' confinement in extended lockdown is not the result of their initial classification, the <u>Sandin</u> test would be triggered. In <u>Sandin</u>, the prisoner, Conner, directed angry and foul language at a prison guard during a strip search.

As a result, he was placed in disciplinary segregation for thirty days as punishment for violating prison disciplinary rules. Conner argued that he had a state-created liberty interest in remaining free from segregation. The Court held that Conner's confinement in disciplinary segregation for thirty days "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." <u>Sandin</u> at 486. Although the action taken by the prison officials was punitive, it did not "present a dramatic departure from the basic conditions of Conner's indeterminate sentence." <u>Id.</u> The Court noted that the conditions imposed on Conner were essentially the same as those imposed on inmates in administrative segregation and protective custody. "Thus, Conner's confinement did not exceed, similar, but totally discretionary, confinement in either duration or degree of restriction." <u>Id</u>. Other circuits have applied the <u>Sandin</u> test to inmates placed in administrative segregation for violations of prison disciplinary rules. <u>Wagner v. Hanks</u>, 128 F.3d 1173 (7th Cir. 1997); <u>Colon v. Howard</u>, 215 F.3d 227 (2nd Cir. 2000); <u>Hatch v. District of Columbia</u>, 184 F.3d 846 (1999); <u>Griffin v. Vaughn</u>, 112 F.3d 703 (1997).

If, on remand, the district court determines that the <u>Sandin</u> test is triggered, the district court must determine the appropriate baseline against which to measure the inmates' confinement in reviewing whether the inmates' confinement is

"atypical." See Hatch v. Columbia, supra; Wagner v. Hanks, supra.

Because the inmates' Complaint does not allege whether the inmates' confinement in extended lockdown resulted from their initial classification or from violations of prison rules, we cannot determine whether the inmates have asserted facts that would give rise to denial of a liberty interest. We therefore AFFIRM the district court's Order denying the prison officials' Motion to Dismiss the inmates' procedural due process claims based on qualified immunity.

AFFIRMED.