UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ROBERT KING WILKERSON, ET AL

VERSUS                                    CIVIL ACTION NO. 00-304-C-M3

RICHARD STALDER, ET AL
*********************************************************************

### SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
### MOTION FOR PARTIAL SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

On March 31, 2004, Richard Stalder, Secretary, Louisiana Department of Public Safety and Corrections; Burl Cain, Warden, Louisiana State Penitentiary at Angola ("LSP"); Richard Peabody, Deputy Warden, LSP; Robert Rachal, former Major, LSP; Sam Smith, Assistant Warden, LSP; Paul J. Myers, Major, LSP; and Tom Norris, former Classification Officer, LSP (collectively referred to as "State Defendants") filed a Motion for Partial Summary Judgment in which they sought to dismiss the plaintiffs' due process claims under the Fourteenth Amendment of the United States Constitution and Article I, §2 of the Louisiana Constitution of 1974. Oral argument was held on October 4, 2004.

At the conclusion of oral argument, the court asked the parties to address the following issues:

- Whether the inmates have a liberty interest in their classification as maximum security inmates;

- If the inmates have a liberty interest in their classification, whether the lockdown review board hearings satisfied due process requirements; and

- If the inmates have a liberty interest in their classification, whether the inmates experienced atypical and significant hardships in relation to the ordinary incidents of prison life such that the Due Process Clause is implicated under *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

182591.1



As set forth below, the answers to these questions reveal that summary judgment is appropriate.

I. **THE INMATES WERE PLACED IN LOCKDOWN DUE TO THEIR CLASSIFICATION – INMATES HAVE NO LIBERTY INTERESTS IN THEIR CLASSIFICATION.**

A. **Wilkerson was initially classified as a maximum security inmate.**

As explained fully in the State Defendant's original memorandum in support of motion for summary judgment, an inmate does not have a liberty interest in his initial classification. *See, Wilkerson, et al v. Stalder, et al*, 329 F.3d 431, 435 (5th Cir. 2003). There can be no doubt that Wilkerson was placed in lockdown and remained in lockdown as a result of his initial classification. Wilkerson was classified as a maximum security inmate even before he was accused of murdering another inmate. This fact is evident from Wilkerson's prison record, the affidavit of Warden Vannoy dated March 10, 2004, and the Fifth Circuit's decision in *Wilkerson v. Maggio*, 703 F.2d 909 (5th Cir. 1983).

Warden Vannoy explains in his affidavit dated March 10, 2004 that before arriving at LSP, Wilkerson was convicted of armed robbery and aggravated escape. Charges of aggravated battery for attacking an Orleans Parish deputy with a knife were also pending. Warden Vannoy concludes that these factors weighed heavily into the Classification Board's decision to initially classify Wilkerson as maximum when he arrived at LSP.[1]

While a maximum security inmate, Wilkerson was convicted of killing another inmate. Following his conviction for murder, Wilkerson was initially classified as maximum.[2] This fact caused the Lockdown Review Board to continue his maximum classification until Wilkerson was

---

[1] See the affidavit of Warden Vannoy, the Deputy Warden of Security at LSP dated March 10, 2004, attached to the State Defendant's motion for summary judgment, paragraphs 12 – 13.

[2] See the affidavit of Warden Vannoy, the Deputy Warden of Security at LSP dated March 10, 2004, attached to the State Defendant's motion for summary judgment.

released in 2001. There has been no evidence submitted to contradict the fact that Wilkerson was initially classified as maximum when he arrived at LSP or after he was convicted of murdering another inmate.

In *Wilkerson v. Maggio* 703 F.2d 909 (5th Cir. 1983), the Fifth Circuit found that Wilkerson was initially classified as maximum. *Maggio* is another case filed by Wilkerson wherein he made the identical arguments asserted in this case. In *Maggio*, he argued that by being placed in lockdown for over a decade, his due process rights were violated and he was subject to cruel and unusual punishment in violation of the Eighth Amendment. The Fifth Circuit found both claims to be frivolous and the case was dismissed. The Fifth Circuit stated with respect to Wilkerson's classification that:

> In May, 1972, approximately two weeks after his arrival at Angola, he appeared before the classification board which classified him as maximum security and assigned quarters in controlled cell reserve (CCR). He has remained in CCR since 1972 except for the two year period from 1977 to 1979 which he spent in Camp J, another maximum security area.

The Fifth Circuit previously found that Wilkerson was initially classified as maximum. Wilkerson is therefore barred by the doctrine of collateral estoppel from re-litigating this issue here. *See, Gibson v. United States Postal Service*, 380 F.3d 886 (5th Cir. 2004), (*citing, U.S. v. Mollier*, 853 F.2d 1169 (5th Cir. 1988)) (Recognizing principle of non-mutual collateral estoppel bars re-litigation of an issue fully litigated on merits); and *Recover Edge, L.P. v. Pentecost*, 44 F.3d 1284 (5th Cir. 1995) (Holding that collateral estoppel is available where (1) the issue at stake is identical to issue resolved in prior action, (2) the issue was actually litigated in prior action; and (3) issues determination in prior action was necessary for judgment.) Clearly, these three elements are met here.

In *Maggio,* the court rejected Wilkerson's argument that his due process rights were violated. The court held that Wilkerson did not have a liberty interest in his initial classification. In reaching this decision, the court found that he was placed in lockdown after he was initially classified as maximum. The fact that Wilkerson remained in lockdown for several years following the *Maggio* decision does not change this courts' analysis. The first inquiry in any due process challenge is whether a liberty interest exists. *Wilkerson,* 329 F.3d at 435-36. Since *Maggio* found Wilkerson was placed in lockdown due to his classification, the inquiry stops and a due process claim does not exist.

The uncontradicted record reveals that Wilkerson was initially classified as maximum. Furthermore, the Fifth Circuit has already made a factual conclusion that Wilkerson was initially classified as maximum. Since inmates do not have a liberty interest in their initial classification, Wilkerson's due process claim should be dismissed as a matter of law.

**B.    Wallace and Woodfox do not have a liberty interest in their classification.**

When Wallace and Woodfox arrived at LSP in the early 1970's, they were classified as medium custody. It was not until they murdered a correctional officer in 1972 that they were reclassified as maximum security and placed in lockdown. They were both convicted of this murder and were initially classified as maximum security inmates following the convictions. They have remained in lockdown since this time.[3] As set forth below, Wallace and Woodfox do not have a liberty interest in their classification.

In *Wilkerson, et al v. Stalder, et al,* 329 F.3d 431 (5th Cir. 2003), the Fifth Circuit explained that if Wallace and Woodfox were classified as maximum following their conviction for murdering a correctional officer they have no liberty interest in their classification. The Fifth

---

[3] See the affidavit of Warden Vannoy, the Deputy Warden of Security at LSP dated March 10, 2004, attached to the State Defendant's motion for summary judgment.

182591.1                                                                                                                    Page 4

Circuit stated, "we surmise that the three inmates, following their convictions, were likely classified as maximum custody inmates under [LSP regulations]." *Id.* at 435. The Court explained that, "it is crucial to know whether, based on their crimes of conviction, the inmates' confinement is the result of an initial classification by prison officials as opposed to confinement for violations of less serious prison disciplinary rules." Thus, if Wallace and Woodfox were classified as maximum as a result of killing a correctional officer then they have no liberty interest in their classification.

There can be no doubt that Wallace and Woodfox were placed in lockdown and remained in lockdown as a result of killing a correctional officer. This fact is evident from the inmates' prison record, the affidavit of Warden Vannoy, and the Fifth Circuit's decision in *Wallace, et al v. Phelps, et al*, No. 86-3623 (5th Cir. 1996).

Warden Vannoy explains in his affidavit that after Wallace and Woodfox were convicted of killing a correctional officer their initial classification following the conviction was maximum.[4] This statement is consistent with the quarterly reports of the lockdown review board which consistently state that Wallace and Woodfox were placed in lockdown because they killed a corrections officer.[5] There has been no evidence submitted to contradict the fact that following the murder Wallace and Woodfox were classified as maximum.

Wallace and Woodfox, like Wilkerson, previously claimed that being placed in lockdown for over a decade, violated their due process rights and subjected them to cruel and unusual punishment in violation of the Eighth Amendment. The Fifth Circuit found both claims to be frivolous and they were dismissed.

---

[4] See the affidavit of Warden Vannoy, the Deputy Warden of Security at LSP dated March 10, 2004, attached to the State Defendant's motion for summary judgment.

[5] See the State Defendant's Reply Memorandum, pages 5-7.

182591.1                                                                                                    Page 5

In that matter entitled *Wallace, et al v. Phelps, et al*, No. 86-3623 (5th Cir. 1987),[6] the Fifth Circuit ruled that Wallace and Woodfox did not have a liberty interest in their classification The court explained:

> "Prison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status." *McGruder v. Phelps*, 608 F.2d 1023, 1026 (5th Cir. 1979). <u>Appellants admit they were transferred to lockdown status because they killed a prison correctional officer</u>. They were convicted in state court of murdering the correctional officer. <u>Appellants' prison conduct justifies their lockdown status</u>. *See, Wilkerson*, 703 F.2d at 911. (Emphasis added.)

Thus, the Fifth Circuit has already found that Wallace and Woodfox were placed in lockdown as a result of killing a correctional officer. Indeed, the inmates previously admitted that they were placed in lockdown because of the murder. Thus, Wallace and Woodfox cannot now re-litigate this factual finding. It is barred under the doctrine of issue preclusion. *See, Southmark Corporation v. Coopers & Lybrand*, 163 F.3d 925 (5th Cir. 1999); *Gibson v. USPS;* and *Recoveredge, L.P. v. Pentecost*. They cannot now argue that they were placed there for other reasons.

The Fifth Circuit has instructed this Court to dismiss Wallace and Woodfox's due process claims if they were placed in lockdown for killing a correctional officer. This issue was litigated and resolved years ago. Indeed, they previously admitted that they were placed in lockdown for the murder. This admission and finding in *Phelps* ends this Court's analysis. Since they were classified as maximum and placed in lockdown due to the murder, they do not have a liberty interest in their classification.

---

[6] This is an unreported opinion, a copy of which is attached as Exhibit 1. Note, according to Rule 47.5.3, unpublished opinions issued prior to January 1, 1996 can be used as precedent under the doctrine of *res judicata* and collateral estoppel.

The uncontradicted record reveals that Wallace and Woodfox were classified as maximum after they killed a correctional officer. Furthermore, the Fifth Circuit has already made a factual conclusion that Wallace and Woodfox were transferred to lockdown, "because they killed a prison correctional officer." *Wallace v. Phillips*. The inmates do not have a liberty interest in their classification, their due process claim should be dismissed as a matter of law.

## II. THE FIFTH CIRCUIT HAS PREVIOUSLY RULED THAT THE INMATES DO NOT HAVE A LIBERTY INTEREST IN THEIR CLASSIFICATION.

With respect to the merits of the due process claim, the Fifth Circuit previously ruled that this claim frivolous. Indeed, the inmates have already raised this issue before the Fifth Circuit on two separate occasions. *See, Wilkerson v. Maggio*, 703 F.2d 909 (5th Cir. 1983) and *Wallace, et al v. Phelps, et al*, No. 86-3623 (5th Cir. 1987),[7] These decisions are *res judicata* to the current proceeding and bar any further litigation of this issue.

In *Phelps*, the Fifth Circuit held that Wallace's and Woodfox's, "conduct justifies their lockdown status" and that prison officials have broad discretion to classify prisoners. In *Maggio*, the Fifth Circuit held that Wilkerson did not have a liberty interest in his classification either. The Court stated:

> Classification of inmates in Louisiana is a duty of the Louisiana Department of Corrections and an inmate has no right to a particular classification under state law. *McGruder v. Phelps*, 608 F.2d 1023, 1026 (5th Cir. 1979). It is well settled that, [p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status. *Id.*

*Phelps* and *Maggio* both held that the inmates do not have a liberty interest in their classifications. In fact, *Phelps* calls Wallace's and Woodfox's due process claim "frivolous."

---

[7] This is an unreported opinion, a copy of which is attached as Exhibit 1.

The inmates make the same claims here, nothing has changed, the claims are once again frivolous.

Traditional *res judicata*, or claim preclusion, bars the re-litigation of these claims that were litigated in prior suits. *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385 (5th Cir. 2004); *Southmark v. Coopers & Lybrand*, 163 F.3d 925 (5th Cir. 1999). The doctrine of *res judicata* applies here because each of the following elements are met: (1) the parties are identical or in privity; (2) prior judgments were rendered by a court of competent jurisdiction; (3) there is a final judgment on the merits; and (4) the same cause of action is involved. *Russell v. SunAmerica Securities, Inc.*, 962 F.2d 1169, 1172 (5th Cir. 1992).

The defendant in *Maggio* was the warden of the LSP and in *Phelps* the defendants were LSP's warden, deputy warden, and the secretary of corrections. In the instant matter, the defendants are the secretary of corrections, LSP's warden, deputy warden, and other LSP officers. Therefore, the parties are "sufficiently close in relationship" to give rise to a relationship of privity. *See, Russell*, 962 F.2d at 1173. In each prior case, the due process issue was resolved by federal courts with proper subject matter jurisdiction; the judgment was final; and the cause of action in each case is identical to the case at bar. As such, the doctrine of *res judicata* bars reconsideration of these claims.

The law on this issue has not changed since the *Phelps* and *Maggio* decisions. In the inmates' most recent case before the Fifth Circuit, *Wilkerson, et al v. Stalder, et al*, 329 F.3d 431 (5th Cir. 2003), the Fifth Circuit once again emphasized that "an inmate has no protectable liberty interest in his classification" and instructed this Court to dismiss the due process claims if the inmates were placed in lockdown status due to their classification. *Wilkerson, et al v. Stalder, et al*, 329 F.3d 431, 435-36 (5th Cir. 2003) (Citations omitted.) The amount of time the inmates

spend in lockdown does not change this inquiry. In *Maggio* and *Phelps*, the Fifth Circuit held that they were placed in lockdown due to their classification and dismissed the due process claims. The identical facts and issue have been litigated – the doctrine of *res judicata* mandates that the due process claim be dismissed.

The inmates' due process claim should be dismissed as a matter of law. The Fifth Circuit's decisions that the inmates do not have a liberty interest in their classification is binding upon this Court.

### III. EVEN ASSUMING THE INMATES HAVE A LIBERTY INTEREST IN THEIR CLASSIFICATION THEY RECEIVED REVIEWS EVERY NINETY DAYS WHICH SATISFIED DUE PROCESS REQUIREMENTS.

As set forth in the affidavit of Warden Vannoy dated November 17, 2004, attached hereto, Wilkerson, Wallace and Woodfox have received reviews every ninety (90) days by LSP's Lockdown Review Board while in lockdown. The purpose of these reviews is to determine whether their classification should be modified. Attached to Warden Vannoy's affidavit are copies of the Lockdown Review Summaries completed by the Lockdown Review Board every ninety days. These summaries evidence the persons conducting the review, whether the inmate appeared in person, the date of the review, and the reason for continued lockdown status.

Also attached to Warden Vannoy's affidavit are LSP's directives addressing the review process for inmates in lockdown. These policies, which were consistently followed here, more than satisfy Due Process Clause requirements mandated by the United States and Louisiana Constitutions.

In *Hewitt v. Helms*, 459 U.S. 460, 467-77, 103 S.Ct. 864, 874, 74 L.Ed.2d 675 (1983), the United States Supreme Court articulated the Due Process requirements where an inmate is transferred to administrative segregation and a liberty interest is implicated. The Court stated:

> An inmate must receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation. Ordinarily a written statement will accomplish this purpose, although prison administrators may find it more useful to permit oral presentations in cases where they believe a written statement would be ineffective. So long as this occurs, and the decision maker reviews the charges and then-available evidence against the prisoner, the Due Process Clause is satisfied. *Id.* at 476-77, 103 S.Ct. at 874.

In *Rodriguez v. Philips*, 66 F.3d 470 (2nd Cir. 1995) the Court explained that an inmate confined to administrative segregation is only entitled to an "informal, nonadversary review," if a liberty interest exists. The court stated that an inmate is only entitled to,

> "some notice of the charges against him and an opportunity to present his views to the prison officials charged with deciding whether to transfer him to administrative segregation." *Hewitt*, 459 U.S. at 476, 103 S.Ct. at 873-74. This requirement may be satisfied by "an informal, nonadversary review of the information supporting [the inmate's] administrative confinement, including whatever statement [the inmate] wishe[s] to submit, within a reasonable time after confining him to administrative segregation." *Id.* at 472, 103 S.Ct. at 872.

The Fifth Circuit adopted this same approach in *Woods v. Edwards*, 51 F.3d 577 (5th Cir. 1995).

In *Woods*, an inmate at LSP, alleged that his due process rights were violated when he was placed in extended lockdown (administrative segregation). The Fifth Circuit granted summary judgment on behalf of LSP finding that LSP's procedures of granting a hearing and regular review of his status, "more than" satisfied the due process clause. The court found that LSP was only "obligated to engage in an informal, non-adversarial review of the information supporting . . . the [prisoner's] administrative confinement. . ." *Id., citing, Hewitt*, 459 U.S. at 471-73, 103 S.Ct. at 871-72. The court stated:

> In this case the plaintiff was afforded the full process required by the Disciplinary Rules, including notice, a hearing and regular review of his status. This process represents more than the due

process clause, in connection with Louisiana state law, requires of prison officials. Accordingly, the plaintiff has no basis upon which to argue that his confinement was or is wrongful. The district court did not err when it granted the defendants' motion for summary judgment.

Furthermore, Woods, like the inmates here, argued that the review board's decisions were biased; however, the inmates in neither case presented bias evidence. As a result, the court in *Woods* dismissed the claim. The court stated:

> In the face of defendants' evidence showing the plaintiff was accorded a hearing and that the plaintiff's status is reviewed every ninety days by boards whose membership varies, the plaintiff's claim of bias and violation of due process was appropriately dismissed.[8]

The *Woods* case is directly on point. In *Woods* and here, the inmates received regular reviews by a variety of individuals on the Lockdown Review Board. In both cases, the inmates have submitted no evidence of bias by these boards. Without evidence of bias, the Court must dismiss the due process claim. Here, as in *Woods*, LSP satisfied all requirements of the due process clause by providing regular hearings for the inmates.

Even assuming the inmates have a liberty interest in their classification, the procedures employed by LSP more than meet the Due Process requirements.

### IV. THE COURT DOES NOT HAVE TO REACH THE ISSUE OF WHETHER THE INMATES HAVE BEEN SUBJECT TO ATYPICAL AND SIGNIFICANT HARDSHIPS IN RELATION TO THE ORDINARY INCIDENTS OF PRISON LIFE.

In *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court held that a liberty interest only arises when a prisons' actions impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* 515

---

[8] See also, *Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995); *Giovanni v. Lynn*, 48 F.3d 908 (5th Cir. 1995); *Rodriguez v. Phillips*, 66 F.3d 470 (2nd Cir. 1995).

U.S. at 483, 115 S.Ct. at 2293. The court should not reach this issue here. In *Wilkerson*, the Fifth Circuit interpreted *Sandin's* "atypical" test as applying only to disciplinary proceedings and not to classification decisions. *Wilkerson*, 329 F.3d at 435-36. ("This Court has continued to hold post-*Sandin* that an inmate has no protectable liberty interest in his classification").

As set forth fully above, in the State Defendants' original memorandum, and in the State Defendants' reply memorandum, the inmates were placed in lockdown due to their classification. Thus, a *Sandin* inquiry is not necessary under Fifth Circuit precedent. Instead, the State Defendants respectfully suggest that the proper course of action is for this court to dismiss the inmates' due process claim because they do not have a liberty interest in their classification.

Furthermore, even assuming a liberty interest exists, LSP has more than complied with all Due Process requirements. (See Section III, above). Thus, despite the fact that the inmates were not entitled to protections of the Due Process Clause, LSP has provided them with those protections. As a result, even assuming the Due Process Clause applied here, LSP met its requirements. Thus, for this additional reason the State Defendants respectfully suggest that the court should dismiss the due process claim.

If, however, the Court finds that the inmates had a liberty interest and did not receive sufficient due process, then the State Defendants concede, for purpose of this motion for summary judgment, that a question of fact exists as to whether *Sandin's* "atypical" test was met.

V.   **CONCLUSION.**

Inmates do not have a liberty interest in their classification. *Wilkerson*, 329 F.3d at 435-36. Here, the inmates were placed on lockdown and remained there because they were classified as maximum. This fact is evident from the inmates' records, the affidavits submitted, and the inmates' previous litigation on this point. Indeed, these same inmates have already raised this

issue on two separate occasions before the Fifth Circuit. These decisions bar further litigation of this issue under the principles of *res judicata*.

Even assuming the inmates have a liberty interest in their classification, LSP provided sufficient notices and hearings to meet all requirements of the Due Process Clause. In fact, every ninety (90) days the Lockdown Review Board reviewed each inmate's case and the inmates were allowed to appear in person and present evidence at the review.

For all of these reasons, the State Defendants' motion for partial summary judgment should be granted and the due process claims dismissed.

Respectfully submitted:

**CHARLES C. FOTI, JR.**
Louisiana Attorney General

_____
M. Brent Hicks, TA, La Bar Roll 23778
Richard A. Curry, La Bar Roll 4671
*McGlinchey Stafford, PLLC*
14th Floor, One American Place
Baton Rouge, Louisiana 70825
Telephone: (225) 383-9000
*Attorneys for State Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via United States Mail, proper postage pre-paid, on all counsel of record, namely:

Thomas W. Milliner, Esq.
ACLU FOUNDATION OF LOUISIANA
One Canal Place, Suite 2800
365 Canal Street
New Orleans, LA 70130

Nicholas J. Trenticosta, Esq.
ATTORNEY & COUNSELOR AT LAW
7100 St. Charles Avenue
New Orleans, LA 70118

Baton Rouge, Louisiana, this 19th day of November, 2004.

_____
M. Brent Hicks