FILED
US DIST COURT
MIDDLE DIST. OF LA

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

2005 FEB 11   P 2: 56

**ROBERT KING WILKERSON, ET AL**

**VERSUS**                                    CIVIL ACTION NO. 00-304-C-M3

BY DEPUTY CLERK

**RICHARD STALDER, ET AL**
**************************************************************************

<u>**MEMORANDUM IN SUPPORT OF OBJECTION**</u>
<u>**TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**</u>

**MAY IT PLEASE THE COURT:**

**I.      INTRODUCTION.**

On March 31, 2004, Richard Stalder, Secretary, Louisiana Department of Public Safety and Corrections; Burl Cain, Warden, Louisiana State Penitentiary at Angola ("LSP"); Richard Peabody, Deputy Warden, LSP; Robert Rachal, former Major, LSP; Sam Smith, Assistant Warden, LSP;  Paul J. Myers, Major, LSP; and Tom Norris, former Classification Officer, LSP (collectively referred to as "State Defendants") filed a motion for partial summary judgment in this matter.  The State Defendants sought to dismiss Robert King Wilkerson, Albert Woodfox and Herman Wallace's (hereinafter jointly referred to as the "inmates") claims that the State Defendants violated the inmates' right to due process of law as guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, Section 2 of the Louisiana Constitution of 1974 (hereinafter referred to as the "due process claims").

The summary judgment motion was brought based upon instructions to the District Court from the United States Fifth Circuit in *Wilkerson, et al v. Stalder, et al*, 329 F.3d 431, 435-36 (5th Cir. 2003).  In that ruling, the Fifth Circuit directed the Court to dismiss the due process claims if the inmates had been placed in lockdown, "based on their crimes of conviction, . . . as opposed to

confinement for violations of less serious prison disciplinary rules."[1]  The Fifth Circuit further, "surmise[d] that the three inmates, following their convictions, were likely classified as maximum custody inmates..."  *Id.* at 435.  Thus, the Fifth Circuit found it likely that the inmates' due process claims should be dismissed.

The State Defendants filed this motion for partial summary judgment because there is no question of fact concerning why the inmates were placed in lockdown – they were placed in lockdown due to their crimes of conviction.  Two of the inmates, Woodfox and Wallace, were convicted of first degree murder for killing a correctional officer at LSP.  The remaining inmate, Wilkerson, was placed in lockdown upon arrival at LSP due to his attempt to escape parish prison and for stabbing a parish deputy.  Despite overwhelming evidence of these facts presented by the State Defendants, the Magistrate Judge recommended that the State Defendants' Motion for Partial Summary Judgment be denied.

On February 1, 2005, Magistrate Judge Dalby issued a report and recommendation in which she recommended that this Court deny the State Defendants' Motion for Partial Summary Judgment and further find that the inmates have a due process right.  This recommended finding goes far beyond the scope of the motion before the Court.  The Magistrate Judge made the following errors in her recommendation:

- The Magistrate Judge erred by recommending that this Court deny the State Defendants' Motion for Partial Summary Judgment because there are no questions of fact concerning whether the inmates were placed in lockdown as a result of the crimes of their conviction.

---

[1]  The State Defendants previously sought to dismiss the due process claims on the basis of qualified immunity. This motion was denied by this Court and appealed to the Fifth Circuit.  While the Fifth Circuit denied the motion to dismiss it instructed this Court to dismiss the due process claims if the inmates confinement in lockdown is due to, "their crimes of conviction" or their "initial classification."  *Wilkerson, et al v. Stalder, et al*, 329 F.3d 431, 435 (5th Cir. 2003).

- The Magistrate Judge erred by recommending that this Court not dismiss the due process claims on the basis of collateral estoppel.

- The Magistrate Judge erred by recommending that this Court find that the inmates have a due process right – <u>an issue that was not before the Court and must be decided by a jury</u>.

- The Magistrate Judge erred by recommending that this Court deny the State Defendants' Motion for Partial Summary Judgment because there are no questions of fact concerning whether the inmates received due process in their ninety (90) day reviews.

For the reasons set forth fully below, this Court should not accept the Magistrate Judge's recommendations and should grant the State Defendants' Motion for Partial Summary Judgment.

## II. THE INMATES WERE PLACED IN LOCKDOWN AS A RESULT OF THEIR CRIMES OF CONVICTION; THUS, THE DUE PROCESS CLAIMS SHOULD BE DISMISSED.

### A. The Fifth Circuit instructed this Court to dismiss the Due Process Claims if the inmates were placed in lockdown as a result of their crimes of conviction.

When the Fifth Circuit previously considered this matter, it held that the Due Process Clause is implicated only, "if the inmates' confinement in extended lockdown is <u>not</u> the result of their initial classification." *Wilkerson, et al v. Stalder, et al*, 329 F.3d 431, 436 (5th Cir. 2003). (Emphasis added.) The Fifth Circuit explained that, "[i]n resolving the nature of the liberty interest … it is crucial to know whether, based on their crimes of conviction, the inmates' confinement is the result of an initial classification by prison officials as opposed to confinement for violations of less serious prison disciplinary rules." *Id.* at 435.

The Court made clear that an inmate does <u>not</u> have a liberty interest in their initial classification.[2] The Court explained that:

---

[2] The Fifth Circuit recognized the challenges faced by prison officials in maintaining security and order and that classification of prisoners plays a vital role in this process. As a result, prison officials must have broad discretion in classification of prisoners. The Fifth Circuit stated:

> an inmate has no protectable liberty interest in his classification. *See, Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999); *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998); *Woods v. Edwards*, 51 F.3d 577, 581-82 (5th Cir. 1995) (citing *Wilkerson v. Maggio*, 703 F.2d 909, 911 (5th Cir. 1983)) ("Classification of inmates in Louisiana is a duty of the Louisiana Department of Corrections and an inmate has no right to a particular classification under state law.")

The test that this Court must apply is clear - if the inmates were placed in extended lockdown as a result of the crimes of their conviction, as opposed to violations of less serious prison disciplinary rules, then the due process claims should be dismissed.

**B.    Wilkerson was initially classified to lockdown due to the crimes of his conviction; he has no due process right in his initial classification.**

Wilkerson was initially classified as a maximum security inmate and placed in lockdown when he first arrived at LSP, even before he was convicted of murdering another inmate at LSP. This fact is evident from Wilkerson's prison record from the 1970's,[3] the affidavit of Warden Vannoy dated March 10, 2004,[4] and the Fifth Circuit's decision in *Wilkerson v. Maggio*, 703 F.2d 909 (5th Cir. 1983).

Warden Vannoy explains in his affidavit dated March 10, 2004 that Wilkerson was sentenced to the custody of the Department of Corrections after being convicted of armed

---

> Classification of prisoners is a matter left to the discretion of prison officials." *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990) (citing *Wilkerson v. Maggio, supra*). "[I]t is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status.'" *Id.* "Prison officials should be accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order." *Id.* at 1251. (citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

[3]  A copy of Wilkerson's prison record from the 1970's is attached to the State Defendants' Reply Memorandum as Exhibit 2.

[4]  See the affidavit of Warden Vannoy, the Deputy Warden of Security at LSP dated March 10, 2004, attached to the State Defendant's Motion for Partial Summary Judgment.

robbery and aggravated escape. The charges for aggravated escape arose from an attempt to escape from Orleans Parish Prison. Charges of aggravated battery for attacking an Orleans Parish deputy with a knife were also pending. Warden Vannoy concludes that these factors weighed heavily in the Classification Board's decision to initially classify Wilkerson as maximum and place him in lockdown when he arrived at LSP.[5]

While in lockdown, Wilkerson was convicted of killing another inmate.[6] Following his conviction for murder, Wilkerson was initially classified as maximum.[7] Thus, Wilkerson's classification did not change after the murder conviction although the murder of another inmate would obviously present compelling independent grounds for holding him in lockdown. These factors caused the Lockdown Review Board to continue his maximum classification until Wilkerson was released in 2001.[8] It is hard to imagine more compelling grounds for keeping an inmate in lockdown.

In finding that a question exists as to why Mr. Wilkerson was placed in extended lockdown, the Magistrate Judge refers to lockdown review summaries completed in the 1990's by the lockdown review board. These forms were completed by correctional officers some 20-30 years after the incident. Many of the members of these board have no personal knowledge of Wilkerson's crimes or the reasons Wilkerson initially was placed in lockdown. These documents have no relevance in determining why Wilkerson was placed in lockdown some twenty years earlier.

---

[5]  See the affidavit of Warden Vannoy, the Deputy Warden of Security at LSP dated March 10, 2004, attached to the State Defendant's motion for summary judgment, paragraphs 12 – 13.

[6]  Wilkerson was accused of killing another inmate during the time that he was allowed to walk the tier.

[7]  See the affidavit of Warden Vannoy, the Deputy Warden of Security at LSP dated March 10, 2004, attached to the State Defendant's motion for summary judgment.

[8]  See the affidavit of Warden Vannoy, the Deputy Warden of Security at LSP dated March 10, 2004, attached to the State Defendant's motion for summary judgment.

The Magistrate Judge should have given weight to Warden Vannoy's uncontradicted affidavit. In addition, the Magistrate Judge should have considered the documentation presented by LSP from the 1970's, when Wilkerson was initially classified as a maximum security inmate. These documents consistently reflect that Wilkerson was placed in lockdown due to his prior criminal conduct. The Magistrate Judge instead focuses upon documentation prepared by correctional officers some thirty years later.

The evidence of why Mr. Wilkerson was initially placed in lockdown is clear. He was convicted of armed robbery and aggravated escape. Charges of aggravated battery were also pending due to attacking an Orleans Parish deputy with a knife. For these reasons, Wilkerson was initially classified as maximum and placed in lockdown. There are no questions of fact concerning this issue – Wilkerson's due process claim should be dismissed.

### C.    Wallace and Woodfox were reclassified as maximum following their murder conviction; they have no due process rights in their classification.

When Wallace and Woodfox arrived at LSP in the early 1970's, they initially were classified as medium custody. It was not until they murdered a correctional officer in 1972 that they were reclassified as maximum security and placed in lockdown. They both were convicted of this murder and initially were classified as maximum security inmates following the convictions. They have remained in lockdown since this time.[9] As set forth below, Wallace and Woodfox do not have a liberty interest in their classification.

In *Wilkerson, et al v. Stalder, et al*, 329 F.3d 431 (5th Cir. 2003), the Fifth Circuit explained that if Wallace and Woodfox were classified as maximum following their conviction for murdering a correctional officer they have no liberty interest in their classification. The Fifth

---

[9]    See the affidavit of Warden Vannoy, the Deputy Warden of Security at LSP dated March 10, 2004, attached to the State Defendant's motion for summary judgment.

Circuit stated, "we surmise that the three inmates, following their convictions, were likely classified as maximum custody inmates under [LSP regulations]." *Id.* at 435. The Court explained that, "it is crucial to know whether, based on their crimes of conviction, the inmates' confinement is the result of an initial classification by prison officials as opposed to confinement for violations of less serious prison disciplinary rules." *Id.* Thus, if Wallace and Woodfox were classified as maximum as a result of killing a correctional officer then they have no liberty interest in their classification.

There is no dispute that Wallace and Woodfox were placed in lockdown and remained in lockdown as a result of killing a correctional officer. This fact is evident from the inmates' prison record from the 1970's,[10] the affidavit of Warden Vannoy,[11] and the Fifth Circuit's decision in *Wallace, et al v. Phelps, et al*, No. 86-3623 (5th Cir. 1996).

Warden Vannoy explains in his affidavit that Wallace and Woodfox were classified as maximum security upon their conviction of killing a correctional officer.[12] This statement is consistent with the quarterly reports of the lockdown review board in the 1970's, which consistently stated that Wallace and Woodfox were placed in lockdown because they killed a corrections officer.[13]

No evidence was presented to contradict the fact that following the murder Wallace and Woodfox were classified as maximum. Instead, the Magistrate Judge refers to lockdown review summaries completed in the 1990's by the lockdown review board which supposedly create

---

[10]    A copy of Wallace and Woodfox's prison records from the 1970's are attached to the State Defendants' Reply Memorandum as Exhibit 2.

[11]    See the affidavit of Warden Vannoy, the Deputy Warden of Security at LSP dated March 10, 2004, attached to the State Defendant's motion for summary judgment.

[12]    See the affidavit of Warden Vannoy, the Deputy Warden of Security at LSP dated March 10, 2004, attached to the State Defendant's motion for summary judgment.

[13]    See the State Defendant's Reply Memorandum, pages 5-7.

questions of fact. These forms were completed by people some 20-30 years after the incident. Many of the members of these board have no personal knowledge of the crimes which caused Wallace and Woodfox to be placed in lockdown. These documents are irrelevant to the issue of why Wallace and Woodfox were initially placed in lockdown.

Wallace and Woodfox were placed in lockdown because they murdered a correctional officer. There is no question of fact concerning this issue – Wallace and Woodfox's due process claims should be dismissed.

## III. THE DOCTRINE OF COLLATERAL ESTOPPEL PRECLUDES RELITIGATING THE REASON WHY THE INMATES WERE PLACED IN LOCKDOWN.

The Fifth Circuit has recognized that the broad definition of res judicata encompasses collateral estoppel. *Vines v. University of Louisiana at Monroe*, ___ F.3d ____, 2005 WL 189713 (5th Cir. 2005). The doctrine of collateral estoppel prevents relitigation of issues previously determined in a prior action, even where the claims of the prior and present action are different. *Vines*, 2005 WL 189713, pg. 2 (citing, *Grogan v. Garner*, 498 U.S. 279, 284, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). Collateral estoppel prevents a plaintiff from repeatedly relitigating issues previously decided against a "supply of unrelated defendants . . . [reflecting] the aura of a gaming table." *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971).

Here, not only have the inmates been given an opportunity, but they have actually litigated the same due process claims asserted here. In connection with the prior litigation the Fifth Circuit has held that these inmates were placed in lockdown due to their initial classifications; therefore, the Court held that they do not have a due process claim. Thus, the inmates should not be allowed to relitigate this issue.

**A.      Wilkerson's due process claims are barred.**

In *Wilkerson v. Maggio* 703 F.2d 909 (5th Cir. 1983), the Fifth Circuit found that Wilkerson was initially classified as maximum.  *Maggio* is another case filed by Wilkerson wherein he made the identical arguments asserted in this case.  In *Maggio*, he argued that, by being placed in lockdown for over a decade, his due process rights were violated and he was subject to cruel and unusual punishment in violation of the Eighth Amendment.  The Fifth Circuit found both claims to be frivolous and the case was dismissed.  The Fifth Circuit stated with respect to Wilkerson's classification that:

> [i]n May, 1972, approximately two weeks after his arrival at Angola, he appeared before the classification board which classified him as maximum security and assigned quarters in controlled cell reserve (CCR).  He has remained in CCR since 1972 except for the two year period from 1977 to  1979 which he spent in Camp J, another maximum security area.

The Fifth Circuit has already ruled that Wilkerson was initially classified as maximum. Wilkerson is therefore barred by the doctrine of collateral estoppel from relitigating this issue here.  *See, Gibson v. United States Postal Service*, 380 F.3d 886 (5th Cir. 2004), (*citing, U.S. v. Mollier*, 853 F.2d 1169 (5th Cir. 1988)) (Recognizing principle of non-mutual collateral estoppel bars relitigation of an issue fully litigated on merits); and *Recover Edge, L.P. v. Pentecost*, 44 F.3d 1284 (5th Cir. 1995) (Holding that collateral estoppel is available where (1) the issue at stake is identical to issue resolved in prior action, (2) the issue was actually litigated in prior action; and (3) issues determination in prior action was necessary for judgment.)  Clearly, these three elements are met.

In *Maggio*, the Fifth Circuit rejected Wilkerson's argument that his due process rights were violated.  The Fifth Circuit held that Wilkerson did not have a liberty interest in his initial classification.  In reaching this decision, the Fifth Circuit found that he was placed in lockdown

after he was initially classified as maximum. The fact that Wilkerson remained in lockdown for several years following the *Maggio* decision does not change this Courts' analysis. The first inquiry in any due process challenge is whether a liberty interest exists. *Wilkerson*, 329 F.3d at 435-36. Since *Maggio* found Wilkerson was placed in lockdown due to his classification, the inquiry stops and a due process claim does not exist.

The Magistrate Judge finds that *Maggio* is not preclusive because *Sandin v. Conner*, 515 U.S. 472, 483-84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) changed the law.[14] However, *Sandin* did not change the legal precept that inmates do not have a liberty interest in their classification. Indeed, in *Wilkerson*, the Fifth Circuit stated "[t]his Circuit has continued to hold post-*Sandin* that an inmate has no protectable liberty interest in his classification." *Id.* at 436. Thus, the first step in inquiry has not changed. Since *Maggio* found that Wilkerson was placed in lockdown due to his classification, Wilkerson is barred from relitigating this issue.

The Magistrate Judge also found that the *Maggio* decision could not be given res judicata effect because "the only claim raised on appeal was an Eighth Amendment claim."[15] However, the Magistrate Judge's report and recommendation blurs the concepts of collateral estoppel and traditional res judicata. Clearly the elements of collateral estoppel were met, namely: (1) the issue at stake is identical to the issue resolved in prior action, (2) the issue was actually litigated in prior action; and (3) the issues determined in prior action was necessary for judgment. *Recover Edge, L.P. v. Pentecost*, 44 F.3d 1284 (5th Cir. 1995). The Magistrate Judge recommends that *Maggio* does not bar Wilkerson's due process claims because the elements of

---

[14] See pages 26-27 of the Magistrate Judge's Report.

[15] See pages 26-27 of the Magistrate Judge's Report.

res judicata are not met.  This is not the issue, the tests and requirements for res judicata and collateral estoppel are completely different.

For these reasons, the Magistrate Judge erred by not finding that Wilkerson's due process claims were barred.

**B.      Wallace and Woodfox's due process claims are barred.**

Wallace and Woodfox, like Wilkerson, previously claimed that their placement in lockdown for over a decade violated the Due Process Clause and subjected them to cruel and unusual punishment in violation of the Eighth Amendment.  The Fifth Circuit found both claims to be frivolous and they were dismissed.

In that matter, entitled *Wallace, et al v. Phelps, et al*, No. 86-3623 (5th Cir. 1987),[16] the Fifth Circuit ruled that Wallace and Woodfox did not have a liberty interest in their classification.  The Court explained:

> "Prison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status." *McGruder v. Phelps*, 608 F.2d 1023, 1026 (5th Cir. 1979). <u>Appellants admit they were transferred to lockdown status because they killed a prison correctional officer</u>.  They were convicted in state court of murdering the correctional officer.  <u>Appellants' prison conduct justifies their lockdown status</u>. *See, Wilkerson*, 703 F.2d at 911.  (Emphasis added.)

Thus, the Fifth Circuit has already found that Wallace and Woodfox were placed in lockdown as a result of killing a correctional officer.  Indeed, in that action, the inmates <u>admitted</u> that they were placed in lockdown because of the murder.  Thus, Wallace and Woodfox cannot now relitigate this factual finding.  They are barred under the doctrine of collateral estoppel. *See, Southmark Corporation v. Coopers & Lybrand*, 163 F.3d 925 (5th Cir. 1999).  They cannot now

---

[16] This is an unreported opinion, a copy of which was attached to the State Defendants' Supplemental Memorandum as Exhibit 1.  Unpublished opinions issued prior to January 1, 1996 can be used to support claims of *res judicata* and collateral estoppel.  Rule 47.5.3.

argue that they were placed in lockdown for other reasons; yet this is the precise question of fact that they raise in the current lawsuit.

The Fifth Circuit has instructed this Court to dismiss Wallace and Woodfox's due process claims if they were placed in lockdown for killing a correctional officer. This issue was litigated and resolved years ago. Indeed, they previously <u>admitted</u> that they were placed in lockdown for the murder. This admission and finding in *Phelps* ends this Court's analysis. Since they were classified as maximum and placed in lockdown due to the murder, they do not have a liberty interest in their classification.

For these reasons, the Magistrate Judge erred by not finding that Wallace and Woodfox's due process claims were barred.

## IV. THE MAGISTRATE JUDGE ERRED BY MAKING A FACTUAL FINDING THAT THE INMATES ARE ENTITLED DUE PROCESS PROTECTIONS.

The most troubling aspect of the Magistrate Judge's report is the apparent finding that the inmates are entitled to Due Process protections. The analysis of this issue begins on page 16 of the report and concludes on page 22 where the Magistrate Judge concludes:

> [a]pplying the foregoing to the present matter, this Court finds that plaintiffs' indefinite stay in extended lockdown (of a 28 to 33 years duration thus far, with no apparent end in sight), and based upon crimes that occurred *during* incarceration, is just such an extraordinary circumstance. The Court therefore finds that *Sandin* was triggered during plaintiffs' extraordinarily long stay in extended lockdown at LSP.

In these six pages, the Magistrate Judge misapplies the law of this Circuit, ignores the specific instructions by the Fifth Circuit in *Wilkerson*, and makes factual findings - all in concluding that the inmates are entitled to Due Process protections. In doing so, the Magistrate Judge addresses a central issue in this action that was not before the Court.

A three step inquiry determines whether an inmates' Due Process protections have been violated as a result of their confinement in lockdown:

1.  A determination must be made of whether the inmates were placed in lockdown due to the crimes of their conviction or if they were placed in lockdown due to rule violations. *Wilkerson*, 329 F.3d at 436; *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999); *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998); *Woods v. Edwards*, 51 F.3d 577, 581-82 (5th Cir. 1995).

2.  Only if the inmates were placed in lockdown due to rule violations, then a factual determination must be made as to whether the circumstances which the inmates are subject to "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Wilkerson*, 329 F.3d at 435.

3.  Only if the conditions are "atypical and [impose a] significant hardship," a determination must be made as to whether the inmate was afforded "an informal, nonadversarial review of the information supporting . . . the [prisoner's] administrative confinement." *Hewitt v. Helms*, 459 U.S. 460, 467-77, 103 S.Ct. 864, 874, 74 L.Ed.2d 675 (1983); *Woods v. Edwards*, 51 F.3d 577 (5th Cir. 1995).

The Magistrate Judge ruled that questions of fact existed as to the first and third inquiry; however, with respect to the second inquiry she made a factual finding that the conditions were "extraordinary" and concluded that the inmates were entitled to Due Process protections. The Magistrate Judge leaps the first inquiry and concludes that since the inmates have been in lockdown for such a long duration and have been subject to such harsh conditions, it does not matter why they were placed in lockdown.[17] This recommendation directly conflicts with the instructions by the Fifth Circuit which specifically stated that a liberty interest only can exist if, "lockdown is not the result of their initial classification." *Wilkerson,* 329 F.3d at 436.

The State Defendants presented two issues to the Court for consideration in connection with their motion for partial summary judgment:

•  Whether a question of fact existed concerning whether the inmates were placed in lockdown due to the crimes of their conviction;

---

[17]  See, page 21-22 of the Magistrate Judge's Report.

- Whether a question of fact existed concerning whether the Lockdown Review Board hearings satisfied Due Process requirements.

These issues are totally separate and apart from the issue ruled upon by the Court – whether the inmates have been subject to "atypical" conditions. This issue was not briefed by the parties. In fact, the State Defendants stated in their supplemental memorandum that they would concede that a question of fact exists with respect to this issue if the court were to find that questions of fact exist concerning whether the inmates were not placed in lockdown due to the crimes of their conviction.[18] The Magistrate Judge's Report not only finds a question of fact exists with respect to this issue, but also decides the factual issue. That factual issue is, to say the least, vigorously contested by the parties.

As set forth fully below, the Magistrate Judge erred in making a factual finding that the inmates' conditions were "extraordinary" and therefore entitled to due process protections.

### A.    Courts cannot decide factual issues on summary judgment; yet, this is what the Magistrate Judge recommends.

The Magistrate Judge's recommendation that the inmate's confinement in administrative segregation was "atypical" in relation to the ordinary incidents of prison life went far beyond the scope of the pending motion for summary judgment and abrogated the role of the fact finder in this case. The Supreme Court has expressly stated that in a motion for summary judgment, "credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See also, International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991); *Austin v. Mabev*, 184 F.Supp.2d 534 (E.D. La. 2001). Furthermore, the Fifth Circuit has held that a motion for summary judgment should not

---

[18]    See page 12 of State Defendants' Supplemental Memorandum in Support of Motion for Partial Summary Judgment.

be used as a substitute for trial. *Benton-Volvo-Metairie, Inc. v. Volvo Southwest, Inc.*, 479 F.2d 135 (5th Cir. 1973) (Summary judgment purpose is not to cut litigants off from the right to trial of facts); *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869 (5th Cir. 1978).

Whether conditions in administrative segregation are "atypical" is a factual determination that must be determined by reference to a "baseline," the ordinary incidents of prison life. *Sandin*, 515 U.S. at 483-484, 1155 S.Ct. at 2293. Indeed, the Fifth Circuit instructed this Court to determine the baseline before determining whether the inmates' conditions were "atypical." *Wilkerson*, 329 F.3d at 436. The Magistrate Judge ignored this instruction, never mentioning the baseline in her report.

The Magistrate Judge erred by making a factual determination at summary judgment. This error circumvented the jury and should not be adopted by this Court.

**B.     In reaching her conclusion that the inmates have a due process right, the Magistrate Judge misapplies the law in the Fifth Circuit.**

The Magistrate Judge concludes that the inmates' "indefinite stay in extended lockdown (of a 28 to 33 years duration thus far, with no apparent end in sight), and based upon crimes that occurred during incarceration, is . . . an extraordinary circumstance [giving rise to due process protections]."[19] Whether the inmates have been subjected to "extraordinary circumstances" is not the correct legal inquiry. Moreover, even assuming it were the appropriate inquiry, this is a question of fact for the jury.

In *Wilkerson*, the Fifth Circuit gave specific instructions to this Court to determine, "whether, based on their crimes of conviction, the inmates' confinement is the result of an initial classification by prison officials as opposed to confinement for violations of less serious prison

---

[19] See, page 22 of the Magistrate Judge's Report.

disciplinary rules." *Wilkerson*, 329 F.3d at 435. The Court explained that even, "post-*Sandin* ... an inmate has no protectable liberty interest in his classification." *Id.* at 436. Finally, the Fifth Circuit held that the *Sandin* test can only "be triggered," "if the inmates' confinement in extended lockdown is not the result of their initial classification." *Id.*

Despite the clear instructions of the Fifth Circuit in *Wilkerson*, the Magistrate Judge chose a new course and recognized Due Process Protections that did not previously exist. Never before has a Court in the Fifth Circuit held that an inmate has a due process right in their classification. The Magistrate Judge examines selected decisions from across the country, including concurring opinions and district court opinions to create this new Constitutional right for inmates.

The Magistrate Judge's Report does not even mention other Fifth Circuit cases directly on point like *Harper*, *Whitley* and *Woods*, *supra*. In the Fifth Circuit, the law in this area is clear. In this particular case, the law is even clearer. Inmates do not have a liberty interest in their classification. The Magistrate Judge erred by granting inmates a new Constitutional right. This Court should not find that the inmates have a liberty interest in their classification.

**C.    In reaching her conclusion that the inmates have a due process right the Magistrate Judge denied the parties from presenting relevant evidence and incorrectly assumed many facts.**

The Magistrate Judge makes a serious error on page 19 where she compares the inmate's conditions in *Shoats v. Horn*, 213 F.3d 140 (3rd Cir. 2000) to the inmates conditions in this case. The Magistrate Judge states, "[o]f further note, the conditions of Shoats' confinement in administrative segregation were very similar to those of the plaintiffs in this case." In fact, Shoats had been placed in a severe form of solitary confinement. LSP does not have solitary confinement. At no time have these inmates been subject to any form of solitary confinement. There were no facts before the Court to support this conclusion.

LSP was not given an opportunity to present evidence of the actual conditions of confinement before the Magistrate Judge ruled these conditions were "extraordinary." Instead, she assumed that the inmates were subjected to a form of solitary confinement similar to Shoats' conditions and issued a factual ruling.

The State Defendants deny that the inmates' conditions could be considered as any form of solitary confinement. Their cells have open fronts, windows, they have color televisions with cable, radios, books, magazines, fans in the summer and heaters in the winter, they have canteen privileges, hobby shop privileges, and visitors frequently walk up and down the tiers. Evidence will show that these conditions are not solitary confinement and in no way similar to the conditions in *Shoats*.

The State Defendants have retained an expert, Mr. Patrick Keohane, who if called, will testify that the inmates' conditions exceeds the standards to which he has witnessed in other forms of administrative segregation. He will testify that these conditions are anything but atypical or a hardship. The Magistrate Judge ruled that the inmates' conditions were atypical or extraordinary without even considering his testimony.

The State Defendants are entitled to a trial addressing this issue if this Court finds that questions of fact exist as to whether the inmates were placed in lockdown as a result of their initial classification. The Magistrate Judge erred by taking this issue from the jury, erred by presuming that the inmates were placed in solitary confinement for 30 years, and erred by not giving LSP an opportunity to present evidence concerning the actual conditions pursuant to which the inmates were subjected before ruling on whether these conditions were "extraordinary."

**V.    EVEN ASSUMING A DUE PROCESS RIGHT EXISTS, THE LOCKDOWN REVIEW BOARD HEARINGS MET DUE PROCESS REQUIREMENTS.**

As set forth in the affidavit of Warden Vannoy dated November 17, 2004, the inmates received reviews every ninety (90) days by LSP's Lockdown Review Board.[20]  The purpose of these reviews is to determine whether their classification should be modified.  Attached to Warden Vannoy's affidavit are copies of the Lockdown Review Summaries completed by the Lockdown Review Board every ninety days.  These summaries evidence the persons conducting the review, whether the inmate appeared in person, the date of the review, and the reason for continued lockdown status.

Also attached to Warden Vannoy's affidavit are LSP's directives addressing the review process for inmates in lockdown.  These policies, which were consistently followed here, more than satisfy Due Process Clause requirements mandated by the United States and Louisiana Constitutions.  The Magistrate Judge erred by imposing standards in these hearings that have never been considered previously.[21]

In *Hewitt v. Helms*, 459 U.S. 460, 467-77, 103 S.Ct. 864, 874, 74 L.Ed.2d 675 (1983), the United States Supreme Court articulated the Due Process requirements where an inmate is transferred to administrative segregation and a liberty interest is implicated.  The Court stated:

> An inmate must receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation.  Ordinarily a written statement will accomplish this purpose, although prison administrators may find it more useful to permit oral presentations in cases where they believe a written statement would be ineffective.  So long as this occurs, and the decision maker reviews the charges and then-available evidence

---

[20]   A copy of Warden Vannoy's November 17, 2004 affidavit is attached to the State Defendants' Supplemental Memorandum.

[21]   See, pages 24-25 of the Magistrate Judge's Report.

against the prisoner, the Due Process Clause is satisfied. *Id.* at 476-77, 103 S.Ct. at 874.

In *Rodriguez v. Philips*, 66 F.3d 470 (2nd Cir. 1995) the Court explained that an inmate confined to administrative segregation is entitled only to an "informal, nonadversary review," if a liberty interest exists. The Court stated that an inmate is entitled to receive,

> "some notice of the charges against him and an opportunity to present his views to the prison officials charged with deciding whether to transfer him to administrative segregation." *Hewitt*, 459 U.S. at 476, 103 S.Ct. at 873-74. This requirement may be satisfied by "an informal, nonadversary review of the information supporting [the inmate's] administrative confinement, including whatever statement [the inmate] wishe[s] to submit, within a reasonable time after confining him to administrative segregation." *Id.* at 472, 103 S.Ct. at 872.

The Fifth Circuit adopted this same approach in *Woods v. Edwards*, 51 F.3d 577 (5th Cir. 1995).

In *Woods*, an inmate at LSP, alleged that his due process rights were violated when he was placed in extended lockdown (administrative segregation).  The Fifth Circuit granted summary judgment on behalf of LSP, finding that LSP's procedures for granting a hearing and regular review of his status, "more than" satisfied the Due Process Clause.  The Court found that LSP was only "obligated to engage in an informal, non-adversarial review of the information supporting . . . the [prisoner's] administrative confinement. . ." *Id.*, *citing, Hewitt,* 459 U.S. at 471-73, 103 S.Ct. at 871-72.  The Court stated:

> In this case the plaintiff was afforded the full process required by the Disciplinary Rules, including notice, a hearing and regular review of his status. This process represents more than the due process clause, in connection with Louisiana state law, requires of prison officials. Accordingly, the plaintiff has no basis upon which to argue that his confinement was or is wrongful. The district court did not err when it granted the defendants' motion for summary judgment.

Woods, like the inmates here, argued that the review board's decisions were biased; however, the inmates in neither case presented bias evidence. As a result, the Fifth Circuit in *Woods* dismissed the claim. The court stated:

> In the face of defendants' evidence showing the plaintiff was accorded a hearing and that the plaintiff's status is reviewed every ninety days by boards whose membership varies, the plaintiff's claim of bias and violation of due process was appropriately dismissed.[22]

The *Woods* case is directly on point. In *Woods*, as in this case, the inmates received regular reviews by a variety of individuals on the Lockdown Review Board. The inmates have submitted no evidence of bias by these boards. Without evidence of bias, the Court must dismiss the due process claims. Here, as in *Woods*, LSP satisfied all requirements of the due process clause by providing regular hearings for the inmates.

The Magistrate Judge's Report did not address *Woods*. The Magistrate Judge did not address the fact that the Fifth Circuit has held that LSP's hearings and procedures meet Due Process requirements. The Magistrate Judge did not address the fact that the members of the boards varied and that no evidence of bias was presented by the inmates. Instead, the Magistrate Judge cites a ruling from another Circuit, *Shoats v. Horn*, 213 F.3d 140 (3rd Cir. 2000). In that case, a written summary of the hearing was prepared and written reasons for the board's decision was prepared. The Magistrate Judge concluded that since LSP does not prepare written notes of the hearings, as were done in *Shoats*, questions of fact exist as to whether due process was given.

The standard in the Fifth Circuit is *Woods,* not *Shoats*. No questions of fact exists as to whether LSP met this standard. The *Woods* case condoned LSP's hearings and rejected a similar claim by another inmate. The Magistrate Judge erred by imposing a heightened Due Process

---

[22]   See also, *Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995); *Giovanni v. Lynn*, 48 F.3d 908 (5th Cir. 1995); *Rodriguez v. Phillips*, 66 F.3d 470 (2nd Cir. 1995).

standard on LSP.   When the proper standard is considered no question of fact exist.   Even assuming the inmates have a liberty interest in their classification, the procedures employed by LSP more than meet the Due Process requirements.

## VI.    CONCLUSION.

The Magistrate Judge's report should not be adopted by this Court.   The Report's deficiencies include the following:

- Making factual findings at summary judgment stage;

- Assuming the inmates have been in "solitary confinement" without allowing either party to present evidence of the inmates' actual conditions;

- Finding that the inmates' conditions are "extraordinary" without considering evidence of the inmates' actual conditions;

- Applying the incorrect legal standard for determining whether an inmate is entitled to Due Process protections;

- Applying the incorrect legal standard for determining whether inmates have been afforded a proper Due Process hearing;

- Applying the incorrect legal standard for collateral estoppel.

This Court should reject the Magistrate Judge's recommendations and grant the State Defendants' Motion for Partial Summary Judgment.

Respectfully submitted:

**CHARLES C. FOTI, JR.**
Louisiana Attorney General

M. Brent Hicks, TA, La Bar Roll 23778
Richard A. Curry, La Bar Roll 4671
Jamie D. Seymour, La Bar Roll 29418
*McGlinchey Stafford, PLLC*
14th Floor, One American Place
Baton Rouge, Louisiana 70825
Telephone: (225) 383-9000
*Attorneys for State Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via United States Mail, proper postage pre-paid, on all counsel of record, namely:

Thomas W. Milliner, Esq.
ACLU FOUNDATION OF LOUISIANA
One Canal Place, Suite 2800
365 Canal Street
New Orleans, LA 70130

Nicholas J. Trenticosta, Esq.
ATTORNEY & COUNSELOR AT LAW
7100 St. Charles Avenue
New Orleans, LA 70118

Baton Rouge, Louisiana, this ___11___ day of February, 2005.

_____
M. Brent Hicks