**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**ROBERT KING WILKERSON, ET AL**          **CIVIL ACTION**

**VERSUS**                                          **NUMBER 00-304-RET-DLD**

**RICHARD STALDER, ET AL**

**REPORT AND RECOMMENDATION**

This matter is before the court on referral from the District Judge for a report and recommendation on defendants' Re-Urged Motion for Partial Summary Judgment Dismissing All Eighth Amendment Claims (rec. doc. 164).   In their motion, defendants' seek dismissal of plaintiffs' claims of cruel and unusual punishment under the Eighth Amendment of the United States Constitution, which arise from their approximately 28 to 35 year confinements in the Closed Cell Restriction Unit ("CCR" or "lockdown") at the Louisiana State Penitentiary ("LSP") at Angola, Louisiana.  Defendants also assert qualified immunity for their alleged actions, and res judicata, or claim preclusion.[1]  The motion is opposed.

***Background***

For purposes of this motion, neither plaintiffs nor defendants dispute the fact of plaintiffs' incarceration or, indeed, many of the particulars of their incarceration in what LSP refers to as "closed cell restriction" or "extended lockdown."   What they dispute is the

---

[1]The defendants argue that they are also entitled to summary judgment and qualified immunity on the plaintiffs' state law claims for the same reasons advanced for the plaintiffs' federal constitutional claims.

1

reason for their extended lockdown, its significance, both legally and factually, and its effects on these three plaintiffs.

When Herman Wallace and Albert Woodfox arrived at the Louisiana State Penitentiary in 1969 and 1971, respectively, they initially were classified as medium custody inmates and housed with the general prison population.   They were placed in extended lockdown on April 18, 1972,  immediately following a prison riot which resulted in the death of a guard.  Both men were later charged with and convicted of murdering LSP correctional officer Brent Miller during the riot.   Wallace has continuously remained in extended lockdown since April 18, 1972.  With the exception of a three-year period he spent in a parish prison awaiting trial, Woodfox also has been continuously confined in the extended lockdown unit.

Plaintiff Robert King Wilkerson, on the other hand, began his stay in LSP's extended lockdown on May 15, 1972.   Wilkerson was initially incarcerated in Orleans Parish Prison following his conviction for armed robbery.  After pleading guilty to aggravated battery on a prison deputy while in parish prison, Wilkerson was transferred to LSP some time around May 1972.  Two weeks later he was placed in extended lockdown, which was then known as Controlled Cell Reserve ("CCR").  *See Wilkerson v. Maggio*, 703 F.2d 909, 910 (5th Cir. 1983).  In June of 1973, he was accused and later convicted  of killing a fellow inmate, and he remained in extended lockdown until  his conviction was overturned in early 2001, after which he was fully released from state custody. [2]

_____

[2]Wilkerson was originally charged with, and convicted of, murdering a fellow inmate, August Kelly.  Wilkerson was released from LSP on February 8, 2001, after his original conviction for first degree murder was amended to a lesser charge and his sentenced was reduced.

It has now been 35 years since plaintiffs' original confinement to lockdown. The parties agree that during these last three decades, plaintiffs have remained alone in individual cells approximately 55 to 60 square feet for 23 hours of each day. During the other hour, each plaintiff may shower and walk alone along the tier on which his cell is located. Three times a week, each plaintiff may instead choose to use this hour to exercise alone in a fenced yard, if the weather permits. The plaintiffs also faced additional restrictions on privileges generally available to inmates such as personal property, reading materials, access to legal resources, work, and visitation rights. These conditions represent the current conditions they face. They are the least restrictive conditions that they have lived under over the last 35 years.

Each man's cell has an open front with bars, but vision is restricted to what is directly in front of the cell door by side walls. The cell is self-contained inasmuch as it has a toilet, mattress, sheets, blanket, pillow, at least one storage locker and sometimes two, and a small desk attached to the wall which can be used for eating and for writing. A very small window in the rear allows some natural light into the cell.

Beyond these initial facts, however, plaintiffs and defendants begin to part ways. Defendants contend in their Statement of Uncontested Facts[3] that each plaintiff was kept in extended lockdown because they each "presented a serious threat to the safety of the staff, other inmates, the general public, and a threat to the safety, security, and good order of the facility."[4] Plaintiffs respond as follows:

---

[3]Rec. doc. 166.

[4]*Plaintiffs' Response to the Statement of Uncontested Facts Submitted by Plaintiffs Pursuant to Local Rule 56.1* (rec. doc. 177), #6, #11, and #15

1) since his release from LSP, plaintiff Wilkerson has had an incident free (and arrest free) transition to general society;[5]

2) Wilkerson's involvement in the tier disturbance was in 1975, and his conduct report, encompassing a time period from April 1972 through his release in February, 2001, reflects a single act of violence for fighting in 1986;[6]

3) plaintiff Woodfox was transferred to the custody of the West Feliciana Sheriff's Department on March 26, 1996, and moved to the City Jail of Amite, Tangipahoa Parish.  After six months at the Amite city jail, Woodfox was transferred to the general population.  Woodfox stayed at the Amite city jail until March 15, 1999.  The defendants' corrections expert, Mr. Angelone, stated that Woodfox "functioned well" while at the Amite city jail[7]; plaintiff Woodfox was charged with possession of what appeared to be a firing pin for a zip gun in his cell on November 1, 1978.  Since 1972, Woodfox has only been charged with a single act of violence in 1985, which was an inmate fight, for which he received a suspended sentence based on his good conduct record.  Woodfox has not had any disciplinary infractions in over four years, and Warden Cain stated that "in the last five years, [Woodfox] could almost be described as a model prisoner."[8];

4) Wallace was transferred to the custody of the Orleans Parish Facility on February 11, 1998, and remained at Orleans Parish Prison in a communal

---

[5]*Plaintiffs' Response to the Statement of Uncontested Facts Submitted by Plaintiffs Pursuant to Local Rule 56.1* (rec. doc. 177), Response to #1, referencing Cain Deposition at 103, attached as Exhibit A; Expert Report of James E. Aiken, attached as Exhibit M to Plaintiff's Opposition to Defendant's Re-Urged Motion for Summary Judgment at 14.

[6]*Plaintiffs' Response to the Statement of Uncontested Facts Submitted by Plaintiffs Pursuant to Local Rule 56.1* (rec. doc. 177), Response to #4, referencing Expert Report of Steve Martin attached as Exhibit H to Plaintiff's Opposition to Defendant's Re-Urged Motion for Summary Judgment, at 13.

[7]*Plaintiffs' Response to the Statement of Uncontested Facts Submitted by Plaintiffs Pursuant to Local Rule 56.1* (rec. doc. 177), Response to #9, referencing Deposition of Expert Ronald Angelone at 97, attached at Exhibit A to Plaintiff's Opposition to Defendant's Re-Urged Motion for Summary Judgment.

[8]*Plaintiffs' Response to the Statement of Uncontested Facts Submitted by Plaintiffs Pursuant to Local Rule 56.1* (rec. doc. 177), Response to #10, referencing Cain Deposition at 106, attached as Exhibit A to Plaintiff's Opposition to Defendant's Re-Urged Motion for Summary Judgment; LSP Disciplinary Report, Albert Woodfox, 12-4-85.

cell until March 31, 1998, when he was moved to Hunt Correctional Center. On April 27, 1998, Wallace was moved back to LSP and placed on lockdown, where he remains.   Mr. Wallace demonstrated good behavior while at Orleans Parish Prison in 1998.[9]

In addition to disagreeing over the defendants' motivations for keeping the plaintiffs in extended lockdown, the parties also disagree over the impact, both physically and mentally, of their decades long isolation in a single cell, all of which will be discussed in the context of the parties' arguments.

### *Arguments of Parties*

The defendants contend that the plaintiffs' approximately 28 to 35 years in extended lockdown under the facts of this case could never constitute cruel and unusual punishment under prevailing Eighth Amendment law, regardless of defendants' motives in keeping them there.   They also seek dismissal on the basis of qualified immunity, and further argue that the Eighth Amendment claims are subject to *res judicata* or claim preclusion.

### Eighth Amendment Violation

The defendants argue that in order to establish an Eighth Amendment violation in a conditions of confinement case, the plaintiffs must satisfy a two-pronged test, which has an objective and a subjective component.  Under the objective component, "an inmate must show that he was subjected to 'conditions so serious as to deprive [the prisoner of] some

---

[9]*Plaintiffs' Response to the Statement of Uncontested Facts Submitted by Plaintiffs Pursuant to Local Rule 56.1* (rec. doc. 177), Response to #14.

basic human need'",[10] which, they insist,  the Fifth Circuit has defined as only food, clothing, shelter, medical care, and reasonable safety.[11]

Secondly, defendants argue, under the subjective component, the plaintiffs must show that prison officials acted with deliberate indifference in subjecting the plaintiffs to the serious condition of the objective prong.[12]

### Were the plaintiffs' subjected to a condition(s) so serious as to deprive them of a basic human need?

The defendants argue that the duration of an inmate's confinement in extended lockdown can never  form the basis of an Eighth Amendment violation, absent deprivation of a basic human need such as "adequate food, sleep, clothing, shelter or medical attention,"  and cite several cases that they argue stand for that proposition.[13]  The

---

[10]*Memorandum in Support of Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 165), p. 5, citing *Harper v. Showers*, 174 F.3d 716 (5th Cir. 1999)(internal citations omitted).

[11]*Memorandum in Support of Re-Urged Motion for Summary Judgment Dismissing all Eighth Amendment Claims* (rec. doc. 165), p. 5, citing *Harper*, 174 F.3d at 720; *Talib v. Gilley,* 138 F.3d 211, 214, FN3 (5th Cir. 1998).

[12]*Memorandum in Support of Re-Urged Motion for Summary Judgment Dismissing all Eighth Amendment Claims* (rec. doc. 165), p. 5, citing *Harper*, 174 F.3d at 720 (internal citations omitted).

[13]*Memorandum in Support of Re-Urged Motion for Summary Judgment Dismissing all Eighth Amendment Claims* (rec. doc. 165), pg. 9 - 12, citing *Colgrove v. Williams*, 2004 WL 1567117 (5th Cir. 2004); *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995); *Harper v. Showers*, 174 F.3d 716 (5th Cir. 1995); *Brown v. Nix*, 33 F.3d 951, 955 (8th Cir. 1994); *Hernandez v. Hanks*, 65 Fed. Appx. 72 (7th Cir. 2003); *Wilson v. Seiter*, 501 U.S. 294, 304, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Walter v. Schriro*, 2006 WL 2772845 (D. Ariz. 2006); *Johnson v. Bureau of Prisons*, 2000 WL 574881 (D.Kan. 2000); *Easter v. Hill*, 1997 WL 30553 (D.Kan. 1997).

Complaint, defendants argue, "failed to allege a deprivation of minimal basic human needs, and therefore fails to assert a violation of the Eighth Amendment."[14]

In opposition, plaintiffs argue that their Complaint clearly alleged that 30 years of confinement in extended lockdown deprived them of at least the following four basic human needs: (1) exercise, (2) sleep, (3) social contact, and (4) environmental stimulation.[15] Plaintiffs contend that the "list" of human needs cited by the defendants is not exhaustive, but rather is illustrative; in any case, exercise and sleep have been expressly recognized by jurisprudence as basic needs.[16]  Additionally, plaintiffs emphasize that the conditions of extended lockdown must be considered both cumulatively and durationally in determining whether a serious deprivation has occurred, and that a reasonable factfinder could conclude that the combination of conditions for such an extraordinarily long time  in lockdown deprives the plaintiffs of,   at the very least,  the "listed" basic needs of adequate exercise and sleep.[17]

The plaintiffs also urge this court to recognize social contact and environmental stimulation as basic human needs in an  Eighth Amendment analysis, as have district

_____

[14]*Memorandum in Support of Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 165), p. 12.

[15]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178),  p. 8; *see also*, plaintiff's Amended Complaint (rec. doc. 36), ¶¶ 15-17.

[16]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 9, citing *Wilson v. Seiter,* 501 U.S. 294, 304 (1991); *Gates,*, 376 F.3d at 333.

[17]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 9, citing *Wilson v. Seiter,* 501 U.S. 294, 304 (1991); *Gates,*, 376 F.3d at 333;  p.10, referencing Defendant's Memorandum at 7 & n. 18 (citing cases).

courts in Texas and Wisconsin.[18]  "As early as 1890, the Supreme Court recognized that, largely because of the risks of severe psychological harm that flow from deprivations of social contact and other forms of environmental stimulation, the 'matter of solitary confinement is not . . . a mere unimportant regulation as to the safe-keeping of the prisoner,' but is rather 'itself an infamous punishment.'"[19]  Other courts, the plaintiffs continue, have recognized the medical and psychological literature concerning the ill effects of segregation and isolation on human beings,[20] and there is much authority, both in the jurisprudence and in scientific literature, to support a finding that social contact and

---

[18]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 12, citing *Freeman v. Berge*, 283 F.Supp.2d 1009, 1016 (W.D. Wis. 2003); *Ruiz v. Johnson*, 154 F.Supp.2d 975, 985-86 (S.D.Tex 2001).

[19]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 11, citing *In re Medley*, 134 U.S. 160, 167, 169 (1890).

[20]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 11, 12:

See, e.g., Davenport v. DeRobertis, 844 F.2d 1310, 1316 (7th Cir. 1988)(Posner, J.)(noting that "there is plenty of medical and psychological literature concerning the ill effects of solitary confinement (of which segregation is a variant)"; *Madrid v. Gomez*, 889 F.Supp. 1146, 1230 (N.D. Cal. 1995)("Social science and clinical literature have consistently reported that when human beings are subjected to social isolation and reduced environmental stimulation, they may deteriorate mentally and in some cases develop psychiatric disturbances."); *id.* at 1231 n.167 (citing sources). *See generally McClary v. Kelly*, 4 F.Supp.2d 195, 208 (W.D.N.Y. 1998)(citing and describing cases), *aff'd* 237 F.3d 185 (2d Cir. 2001); Transcript of Craig Haney, March 6, 2006 ("Haney Deposition"), Formatted Transcript at 184-97 (discussing additional studies documenting a broad range of adverse psychological reactions experienced by inmates as a result of segregation). In the last 25 years, "evidence has accumulated regarding the harm that depriving inmates of social interaction and sensory stimulation can cause." *Freeman v. Berge*, 283 F.Supp.2d 1009, 1016 (W.D.Wis. 2003)(citing sources).

environmental stimulation are basic human needs, and should be considered as such in the context of an Eighth Amendment analysis.[21]

In support of their allegations that their prolonged stay in extended lockdown has caused them to suffer "severe mental anguish and other psychological damage" and "physical injury",[22] plaintiffs have submitted evidence in the form of, *inter alia*, an expert's report by Dr. Brie Williams, a board certified physician in the areas of Internal Medicine and Geriatrics.[23]  In her report, Dr. Williams rendered the following diagnoses and opinions:

> Herman Wallace
> Wallace suffers from (1) osteoarthritis, aggravated by inadequate exercise opportunities; (2) early functional impairment associated with future functional decline, increased hospitalization and mortality; (3) hypertension;(4) hearing impairment; (5) insomnia[24]; and (6) memory impairment[25].

---

[21]The plaintiffs also cite, in footnote 15 to their memorandum, the United Nations Committee Against Torture's written concerns about the prolonged isolation and harsh conditions imposed on detainees in US Supermax prisons, as follows:

> The Committee remains concerned about the extremely harsh regime imposed on detainees in "supermaximum prison."  The Committee is concerned about the prolonged isolation periods detainees are subjected to, the effect such treatment has on their mental health, and that its purpose may be retribution, in which case it would constitute cruel, inhuman or degrading treatment or punishment.  The State party should review the regime imposed on detainees in "supermaximum prisons," in particular the practice of prolonged isolation.
> *Conclusions and Recommendations of the Committee Against Torture for the United Stated of America, July 25, 2006,* ¶ 36 (citing Convention Against Torture and other Cruel, Inhuman or Degrading Treatment or Punishment)(citation to website omitted as unintelligible).

[22]*Amended Complaint* (rec. doc. 36), ¶ 27.

[23]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178),  p. 13, and Exhibit B.

[24] According to Dr. Williams' expert report, "[m]any factors contribute to insomnia in older adults including pain from arthritis, isolation, loneliness and decreased physical activity all of which Mr. Wallace suffers. Mr. Wallace's decreased sleep is

OPINION: "Continuation of 23-hour confinement in CCR poses medical risks to Herman Wallace including future functional decline, worsening hypertension and mortality."

Albert Woodfox

Woodfox suffers from (1) stage 2 hypertension[26], with increased risk for end-organ damage, cardiovascular disease, heart failure, and kidney disease; (2) chronic renal insufficiency[27]; (3) type 2 diabetes[27]; (4) chest pain; and (5) insomnia.

OPINION: "Continuation of 23-hour confinement in CCR poses medical risks to Albert Woodfox including worsening hypertension, progression to renal failure, and mortality."

---

directly related to the stress of his current 23-hour per day confinement. . . . Insomnia can be improved by amending these risk factors and by increasing light exposure during the day." *Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), Exhibit B, p. 19.

[25] Dr. Williams noted in her report that "[i]n older adults, memory impairment can also be caused by depression, aggravated by social isolation and loneliness." *Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), Exhibit B, p. 18.

[26] During her examination of Woodfox, Dr. Williams took blood pressure readings of 205/100, 210/100, and 195/89. *Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), Exhibit B, p. 21.

[27] Dr. Williams noted in her report that "[p]hysical activity improves glucose uptake and insulin sensitivity and thereby improves diabetes management and glucose control. The physical inactivity of 23-hour per day cell confinement is posing a medical risk to Mr. Woodfox whose type 2 diabetes would be well-served by the opportunity to participate in physical activity and physical labor." *Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), Exhibit B, p. 21.

Robert King Wilkerson

The 28 years Wilkerson spent in 23-hour confinement in CCR contributed to medical harm by increasing stress levels, decreasing exercise opportunities, and contributing to the development of hypertension at a young age.

OPINION: "While Robert King Wilkerson developed hypertension at Angola State Prison which he still has after release and will likely always have, his current environment has substantially different potential results for his medical health than that of the other two plaintiffs." *Id.*

In her report, Dr. Williams also submitted the following expert opinion regarding the impact of Wallace and Woodfox's continuing confinement in lockdown in relation to Wilkerson's improved medical condition since his release:

The achievement of Mr. Wilkerson's decreased stress level and improved sleep, as well as his ability to participate in his 'new meaningful life' which is 'full of wonderful people' was only possible through release from his 23 hour cell confinement. A less restrictive environment, without 23-hour per day cell confinement would also give Mr. Wallace and Mr. Woodfox the opportunity to be more physically active, less socially isolated and would improve the stress level, sleeplessness and medical risks posed by their current conditions of confinement.[28]

Plaintiffs also separately retained Dr. Craig Haney, a professor of psychology, to evaluate the psychological effects on plaintiffs of their long-term confinement in lockdown at LSP.[29]  Dr. Haney reviewed, *inter alia*, copies of plaintiffs' mental health records from LSP, videotaped interviews of plaintiffs by defendants' expert psychologist (Dr. Joel Dvoskin, Ph.D.), and written transcripts of those interviews.  Dr. Haney also toured various

---

[28]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), Exhibit B, p. 23.

[29]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), Exhibit E, part 1.

housing units at LSP, including lockdown.  In June and July of 2006, he personally interviewed all three plaintiffs.[30]

According to Dr. Haney, plaintiffs have lived almost continuously since 1972 under conditions of confinement that present a psychologically dangerous form of "punitive isolation."[31]  Dr. Haney noted that plaintiffs are only allowed outside their cell one hour per day, during which time they are allowed to walk up and down the tier outside their cells. "This hardly constitutes 'normal' social interaction. . . .  CCR affords them no normal social interactions or meaningful social contact."[32]  Furthermore, when conditions such as those in lockdown at LSP are experienced for decades, they are painful, transformative, and potentially dangerous:

> As I say, the stark conditions in CCR, the extreme social isolation, enforced inactivity, and the excessive restriction and control are more than simply painful or unpleasant.  They put prisoners at risk of serious psychological damage.[33]

In his deposition, Dr. Haney testified that plaintiffs are at risk of developing – or have already developed – serious psychological damage caused by their long stay in lockdown,

---

[30]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178).

[31]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), Exhibit E, p. 23.

[32]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), pp. 28, 31.

[33]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178),   Exhibit E, pp. 31, 32.

such as paranoia, claustrophobia, anxiety, problems with their mental abilities, discomfort around people, and depression.[34]

Defendants have presented a countervailing expert's report in the field of psychology, written by Dr. Joel Dvoskin, Ph.D.[35]  Dr. Dvoskin noted in his report that he personally interviewed all three plaintiffs and reviewed their prison mental health records.[36] He observed that plaintiff Woodfox's mental health records show that he "at all times denied any psychological complaints or need for psychological services."[37] .  However, Dr. Dvoskin also wrote in his report that Woodfox told him that he does not request psychological treatment "because he does not trust the system."[38]  As for Woodfox's complaint of recurrent claustrophobia while in lockdown, Dr. Dvoskin noted that "I must admit that I believed him."[39]

As for plaintiff Wallace, Dr. Dvoskin's observations during the interview suggested that Wallace "is experiencing a great deal of psychological stress at this time, which I

---

[34]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 23, citing *Haney* deposition, Exhibit A, pp. 129-137, 174.

[35]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), Exhibit D.

[36]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), Exhibit D, p 3.

[37]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), pp. 9-10.

[38]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), Exhibit D, p. 9.

[39]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), Exhibit D, p. 27.

assume has been exacerbated by his confinement in disciplinary housing."[40]  Wallace told

Dr. Dvoskin that he typically gets three and one-half hours sleep a night.[41]   Dr. Dvoskin

concluded that "I do believe that being housed in segregation has caused him to feel

anxious, depressed, and angry, despite his denials of these emotions."[42]

Plaintiff Wilkerson told Dr. Dvoskin that he experienced depression, disparity, and

disgust during his years in lockdown.[43]  He also told Dr. Dvoskin that he never wanted

psychotropic medication because he feared it would cause him to become a "zombie."[44]

If he told the prison's mental health staff about his problems, they would dismiss his

complaints as a security matter.[45]  Since his release from LSP, he has continued to wake

up frequently during the night and "can only sleep for an hour or so at a time."[46]

---

[40]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), Exhibit D, p. 15.

[41]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), Exhibit D, p. 13.

[42]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), Exhibit D, p. 15.

[43]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), Exhibit D, p. 20.

[44]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), Exhibit D, p. 21.

[45]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), Exhibit D, p. 20.

[46]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), Exhibit D, p. 20.

In the summary section of his report, Dr. Dvoskin stated as follows: "In general, there is little doubt that living in a single cell for three decades is an extremely difficult human experience."[47]

Therefore, plaintiffs conclude, a reasonable fact finder could conclude that "*as applied in this case*, Plaintiffs' extraordinary length of confinement in extended lockdown deprives them of basic human needs and thus exposes them to a substantial risk of medical harm."[48]

Alternatively, the plaintiffs argue that the objective component of the *Farmer* test, which requires deprivation and substantial risk of harm, may also be met if the conditions of confinement "result in pain without any penological purpose."[49]   As the plaintiffs interpret *Hope v. Pelzer*, 536 U.S. at 737, the Eighth Amendment forbids the infliction of pain, serious discomfort, or humiliation without penological justification, and under this line of

---

[47]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), Exhibit D, p. 29.

[48]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 29.

[49]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eight Amendment Claims* (rec. doc. 178), p. 7, citing *Rhodes*, 452 U.S. at 347.

jurisprudence,[50] "the Eighth Amendment does not require inmates to demonstrate that they are at risk of serious harm, only that they are at risk of unnecessary harm."[51]

Plaintiffs state that there is record evidence in this case that could lead a reasonable finder of fact to question whether the plaintiffs' confinement in extended lockdown for over three decades is based on a valid and subsisting penological justification.[52]

Each plaintiff has had only one disciplinary infraction related to violence (each plaintiff was involved in a single inmate fight) in almost 35 years, and each of these incidents occurred over twenty years ago.[53] Plaintiffs have attached the expert report of Steve J. Martin to their opposition, which states, *inter alia*, the following:

> It is axiomatic that 'criminal behavior depends as much or more on age than any other demographic characteristic...' As offenders 'age out' their criminal behavior typically diminishes....[In this case] all three plaintiffs, ranging in age

---

[50]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eight Amendment Claims* (rec. doc. 178), p. 7, "[a] sanction is...beyond the state's authority to inflict if it makes 'no measurable contribution' to acceptable penal goals..." *Roper*, 543 U.S. at 589(O'Connor, J., dissenting)(quoting Coker v. Georgia, 433 U.S. 584, 592 (1977))(plurality opinion)). See also, e.g., *Rhodes*, 452 U.S. at 347 (conditions of confinement violate the Eighth Amendment if they "result in pain without any penological purpose"); *Hope*, 536 U.S. at 737 (reaffirming that the Eight Amendment forbids infliction of pain, serious discomfort, or humiliation without penological justification).

[51]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eight Amendment Claims* (rec. doc. 178), p. 7, citing *Rhodes*, 452 U.S. at 347; *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).

[52]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178)*,* p. 36, 47, citing *Kelly v. Brewer*, 525 F.2d 394, 400 (8th Cir. 1975).

[53]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 37, referencing Expert Report of Steve J. Martin*,* at 11-13.

from 59 to 65, fit the pattern of offenders who have 'aged out' while incarcerated over some four decades.[54]

Historically, Woodfox and Wallace both spent time in the general population at other facilities for periods of time in the 1990's. Both demonstrated good behavior in those settings,[55] and Wilkerson, since his release from LSP in 2001, has performed well in society and has not been arrested.[56] Plaintiffs also cite statements made by Warden Cain that "in the last five years, [Woodfox] could almost be described as a model prisoner" and that Woodfox and Wilkerson's conduct throughout their time at CCR was "good."[57]

Plaintiffs also submit that their mental health records provide evidence that they are not considered a security risk by LSP officials, as these records do not indicate that at any time since the early 1990's, when these records began to be kept, any of the plaintiffs were a threat to others.[58]

The plaintiffs also note that the cellblock review boards, which review the plaintiffs' lockdown status on a periodic basis, have consistently indicated that the plaintiffs are not physically dangerous and are not escape risks. Instead, plaintiffs argue, of a total of 86

---

[54]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178)*, p. 37, citing Expert Report of Steve J. Martin, September 14, 2006, attached as Exhibit H, at 15.

[55]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 40.

[56]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178).

[57]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 37, 38, citing Cain Deposition at 105, 106, 111, 112.

[58]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 40, Exhibit L.

cellblock review boards, not one board member has checked any box except "nature of original reason for lockdown" as a reason for the continued confinement in CCR.[59]

Not only is there no legitimate penological interest in their continued confinement in CCR, plaintiffs argue, but the reason for their extended lockdown is personal and punitive. The defendants do not like their political beliefs – the plaintiffs are all or were all associated with the Black Panther Party – they do not go to Church, and the family of the guard who was killed in the 1972 riot had deep connections with LSP and is well-known and well-liked.[60]   The plaintiffs submitted the affidavit of a New Orleans area school teacher (Matthew Berland of the Newman School) who was present on October 18, 2000, when defendant LSP Warden Burl Cain gave a speech to the students.  Mr. Berland's affidavit states as follows in pertinent part:

> I started out the conversation by saying something like: "I was wondering if you could tell me anything about the 'Angola 3'?"  "You mean Woodfox?" Cain responded.  "I know all about them."  He continued, "it's not obvious" that they should be let out of extended lockdown, they were "not good men," they "haven't reformed their political beliefs," and would be disruptive to the prison environment.  Cain characterized the three inmates as violent and said they would incite other inmates to violence if let into the general prison population.
>
> At one point, I asked, "So they're political prisoners?"  Cain responded, "Well, yes.  Well no, I don't like the word political."[61]

---

[59]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178) , p. 38, 39, and Exhibit J.

[60]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 47 - 49; Exhibit Q, Declaration of Matthew Berland; Exhibit A, Transcript of Deputy Warden Darryl Vannoy, December 1, 2006, at 43 - 48.

[61]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 47, 48, Exhibit Q.

That their continued confinement in CCR is punitive, plaintiffs argue, is further evidenced by defendants' violation of their own policy directives in holding them there. LSP Policy Directive 18.002, in 1995, included a statement that "[T]he original reason for assignment will play a large role in the board's decision [whether or not to continue lockdown]". However, that statement was removed from Policy Directive 18.002 in 1996, and currently is not present.[62]    Nevertheless, the only reason given by the last 86 lockdown review boards for continuing to hold the plaintiffs in CCR is "nature of original reason for lockdown."[63]   The plaintiffs also cite Warden Cain's testimony, as follows:

> [Wallace's] record...doesn't really matter a lot.  The original sentence, that's why he's there, that's why he's there and that's why he's going to stay there....he's in there because of what he did way back when.[64]

The plaintiffs conclude that under either line of jurisprudence, the objective test of *Farmer* has been met.  Either the cumulative conditions of confinement, combined with their duration, have caused the deprivation of at least one basic human need and exposed them to a substantial risk of harm, or there is no legitimate penological purpose in their continued confinement in CCR, and therefore they are being caused pain without legitimate penological interest in violation of the Eighth Amendment.

---

[62]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 46, Exhibits N, O, and P.

[63]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178),  Exhibit J.

[64]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 42, Cain Deposition at 97-98.  *See also id.* At 99-101 (statements concerning Plaintiff Woodfox).

19

In reply, the defendants argue that the plaintiffs are wrong, and that there is no second basis for satisfying the objective component of the *Farmer* test in an Eighth Amendment claim; instead, the plaintiffs must show that they were denied life's necessities resulting in a substantial risk of serious harm.  It is not enough, they argue, to simply show that their conditions of confinement result in pain without penological purpose.[65]  Instead, defendants conclude, whether pain has been inflicted without a penological purpose is relevant only to whether the prison official has a "sufficiently culpable state of mind" so that he could be said to have acted with "deliberate indifference" - the subjective prong of *Farmer*.[66]

The defendants further argue that "the plaintiffs allege for the first time in their memorandum in opposition that they have been denied sleep, exercise, social contact, and environmental stimulation resulting in a serious risk of medical harm."[67] These allegations amount to new claims, which should not be allowed at this point in the litigation.  The defendants also argue that the plaintiffs have failed to identify the  "conditions" or "policies" that caused these alleged deprivations, and therefore these claims must be dismissed.[68]

---

[65]*Reply Memorandum in Support of Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims by the State Defendants* (rec. doc. 209).

[66]*Reply Memorandum in Support of Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims by the State Defendants* (rec. doc. 209), p. 5, citing *Wilson,* at 297; *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

[67]*Reply Memorandum in Support of Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims by the State Defendants* (rec. doc. 209)*,* p. 6.

[68]*Reply Memorandum in Support of Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims by the State Defendants* (rec. doc. 209), p. 12.

***Were the defendants deliberately indifferent to the risk of substantial harm?***

The defendants argue that the plaintiffs cannot show that prison officials acted with deliberate indifference to deprive the inmates of basic human needs, because the inmates were not deprived of any basic human needs.[69]  In other words, even if their actions were knowingly without penological justification, it does not matter because their actions did not deprive plaintiffs of any basic human needs.  Alternatively, even if a question of fact does exist as to whether the conditions of confinement posed a risk of substantial harm that implicated the Eighth Amendment, the defendants nevertheless had a legitimate penological interest in the continued confinement of the plaintiffs in CCR "for the safety of LSP's staff and other inmates."[70]  The defendants cite Fifth Circuit jurisprudence as follows:

> General security and safety of prison officials is, or course, a legitimate if not elementary penological interest....We will not hamper the ability of prison officials "to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration" by subjecting the day-to-day judgments of prison officials to intrusive second-guessing.[71]

In opposition, the plaintiffs argue that merely saying something is so does not make it so, especially when it is self-serving.   The court "may infer the existence of this subjective state of mind [i.e. deliberate indifference] from the fact that the risk of harm is

---

[69]*Memorandum in Support of Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 165), p. 9.

[70]*Memorandum in Support of Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 165), p. 12.

[71]*Memorandum in Support of Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 165), p. 12, 13, citing *Talib v. Gilley,* 138 F.3d 211, 214 (5th Cir. 1998)(internal citations omitted).

obvious."[72]  Basic common sense indicates that "lack of exercise, social isolation, and/or stress are associated with conditions like arthritis, hypertension, heart disease, diabetes, functional impairment, insomnia, and hearing problems" and that these problems were documented in the plaintiffs' medical records at LSP even before the filing of this lawsuit.[73] Therefore, a reasonable fact finder could conclude that by keeping the plaintiffs in lockdown for such an inordinate length of time in spite of the obvious health risks, physical and psychological, the defendants acted with deliberate indifference to the substantial risk of harm from doing so. Furthermore, and most importantly, as there is no legitimate penological interest in continuing the plaintiffs' confinement in lockdown, it follows that a fact finder could also determine "*a fortiori* that the Defendants have the requisite mental state to establish an Eighth Amendment violation."[74]

**Qualified Immunity**

The defendants submit that they are entitled to qualified immunity because (1) the plaintiffs have not alleged the violation of a clearly established federal constitutional right, and even if they did, (2) the defendants conduct was objectively reasonable in light of the clearly established law at the time of the incident.[75]  At the time the inmates filed suit in

---

[72]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 165), p. 30, citing *Hope*, 536 U.S. at 738.

[73]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 165), p. 31.

[74]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 165), p. 49.

[75]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 165), p. 13, citing *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *Hare v. City of Corinth*, 135 F.3d 320, 325 (5th Cir. 1998).

2000, defendants state that there were no reported or unreported Fifth Circuit cases addressing whether duration of confinement in extended lockdown was relevant to an Eighth Amendment analysis,  that out of circuit law suggested otherwise,[76] and in any case, keeping the plaintiffs in CCR for over 28 years was objectively reasonable at the time the decision was made, due to the nature of the plaintiffs' criminal records and their conduct on lockdown status.[77]   The defendants cite their corrections experts' opinions to that effect, and an unpublished 1987 Fifth Circuit ruling which held that Wallace and Woodfox's Eighth Amendment claim, at that time, was frivolous:

> Prison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status." *McGruder v. Phelps,* 608 F.2d 1023, 1026 (5th Cir. 1979).  Appellants admit they were transferred to lockdown status because they killed a prison correctional officer. Appellants' prison conduct justifies their lockdown status.  *See, Wilkerson,* 703 F.2d at 911.  (Emphasis added).[78]

The defendants also argue that under *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996), the plaintiffs have not sufficiently alleged specific facts that focus on the specific conduct of the defendants that plaintiffs allege caused them injury, and therefore the defendants are entitled to qualified immunity:

> The plaintiffs only allege that defendants Rachal, Ritchie, Smith, Myers and Norris were members of the lockdown review board.  The plaintiffs only allege that Peabody influenced or participated in the decisions of the

---

[76]*Memorandum in Support of Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 165), p. 16, citing *Brown v. Nix*, 33 F.3d 951, 955 (8th Cir. 1994); *Easter v. Hill*, 1997 WL 30553 (D.Kan. 1997).

[77]*Memorandum in Support of Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 165), p. 18 - 20.

[78]*Memorandum in Support of Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 165), p. 19.

lockdown review board.  The plaintiffs only allege that Warden Cain and Secretary Stalder knew of their confinement and fail [sic] to act.[79]

In opposition, the plaintiffs argue "all that is required for a constitutional right to be clearly established is that 'its contours' must be sufficiently clear that a reasonable official would understand that what he is doing violates that right,"[80] and that the defendants did not need to have a Fifth Circuit case directly addressing the issue of whether holding an inmate in extended lockdown for 30 years, let alone with no legitimate penological justification,  violates the Eighth Amendment in order to be on notice that their conduct violated established law.[81]  The  plaintiffs argue that the rights at issue in this case were clearly established when the suit was filed:

> By 2000, it was also well-established that deprivations of basic human needs that caused "a substantial risk of serious harm" to inmates satisfied the objective component of the Eighth Amendment test.  *Farmer*, 511 U.S. at 828 (citing cases).   In addition, by 2000, the Supreme Court's decisions in *Rhodes* and *Estelle* - among others- left no doubt that prisoners could not be subjected to conditions that resulted in pain or humiliation without a legitimate penological interest supporting the conditions.  *See Rhodes*, 452 U.S. at 347; *Estelle*, 429 U.S. at 103.   *See also Hope,* 536 U.S. at 737, 747 (citing *Rhodes* and applying this principle to a lawsuit filed before 2000).[82]

---

[79]*Reply Memorandum in Support of Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims by the State Defendants* (rec. doc.209), p. 10*,* referencing paragraphs 19, 21, and 22-24 of the *Second Amended Complaint* (rec. doc. 36).

[80]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), citing *Hope*, 536 U.S. at 739, quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

[81]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 51, 52.

[82]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 53.

The plaintiffs contend that they have produced more than enough evidence which, if taken as true, as the court must for purposes of this motion, shows both the objective and subjective prongs of an Eighth Amendment violation.  They have shown both a serious deprivation of basic human needs and no legitimate penological justification for that deprivation.  As further evidence of the lack of any legitimate penological justification, the plaintiffs argue that  the defendants have not followed their own regulations regarding the decision making process for continuing an inmate's confinement in extended lockdown, which  undermines the defendants' claim that they are entitled to qualified immunity:

> As the Supreme Court has explained in the context of rejecting a qualified immunity defense to an Eighth Amendment claim, "[a] course of conduct that tends to prove that [a prison regulation is] merely a sham, or that [prisons officials] could ignore it with impunity, provides...strong support for the conclusion that [prison officials] were fully aware of the wrongful character of their conduct.[83]

 The plaintiffs emphasize the unheard of duration of the plaintiffs' confinement in lockdown as evidence that the defendants' behavior was clearly unreasonable.  Plaintiffs' expert stated that "[b]y any standard with which I am familiar (statistical or empirical)[the length of Plaintiffs'] stay in extended lockdown is extraordinarily aberrant in contemporary correctional management."[84] Even defendants Warden Cain, Deputy Warden Vannoy, and Director of Classification Williams stated that they were not aware of any other prisoner in the United States who had been kept in extended lockdown as long as either Wallace or

---

[83]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 98, citing *Hope,* 536 U.S. at 744.

[84]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 58, Martin Report at 11.

Woodfox.[85]   Neither of defendants' experts could identify "a single prisoner who has been in extended lockdown for as long as Herman Wallace in the history of the United States, or another living prisoner who has been in segregation as long as either Herman Wallace or Albert Woodfox.[86]   In those few cases of living prisoners that the defendants' experts have identified as having been kept segregated for close to that length of time, plaintiffs argue that there is no evidence  related to their behavior and "[i]n none of those cases is there any evidence (as in this case) that prison officials themselves do not consider the inmates to be security or escape risks."[87]

Finally, plaintiffs argue that they have more than satisfied the pleading requirements of *Schultea v. Wood*, 47 F.3d 1427 (5th Cir. 1995).  If the facts alleged in plaintiffs' complaint were taken as true, they would put the defendants on notice that their decisions made at the lockdown review boards, or otherwise, to continue the confinement of the plaintiffs in extended lockdown were exposing the plaintiffs to risks of substantial harm and were not serving a legitimate penological interest.

## Res Judicata

The defendants argue that the Fifth Circuit, in two prior decisions, "conclusively determined that the inmates' confinement did not constitute cruel and unusual punishment

---

[85]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 58, Cain Deposition at 144; Vannoy Deposition at 74; Williams Deposition at 68.

[86]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178),  p. 58, citing Statement of Patrick W. Keohane, December 10, 2006, Exhibit R;Affidavit of Ronald J. Angelone, December 18, 2006, at 13.

[87]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 59.

under the Eighth Amendment."[88]   The Fifth Circuit utilizes a four part test to determine whether claim preclusion, or *res judicata*, applies, as follows:

> (1) the parties to the later action must be identical to, or in privity with, the parties to the prior action; (2) The judgment in the prior action must have been rendered by a court of competent jurisdiction; (3) the prior action concluded with a judgment on the merits; and (4) the same claim or cause of action was involved in both the prior and the instant action."[89]

In this case, defendants argue, the parties are either identical or in privity with each other, as in the prior cases plaintiffs sued the then LSP warden and other defendants with similar positions within the Department of Corrections and LSP itself; the second and third prongs are clearly met; and, the fourth prong is satisfied because in both the prior and the current actions "the claims being made are Eighth Amendment claims based on the inmates confinement in administrative segregation" and that the "two actions are based on the same nucleus of operative facts, namely whether the two actions originate from the same course of conduct despite differing factual allegations."[90]

In opposition, the plaintiffs argue that the decisions rendered in *Wilkerson v. Maggio*, 703 F.2d 909, 913 (5th Cir. 1983), and *Wallace v. Phelps*, 86-3623 (5th Cir. 1987), do not preclude litigation of the present claims.  In the present case, while the conditions of

---

[88]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 21, citing *Wilkerson v. Maggio*, 703 F.2d 909, 913 (5th Cir. 1983), and *Wallace v. Phelps*, 86-3623 (5th Cir. 1987).

[89]*Memorandum in Support of Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 20, citing *Vines v. University of Louisiana at Monroe*, 398 F.3d 700 (5th Cir. 2005); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309 (5th Cir. 2004).

[90]*Memorandum in Support of Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 22, citing *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 314 (5th Cir. 2004).

confinement are important, "the key issue in this case is whether the extraordinary duration of Plaintiffs' confinement in extended lockdown (unsupported by a legitimate penological interest) is inconsistent with the Eighth Amendment."[91]  The plaintiffs contend that "[t]his central fact – the extraordinary length of Plaintiffs' confinement – obviously did not occur until after Plaintiffs' prior suits, which were both decided over twenty years ago.[92]  Other important facts were also different at the time of these lawsuits:  the lockdown review boards had indicated that they did consider plaintiffs to be a security risk; the plaintiffs had not had positive disciplinary records for as long a period; social workers had not affirmatively indicated that they did not consider the plaintiffs to be a security risk; plaintiffs had not been in the general population; and plaintiffs were younger and more resilient. The claims before the court today do not arise out of the same nucleus of facts as in the prior suits, and therefore, plaintiffs conclude, the current litigation is not barred by *res judicata* or claim preclusion.

### *Summary Judgment Standard*

Summary judgment is appropriate when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law.  Federal Rule of Civil Procedure 56.

When a motion for summary judgment is properly made and supported under Rule 56(c), the opposing parties may not rest on the mere allegations of their pleadings, but

---

[91]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 62; see Defendants' Memorandum at 4.  See also Ps. Second Am. Comp. ¶¶ 17, 28-29.

[92]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 62.

rather must come forward with "specific facts" showing that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); Fed.R.Civ.Pro. 56(e). The non-movant's evidence is to be believed for purposes of the motion and all justifiable inferences are to be drawn in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). However, summary judgment must be entered against the plaintiffs herein, on a properly supported defense motion, if they fail to make an evidentiary showing in their opposition to the motion sufficient to establish the existence of an element essential to their claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion for summary judgment. *American Machinery Movers, Inc. v. Machinery Movers of New Orleans, LLC*, 136 F.Supp.2d 599, 601 (E. D. La. 2001). If evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id.*, citing *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 249-250. "Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are not adequate substitutes for specific facts showing that there is a genuine issue of fact." *Talamantez v. Corrections Corp. of America (Eden Detention Center)*, 202 F.Supp.2d 546, 552 (N.D. Tex. 2002), citing *Douglass v. United Services Auto. Ass'n.*, 79 F.3d 1415, 1428 (5th Cir. 1996); *S.E.C. v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993). The opposing parties must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Importantly, hearsay evidence and unsworn documents do not qualify as competent opposing evidence.

29

*American Machinery Movers, Inc., supra,* 136 F.Supp.2d at 602, citing *Martin v. John W. Stone Oil Distributor, Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

### Discussion

As a preliminary matter, the defendants arguments for summary judgment that are based on the plaintiffs' pleading deficiencies are not persuasive.   That is, the defendants' argument that the plaintiffs have not alleged that they were denied any of life necessities until the filing of their opposition to the motion for summary judgment, that they have failed to identify the conditions which caused those deprivations, and that they have failed to sufficiently allege specific facts that focus on the specific conduct of the individual defendants, are all without merit.

The plaintiffs alleged in their Amended Complaint and Second Amended Complaint that they were "almost totally deprive[d]. . . of human contact, mental stimulus, physical activity, personal property and human dignity"; suffered "daily mental anguish and pain and . . . an unduly high risk of psychological harm"; "suffered severe mental anguish and other psychological damage"; and that they "suffered physical injury as result of their extended confinement in extended lockdown, including damage to their eyesight and hypertension/high blood pressure."[93]

The plaintiffs have also clearly alleged that the condition that caused the deprivations was "continued confinement in extended lockdown for 28 years," which was further described as the "effective equivalent of solitary confinement" where:

---

[93]*Amended Complaint* (rec. doc. 20), ¶¶ 16, 25, and *Second Amended Complaint* (rec. Doc. 36), ¶¶ 17, 27.

Each plaintiff has been continuously incarcerated alone in a cell of approximately 55 to 60 square feet for 23 hours each day.  One hour a day, plaintiffs may shower and walk along the tier on which their cell is located. During this hour, three times a week, weather permitting, plaintiffs may elect to be escorted to a fenced exercise yard, where they may exercise without companions.  Severe restrictions are placed on items of personal property, the number of books and types of reading material allowed.  Access to legal materials and to inmate counsel is also substantially more restricted than in the general population, as is contact visitation.[94]

The plaintiffs also, with the exception of defendant Stalder, alleged specific facts that focused on the specific conduct of the defendants who caused the injury.  The plaintiffs alleged that defendants Rachal, Ritchie, Smith, Myers and Norris were members of the Lockdown Review Boards, and these individuals repeatedly "reviewed and extended plaintiffs' confinement in extended lockdown since March 30, 1999."[95]  Defendant Peabody is alleged to have "influenced or participated in the decisions of the Lockdown Review Board to refuse to release plaintiffs from extended lockdown" and defendant Cain was alleged to have knowledge of the plaintiffs extended lockdown, of having failed to take any action to facilitate the plaintiffs release therefrom, and of refusing to release the plaintiffs because of their political beliefs.[96]  However, a supervisory official such as Stalder can be found liable only if (1) he knew facts or a pattern of inappropriate behavior by a subordinate pointing plainly toward the conclusion that the subordinate was violating the plantiffs' constitutional rights; (2) he demonstrated deliberate indifference toward those rights by

---

[94]*Amended Complaint* (rec. doc. 20), ¶¶ 14, 15, and *Second Amended Complaint* (rec. doc. 36), ¶¶ 14, 15.

[95]*Amended Complaint* (rec. doc. 20), ¶ 18, and *Second Amended Complaint* (rec. doc. 36), ¶ 19.

[96]*Amended Complaint* (rec. doc. 20), ¶¶ 7, 20, 21, 22, and *Second Amended Complaint* (rec. doc. 36), ¶¶ 7, 21, 22, 23, 24.

failing to take action that as obviously necessary to prevent or stop the violation; and (3) his failure caused a constitutional injury to the plaintiffs. *E.g. Alton v. Texas A & M University*, 168 F. 3d 196, 2000 (5th Cir. 1999).  While plaintiffs' allegations establish that Stalder was aware of their extended confinement, they do not establish, unlike the allegations made against the other defendants, that he was aware that their extended confinement was without a current legitimate penological justification.  That is, Stalder was not alleged to have any knowledge of the plaintiffs' records or any involvement in the decision making process which kept the plaintiffs in CCR for 30 years, unlike defendants Cain, Peabody, Rachal, Ritchie, Smith, Myers, and Norris. [97]

Therefore, the defendants' argument that they are entitled to summary judgment on the plaintiffs' Eighth Amendment claims due to deficient allegations and pleadings by the plaintiffs, except as to defendant Richard Stalder, is without merit.[98]

**Eighth Amendment Violation**

The Eighth Amendment, which prohibits the infliction of "cruel and unusual punishments" applies to the states through the Fourteenth Amendment.  *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).  Although inmates are sent to prison as punishment, the prison environment itself may not be so brutal or unhealthy

---

[97]While the defendants' objections to the sufficiency of the pleadings at this stage of the litigation is questionable, and the court also takes into account the evidence submitted, the court notes that there was no evidence submitted by either party that indicated awareness by defendant Stalder of any thing regarding the plaintiffs' confinement in CCR.  Both sides relied on the allegations in the complaint, which related only to the fact of confinement, without more.

[98] See, *Erickson v. Pardus*, 127 S.Ct. 2197 (2007)(Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." (Cites omitted))

as to be in itself a punishment. *Bell v. Wolfish,* 441 U.S. 520, 539, 99 S.Ct. 1861, 1874, 60 L.Ed.2d 447 (1979). "'[T]he unnecessary and wanton infliction of pain...constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Hope v. Pelzer*, 536 U.S.730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), citing *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). A plaintiff asserting a claim of cruel and unusual conditions of confinement under the Eighth Amendment must satisfy a two-part test, with a objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). To satisfy the objective component, a plaintiff must show that the conditions to which he is subjected are "sufficiently serious," and to satisfy the subjective component, the plaintiff must show that the defendants are deliberately indifferent to his health or safety. *Id.*

The plaintiffs' argument that there are a line of cases that obviate the need to satisfy the objective component of the *Farmer* test is not persuasive. A review of those cases reveals that either it was obvious that the conditions were "sufficiently serious," and thus discussion of this element of the analysis was apparently deemed unnecessary or simply glossed over by those courts, or that there was no serious deprivation found. For example, in *Roper v. Simmons,* 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), the inmate was condemned to death, a condition sufficiently serious by any measure. Similarly, in *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), the court, while it did emphasize the lack of legitimate penological interest and reiterated jurisprudence which states that "[a]mong 'unnecessary and wanton' inflictions of pain are those that are 'totally

without penological justification',[99] a complete reading of the case reveals that the court found that the condition of handcuffing the inmate to a hitching post, where he was in a "restricted period of confinement for a 7-hour period, [exposed] to unnecessary exposure to the heat of the sun, to prolonged thirst and taunting, and to a deprivation of bathroom breaks that created a risk of particular discomfort and humiliation," met the objective standard of a "sufficiently serious" deprivation. *Hope*, 536 U.S. at 738. In *Rhodes v. Chapman*, 452 U.S.337, 101 S.Ct. 2392 69 L.Ed.2d 59 (1981), the Court found that "double-celling" of inmates did not result in a sufficiently serious deprivation to be considered a constitutional violation, and in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285 (1976), the court found that "deliberate indifference to *serious* medical needs of prisoners" constituted the "unnecessary and wanton infliction of pain" in violation of the Eighth Amendment. *Estelle*, 429 U.S. at 104(internal citations omitted)(emphasis added).

Therefore, the court concludes that in order to allege a constitutional violation under the Eighth Amendment for conditions of confinement, the plaintiffs must meet both an objective standard that the conditions involve a "sufficiently serious" condition and a subjective standard that the prison officials were "deliberately indifferent" to those conditions. There is no line of jurisprudence that finds an Eighth Amendment violation where there is not a "sufficiently serious" deprivation – whether that deprivation be discussed in terms of pain, humiliation, medical needs, human needs, or injury – even though there is a lack of a legitimate penological justification for whatever happened. Not

---

[99]*Hope*, 536 U.S. at 738, citing *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

every act of malice rises to the level of a constitutional violation[100], just as every "sufficiently serious" deprivation may not turn out to be unconstitutional where officials involved do not act with deliberate indifference to the inmate's health or safety.  It takes both the objective and subjective elements, although the objective prong is sometimes so obvious as to warrant little analytical discussion, and the words used in examining the alleged deprivation are  more often descriptive than definitive.  Thus, we look for a "sufficiently serious" deprivation as a first step.

Just how serious a "sufficiently serious" deprivation has to be is another question.  However, for serious deprivations, as stated by Justice Blackmun in his concurring opinion in *Rhodes v. Chapman*, 452 U.S. 337, 369, 101 S.Ct. 2392, 2411 (1981):

> . . .  incarceration necessarily, and constitutionally, entails restrictions, discomforts, and a loss of privileges that complete freedom affords.  But incarceration is not an open door for unconstitutional cruelty or neglect. Against that kind of penal condition, the Constitution and the federal courts, it is to be hoped, together remain as an available bastion.

### Did the plaintiffs suffer a sufficiently serious deprivation?

The standard for determining whether prison conditions satisfy the Eighth's Amendment objective component, whether the condition is "sufficiently serious," is not static.  Instead, it focuses on whether the conditions are contrary to "the evolving standards of decency that mark the progress of a maturing society."  *Farmer*, 511 U.S. at 833-34, 114 S.Ct. 1970, or whether the inmate has been denied "the minimal civilized measure of life's

---

[100]Not every malevolent touch by prison guard gives rise to a federal cause of action.  The Eight Amendment's prohibition against "cruel and unusual" punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."  *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

The Eighth Amendment protects not only inmates' physical health, but their mental health as well.[101]  "The same standards that protect against physical torture prohibit mental torture as well – including the mental torture of excessive deprivation." *Ruiz v. Johnson*, 37 F.Supp.2d 855, 914 (S.D.Tex.1999), *rev'd on other grounds*, 243 F.3d 941 (5th Cir. 2001), *adhered to on remand,* 154 F.Supp.2d 975 (S.D.Tex.2001).  Such things as food, sleep, clothing, shelter, medical attention, reasonable safety, sleep, and exercise have been recognized by courts as basic physical human needs subject to deprivation by conditions of confinement.[102]  While the defendants urge the court not to recognize social interaction and environmental stimulation as basic human needs, the failure to identify them would be inconsistent with jurisprudence recognizing mental health as worthy of Eighth Amendment protection, and the requirement that  Eighth Amendment protections change to reflect "evolving standards of decency that mark the progress of a maturing society." *Ruiz v. Johnson*, 37 F.Supp.2d 855 (S.D.Tex.1999), citing *Rhodes,* 452 U.S. at 346, 101 S.Ct. 2392.  Additionally,  recognizing social interaction and environmental stimulation as basic human needs is hardly going out on a radical limb, as defendants would suggest. In *Ruiz*, the district court found that the defendants were "deliberately indifferent to a

---

[101]See, e.g. *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003); *Meriwether v. Faulkner*, 821 F.2d 408, 413 (7th Cir.1987); *Jones 'El v. Berge*, 164 F.Supp.2d 1096, 1117 (W.D. Wis.2001); *Scarver. v. Litscher*, 371 F.Supp.2d 986 (W.D. Wis.2005); *Maddox v. Berge*, 473 F.Supp.2d 888 (W.D.Wis.2007); *Madrid v. Gomez*, 889 F.Supp. 1146, 1261 (N.D.Cal.1995).

[102]See *Harper v. Showers,* 174 F.3d 716 (5th Cir.1999); *Talib v. Gilley,* 138 F.3d 211 (5th Cir. 1998); *Wilson v. Seiter*, 501 U.S.294 (1991); *Gates v. Cook*, 376 F.3d 323 (5th Cir. 2004).

systemic pattern of extreme social isolation and reduced environmental stimulation," and social interaction and environmental stimulation have been identified as basic psychological human needs, either directly or indirectly, by other courts.[103]  In *Ruiz,* the court, prior to finding that the inmates had been subjected to "a systemic pattern of extreme social isolation and reduced environmental stimulation" discussed the evolving standards of decency recognizing psychological pain, as follows:

> In the past, courts faced with horrendous conditions of confinement have focused on the basic components of physical sustenance – food, shelter, and medical care.  *See Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).  More recently, in light of the maturation of our society's understanding of the very real psychological needs of human beings, courts have recognized the inhumanity of institutionally-imposed psychological pain and suffering.  As the Third Circuit stated, "[t]he touchstone is the health of the inmate.  While the prison administration may punish, it may not do so in a manner that threatens the physical and *mental health* of prisoners."  *Young,* 960 F.2d at 364 (emphasis added).[104]

In *Young v. Quinlan*, 960 F.2d 351 (3d Cir.1992)(reversed on other grounds), the Third Circuit discussed conditions of segregation in the context of the objective component of a claim for violation of the Eighth Amendment as follows:

> Segregated detention is not cruel and unusual punishment *per se*, as long as the conditions of confinement are not foul, inhuman or totally without penological justification.  It may be a necessary tool of prison discipline, both to punish infractions and to control and perhaps protect inmates whose presence within the general population would create unmanageable risks.

---

[103]See *Maddox v. Berge*, 473 F.Supp.2d 888 (W.D.Wis.2007); *Scarver v. Litscher*, 371 F.Supp.2d 986 (W.D.Wis. 2005); *Jones 'L v. Berge*, 164 F.Supp.2d 1096 (W.D.Wis. 2001).; *Koch v. Lewis*, 216 F.Supp. 2d 994 (D.Ariz., 2001)(reversed as moot)(14th amendment case, but discussing conditions of confinement); *Bermudez v. Ryan*, 2006 WL 2547345 (D.Ariz.); *Aguilar v. Schriro*, 2006 WL 2461830(D.Ariz.); *U.S. v. Noreiga*, 40 F.Supp.2d 1378 (S.D.Fla.1999).

[104]*Ruiz v. Johnson*, 37 F.Supp.2d 855, 914 (S.D. Tex. 1999).

Courts, though, have universally condemned conditions of segregation inimicable to the inmate-occupants physical health, and, in some instances, have also considered conditions that jeopardize the mental health or stability of the inmates so confined.  The touchstone is the health of the inmate.  While the prison administration may punish, it may not do so in a manner that threatens the physical and mental health of prisoners.

There is a fundamental difference between depriving a prisoner of privileges he may enjoy and depriving him of the basic necessities of human existence.  Isolation may differ from normal confinement only in the loss of freedom and privileges permitted to other prisoners.  The duration and conditions of confinement cannot be ignored in deciding whether such confinement meets constitutional standards.

As defendants have pointed out, according to the Supreme Court, "overall conditions" cannot rise to the level of cruel and unusual punishment required by the Eighth Amendment, even when there is no specific deprivation of a human need.  *Wilson v. Seiter*, 501 U.S. 294, 305, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).  However, the Court in *Wilson* made it clear that although certain conditions standing alone might not rise to the level of a constitutional violation, a combination of the conditions having a "mutually enforcing effect that produces the deprivation of a single identifiable human need such as food, warmth or exercise –  for example, a low cell temperature at night combined with a failure to issue blankets," may state a claim under the Eighth Amendment.   Both the Supreme Court and the Fifth Circuit  have recognized that certain conditions that would pass constitutional scrutiny if imposed for a short period of time may be rendered unconstitutional if imposed for an extended period of time.  *Gates v. Cook*, 376 F.3d 323, 333 (5th Cir. 2004), citing *Hutto v. Finney*, 437 U.S. 678, 686-87, 98 S.Ct. 2656, 57 L.Ed.2d 522 (1978).[105]

---

[105]See also *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1986)("[T]he duration of a prisoner's confinement in administrative segregation or under lockdown restrictions is certainly an important factor in evaluating whether the totality of the conditions of confinement constitute cruel and unusual punishment.")

Taking the plaintiffs' evidence as true, and resolving all inferences in the plaintiffs' favor, as the court must do for purposes of this motion, the court finds that the plaintiffs have introduced sufficient evidence for a reasonable fact finder to determine that the cumulative effect of over 28 years of confinement in lockdown at LSP constitutes a sufficiently serious deprivation of at least one basic human need, including but not limited to sleep, exercise, social contact and environmental stimulation.  It is obvious that being housed in isolation in a tiny cell for 23 hours a day for over three decades results in serious deprivations of basic human needs.  Thus, the objective prong of the *Farmer* test is satisfied.

### Were the prison officials "deliberately indifferent" to the risk of harm?

*Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), defined "deliberate indifference" in the context of conditions of confinement as follows:

> We hold ...that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  This approach comports best with the text of the Amendment as our cases have interpreted it.  The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual" punishments."

In *Hope*, 536 U.S. at 738, the court further clarified that the court "may infer the existence of this subjective state of mind [deliberate indifference] from the fact that the risk of harm is obvious."  Any person in the United States who reads or watches television should be aware that lack of adequate exercise, sleep, social isolation, and lack of environmental stimulation are seriously detrimental to a human being's physical and mental health.  As stated by one federal district court judge, and cited by the plaintiffs in brief, "[A]

conclusion...that prolonged isolation from social and environmental stimulation increases the risk of development of mental illness does not strike this court as rocket science."[106] Nor does it strike this court as rocket science.

As far as the risks to physical health posed to the plaintiffs from over 30 years of confinement in lockdown, the prison officials did not even have to infer anything.   LSP's own records indicate that the plaintiffs had been diagnosed with several conditions that may be either caused by or exacerbated by lack of exercise, sleep, and isolation.[107]

Additionally, in the context of prison conditions, assuming a sufficiently serious deprivation has occurred, deliberate indifference may be indicated by the lack of a legitimate penological justification for the condition.  *Hope*, 536 U.S. at 737-738. Courts have explicitly held in other contexts  that while administrative segregation is not inherently unconstitutional, if imposed for illegitimate reasons, it may be:

> While...administrative segregation is not inherently unconstitutional, its validity depends...in individual cases upon the existence of a valid and subsisting reason or reasons for the segregation...It goes without saying that a prison warden may not constitutionally put an inmate in administrative segregation, involving solitary confinement or other rigorous conditions of imprisonment, simply because he dislikes the inmate or desires to punish him for past misconduct.  Moreover, it should be emphasized that the reason or reasons for the segregation must not only be valid at the outset but must continue to subsist during the period of the segregation....[A ] reason for

---

[106]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178),  p. 30, citing *McClary,* 4 F.Supp.2d at 209.

[107]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), Exhibit G, showing that Wallace has been diagnosed with hypertension, arthritis, hearing loss; Woodfox has been diagnosed with hypertension, renal problems, chest pain and coronary artery disease, high blood glucose levels and diabetes mellitus; Wilkerson was diagnosed with hypertension.

administrative segregation of any inmate that is valid today may not necessarily be valid six months or a year in the future.[108]

*Kelly v. Brewer,* cited above, was written in the context of a discussion regarding a plan to be imposed on a prison for reviewing inmates in segregation.  Although the discussion was not specifically on the subject of the Eighth Amendment, it was instructive with regard to the constitutional  necessity that prison officials act with legitimate penological reasons.  Prison officials are given much deference and broad leeway in running the prison, and rightly so, but always with the overriding principle that their actions must be taken for legitimate penological reasons.  In *Kelly*, the plaintiff was placed in isolation after being convicted of killing a prison guard.  The court agreed that the Warden was justified in isolating the plaintiff and holding him there until he could make a reasonable assessment with regard to the plaintiff's threat to the safety of the prison.  The court went on to say that "[i]t does not follow, however, that the Warden can take the view that the fact of the conviction in and of itself stands as a bar to the making of a reasonable decision that at some future time the inmate poses no threat to the security of the institution."[109] This also does not mean that the Warden cannot take into account the historical information, and that it might take years to make such a determination to return the inmate to the general population. "But, we do not think it permissible for the Warden to give artificial weight to the convictions or to consider them as determining or preponderant guidelines in deciding whether or not plaintiffs can safely be returned to population." To keep the convicted inmate

---

[108]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 36, citing *Kelly v. Brewer*, 525 F.2d 394, 400 (8th Cir. 1975).
[109]*Kelly v. Brewer* at 402.

confined indefinitely based solely on the fact of the original conviction for killing the guard is constitutionally infirm.[110]

If an official's actions are taken with no legitimate penological basis, it does not matter whether the claimed violation is under the Eighth Amendment or the Fourteenth Amendment or both amendments, as is the case here and in *Kelly*.  Changing amendments does not turn improper motivation into proper motivation.  The other prongs of the discussion may vary depending upon the particular amendment at issue; that is, whether the confinement constituted an "atypical and significant hardship" or a "sufficiently serious deprivation of a basic human need," but regardless of the underlying constitutional claim, either the official acted with a legitimate penological justification or he did not.

In this case, the plaintiffs have been in lockdown not for one year, five years,  or ten years –  they have been in lockdown for 28 to 35 years, based on actions that occurred 35 years ago.  The plaintiffs have introduced evidence that they have not had any serious disciplinary infractions for decades,[111] and that the only reason the plaintiffs have been given as a reason for their continued confinement in lockdown is the "nature of original reason for lockdown."[112] The plaintiffs have also introduced evidence that Warden Cain directly stated that "[Wallace's] record...doesn't really matter a lot.  The original sentence, that's why he's there, that's why he's there and that's why he's going to stay there. . . [H]e's in there because of what he did way back when."[113]   The LSP mental health records

---

[110]Id.

[111]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 37, referencing Expert Report of Steve J. Martin, at 11-13; Exhibit H.

[112]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 38, 39, and Exhibit J.

[113]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 42, Exhibit A, p. 16, Cain deposition at

indicate that the plaintiffs pose no threat to themselves or others,[114] and the plaintiffs have each spent time in the general prison populations at other facilities without incident.  The plaintiffs also have introduced evidence that they were and are being held in lockdown as punishment because of their, at least at one time, association with the Black Panther Party, because of their personalities as leaders, and in the case of Woodfox and Wallace, because of who they were convicted of killing – a popular prison guard.[115]

Although the defendants have produced conclusory statements that they consider the plaintiffs to present a threat to the safety of the institution,  taking the plaintiffs' evidence as true and resolving all inferences in plaintiffs' favor for purposes of the pending motion, not only have the defendants failed to meet their burden, but  the court finds that the plaintiffs have introduced evidence sufficient to allow a reasonable finder of fact to find that the defendant prison officials have been deliberately indifferent to the health and safety of the plaintiffs in continuing to impose the condition of extended confinement in lockdown. It will be for the jury to make the necessary credibility determinations.

**Qualified Immunity**

Defendants are entitled to qualified immunity only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct.2727,2729, 73 L.Ed.2d 396 (1982).  Although plaintiffs must do more than offer conclusory allegations that the defendants violated a clearly established constitutional right, a public official is not

---

97-98, 99-101.

[114]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 40, Exhibit L.

[115]Exhibit Q to *Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178); Exhibit A, p. 16, 17, Cain deposition at 97-98; Exhibit A, p. 43-47, Vannoy deposition at 55-59.

entitled to qualified immunity when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.Sl 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

"The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736, 122 S.Ct. 2508, 2513 (2002), citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).   In this matter, the court has already found that the plaintiffs have introduced evidence sufficient to enable a reasonable fact finder to find that a constitutional violation occurred.   However, as stated above, the defendants nevertheless may  be immune from liability for their unconstitutional actions if their actions were not violative of "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct.2727, 73 L.Ed.2d 396 (1982).   The Supreme Court further reiterated the proper application of qualified immunity:

> As we have explained, qualified immunity operates "to ensure that before they are subject to suit, officers are on notice their conduct is unlawful.  *Saucier v. Katz*, 533 U.S. at 206, 121 S.Ct. 2151.  For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see *Mitchell v. Forsyth,* 472 U.S. 511,] 535, n.12, 105 S.Ct. 2806, 86 L.Ed.2d 411; but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).
> *Hope v. Pelzer*, 536 U.S. at 739.

The court in *Hope* went on to explain that even in novel factual situations, officials can still be on notice that their conduct violates established law.  That is, there does not have to be any previous case that is "fundamentally similar" or even "materially similar" factually.

*Hope*, 536 U.S. at 741, referencing *United States v. Lanier*, 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). Instead, the inquiry courts are instructed to make "is whether the state of the law [at the time of the challenged conduct] gave [prison officials] fair warning that their alleged treatment of [plaintiffs] was unconstitutional." *Hope*, 536 U.S at 741. Therefore, the salient question, in this case, is whether the state of the law in 1999 gave the defendants fair warning that their continued confinement of the plaintiffs in extended lockdown was unconstitutional.

As the plaintiffs previously pointed out, the Supreme Court made it abundantly clear before this suit was filed that deprivations of basic human needs that caused a "substantial risk of serious harm" to inmates satisfies the objective prong of the Eighth Amendment. *Farmer,* 511 U.S. at 828 (citing cases). The Supreme Court also had made it clear that prison officials must have a legitimate penological interest justifying any conditions that result in pain or humiliation. *See Rhodes*, 452 U.S. at 347; *Estelle*, 429 U.S. at 103. *See also Hope*, 536 U.S. at 737, 747 (citing *Rhodes* and applying this principle to a lawsuit filed before 2000.)

As early as 1890, the Supreme Court in *In re Medley*, 134 U.S. 160, 167, 169 (1890) noted that "the matter of solitary confinement is not...a mere unimportant regulation as to the safe-keeping of prisoner," but is "itself an infamous punishment." In 1988, Judge Posner noted that "there is plenty of medical and psychological literature concerning the ill effects of solitary confinement (of which segregation is a variant)." *Davenport v. DeRobertis*, 844 F.2d 1310, 1316 (7th Cir. 1988). In fact, there are multiple cases discussing administrative segregation and solitary confinement prior to 2000, and every single one acknowledges that

administrative segregation[116] is a condition of confinement that merits constitutional scrutiny. *See Madrid v. Gomez*, 889 F.Supp. 1146, 1230 (N.D.Cal. 1995); *McClary v. Kelly*, 4 F.Supp.2d 195, 208 (W.D.N.Y. 1998).   A district court within the Fifth Circuit  recognized that administrative segregation may be unconstitutional in certain circumstances. See *Ruiz v. Johnson*, 37 F.Supp2d 855 (S.D.Tex 1999).

In 1978 the Supreme Court,  in *Hutto v. Finney*, 437 U.S. 678, 685, 686, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978)(emphasis added), expressly stated that punitive isolation may be unconstitutional (and was in that case) "depending on the *duration of the confinement* and the conditions thereof...[and] the *length of confinement cannot be ignored* in deciding whether the confinement meets constitutional standards."[117]  This case came out just four

---

[116]For purposes of this discussion, the label attached to extended lockdown is irrelevant.  It is the facts of the conditions of confinement,  not the labels placed by courts or prisons, with which the court is concerned.  Courts (and litigants) variously will refer to the same situation as "administrative segregation," "punitive segregation," "disciplinary segregation," "extended lockdown," "closed-cell restriction," "isolation," and "solitary confinement."  In this case, the label has changed over the last 35 years–simply by giving it another name, as have the actual conditions of confinement.  As stated in the beginning, the conditions described are the *least restrictive* of the last 35 years.

[117]In their reply brief, the defendants cite *Bono v. Saxbe*, 620 F.2d 609 (7th Cir. 1980), in support of their argument that existing jurisprudence did not recognize social contact and environmental stimulation as basic human needs that the prison officials should have been aware of, as follows:
> In *Bono v. Saxbe*, the Seventh Circuit held that "[i]nactivity, lack of companionship, and a low level of intellectual stimulation do not constitute cruel and unusual punishment even if they continue for an indefinite period of time.
> However, the defendants left off the most important part of that quote, as the complete quotation reads as follows:
> Inactivity, lack of companionship and a low level of intellectual stimulation do not constitute cruel and unusual punishment even if they continue for an indefinite period of time, ***although the duration "is a factor to be considered, especially if the confinement is punitive***."
> *Bono v. Saxbe*, 620 F.2d 609 (7th Cir. 1980) citing *Sweet v. South Carolina Dept. of Corrections,* 529 F.2d 854 (4th Cir. 1975)(emphasis added).
See *Reply Memorandum in Support of Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims by the State Defendants* (rec. doc. 206), p. 13.

years after the plaintiffs were placed in extended lockdown.   Although the conditions in *Hutto* were much worse than the conditions in Angola's CCR in 1999, the analysis remains the same.   As the severity of the conditions increases, the duration of their acceptable exposure decreases.

A reasonable official at LSP would have realized in 1999 that an inmate's being held in extended lockdown  for  27 years constitutes a sufficiently serious deprivation of basic human needs to trigger the protections of the Eighth Amendment.   Not only has the jurisprudence consistently noted the severity and terrible deprivation associated with such confinement, it has long been the subject of research, and even of television and movies. It is also a matter of common sense that three decades of extreme social  isolation and enforced inactivity in a space smaller than a typical walk-in closet  present the antithesis of what is necessary to meet basic human needs.   That such isolation and inactivity may be justified in a prison setting under some situations and for some period of time, does not mean that the experience itself is somehow minimized or made less onerous or painful by its necessity.   The emphasis on duration in all these cases is in direct response to the acknowledged severity of the deprivation.  It becomes a balancing act between the severity of the deprivation and the legitimate necessity for its imposition.   With each passing day its effects are exponentially increased, just as surely as a single drop of water repeated endlessly will eventually bore through the hardest of stones.   In *Hutto* the court agreed to a limit of 30 days for the terrible conditions of punitive isolation in that case.   In this case, it has been over 30 years.  By 1999, these plaintiffs had been in extended lockdown more than anyone in Angola's history, and more than any other living prisoner in the entire United States, according to plaintiffs' evidence.

That the "substantial risk of serious harm" in the continuation of plaintiffs' placement in extended lockdown should have been obvious to any objectively reasonable official in 1999 is only part of the inquiry, however.   The clearly established law at the time also looked to the officials' justification for keeping  an inmate in a situation that obviously resulted in the serious deprivation of basic human needs.   "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (emphasis added).

Plaintiffs' presented evidence that LSP's own policies were changed in 1996 to remove "original reason for lockdown" as a factor to be considered by the lockdown review board in considering whether to continue an inmate's confinement in lockdown.  In spite of this policy change, plaintiffs have introduced evidence that the defendants justified plaintiffs' continued confinement in extended lockdown for the sole reason of "nature of original reason for lockdown," in knowing violation of even LSP's own policies.[118]

Additionally, the same evidence discussed previously with regard to the issue of whether or not the defendants were "deliberately indifferent" applies here.   Although the defendants claim the legitimate goals of "safety, security, and good order of the facility" as justification for their actions, the court must accept the plaintiffs' evidence as true and make all inferences in plaintiffs' favor for purposes of this motion.  That evidence, as discussed earlier,  is in direct conflict with defendants' statement of its goals.  Punishment for crimes committed 35 years ago, for political beliefs, for religious beliefs, and for leadership qualities are not legitimate penological interests.   The plaintiffs also presented evidence, most of

---

[118]*Memorandum in Opposition to Re-Urged Motion for Summary Judgment Dismissing All Eighth Amendment Claims* (rec. doc. 178), p. 46, Exhibits N, O, and P.

which came from the prison's own records, indicating that these men, now in their 60's, do not, and have not for some time, presented a threat to the "safety, security, and good order of the facility."   They have had no serious disciplinary incidents in decades; their prison mental health records indicate that they pose no threat to themselves or to others; they have spent time in other institutions without incident.  The defendants have pointed to no facts in the last twenty years to support their opinion that they present any threat.  Applying that evidence to this case, it is clear that in 1999, any reasonable official would know that continuing to hold inmates in isolation in a solitary cell for 23 hours a day for three decades as a punitive measure without any  current, legitimate penological justification is constitutionally infirm.  Whether or not this evidence prevails at trial is for the jury to decide, but for purposes of this motion, it is sufficient to overcome defendants' motion with regard to qualified immunity.

For all of the foregoing reasons, the court finds that the state of the law in 1999 gave prison officials  "fair warning"  that the continued confinement of the plaintiffs in extended lockdown for over 28 years was constitutionally infirm, and therefore they are not entitled to qualified immunity.

**Res Judicata**

*Res judicata* does not apply to the plaintiffs' current clams, as the decisions rendered in *Wilkerson v. Maggio*, 703 F.2d 909 (1983) and *Wallace v. Phelps*, No. 86-3623 (5th Cir.1987), were both decided over twenty years ago, and involve different facts.  While the physical conditions of confinement may have been the same, or similar, in the present case, a key issue today is the now extraordinary duration of that confinement, and the effects of same, which was not present at the time of those decisions.  At the time of those decisions, several important factors were different:  the lockdown review boards had indicated that they

49

did consider plaintiffs to be a security risk; the plaintiffs did not have positive disciplinary records for as long a period of time; social workers had not affirmatively indicated that they did not consider the plaintiffs to be a security risk;  the plaintiffs had not been in a general population without incident; and, the plaintiffs were much younger and had not suffered the physical and psychological damages they exhibit today.  Therefore, the court finds that the plaintiffs' claims today do not arise out of the same nucleus of facts as in the prior suits, and therefore the current claims are not barred by *res judicata* or claim preclusion.

### *Recommendation*

For the reasons stated above,

**IT IS THE RECOMMENDATION** of the Magistrate Judge that the defendant's Re-Urged Motion for Partial Summary Judgment Dismissing All Eighth Amendment Claims (rec. doc. 164) be **DENIED IN PART AND GRANTED IN PART** as follows:

1) The claims against defendant Richard Stalder are dismissed;

2) The remaining requests for relief are **DENIED**.

Signed in Baton Rouge, Louisiana, on August 11, 2007.

**MAGISTRATE JUDGE DOCIA L. DALBY**

# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**ROBERT KING WILKERSON, ET AL**          **CIVIL ACTION**

**VERSUS**                                **NUMBER 00-304-RET-DLD**

**RICHARD STALDER, ET AL**

## <u>NOTICE</u>

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have ten days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on **August 11, 2007.**

_____

**MAGISTRATE JUDGE DOCIA L. DALBY**