UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**ROBERT KING WILKERSON, ET AL**

**VERSUS**  **CIVIL ACTION NO. 00-304-C-M3**

**RICHARD STALDER, ET AL**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**OBJECTION TO THE MAGISTRATE JUDGE'S
OCTOBER 15, 2008 REPORT BY THE STATE DEFENDANTS**

State Defendants[1] respectfully object to the Magistrate Judge's October 15, 2008 Report.

**I.   INTRODUCTION.**

This lawsuit was filed by two current inmates and one former inmate of the Louisiana State Penitentiary at Angola ("LSP"): Robert King Wilkerson, Albert Woodfox, and Herman Wallace (hereinafter sometimes collectively referred to as "Inmates").[2] Inmates claim that their confinement in the Closed Cell Restriction unit ("CCR") at LSP violated their right to due process and their right to be free from cruel and unusual punishment under the United States and Louisiana Constitutions.

At the time this lawsuit was filed, Inmates had been housed for many years at CCR – a form of extended lockdown. Among other things, this lawsuit sought to enjoin LSP from continuing to house Inmates at CCR.

---

[1] The State Defendants are James M. LeBlanc, Secretary, Louisiana Department of Public Safety and Corrections; Burl Cain, Warden, Louisiana State Penitentiary; Richard Peabody, Deputy Warden, Louisiana State Penitentiary ("LSP"); Robert Rachal, former Major, LSP; Paul J. Myers, Major, LSP; and Tom Norris, former Classification Officer, LSP.

[2] In 2001, Wilkerson was released from LSP after his conviction was amended to Conspiracy to commit Second Degree Murder and his sentence was reduced to time served.

In March of 2008, Woodfox and Wallace were moved out of CCR and into dormitory housing in Camp D. None of the Inmates currently reside in CCR[3]; for over six months, Woodfox and Wallace have been living in Camp D, Eagle, a low density dormitory.[4] In their current housing, Albert Woodfox and Herman Wallace are no longer subject to the conditions that formed the basis of their claim.

State Defendants deny that conditions under which Inmates resided at CCR violated the Eighth Amendment, and State Defendants deny that Inmates' Due Process rights were violated as a result of their continued housing at CCR. The merits of Inmates' claims for injunctive relief, however, are no longer before the Court. The conditions under which Inmates are currently housed are very different from the conditions under which they allegedly were housed in CCR.

On July 18, 2008, State Defendants filed a Motion for Partial Summary Judgment seeking dismissal of all remaining claims for injunctive relief. The motion was opposed, and, on October 15, 2008, the Magistrate Judge issued a report (the "Report") that recommended denial of State Defendants' Motion for Partial Summary Judgment. The State Defendants respectfully request that this Court reject the recommendation in the Report and grant the State Defendants' Motion for Partial Summary Judgment and dismiss all remaining claims for injunctive relief.

## II.   INMATES' CLAIMS FOR INJUNCTIVE RELIEF ARE MOOT.

State Defendants are entitled to judgment dismissing claims for injunctive relief because it now has been over six months since Albert Woodfox and Herman Wallace were transferred from CCR cells into their current dormitory housing at Camp D. Wallace and Woodfox now are

---

[3] Wilkerson already had been released from CCR – and LSP – in 2001 when his conviction was amended to conspiracy to commit second degree murder and his sentence was reduced to time served. Wilkerson's claims for injunctive and declinatory relief were dismissed as moot on May 25, 2001.

[4] *See*, the Affidavit of Warden Joseph Lamartinere, Exhibit A to Defendant's Motion for Partial Summary Judgment, Record No. 252 (the "Lamartinere Affidavit").

housed in a low density dorm (12-15 inmates live in a dorm that was built to house 68 inmates); they have freedom to move about the dorm and interact with other inmates; and they have liberal access to outdoor exercise.[5]  Inmates (and the Magistrate Judge's Report) acknowledge that conditions at Camp D are less restrictive than conditions that prevailed in extended lockdown.  When intervening events fundamentally change the factual basis for asserting a claim, or when future events have become too tenuous to support a decision addressing the issue, then the controversy is moot and dismissal is appropriate.[6]  The removal of Wallace and Woodfox from CCR renders their claim for injunctive relief moot.

Inmates' complaint is based on their lengthy confinement in extended lockdown.[7] Inmates claim that prolonged incarceration under the conditions alleged in their Second Amending Complaint was inhumane and imposed atypical and significant hardship compared to ordinary prison life.  State Defendants vigorously deny that the prolonged incarceration of Wallace and Woodfox in CCR violated any Constitutional conditions under the circumstances of this case; in any event, Inmates have not been housed at CCR for many months.  Conditions in Camp D, Eagle, where Woodfox and Wallace are housed today, are very different from the conditions alleged in Inmates' Complaint.

---

[5] Lamartinere Affidavit; LSP Regulation 10.026.

[6] *See Golden v. Zwickler,* 394 U.S. 103 (1969); *Iron Arrow Honor Socy. v. Heckler*, 464 U.S. 67 (1989); *U.S. Steel Corp. v. Industrial Welfare Comm'n.*, 473 F.Supp. 537, 539 (D.C. Cal. 1979).

[7] Inmates claim that conditions in CCR were the effective equivalent of solitary confinement; that they were incarcerated in single cells of approximately 55 to 60 square feet for 23 hours each day; that Inmates were allowed only one hour per day to shower, walk the tier or to exercise outdoors; that LSP imposed severe restrictions on items of personal property, the number of books and types of reading material allowed in CCR; that LSP allowed only very restricted access to legal materials and to inmate counsel; that Inmates were totally deprived of human contact, mental stimulus, physical activity, personal property, and human dignity; that Inmates suffered severe mental anguish, other psychological damage, pain, and physical injury including damage to eyesight and hypertension/high blood pressure as a result of conditions within CCR; and that housing in CCR constituted an unwarranted deprivation of the liberties and privileges granted other prisoners.  *See*, the Second Amending Complaint, Rec. Doc. No. 36.

Inmates do not deny that they have been moved to housing that is less restrictive than their former housing in CCR; however, the Magistrate Judge nevertheless recommends denial of the State Defendants' Motion for Dismissal of All Claims for Injunctive Relief. The Magistrate Judge recommends denial because she concludes that State Defendants have voluntarily ceased the allegedly unconstitutional activity. The Report finds that "defendants have the unfettered power and discretion to move plaintiffs from Camp D back into extended lockdown, depending on the plaintiffs' behavior, actual or perceived, the interpretation of LSP Directive 10.026, or any other reason." Report p. 7. No evidence supports the assumption that the Inmates are at risk of being arbitrarily moved back to CCR based on "perceived" behavior or for "any other reason." It is unfair and improper to assume that State Defendants would act capriciously or without proper foundation.

Inmates' lawsuit does not challenge a practice or procedure that is likely to recur. This lawsuit does not seek to enjoin conditions that prevail throughout LSP or throughout a portion of the institution; nor does the lawsuit seek broad, pervasive relief applicable to conduct affecting a group of similarly situated plaintiffs. The "practice" which forms the basis of the claim for injunctive relief was the State Defendants' historical decision to hold <u>two inmates</u> – Wallace and Woodfox – in extended lockdown "without independent intervening cause other than the original reason for the classification. . . ."[8] That "practice" is not susceptible of recurrence. Any future housing decision affecting these two individuals would be made in a different context – both with respect to the conduct of the Inmates and with respect to the housing facilities available at LSP.

---

[8] Second Amending Complaint, Rec. Doc. No. 36.

Inmates' prayer in this lawsuit seeks to enjoin State Defendants from holding Wallace and Woodfox in extended lockdown "without independent intervening cause other than the original reason for the classification. . . ." The request for injunctive relief plainly is not directed at conduct that could "reasonably be expected to recur" at the present time. *United States v. Concentrated Phosphate Export Assn.,* 393 U.S. 199, at 203 (1968). The Court can not conclude that there is "likelihood of recurrence" in this case unless the Court assumes that State Defendants will act arbitrarily and capriciously to transfer Inmates to extended lockdown <u>without appropriate intervening cause</u>.

The Magistrate Judge's Report, at page 5, finds that dismissal of injunctive relief would prevent judicial review of the constitutionality or legality of State Defendants' actions, quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.,* 528 U.S. 167, 189, 189 S.Ct. 693 (2000) (". . .a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.") In this case, however, dismissal of the claims for injunctive relief would <u>not</u> moot the Inmates' <u>damage</u> claim based on the same alleged illegality. State Defendants' Motion for Partial Summary Judgment expressly recognizes that the motion would not result in dismissal of Inmates' claim for damages. (State Defendants welcome the opportunity to demonstrate at that future trial the constitutionality of their decision to house Wallace and Woodfox in CCR.)

The Magistrate Judge's Report relied on the opinion of the United States Court of Appeals for the Fifth Circuit in *Gates v. Cook*, 376 F.3d 323 (5 Cir. 2004). The facts of that case, however, are distinguishable from this case. The Magistrate Judge cites that opinion for the proposition that the Fifth Circuit rejected a claim by the Mississippi Department of Corrections

(MDOC) to dismiss inmate claims as moot because the MDOC had voluntarily eliminated the conditions on which the suit was based:

> "[The MDOC claimed that it] had already met [the Inmates'] concerns regarding issues of sanitation, pest control, poor cell lighting, ping-pong toilets, and inadequate mental health care. The Fifth Circuit held that although the MDOC claimed that it was already meeting or attempting to meet the required standards, the MDOC had not met its heavy burden of showing that its voluntary conduct had mooted any of the issues in the case because the conditions complained of had persisted for years. [Citation omitted]." Report, p. 5.

The Fifth Circuit did not find that the MDOC, through its "voluntary conduct," had "already met" the inmates' concerns regarding those conditions. Rather, the Fifth Circuit opinion expressly found that the MDOC had not satisfied the concerns identified by the MDOC inmates – even temporarily or conditionally. *Gates*, 376 F.3d at 337. The Fifth Circuit found, at most, that the MDOC intended to, or was attempting to, remedy the identified conditions. *Id*. Thus, the Fifth Circuit did not find that the MDOC had provided:

- adequate sanitation ("...the testimony was conflicting as to the frequency and quality of the provision of cleaning supplies, and we can not say that the trial court's conclusion to credit testimony supporting the inadequacy of cleaning supplies was clearly erroneous" 376 F.3d at 338);

- adequate pest control ("The pest infestation problems persist. . . ." 376 F.3d at 340);

- adequate cell lighting ("MDOC's assertions that it is working on the problem [of poor lighting] are inadequate to moot the issue." 376 F.3d at 342);

- properly working toilets ("Testimony regarding [the MDOC's] attempts to correct the toilet problem [does not moot] a finding of deliberate indifference." 376 F.3d at 341);

- adequate mental health care (MDOC's representation that it "has already begun the process of selecting a new medical vendor that would comply with ACA and NCCH standards. . . is insufficient to moot the issue." 376 F.3d at 342-43).

State Defendants in this case are not "attempting" to move Inmates out of CCR; State Defendants are not "planning" to move Inmates to a less restrictive environment. State Defendants already have moved Inmates to a new housing environment. Wallace and Woodfox have been living in a dormitory setting for over six months.

The state action of which Inmates complain is fundamentally different from the tier-wide concerns (such as cleanliness, mosquito control, and other conditions) identified in cases such as *Gates v. Cook, supra*. Inmates' lawsuit alleges that State Defendants improperly held two inmates – Wallace and Woodfox – in extended lockdown for a period that was not justified by their conviction of the 1972 murder of Brent Miller.

LSP must have discretion to manage its institutions, modify or create new housing facilities, and move and house inmates based on best correctional practices. LSP has numerous housing options at its disposal, and decisions regarding placement of individual inmates must remain within the discretion of LSP officials absent some showing that narrowly drawn relief is necessary to address violation of a specific federal right. LSP officials draw on deep experience and knowledge involving the health, safety and security of inmates and staff, in making decisions on the placement of inmates within LSP.

The Magistrate Judge's Report characterizes the March, 2008 transfer of Wallace and Woodfox to Camp D as "nothing more than a voluntary and perhaps temporary cessation of the conduct which Plaintiffs allege is unlawful. . . ." Report p. 3. In support of that statement, the Report cites "evidence proving that Wallace is under a suspended sentence to return to extended lockdown, specifically Camp J, for two disciplinary infractions. . . ." Report p. 4. Conditions in Camp J, however, are different from conditions in CCR, and the lockdown review procedures for the two housing areas are different. This Court should not be asked to consider imposing a remedy in this action that would prevent State Defendants from assigning Inmates to <u>other</u> housing units – even other extended lockdown units – for disciplinary or other valid grounds. Inmates might, for example, be held in administrative segregation for an extended period for their own protection. They might be placed in a working cell block for an extended transition period. Inmates might be held in other single cell environments (such as Camp J) for disciplinary purposes. LSP might transfer Inmates to extended lockdown if an inmate is to be retried or involved in other civil or criminal court proceedings. These housing decisions are not properly before the Court. This Court should not be asked to dictate other housing units to which Inmates might be transferred, and this Court should not be asked to dictate the grounds that might justify LSP in transferring Inmates to other housing units.[9]

The Magistrate Judge's Report concludes that the Inmates' claims are not moot because the Court must retain authority to grant injunctive relief in the future with respect to future transfers of these Inmates to other extended lockdown units on other grounds. Such broader

---

[9] Again, in their Second Amending Complaint, Wallace and Woodfox sought injunctive relief to prevent their continued housing in CCR "without independent intervening cause other than the original reason for the classification. . . ." Rec. Doc. No. 36.

injunctive relief, however, is expressly prohibited by federal law limitation on prospective relief.[10]

    18 U.S.C. § 3626(a)(1)(A) provides, in part:

> "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."

Injunctive relief is no longer necessary to prevent Wallace and Woodfox from being held in CCR based on the 1972 murder. Any further or additional injunctive relief would directly violate in 18 U.S.C. § 3626(a)(1)(A).

    The issue presented in State Defendants' motion for partial summary judgment is whether Inmates' claim for injunctive relief has been mooted by the Inmates' transfer to Camp D six months ago. It is unrealistic and offensive to suggest that – after Wallace and Woodfox have been moved out of CCR and after they have been living in a dormitory setting for six months – they would be returned to CCR for no reason. It is unfair and inappropriate to assume that State Defendants would act arbitrarily – or worse – by returning Inmates to CCR without any cause. Such action by the State Defendants "could not reasonably be expected. . . ." *United States v. Concentrated Phosphate Export Association*, 393 U.S. 199, 203 (1968) (quoted by the Report at p 4); *Gates v. Cook*, 376 F.3d at 337.

---

[10] Any order enjoining or limiting the authority of State Defendants to transfer Wallace or Woodfox in the future clearly would constitute "prospective relief" within the meaning of the Prison Litigation Reform Act. 18 U.S.C. § 3626(g)(4) defines "prospective relief" as "all relief other than compensatory monetary damages."

The decision to transfer Wallace and Woodfox to CCR and to hold them in lockdown for an extended period was a reasonable and entirely appropriate response to their convictions of the 1972 murder of Brent Miller. LSP likewise acted appropriately and within its discretion in moving these Inmates to Camp D when that facility became available earlier this year. There is no "reasonable expectation" that Wallace or Woodfox would be returned to CCR without justification.

## III. CONCLUSION

At the time this suit was filed, the three plaintiffs were being held in extended lockdown at CCR. Wallace and Woodfox seek to enjoin the State Defendants from continuing to hold them in CCR based solely on the 1972 murder of Brent Miller. Wallace and Woodfox now have lived in a dormitory at Camp D since March, and there is no reasonable likelihood that they would now be returned to CCR solely based on the 1972 murder.

Inmates are not exposed to conditions that remotely resemble the conditions that formed the basis for the allegations made in this lawsuit. There is no basis to presume that the State Defendants would act arbitrarily or in bad faith in future housing decisions. State Defendants must have wide discretion in housing inmates sentenced to their custody.

For all of these reasons, the Magistrate Judge's Report dated October 15, 2008 should be rejected and should not be adopted by this Court. The Inmates' claims for injunctive relief are moot and should be dismissed, with prejudice. State Defendants' Motion for Partial Summary Judgment should be granted.

>Respectfully submitted:
>
>**JAMES "BUDDY" CALDWELL**
>Louisiana Attorney General
>
>*/s/ M. Brent Hicks*
>M. Brent Hicks, TA, La Bar Roll 23778
>Richard A. Curry, La Bar Roll 4671
>*McGlinchey Stafford, PLLC*
>14th Floor, One American Place
>Baton Rouge, Louisiana 70825
>Telephone: (225) 383-9000
>*Attorneys for State Defendants*

**CERTIFICATE OF SERVICE**

**I CERTIFY** that a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to George Kendall, Esq. and William Quigley, Esq. by operation of the court's electronic filing system.

Baton Rouge, Louisiana, this 28th day of October, 2008.

>*/s/ M. Brent Hicks*
>M. Brent Hicks