UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROBERT KING WILKERSON, ET AL. | ) ) ) ) | CIVIL ACTION NUMBER 00-0304-C-M3 |
| Plaintiffs, | ) ) ) | CHIEF JUDGE TYSON |
| VS. | ) ) | MAGISTRATE JUDGE DALBY |
| RICHARD STALDER, ET AL. | ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS  PLAINTIFFS' THIRD AMENDED COMPLAINT**

**MAY IT PLEASE THE COURT:**

Plaintiffs, by and through undersigned counsel, for the reasons submitted below,

respectfully oppose Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint.

Defendants urge the Court to dismiss "all claims" in the Third Amended Complaint on

grounds of failure to exhaust, res judicata and qualified immunity.  (Doc. No. 295 at 1).

Defendants never indicate explicitly the Rule 12(b) vehicle they use to seek dismissal.

Defendants also assert that they "reserve the right" to file another motion pursuant to Rule

12(b)(6) in the event that the Court does not grant their instant motion to dismiss.  (Doc. No. 295

at 7, n. 16).   In this Circuit, each of the defenses Defendants have raised thus far is considered

pursuant to Rule 12(b)(6).  *See, e.g., Oaxaca v. Roscoe*, 641 F.2d 386, 391-92 (5th Cir. 1981)

(holding that a defense for failure to exhaust administrative remedies should be addressed under

Rule 12(b)(6), not Rule 12(b)(1));  *Darby v. Dallas County Sheriff*, No. 3:06-CV-1928-K(BH),

2007 WL 2241751 (N.D. Tex. Aug. 3, 2007) (noting that Rule 12(b)(6) is the proper vehicle for

analyzing a failure to exhaust defense under the Prisoner Litigation Reform Act (PLRA));

*Aldridge v. U.S.*, No. 06-CV-0050-R, 2006 WL 2423417, *2, n.2 (N.D. Tex. Aug. 22, 2006) (observing that when res judicata is raised on a motion to dismiss it should be considered a motion to dismiss under Rule 12(b)(6)); *and see Baker v. Putnal*, 75 F.3d 190, 197 (5th Cir. 1996) (recognizing that in the Fifth Circuit a qualified immunity defense should be analyzed under Rule 12(b)(6) or a Rule 56 motion for summary judgment). Defendants cite to no authority granting them permission to reserve a right to file successive Rule 12(b)(6) motions to dismiss, and none exists.

According to Defendants, the entire pleading should be dismissed pursuant to Federal Rule of Civil Procedure 12(b) on the grounds that: (1) Plaintiffs never sought administrative remedies to resolve a "'new' mistreatment" claim for events that occurred while Defendants were residing in the Camp D dorm, and not in extended lockdown (Doc. 295 at 21); and Plaintiffs' "new 'excessive disciplinary sanctions'" claim was exhausted only after Plaintiffs' Third Amended Complaint was filed (*id.* at 23); (2) that res judicata bars Plaintiffs' Eighth Amendment claims for compensatory and punitive damages, as well as claims against Defendants Staldler and LeBlanc (*id.* at 19); and, (3) that Plaintiffs have not satisfied a heightened pleading standard to overcome qualified immunity (*id.* at 9) by identifying clearly established law with respect to new claims for objectively unreasonable mistreatment and excessive disciplinary sanctions claims. (*Id.* at 13-14, 16).

Plaintiffs, for the many reasons set forth below, oppose each of Defendants' proffered grounds for dismissing the Third Amended Complaint. Plaintiffs submit that the Defendants have had longstanding notice that Plaintiffs challenge their conduct—continually incarcerating Plaintiffs' in conditions akin to solitary-confinement for no legitimate penological interests—as constitutionally impermissible. Since this conduct is at the heart of the newly asserted

allegations in the Third Amended Complaint, no new exhaustion is necessary.   Moreover,

Plaintiffs, out of both an abundance of caution and a desire to grieve their denial of phone

privileges, have in fact grieved their complaint about Defendants' conduct in the Fall 2008 and

their placement in extended lockdown.   That grievance was fully exhausted prior to the date that

the Third Amended Complaint was filed.   With respect to Defendants' res judicata defense,

Plaintiffs recognize that law of the case doctrine bars Plaintiffs' Eighth Amendment claims for

compensatory and punitive damages—claims Plaintiffs voluntarily released from the case with

the Court's approval.   Plaintiffs had no intention of challenging their own voluntary release of

Eighth Amendment monetary claims by amending their pleading a third time.   Finally, regarding

the qualified immunity defense, Plaintiffs respectfully assert that Defendants are relitigating

issues the Court has already resolved.   The clear merits of these claims notwithstanding,

Plaintiffs clarify their Third Amended Complaint by voluntarily dismissing their request for

monetary damages (compensatory and punitive) in connection with their First Amendment and

Equal Protection claims.   Thus, as further discussed *infra*, and for the reasons previously

explained by the Court, qualified immunity does not defeat Plaintiffs' pleading.


## I. FACTUAL BACKGROUND

The instant litigation is nine years old, and Plaintiffs recognize that this Court is familiar

with the factual background.   Recent factual developments and discovery prompted Plaintiffs to

move the Court for permission to file a Third Amended Complaint.   (Doc. No. 268).

Defendants' latest motion to dismiss fails to chronicle those developments, or to advise the Court

of additional subsequent developments in this case.  Plaintiffs do so briefly here, based upon information and belief[1]:

It is important to briefly recall the events of the past years which prompted Plaintiffs to file the Third Amended Complaint, and which inspire the Defendants' dismissal motion.  A year ago, the circumstances of this litigation could not have been more different.  After the Court denied the Defendants' summary judgment motion concerning Plaintiffs' Eighth Amendment claims, (Doc. No. 233), in March, 2008, LSP officials transferred Plaintiffs Wallace and Woodfox out of CCR and its 23-hour-a-day closed cell confinement, and placed them and a dozen other former CCR inmates in a specially-created Camp D maximum security dormitory.  Plaintiffs adjusted well to these less confining circumstances, and the Parties earnestly discussed settlement.

In the Fall of 2008, events in Plaintiff Woodfox's habeas corpus proceeding significantly altered these efforts.  In September, 2008, Judge Brady granted Mr. Woodfox full habeas corpus relief, and indicated that he would consider bail. *Woodfox v. Cain*, (M.D. La.) Civ. A. No. 06-789, Doc. 50.  One week after a bail hearing at which the State sought additional time to supplement the record with, *inter alia*, deposition testimony from Defendant Cain, the Defendants withdrew from settlement negotiations in this case.  Defendant Cain's 2008 deposition contains numerous assertions about Plaintiffs Woodfox and Wallace that are sharply inconsistent with his 2006 deposition in this matter.  In one instance, Cain asserted that Woodfox needed, for security reasons, to be held in a cell.  At the time of this statement, however, Plaintiff Woodfox had not been in a cell for seven months, and had lived peacefully and behaved

---

[1] Much of what Plaintiffs review here is already a part of the record before the Court.  However facts relating to the closing of the Camp D dormitory, and Plaintiff Wallace's move to Elayne Hunt Correctional Center are not yet before the Court by sworn affidavit or declaration.

appropriately in the Camp D dorm setting with more than a dozen other prisoners.  Three weeks

later, due to violations of three-party phone policy and—with respect to Plaintiff Woodfox—for

making "inflammatory statements" that were "derogatory" towards the New Orleans Police

Department and the Attorney General's Office, and provoked unfavorable public opinion,

Plaintiffs Wallace and Woodfox were removed from the dorm and placed in the dungeon for

nearly six weeks.[2]

      In March, 2009, LSP closed the Camp D dorm, and on March 17, 2009, Plaintiff Wallace

was moved from LSP to Elayne Hunt Correctional Facility ("Hunt"), where he is currently held

under CCR-like extended lock-down conditions.  Recently, he became subject to full strip search

whenever he leaves the exercise yard, notwithstanding that he is under constant visual

supervision.  Plaintiff Woodfox remains at CCR at LSP.

---

[2] On December 19, 2008 and December 20, 2008, LSP held disciplinary hearings and found
Plaintiffs Wallace and Woodfox guilty of charges that purported to relate to making three-party
phone calls, and found Plaintiff Woodfox guilty of "making inflammatory statements."  They
were sentenced to 24 and 26 weeks of loss of phone privileges, and were sent indefinitely back to
extended lockdown at CCR.

## II. LEGAL STANDARDS

### A.  A 12(b)(6) MOTION TO DISMISS

Fed. R. Civ. P. 12(b)(6) permits dismissal of a pleading which fails to state a claim upon which relief may be granted.  In the Fifth Circuit, Rule 12(b)(6) motions to dismiss are disfavored and rarely granted.  *Sosa v. Coleman,* 646 F.2d 991, 993 (5th Cir.1981).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings.  *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir.1999), *cert. denied,* 530 U.S. 1229, 120 S.Ct. 2659, 147 L.Ed.2d 274 (2000).  Pleadings must show specific, well-pleaded facts, not merely conclusory allegations, to avoid dismissal.  *See Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992).  The facts, pleaded and accepted as true, must also be sufficient to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 555, 570 (2007)).

As the Fifth Circuit has explained, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly,* 550 U.S. at 556).  This "plausibility" standard requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  The trial court must liberally construe the claims in the light most favorable to the plaintiff.  *See Doe v. MySpace, Inc.,* 528 F.3d 413, 418 (5th Cir. 2008); *see also Iqbal,* 129 S.Ct. at 1949-50.  In sum, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Iqbal,* 129 S.Ct. at 1949-50.

Because the Rule 12(b)(6) standard requires that the trial court refrain from considering information outside of the complaint, the Fifth Circuit has noted that each of the grounds

offered by Defendants in support of their instant motion to dismiss—for failure to exhaust, res judicata, and qualified immunity—are all affirmative defenses which are usually more appropriately raised in a Rule 56 motion for summary judgment than in a motion to dismiss. *See, e.g., Jones v. Block,* 549 U.S. 199, 211, 214-17 (2007) ("inmates are not required to specially plead or demonstrate exhaustion in their complaints); *Hall v. Hodgkins*, 305 Fed.Appx. 224, 228, n.1 (5th Cir. 2008) (relying on Fed. R. Civ. P. 12(d) to hold that failure to exhaust—and all affirmative defenses—may serve as the proper basis for a Rule 12(b)(6) motion to dismiss—as opposed to a Rule 56 motion for summary judgment—only when the district court exclusively considers those pleaded and judicially noticed facts that are not outside the pleadings); *Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 570, n.2 (5th Cir. 2005) ("generally a res judicata contention cannot be brought in a motion to dismiss; it must be pleaded as an affirmative defense") (citations omitted); *and see C.H. v. Rankin County Schoool Dist.*, No. 3:08CV84,  2009 WL 900726, *3 (S.D. Miss. 2009) (noting that although qualified immunity should be determined at the earliest possible stage of litigation, if qualified immunity is raised in a motion to dismiss, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'") (citing *Senu-Oke v. Jackson State University*, 283 Fed. Appx. 236, 239 (5th Cir. 2008)) (emphasis in original).

In this case, the Third Amended Complaint alleges facts which are not only sufficient to establish that Plaintiffs are plausibly entitled to relief, but are sufficient to defeat Defendants' failure to exhaust, res judicata and qualified immunity grounds for dismissal.

## B.  FAILURE TO EXHAUST

As a threshold matter, Plaintiffs note that, notwithstanding this Court's Order of April 3, 2009 (Doc. No. 288), Defendants have once again raised a premature motion on the basis of failure to exhaust.  Defendants raised failure to exhaust as a basis for opposing Plaintiffs' Motion for Leave to file a Third Amended Complaint.  (Doc. No. 284 at 12).  The standard of legal sufficiency that applies in the context of a motion for leave to amend is precisely the same standard that applies under Rule 12(b)(6).  *Stripling v. Jordan Production Co. LLC.*, 234 F.3d 863, 873 (5th Cir. 2000).  As the Court already indicated plainly when it declined to consider exhaustion at the leave to amend stage of the litigation, "it is unclear from the face of the complaint…whether it was necessary for plaintiffs to exhaust their administrative remedies with respect to the new claims asserted, or whether any administrative remedies were available to plaintiffs." (Doc. No. 288 at 3).   Plaintiffs respectfully submit that since failure to exhaust is not clear on the face of the Third Amended Complaint, it is inappropriately raised at this point as a basis for a motion to dismiss.

Defendants' failure to exhaust defense not only remains inappropriate at this stage of the litigation, it remains meritless.  Defendants' failure to exhaust defense is meritless because:  (1) the Third Amended Complaint revolves around the same central claim that this Court long ago found exhausted, and thus no additional exhaustion was necessary; (2) even if there was a new claim in the Third Amended Complaint that was not already exhausted, it became exhausted in March 2009, prior to the filing of the Third Amended Complaint, and (3) even if there was a new claim that was not exhausted prior to the filing of the Third Amended Complaint, the affirmative defense of exhaustion is subject to exceptions, which apply here and support allowing Plaintiffs to proceed with their Third Amended Complaint.

8

Section 1997e(a) of Title 42 of the United States Code, as amended by the Prison Litigation Reform Act of 1996 (PLRA), provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).   Under this requirement, inmates "must exhaust such administrative remedies as are available, whatever they may be." *Alexander v. Tippah County,* 351 F.3d 626, 630 (5th Cir. 2003) (citations and internal quotation marks omitted), *cert. denied,* 541 U.S. 1012, (2004).   "Available administrative remedies are exhausted in compliance with the PLRA when the time limits for the prison's response set forth in the prison grievance procedure have expired." *Deemler v. Stalder,* No. 06-1775-A, 2007 WL 4589799, *1 (W.D. La. Nov. 27, 2007) (citing *Gates v. Cook,* 376 F.3d 323, 332 (5th Cir. 2004)).

As Plaintiffs' papers in reply to Defendants' opposition to Plaintiffs' Motion for Leave to File a Third Amended Complaint (*see* Doc. No. 287 at 13-19) previously discussed, while § 1997(e) does not explain how specific a prisoner's administrative grievance must be, this Circuit has explicitly held that the PLRA does not require that a prisoner present legal theories of liability in his or her grievance. *Johnson v. Johnson,* 385 F.3d 503, 516, 517-518 (observing that a grievance is sufficient to the extent that it gives officials "a fair opportunity" to address the factual problem that will form the basis for a lawsuit).   Accordingly, in *Johnson,* the Fifth Circuit determined that, as to claims arising after an exhausted grievance, the original exhausted grievance can be sufficient to exhaust those new claims that arise from continuing conduct. *Id.* at 521 (deciding that, in light of the fact that the plaintiff previously grieved prison officials' failure to protect him from sexual assaults, "we do not believe that he was required to file

repeated grievance reminding prison officials that he remained subject to attack in the general population.").

Under this principle, for example, prison inmates have been permitted to amend and consolidate their pleadings about prison conditions to include *prospective* class members. *See Jones v. Goord*, No. 95CIV8026WHP, 2000 WL 290290, *3 (S.D.N.Y. 2000) (permitting plaintiffs to amend and consolidate their earlier pleadings—which asserted that the practice of double-celling inmates, when combined with other adverse conditions, was impermissible—to include prospective class members because the "factual contours of this challenge are present in plaintiffs' initial complaints, and the scope of injunctive relief sought in the amended and consolidated complaint closely parallels the relief requested in plaintiffs' earlier pleadings" and "[t]hus its essential claim concerning DOC's double-celling policy remains the same.").

In the same vein, challenges to prison policies and practices do not need to be re-exhausted with each application. *Aiello v. Litscher*, 104 F.Supp.2d 1068, 1074 (W.D. Wisc. 2000) ("Plaintiffs' challenge [was] not to a particular application of the regulation, but to the regulation itself. Each alleged unconstitutional application is not treated as a separate grievance but rather as evidence that the regulation is not reasonably related to legitimate penological interests, either as interpreted or as applied by defendants.")  In other words, if an inmate has exhausted a grievance which "at least reasonably indicate[d] a problem," the inmate does not need to perpetually re-exhaust his or her complaint about that problem. *Johnson*, 385 F.3d at 518.

**<u>Plaintiffs Had Already Exhausted All Claims in Their Third Amended Complaint</u>**

In this case, although new factual developments and discovery have given Plaintiffs a basis to refine and amend their earlier pleading, Plaintiffs' essential claim concerning Defendants' conduct—continually incarcerating Plaintiffs in solitary-confinement-like conditions without legitimate penological justification—remains the same. It is the law of the case that this grievance has been exhausted in satisfaction of the PLRA.[3] At the same time, Defendants' new illegitimate penological justifications for this conduct have given rise to new theories of legal liability. Because the PLRA does not require that theories of legal liability be exhausted—indeed, it does not require that an inmate present legal theories in his or her grievance at all—Plaintiffs do not need to further exhaust anything in order to raise the allegations added in their Third Amended Complaint. *Johnson v. Johnson*, 385 F.3d 503, 516, 517-518.

Defendants first err in their argument that Plaintiffs have failed to exhaust properly the claims raised in their Third Amended Complaint because they conflate Plaintiffs' factual claims for relief with Defendants' legal liabilities. Plaintiffs' essential factual claims for relief have already been exhausted; the new legal theories of liability propounded by the Third Amended Complaint, under the First Amendment and the Equal Protection Clause, need not be. Thus, Defendants erroneously argue that Plaintiffs have raised new, improperly exhausted "mistreatment" and "excessive disciplinary sanctions" claims, not recognizing that such factual claims in this case are not new, only the legal theories which support Defedants' liability are. (Doc. No. 295 at 21, 23).

---

[3] Defendants themselves so concede. (Doc. No. 46 at 17, n.21). ("[D]efendants conceded at oral argument that the applicable requirements [of exhaustion] have been satisfied.")

For example, Defendants state that, "[t]he inmates would now assert new Constitutional claims based on 'mistreatment' and other 'adverse actions' that occurred long after inmates had been moved out of CCR.  The new claims of 'mistreatment' in Camp D, Eagle Dorm arose in the dormitory – not in extended lockdown."  (Doc. No. 295 at 21) (emphasis in original). Defendants also assert that Plaintiffs allege in their Third Amended Complaint a claim for "excessive disciplinary sanctions" for the "first time."  However, Defendants overlook the central fact alleged in the single paragraph of the Third Amended Complaint that concerns both what Defendants carve out and label a "mistreatment" claim, in addition to what Defendants carve out and label a separate "excessive disciplinary sanctions claim."

That paragraph makes it clear that the mistreatment and excessive disciplinary sanctions Plaintiffs complain of culminated in being *impermissibly placed back into solitary-confinement-like conditions without legitimate penological interests.*  The paragraph reads:

> Mr. Wallace and Mr. Woodfox have been the victims of targeted and ongoing mistreatment by LSP officials.  Among other things, in mid-November 2008, Mr. Woodfox was forced to urinate with a bathroom door open in close proximity to two female friends who were visiting him.  In addition, in mid-December 2008, Mr. Wallace and Mr. Woodfox were given excessive disciplinary sanctions for minor alleged rule violations.  According to disciplinary reports concerning these alleged rule violations, *plaintiffs were placed in administrative segregation and then returned to further extended lockdown* for, inter alia, self-identifying as members of the Black Panther Party, and for making statements that "provoke unfavorable public opinion" about LSP and the Attorney General's office, as well as statements that are "derogatory" to the New Orleans Police Department and District Attorney's Office.

(Doc. No. --- ¶ 26).

Plaintiffs did not amend their pleadings to allege a mistreatment claim that centered on public urination, or an excessive disciplinary sanctions claim which is about a loss of phone privileges.  At the core of Plaintiffs' new allegations is a very salient, not-new fact, a fact

common to the allegations raised in prior pleadings, and a fact which Defendants repeatedly ignore: in the Fall of 2008, Defendants placed Plaintiffs into administrative segregation and extended lockdown conditions for no legitimate penological reason. New details, about forced public urination, or about disproportionate disciplinary sanctions are not stand-alone claims; they merely provide probative support for Plaintiffs' old and new theories of legal liability.

By their Fall 2008 actions, Defendants continued a course of conduct that has been exhaustively grieved since the inception of this suit—a suit that contemplates over three decades of incarceration in extended lockdown conditions without legitimate penological justification. *Cf. Deherrera v. Mahoney*, No. CV 06-69-H-DWM-RKS, 2008 WL 5435322, *4-5 (D. Mont. Aug. 1, 2008) (dismissing portions of an amended complaint because the new allegations were unexhausted and had "nothing to do with [the plaintiff's] original allegations," did not "arise out of the same transaction, occurrence, or series of transactions and occurrences," and "lack a question of law or fact common to all Defendants.")

Not only have Plaintiffs, as a matter of law, administratively exhausted their grievance that Defendants either have incarcerated or are incarcerating Plaintiffs in conditions tantamount to solitary-confinement without legitimate penological justification, but the Parties are engaged in a federal lawsuit over the issue that has been proceeding for nine years. This is simply not a case where the Defendants have not been afforded the opportunity to address Plaintiffs' contention that Defendants are impermissibly confining them in conditions tantamount to solitary-confinement. *Cf. Rodriguez v. U.S. Dept. Of Justice* 2009 WL 1241618, *3 (3d Cir. 2009) (granting summary judgment against the plaintiff because "[a]t no level has the prison grievance system been afforded the opportunity to address" the plaintiff's factual claim that he needed surgery). Indeed, to hold otherwise would enable Defendants to perpetually evade

review of their conduct by pulling Plaintiffs in and out of solitary-confinement-like conditions and offering new pre-textual reasons for doing so every time. *See, e.g., Lewis v. Washington*, 197 F.R.D. 611-12, 614 (N.D. Ill. 2000) (finding that inmates who had already properly grieved their placement in protective custody status were not required to administratively exhaust every specific mistreatment and condition they complained of while under such placement, and explaining: "If the defendants' theory is that the plaintiffs must administratively exhaust each and every grievance they have [...], this is incorrect.  Otherwise, defendants could obstruct legal remedies to unconstitutional action by subdividing the grievance [...].");  (*and cf.* Doc. No. 262 at 6) (denying motion to dismiss on mootness grounds and observing, "[i]n cases of ongoing transgressions which are significantly impacted by the duration of the conduct, the defendants could simply momentarily cease the offending conduct, [...] and then resume the prohibited conduct. [...]  In this case, as the defendants are well aware, one of the main issues is the duration of confinement and its cumulative effect.") (Dalby, MJ.) (adopted by Tyson, J. *See* Doc. No. 271)).

In this case, Plaintiffs' challenge is not to a particular basis for putting Plaintiffs in extended lockdown but, as Plaintiffs have repeatedly asserted, to the practice of continually incarcerating them under such conditions without a legitimate penological interest.  Each time Defendants place Plaintiffs in extended lockdown does not require a separate grievance.  That there is evidence of new purported grounds for the placement—evidence which, first, supports Plaintiffs' theory that Defendants have no legitimate penological interests in incarcerating Plaintiffs in extended lockdown and which, second, gives rise to alternative theories of legal liability—does not change the nature of the problem Defendants are on longstanding notice of.  The "problem" being that Plaintiffs have been incarcerated for over 30 years under solitary-

confinement-like conditions without legitimate penological interests.  Defendants simply can not

credibly argue that they have not been put on notice that Plaintiffs have "at least reasonably

indicate[d] a problem" with their incarceration in extended lockdown. *Johnson*, 385 F.3d at 518.

Because the critical factual contours of Plaintiffs' Third Amended Complaint are the same as

Plaintiffs' prior pleadings, and the scope of relief requested in each remain the same, Plaintiffs

do not need to further exhaust anything to prevail on their Third Amended Complaint. *See Jones*

*v. Goord*, No. 95CIV8026WHP, 2000 WL 290290, *3 (S.D.N.Y. 2000).

### Plaintiffs Exhausted their Administrative Remedies Regarding The Disciplinary Sanctions Levied Against Them For Three-Way Phone Calling and Provoking Unfavorable Public Opinion Prior to the Filing of the Third Amended Complaint

Even if this Court finds on Defendants' Rule 12(b)(6) motion that further grievances

were necessary to exhaust newly asserted claims, Plaintiffs have administratively grieved[4] the

sanctions levied against them for three-way phone calling and, with respect to Plaintiff Woodfox,

for making "inflammatory statements" and "provoking unfavorable public opinion . (*See* Doc.

No. 295, Exh. 4).  Contrary to Defendants' contention, this grievance was exhausted *prior* to the

filing of the Third Amended Compliant.

Defendants' proposition that Plaintiffs Third Amended Complaint should be dismissed

because Plaintiffs did not exhaust until after the Third Amended Complaint was filed is simply

wrong. (Doc. 295 at 23).  Making this factual determination requires that this Court consider

matters outside the pleading (as is made plain by the numerous attachments to Defendants'

motion).  However,  even considering these documents, Plaintiffs Wallace and Woodfox

exhausted their administrative remedies on March 10, 2009 and March 6, 2009.  (Doc. No. 295

at 24).  While Defendants argue that "[administrative] review was still pending when the Third

Amended Complaint was filed," they never give a clear indication of the date prior to March 6,

---

[4] Defendants concede as much.  (Doc. 295 at 23).

2009 when they believe the Third Amended Complaint was filed; Defendants do state, however, that "Plaintiffs raised these issues in their Third Amended Complaint in December of 2008." What was before the Court in December of 2008 was a *proposed* amended pleading.  In fact, using the March 6, 2009 and March 10, 2009 benchmarks, Plaintiffs' exhaustion was complete 28 days and 30 days, respectively, before the Third Amended Complaint was actually filed on April 3, 2009.  *See* Local Rule LR 5.7.01M[5]; *and cf. Lester v. Exxon Mobil Corp.*  2007 WL 1029507, 2 (E.D. La.  2007) (determining that, under Louisiana law, an amended complaint is not deemed "'filed'" while a motion for leave to make the amendment is pending).

In any event—even if further exhaustion was necessary *and* even if Plaintiffs did not exhaust their grievances until after the Third Amended Complaint was filed—the dismissal of unexhausted claims should be without prejudice.  Asking the Court to dismiss Plaintiffs' Third Amended Complaint on the grounds that exhaustion was not complete until after the amended pleading was filed is asking the Court to put sheer formalism over substance.  *See Baca v. Joshi*, No. 07-CV-2031, 2008 WL 2811317, *6 (N.D. Tex. July 28, 2008) ("When a prisoner files suit, '[a]bsent a valid defense to the exhaustion requirement,' that suit must be dismissed without prejudice.") (citing *Wendell v. Asher*, 162 F.3d 887, 890-90 (5th Cir. 1998)); *and see Gonzales v. Smith*, No. 06-11215, 2008 WL 417735, *2 (E.D. La. Feb. 13, 2008) (dismissing a complaint *with* prejudice because the exhaustion of administrative remedies was too late for the claims in that case and "'[w]hile failure to exhaust administrative remedies *usually results in a dismissal without prejudice*, when exhaustion is no longer possible, dismissal may be with prejudice.'")

---

[5] Local Rule 5.7.01M directs that the filing of papers "shall be accomplished as set forth in the administrative procedures guide for the U.S. District Court, Middle District of Louisiana, which is authorized by General Order 2005- 06."  The Middle District of Louisiana Administrative Procedures Guide in turn states that, "[e]lectronically filed documents will be deemed to be filed as of the date and time stated on the Notice of Electronic Filing issued by the System, and is available at http://www.lamd.uscourts.gov/cmecf/information/adminprocedures/index.htm#IA.

(emphasis added) (citing *Dawson Farms, LLC v. Farm Serv. Agency,* 504 F.3d 592, 607 (5th Cir. 2007) and *Johnson,* 468 F.3d at 280-81).   The sole authority cited by Defendants for the proposition that dismissal should be *with* prejudice was not only abrogated by the Supreme Court in *Jones v. Block,* 549 U.S. 199 (2007), it also did not involve a case where litigation between the parties was already pending.  (Doc. 295 at 25).   Since, in this case, such litigation has been pending—for nine years—and since none of the claims in this case expired before exhaustion was completed, if the Court is inclined to dismiss Plaintiffs' Third Amended Complaint for failure to exhaust, the Court can use its discretion to dismiss that pleading without prejudice and allow Plaintiffs to re-file.

### The Exhaustion Requirement is Subject to Challenges Which Support Allowing Plaintiffs to Litigate Their Third Amended Complaint

Finally, as Plaintiffs previously discussed in their reply papers to Defendants' opposition to Plaintiffs' motion for leave to amend their pleading (Doc. No. 287 at 19), while the Fifth Circuit takes a "strict approach to the exhaustion requirement," it has recognized that the doctrines of waiver, estoppel, or equitable tolling may overcome the exhaustion requirement. *Johnson v. Ford*, 261 Fed. Appx. 752, 755 (5th Cir. 2008) (*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003) (overruled by implication on other grounds in *Jones v. Bock*, 549 U.S. 199, 217-218 (2007)).   Further, and particularly relevant in this case, exhaustion requirements may be excused where dismissal would be inefficient and would not further the interests of justice or the purposes of the exhaustion requirement. *Id.* (*citing Underwood v. Wilson*, 151 F.3d 292, 296 (5th Cir.1998) (overruled by implication on other grounds by *Jones*, 548 U.S. at 217-218.)); *see also Francisco v. Reese*, No. 5:08cv214DCB-MTP, 2009 WL 77458, *3 (S.D. Miss. 2009).

In this case, the equitable considerations of judicial efficiency and the interests of justice would strongly support allowance of Plaintiffs' amended complaint based on the new facts regarding Defendants' continuing conduct.  Not only would Plaintiffs be far more prejudiced by an adverse ruling from the Court on this matter than Defendants (see *supra* at 14, discussing the Court's recognition that in this case a key issue is the duration of confinement and its cumulative effect), but Defendants have nearly-absolute, unilateral power over Plaintiffs.  They injected these new facts into this litigation by exercising their power to move Plaintiffs back into extended lockdown indefinitely—fully aware that this suit is pending—supposedly for the rule violation of improper three-way phone-calling and for provoking unfavorable public opinion.[6]  Yet, Defendants seek to evade judicial review of that decision.

### C.  RES JUDICATA

Defendants ask this Court to take the drastic step of dismissing the Third Amended Complaint under Rule 12(b)(6) on the grounds of res judicata because the pleading "reasserts" an Eighth Amendment claim; a claim that Defendants assert was dismissed "in its entirety" by stipulation between the parties on October 25, 2007.  (Doc. No. 295 at 18-19; Doc. No. 247).

Again, Defendants not only seek to litigate their res judicata affirmative defense at the wrong stage of litigation, they bring a wholly meritless defense before the Court.  Defendants misapprehend the Court's Order of October 25, 2007.   The Order did not dismiss Plaintiffs' Eighth Amendment claims "in their entirety," but only released any claim for monetary damages in the form of punitive or compensatory damages.  (Doc. No. 247).  Indeed, the stipulation entered into by the Parties is aptly entitled "Joint Stipulation of Plaintiffs' *Partial* Dismissal,

---

[6] Indeed, the authorities cited and explanatory parentheticals provided by Defendants confirm the disproportion of Plaintiffs' punishment for improper three-way calling.  (Doc. 295 at 14, n.53).   In these cases, inmates were penalized by some days loss of good time and/or loss of telephone privileges.

With Prejudice, *of Damages Request* and Voluntary Appeal Dismissal." (Doc. No. 248) (emphasis added).  Thus, to be perfectly clear, Plaintiffs never withdrew their Eighth Amendment allegations, they withdrew their request for monetary damages with respect to those allegations.  Eighth Amendment liability stands in this case, and Plaintiffs' request for injunctive relief very much remains a part of this suit.

The law of the case doctrine bars reexamination of the Court's October 25, 2007 Order dismissing Plaintiffs' request for compensatory and punitive damages as they relate to an Eighth Amendment violation.  Plaintiffs were not seeking to resuscitate this request.  In proposing to amend the complaint a third time, Plaintiffs merely added, without deleting, allegations to the previously filed Second Amended Complaint.  Plaintiffs were operating under the presumption that the Parties understood that the judicial rulings issued in the interim remain unchallenged unless appropriate procedural devices, like a motion for reconsideration, indicated otherwise.

If, in the Court's view it is appropriate for Plaintiffs to re-stipulate to the dismissal of their Eighth Amendment monetary damages request, Plaintiffs are certainly prepared to do so.

## D.  QUALIFIED IMMUNITY

Defendants' argument that Plaintiffs' Third Amended Complaint should be dismissed because Defendants are entitled to qualified immunity is—yet again—not only raised at the wrong stage of litigation, it is entirely unavailing.

This Court is plainly familiar with applicable legal standards for evaluating the affirmative defense of qualified immunity, and has had myriad opportunities to visit and revisit those standards in the instant litigation alone.  As this Court has observed:

> Defendants are entitled to qualified immunity only, "insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Although plaintiffs must do more than offer conclusory allegations that the defendants violated a clearly established constitutional right, a public official is not entitled to qualified immunity when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 482 U.S. 635, 640 (1987). "The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer,* 536 U.S. 730, 736 (2002), citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001).

(Doc. No. 233 at 43-44) (Dalby, MJ.) (adopted by Tyson, J.) (Doc. No. 242).

It is Plaintiffs' position that, as this Court previously found with respect to the Eighth Amendment allegations, Plaintiffs' Third Amended Complaint pleads a compelling case for civil rights violations of First Amendment and Equal Protection rights; this pleading is adequate to withstand a qualified immunity defense.[7] However, Plaintiffs' interests in an "expeditious

_____

[7] The law is clearly established, for example, that Defendants cannot indefinitely confine Plaintiffs in extended lockdown conditions on grounds that constitute content or viewpoint discrimination. "When the government targets not subject matter but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant." *Rosenberger v. Rector,* 515 U.S. 819, 829 (1995). Indeed, content-based restrictions on speech are "presumptively invalid." *Conant v. Walters,* 309 F.3d 629, 637-38 (9th Cir. 2002) (citing *R.A.V. v. St. Paul,* 505 U.S. 377, 382 (1992)).

Thus, while Plaintiffs may not have a constitutional right to speak to the media or make three-way phone calls (*see* Doc. No. 295 at 14-15 (observing that Plaintiffs do not have a constitutionally protected right to engage in three-way phone calling or contact the media)), they do have a constitutionally protected right—one that is clearly established—not to be confined in solitary-confinement-like conditions because they speak about their particular viewpoints which are unfavorable to the State Defendants, or because they express their political leanings and affiliations. These rights remain robust, even in prison settings. *See Pell v. Procunier,* 417 U.S. 817, 826 (1974) (prison officials must be accorded wide latitude, even when they restrict speech, "[s]o long as… *no discrimination in terms of content is involved.*") (emphasis added) (citation omitted).

In addition, the law is equally clearly established that penological interests which are race-conscious and cannot withstand strict scrutiny are illegitimate, and it is objectively unreasonable to throw Plaintiffs in solitary confinement-conditions indefinitely on the basis of race-conscious action. *See Johnson v. California,* 543 U.S. 499 (2005) (holding that race conscious state action in prisons is subject to strict scrutiny.)

Moreover, contrary to Defendants' accusation that Plaintiffs "stubbornly refuse" to modify a false allegation and that Plaintiffs are insisting on falsely attributing words to Defendant Warden Cain (see Doc. No. 295 at 6), Plaintiffs indicated in their reply papers in support of their motion to refile their proposed Third Amended Complaint that they now stipulate that Defendant Warden Cain used the word "whites". (Doc. No. 287 at 5, n.2) As Plaintiffs indicated therein:

resolution" of this suit remains even more resolute than it was two years ago (when Plaintiffs

stipulated that monetary damages would not be sought in connection to their Eighth Amendment

allegations).  (Doc. No. 248).

Indeed, Plaintiffs never intended to inject into this suit requests for monetary damages (in

the form of compensatory and punitive damages) in connection with their newly raised First

Amendment and Equal Protection allegations.  Had Defendants followed the procedural steps

dictated by the Fifth Circuit for raising their qualified immunity affirmative defense, Plaintiffs

could have easily clarified their pleading in a Fed. R. Civ. P. 7(a) Reply.[8]  As it stands, Plaintiffs

now clarify their pleading with a Statement of Partial Withdrawal, Without Prejudice, of

Damages Request, pursuant to Fed. R. Civ. P. 41(a), attached hereto as Exhibit A.   This

voluntary dismissal releases monetary damages (compensatory and punitive) in connection with

---

> There has been an outstanding question regarding whether Warden Cain's October 2008 deposition testimony used the word "blacks," as originally transcribed by the court reporter, or "whites" to refer to the race of those who would chase after Plaintiff Woodfox if he were released from extended lockdown because he would recruit black inmates to "Black Pantherism."  (*See* Doc. No. 282 at 14-16; Doc. No. 274 at 6, n.7.)  Plaintiffs are prepared to change their proposed third amended complaint to reflect that Warden Burl Cain used the term "whites."  As Plaintiffs' have consistently contended, (Doc. No. 282 at 16), whether the term "white" or "black" was used is not at all dispositive of Plaintiffs' claims, or proposed amendments.  *See Johnson v. California*, 543 U.S. 499 (2005) (race conscious state action in prisons is subject to strict scrutiny).

[8]  Defendants mischaracterized Fifth Circuit pleading requirements in qualified immunity cases, stating that there is a heightened pleading standard.  Under *Schultea v. Wood,* 47 F.3d 1427, 1430 (5th Cir.1995) (en banc), when public officials sued in their individual capacities plead qualified immunity in a § 1983 case, the district court can require the plaintiff file a reply tailored to the assertion of qualified immunity under Fed. R. Civ. P.  7(a).  *Id; see also Brown v. Valmet-Appleton*,  77 F.3d 860, 863 (5th  Cir. 1996) ("As we recently explained, however, there no longer exists a *per se* "heightened" pleading requirement in qualified immunity cases. Rather, in such cases any requirement that a plaintiff clarify the allegations set forth in his or her complaint arises solely out of the district court's discretionary authority to order a reply to a defendant's proffer of a qualified immunity defense.") (citations omitted). In light of *Schultea*, a Rule 7(a) Reply must "allege[ ] with particularity all material facts on which [the plaintiff] contends [he or she] will establish [a] right to recovery ... includ[ing] detailed facts supporting the contention that the plea of immunity cannot be sustained." *Warnock v. Pecos County*, 116 F.3d 776, 779 (5th Cir.1997).

Plaintiffs' First Amendment and Equal Protection allegations.  For clarity, Plaintiffs do not

withdraw their request for monetary damages in connection with their Due Process claims.

### III. CONCLUSION

Not one of the grounds proffered by Defendants in support of their dismissal motion has

merit.  For all of the foregoing reasons, the undersigned respectfully request that your Honor

recommend denial of Defendants' motion to dismiss Plaintiffs' Third Amended Complaint.

Dated: June 11, 2009

Respectfully submitted,

Stephen F. Hanlon
HOLLAND & KNIGHT
2099 Pennsylvania Avenue, NW
Washington, DC
202.828.1871

George H. Kendall
Harmony I. Loube
Samuel Spital
HOLLAND & KNIGHT
195 Broadway, 24th Floor
New York, NY 10007
212.513.3358

Nicholas J. Trenticosta
LSBA Roll No. 18475
7100 St. Charles Avenue
New Orleans, LA 70118
504.864.0700

Counsel for Plaintiffs

By: s/Nick Trenticosta /GK

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing memorandum was filed electronically with the Clerk of the Court using the CM/ECF system this 11th day of June, 2009.  Notice of this filing will be sent to Richard A. Curry, Esq. and M. Brent Hicks, Esq. by operation of the court's electronic filing system.

/s/ George H. Kendall

George H. Kendall
HOLLAND & KNIGHT
195 Broadway, 24th Floor
New York, NY 10007
212.513.3358