UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ROBERT KING WILKERSON, ALBERT WOODFOX, HERMAN WALLACE

VERSUS

RICHARD L. STALDER, ET AL.

CIVIL ACTION

NUMBER 00-304-RET-DLD

## MAGISTRATE JUDGE'S REPORT

This prisoner action brought under 42 U.S.C. § 1983 comes before the court on defendants' motion to dismiss for qualified immunity, res judicata, and failure to exhaust (rec. doc. 291), motion for leave to file reply memorandum (rec. doc. 304), and motion for leave to file notice of supplemental authority (rec. doc. 312)[1]. Subsequent to filing the motion, the parties filed a joint stipulation where plaintiffs dismissed their claims for monetary damages, other than those monetary damages sought in connection with their Due Process claim, and defendants dismissed their affirmative defenses of qualified immunity and res judicata. Thus, the sole issue before the court is whether plaintiffs properly exhausted the claims brought in the third amended complaint filed on April 3, 2009.

Due to the numerous exhibits attached to the motion to dismiss, the court converted the motion to dismiss on the sole remaining issue of failure to exhaust to a motion for

---

[1] Defendants' motion for leave to file reply memorandum in support of its motion to dismiss for failure to exhaust is opposed by plaintiffs (rec. doc. 309). Defendants' motion for leave to file notice of supplemental authority is not opposed.

summary judgment (rec. docs. 299, 300).[2] The motion for summary judgment for failure to exhaust is opposed, and oral argument is not necessary.

## Factual Background

After being placed in extended lockdown at the Louisiana State Penitentiary (LSP) in Angola, Louisiana, in 1972 and remaining there for over a quarter century, plaintiffs, Herman Wallace, Robert King Wilkerson, and Albert Woodfox, brought suit in March 2000, alleging that their continued confinement in extended lockdown violated their right to be free of cruel and unusual punishment guaranteed by the Eighth Amendment of the United States Constitution, and that the sham review proceedings of their continued confinement violated their right to due process of law guaranteed by the Fourteenth Amendment of the United States Constitution (rec. docs. 1 and 36).[3] Since that time, plaintiffs have filed three supplemental and amending complaints, each of which primarily articulated in more detail the substance of their claims. (rec. docs 20, 36, and 289)

Plaintiffs explain that while housed in extended lockdown, a body called the Lockdown Review Board (LRB) considers plaintiffs' continued confinement in extended lockdown at 90-day intervals. Plaintiffs allege that this quarterly proceeding is a sham proceeding in which no meaningful review actually takes place. After each review, the

---

[2]The parties filed supplemental briefs on the issue of exhaustion and attached additional evidence in support and in opposition to the motion (rec. docs. 301 and 303).

[3] Wallace has remained in extended lockdown continuously since 1972. Wilkerson remained in extended lockdown from 1972 until early 2001, when his conviction was overturned and he was fully released from state custody. On May 25, 2001, this Court dismissed Wilkerson's claims for declaratory and injunctive relief as moot; therefore, defendants' motion to dismiss does not apply to Wilkerson (rec. doc. 39). Woodfox has remained in extended lockdown since 1972, except for a three year period when he was incarcerated in parish jail. After a brief transfer to Camp D in March 2008, Wallace and Woodfox were transferred back to extended lockdown in November 2008 due to alleged disciplinary violations. On March 17, 2009, Wallace was transferred to CCR-like conditions at Elayn Hunt Corrections Facility.

board continues the plaintiffs' maximum security classification due to "nature of original reason for lockdown," and no meaningful attempt is made to determine whether plaintiffs are fit for a less restricted environment.

Plaintiffs also allege that defendant Warden Burl Cain has knowledge of the plaintiffs' extended lockdown, knows that the LRB will not release plaintiffs into the general prison population without direction from higher up, fails to take any action to facilitate their release or secure them a fair hearing on whether they would pose a danger in the general prison population, and refuses to release plaintiffs because of their political beliefs and race (rec. docs. 20, 36, 289).[4] Essentially, plaintiffs contend that Warden Burl Cain controls the decisions of the LRB.

Over the past several years, the parties have filed numerous motions and engaged in extensive discovery, which has narrowed plaintiffs' claims and has resulted in the dismissal of certain claims and in settlement negotiations. On March 20, 2008, Wallace and Woodfox were moved out of extended lockdown in the CCR unit and into a maximum security dormitory at Camp D, also located at LSP.[5] In September 2008, Judge James Brady granted Woodfox's petition for writ of habeas corpus and notified Woodfox that he would consider Woodfox's motion for release pending appeal and/or retrial in the matter

---

[4] Based on statements made by Warden Cain in 2001 at Tulane University, plaintiffs alleged in their second amended complaint that they are being held in extended lockdown because they "had not reformed their political beliefs" (rec. doc. 36). Plaintiffs alleged that Warden Cain's testimony in 2008 in connection with Woodfox's bail hearing in his habeas case supports their allegations in the third amended complaint that they are being continuously held in extended lockdown due to their political beliefs and race (rec. docs. 289, 303-3, Exhibit 8).

[5] Camp D, primarily for institutional sex offenders, which Wallace and Woodfox are not, is a low density dorm where 12 to 15 inmates live in a dorm that was built to house 68 inmates (rec. doc. 252-2 and 260-4). While in Camp D, plaintiffs had more privileges and fewer restrictions in certain respects - but not in other respects - than inmates assigned to CCR (rec. doc. 261).

entitled *Woodfox v. Foti,* CA 06-789-JJB-CN (M.D. La.). On October 14, 2008, Judge Brady held a hearing on plaintiff's motion for release pending the appeal to the Fifth Circuit and defendants' motion to stay (CA 06-789, rec. doc. 61). At that time, Judge Brady granted the parties leave to take the deposition of Warden Burl Cain and Dr. Williams in connection with the motions and notified the parties that the motion for release and motion to stay would be considered after the depositions.[6] On October 21, 2008, settlement negotiations in this matter ceased between the parties.

On November 13, 2008, Wallace and Woodfox were removed from Camp D and placed in what plaintiffs claim is generally called the "dungeon" and were held in black box restraints. Wallace filed a Request for Administrative Remedy entitled "Herman Wallace vs. Burl Cain, Warden" on November 24, 2008, complaining of his return to even more onerous conditions of lockdown, lack of valid reasons for that confinement, and lack of any process. He claimed that he had a disciplinary report in hand which stated only that he was "placed in Administrative Segregation for violation of Rule #30W General Prohibited Behavior, Pending Further Investigation." He insisted on being told the charges against him and concludes that he basically is being held while DOC authorities "go on a fishing expedition" to either find or manufacture charges to justify their actions, all in violation of his constitutional rights under the First, Eighth, and Fourteenth Amendments. His request for administrative remedy was rejected as being "Disciplinary," which is to say that the administrative remedy procedure was unavailable to him. (Id., Exhibit 15a and 15b).

---

[6] Subsequently, on November 25, 2008, Judge Brady denied defendants' motion to stay and granted plaintiff's motion for release pending appeal and/or retrial conditioned upon his obtaining a residence and living conditions acceptable to the court (CA 06-789, rec. doc. 75). The following day, the Fifth Circuit granted defendants' motion to stay of release pending appeal (Id., rec. doc. 76).

Ultimately, plaintiffs were charged with certain rule violations for making a November 3, 2008, telephone call to a "friend," who was determined to be the director of prison radio in California, by means of a prohibited three-way phone call; for allegedly launching a smear campaign about the New Orleans Police Department, the District Attorney's office, and LSP; for making statements designed to evoke racial unrest between black offenders and correctional officers; and for threatening the safety and security of LSP (rec. doc. 303-3, Exhibits 15 and 16).[7] On December 19 and December 22, 2008, Woodfox and Wallace, respectively, appeared before the Disciplinary Board, were found guilty of the charges, and were sentenced to extended lockdown and to 26 and 24 weeks' loss of telephone privileges (Id., Exhibits 16, 19a, 20a).

Since the initial attempt to file an administrative grievance was rejected as a procedure which was unavailable, Wallace and Woodfox appealed the disciplinary rulings.(Id., Exhibit 18b, 18h, 19a). The appeals raised issues under the First, Eighth, and Fourteenth Amendments, generally contesting the ongoing pattern of keeping plaintiffs in lockdown without any legitimate penological reason in violation of their constitutional rights. They further complained of Warden Cain's alleged accusations that plaintiffs were stirring up whites against blacks and vice versa and accusations that plaintiffs' political beliefs make them dangerous and contended that they were returned to lockdown in retaliation for plaintiffs' successes in litigation. The charges against Wallace and Woodfox were amended, but the original sanctions imposed (placement in extended lockdown and loss

---

[7] Woodfox and Wallace were charged with a violation of Rule 30-c, General Prohibitive Behaviors, Rule 22, Theft, and Rule 29, Disturbance.

of phone privileges) were found to be appropriate and were not affected by the amendment to the charges (Id., Exhibit 19c). Both sides agree that the plaintiffs' appeals were final in March 2009.

On December 1, 2008, plaintiffs filed a motion for leave to file a third amended complaint in which they added to their complaint by reciting a number of recent events[8] and by ending with four paragraphs under "Causes of Action," two of which repeated their claims of cruel and unusual punishment and due process of law, and two of which stated as follows:

> 34. By the foregoing conduct, specifically continuing plaintiffs' confinement in extended lockdown for 28 to 36 years and taking other adverse actions against plaintiffs because of their perceived political beliefs and political affiliation, their perceived viewpoints and particular opinions and/or because of plaintiffs availing themselves of their fundamental right of court access, defendants have violated plaintiffs' rights under the First and Fourteenth Amendments of the United States Constitution and Article I, Section 3 of the Louisiana Constitution of 1974.
>
> 35. By the foregoing conduct, specifically continuing plaintiffs' confinement in extended lockdown for 28 to 36 years and taking other adverse actions against plaintiffs because of their race, defendants have violated plaintiffs' rights under the Fourteenth Amendment of the United States Constitution and Article I, Section 3 of the Louisiana Constitution of 1974.

After much legal wrangling, the third amended complaint was filed on April 3, 2009. Defendants, thereafter, filed their motion to dismiss for failure to exhaust, which is now before the court for a report and recommendation.

---

[8] Plaintiffs allege, *inter alia*, that they were "victims of targeted and ongoing mistreatment by LSP officials" and were mistreated by being forced to urinate in public and subject to excessive disciplinary sanctions. Plaintiffs also quoted Warden Cain's recent statements that regardless of Woodfox's guilt or innocence of his underlying conviction, he would still keep him in lockdown because of his practicing "Black Pantherism" and if released, Woodfox would have the "blacks chasing after them." He concluded that Woodfox "has to stay in a cell while he's in Angola." (rec. doc. 269). (These statements were from a deposition; Warden Cain later changed the word transcribed as "blacks" to "whites," thus making the phrase to read "whites chasing after them.")

-6-

## Arguments of the Parties

Defendants argue that throughout this litigation, plaintiffs' claims have been limited to allegations arising out of plaintiffs' long-term confinement in CCR, and the third amended complaint purports to assert new claims under the First and Fourteenth Amendments (Equal Protection) and asserts a demand for injunctive relief (rec. docs. 295, 301). Defendants argue that because these new claims are unrelated to the Due Process claims arising out of the decisions of the LRB, they must be exhausted in order to give defendants notice and an opportunity to address plaintiffs' concerns. Specifically, defendants claim that plaintiffs' claims of continuous confinement in extended lockdown based on political beliefs and race have not been exhausted. Also, defendants claim that plaintiffs' claims regarding events occuring at Camp D, i.e., alleged targeted mistreatment in Camp D (forced public urination) and excessive disciplinary sanctions were not exhausted prior to filing the third amended complaint. Thus, defendants seek dismissal of plaintiffs' new claims.

Plaintiffs respond by arguing that these new events which have transpired since the second amended complaint merely support their original claims and give rise to additional "theories of liability" under the First Amendment and Equal Protection clause. Plaintiffs argue that defendants have been on notice since the original complaint that defendants' challenged conduct - continuously incarcerating plaintiffs without a legitimate penological interest - was in violation of plaintiffs' constitutional rights. Plaintiffs suggest that the challenged conduct is at the heart of their new claims; therefore, additional exhaustion is not required. Plaintiffs insist that they are not required to exhaust each unconstitutional reason for of defendants' decision to hold plaintiffs in continued confinement without a

-7-

legitimate penological interest; therefore, merely specifing motivations/justifications that are in violation of their First and Fourteenth Amendment rights need not be exhausted. Plaintiffs also contend, with regard to the events occurring at Camp D, that they exhausted their administrative remedies with respect to the disciplinary sanctions prior to the time the third amended complaint was actually filed in April 2009. Finally, plaintiffs suggest that if the court finds that some of the allegations were not exhausted, they are subject to the equitable exceptions of the exhaustion doctrine.

## **Substantive Law**

Failure to exhaust is an affirmative defense under the Prison Litigation Reform Act, and inmates are not required to specially plead or demonstrate exhaustion in their complaints. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 921 (2007). The defense of exhaustion is waived if not asserted. *Carbe v. Lappin,* 492 F.3d 325, 327 (5th Cir. 2007). Because exhaustion is an affirmative defense, defendants bear the burden of proof both at trial and on a motion for summary judgment to establish each element of exhaustion. *Wetzel v. Slipdell Police Dept.*, 2009 WL 1507575 (E.D. La. 2009); *Gonzales v. Smith*, 2007 WL 3046160 (E.D. La. 2007). Defendants must show that there is no material issue of fact for trial on the affirmative defense of exhaustion. *Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).

Generally speaking, the parties agree that the PLRA of 1996, 42 U.S.C. 1997e(a), requires exhaustion of all available remedies prior to filing suit. Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under §1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The parties also

agree that there are no administrative remedies available in connection with decisions of the LRB.

## Discussion

One would think by the reams of paper filed in this lawsuit that it consisted of hundreds of discrete and complicated claims. It does not. Plaintiffs make three basic complaints: the debilitating impact of their confinement, the hopelessness of their situation, and the invalid motivations for their continued confinement. They contend that to hold them in such isolating conditions for so long is in violation of their right to be free of cruel and unusual punishment guaranteed by the Eighth Amendment of the United States Constitution; that the hopeless, sham review proceedings of their continued confinement violated their right to due process of law guaranteed by the Fourteenth Amendment; and, underlying everything, that the defendants' motivation for keeping them in extended lockdown is without legitimate penological justification, and more specifically, defendants' motivations are unconstitutional.

Although some of the alleged motivations were contained in earlier complaints,[9] the specifics of those motivations have been refined over the years of discovery and have culminated in this third amended complaint, in which plaintiffs contend that defendants' continuing actions against them (keeping them in extended lockdown) are because of plaintiffs' perceived political beliefs and political affiliations, because of their availing

---

[9] For example, plaintiffs' claims arising under the First Amendment have been a part of this case from its inception. Wallace's original grievance contains allegations that his First, Eighth, and Fourteenth Amendments were being violated (rec. doc. 13). In their second amended complaint in 2001, plaintiffs alleged that defendants would not release them from extended lockdown "because they had not reformed their political beliefs."(rec. doc. 36). The court recognized in its report and recommendation on defendants' first motion to dismiss that "the arguments advanced on these motions do not concern any First Amendment claim implicated by the pleadings" (rec. doc. 46).

themselves of their fundamental right of access to court, and because of their race – all in violation of their rights under the First and Fourteenth Amendments.

While the plaintiffs add several examples of recent incidents in this third amended complaint, they make it clear in their brief that the purpose of reciting these factual allegations is not to bring an isolated claim of an isolated incident: "New details, about forced public urination, or about disproportionate disciplinary sanctions are not stand-alone claims; they merely provide probative support for plaintiffs' old and new theories of legal liability" (rec. doc. 296). Indeed, plaintiffs repeatedly have questioned defendants' motivation for holding them in extended lockdown, now some 28 to 36 years. The defendants' alleged motivations for their actions are not frozen in time. This case is not about a snapshot of an incident; it is about a decades-long situation that continues to date. And it goes back to three simple concepts: the impact of confinement, the process provided, and the motivation or reason behind the continued confinement. These are the claims before the court.

Defendants nevertheless argue that plaintiffs were required to file administrative grievances detailing these allegedly unconstitutional reasons for continued confinement. The problem with this argument is that plaintiffs did file grievances before the original complaint was filed, and defendants long ago agreed that exhaustion of remedies is not an issue for these types of claims brought by these plaintiffs.[10] Defendants first raised the issue of failure to exhaust as to Burl Cain and others immediately after the complaint was

---

[10] Defendants devoted considerable space to explaining what the court meant in its prior opinions and what former defense counsel did or did not say, mean, or do. Since the court was present at the hearings, discussed the issues with former counsel, and actually wrote the reports, the court declines to adopt defendants' strained interpretation of past events.

filed in 2000, and almost as immediately conceded that the defense was not valid.[11] They did so, to their credit, upon review of the plaintiffs' records, which they filed with the court.

The prison records show that plaintiffs' attempts to file administrative grievances were routinely rebuffed by the prison as not being available to them. These grievances were filed against Warden Burl Cain (one added Richard Stalder), and they complained of the impact of what was then 28 years of isolation, the lack of any fair process of review, and the lack of any valid reason for continuing their confinement (rec. docs. 13 and 15). Wallace even specifically complains that his rights under the First, Eighth, and Fourteenth Amendments were being violated (rec. doc. 13)[12] The grievances, despite being against Warden Cain, nonetheless were treated as challenges against the Lockdown Review Board, which was not named in the grievances. An affidavit of an employee of the Department of Public Safety and Corrections, filed in August of 2000, states that plaintiffs attempted to exhaust their concerns regarding continued confinement [against Burl Cain], but their requests for administrative remedies were rejected because "decisions of the Lockdown Review Board are not appealable through the Administrative Remedy Procedure" (rec. docs. 13 and 15 with attached ARPs and rejections); see also, Department Regulation No. B-05-005 (states that LRB decisions may not be challenged).

Defendants today, however, argue nuances of the original grievances and of the original motion to dismiss, and attempt to limit waiver of exhaustion to claims made directly against the Lockdown Review Board. However, it is not the discrete claims argued in the

---

[11] Defendants withdrew their defense of failure to exhaust in their memorandum and in oral argument and conceded exhaustion as to both Eighth and Fourteenth Amendment claims, which were the only claims addressed in their motion. See rec. docs. 5, 25, 34, and 46, ftnt 21. Defendants were represented by different counsel at that time.

[12] The grievances filed in 2000 in turn refer to past, failed attempts to challenge their continued confinement.

-11-

Case 3:00-cv-00304-RET-DLD   Document 318   10/14/09   Page 11 of 15

original motion to dismiss or even the specific facts or lack thereof in the original grievances that matter, but rather it is the context in which the grievances were rejected that is important. What the prison rejected as "unappealable" were grievances against *anyone* that addressed the very issues that lie at the core of this lawsuit: the impact of the continuing confinement, the lack of fair process, and the lack of valid motivation for keeping plaintiffs in continued confinement. Neither the specifics of the wrongs alleged nor the identity of the wrongdoer matters when the prison does not allow the nature of the claims alleged to be challenged through the administrative grievance procedure. And it is the nature of the claims alleged in this third amended complaint that the prison has rejected as "not appealable through the Administrative Remedy Procedure" (rec. docs. 13 and 15)

This rejection of the administrative remedy procedure for claims concerning plaintiffs' confinement in lockdown (regardless of what it is called) continues to date. As stated earlier, when Wallace recently requested an administrative remedy when placed back in a solitary cell after a brief period in a dorm, he was immediately told that the administrative remedy procedure was not available to him, but rather his claim was "disciplinary," despite its having claims under the First, Eighth, and Fourteenth Amendments.[13] The prison administration has made it abundantly clear that it will not entertain administrative grievances filed by these plaintiffs complaining of the violation of their constitutional rights arising from their continued confinement in a solitary cell, regardless of whether that cell is called administrative segregation, extended lockdown, CCR, solitary confinement, or the dungeon. Whether or not the prison's decision to reject these claims in toto as

---

[13] Both he and Woodfox thereafter timely filed appeals, which were final before the third amended complaint was allowed to be filed. Thus, even though exhaustion was not required for the new (or old) theories of liability in the third amended complaint, the defendants have long since been put on notice and been given the opportunity to address plaintiffs' concerns, despite their arguments to the contrary.

unappealable through the grievance procedure is correct or wise or required by regulation or even dissimilar to how they handle such claims from other inmates is irrelevant. What is relevant is that defendants are responsible for the concessions and the representations previously made both to the court and to the plaintiffs, and it is those concessions and representations that show that plaintiffs exhausted those procedures that were available to them.

## **Conclusion**

Plaintiffs have been clear that the new factual allegations in the complaint are not stand-alone claims of isolated incidents, but rather are cited as evidence of plaintiffs' core proceeding – that they are being held and continue to be held in what amounts to solitary confinement in violation of their constitutional rights. Because all of plaintiffs' previous attempts to grieve concerns regarding their continued confinement have been rejected by LSP as "not appealable through the Administrative Remedy Procedure," they are not required to exhaust their new allegations and theories of liability that they are being continuously confined in violation of their rights under the First and Fourteenth Amendments.

Accordingly,

**IT IS ORDERED** that defendants' motion for leave to file reply brief (rec. doc. 304) is **DENIED.**

**IT IS FURTHER ORDERED** that defendants' motion for leave to file notice of supplemental authority (rec. doc. 312) is **GRANTED.**

**IT IS RECOMMENDED** that defendants' motion to dismiss/motion for summary judgment for failure to exhaust administrative remedies (rec. doc. 291) should be **DENIED.**

**IT IS FURTHER ORDERED** that defendants' motion for oral argument (rec. doc. 292) is **DENIED.**

Signed in Baton Rouge, Louisiana, on October 13, 2009.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**ROBERT KING WILKERSON, ALBERT WOODFOX, HERMAN WALLACE**

**CIVIL ACTION**

**NUMBER 00-304-RET-DLD**

**VERSUS**

**RICHARD L. STALDER, ET AL.**

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have ten days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on October 13, 2009.

**MAGISTRATE JUDGE DOCIA L. DALBY**