## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**ROBERT KING WILKERSON, ET AL**                    **CIVIL ACTION**

**VERSUS**                                          **NO. 00-304-RET-DLD**

**RICHARD L. STALDER, ET AL**

### PROPOSED UNIFORM PRETRIAL ORDER

Pursuant to Rule 16 of the Federal Rules of Civil Procedure, a pretrial conference is set to be held in this proceeding for February, 23, 2010, by Chief Judge Ralph E. Tyson, for the Middle District of Louisiana.

### 1. JURISDICTION

This Court has subject matter jurisdiction in this proceeding under the provisions of 28 USC 1331, 1341(a)(3) and (4), and 2201.  Plaintiffs also assert state law claims.  This court has supplemental jurisdiction of these state law claims under 28 U.S.C. § 1367.

### 2. MOTIONS

Pending motions in this case include a Rule 37 motion to compel the production of discovery; a motion to strike portions of Defendants' Answer to the Third Amended Complaint in this case; and a motion filed by the Louisiana Department of Justice (the "DOJ") which requests a protective order.  In addition, the Parties have a dispute as to whether there is now pending before the Court is a joint request from the Parties to extend expert discovery in this case: Defendants understand that the Court has

communicated that all requests raised in the Parties' letter of January 15, 2010 (Doc. No. 363) have been denied; Plaintiffs understood that the Court has only indicated that the Joint Pretrial Order deadline would not be moved.

Plaintiffs also anticipate additional motions practice related to the DOJ's motion as well as, potentially, additional motions practice relating to future expert supplementation. [1]

### 3. PLAINTIFFS' CLAIMS

Plaintiffs commenced this action against Defendants on March 30, 2000, when an original Complaint was filed in the 19th Judicial District Court for the Parish of East Baton Rouge. On April 27, 2000, Defendants exercised their right to remove this suit from that Court to the United States District Court for the Middle District of Louisiana.

This action is predominantly a § 1983 dispute. Plaintiffs were initially placed in solitary confinement conditions in the early 1970's. Between 1990 and 2000, when this suit was filed, Defendants' decisions to house Plaintiffs in extended lockdown, solitary confinement conditions had no legitimate penological basis and Plaintiffs' liberty interests were not accorded due process. Moreover, since that date, Defendants have continued to house Plaintiffs impermissibly, still in the absence of a legitimate

---

[1] This Court's Uniform Pretrial Order advises that: "except for good cause shown, only exhibits and witnesses listed in the pretrial order, or permitted to be listed in an amendment to the pretrial order, shall be admitted in evidence or allowed to testify." The Parties respectfully submit that these pending and anticipated motions, both because of the matters they address substantively—expert evidence, discovery production and the pleadings—as well as because of the time and resources which have been required to litigate these disputes, present presumptive good cause for future, but seasonable, amendments to the Exhibit and Witness lists herein provided. *See Southwestern Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (observing that the good cause standard is demonstrated by reasonable diligence); *accord Sosa v. Airprint Sys.*, 133 F.3d 1417, 1419 (11th Cir. 1998).

penological basis and due process.  Thus, since 1972 Plaintiffs Wallace and Woodfox have been held in nearly continuous solitary confinement conditions without due process, and Plaintiff Wilkerson was held in the same conditions from 1972 until his release from prison in 2001.  For at least the last 20 years, Plaintiffs Wallace and Woodfox have also been held under these conditions without a legitimate penological basis; Plaintiff Wilkerson was held under these conditions without a legitimate penological basis since at least 1990 until his release from prison in 2001.  Such incarceration is in violation of their constitutional rights and inhumane.

The Third Amended Complaint in this case involves four causes of action.  First, Plaintiffs allege that their continuous incarceration in extended lockdown is in violation of the Eighth Amendment of the Constitution, and Article I, Section 20 of the Louisiana Constitution of 1974.  Plaintiffs further allege that the sham review of their continuous incarceration in extended lockdown violates their due process rights under the Fourteenth Amendment of the Constitution and under Article I, Section 2 of the Louisiana Constitution of 1974. Additionally, Plaintiffs allege that their continuous incarceration in extended lockdown is in violation of the First and Fourteenth Amendments of the Constitution, and Article I, Section 3 of the Louisiana Constitution of 1974.  Finally, Plaintiffs allege that their continuous incarceration in extended lockdown is in violation of the Equal Protection Clause of the Fourteenth Amendment of the Constitution, and Article I, Section 3 of the Louisiana Constitution of 1974.

With respect to Plaintiffs' first, Eighth Amendment claim, the evidence at trial will show that Defendants had a clear obligation to house Plaintiffs in a less restrictive

environment. The evidence will further demonstrate that Defendants' decisions to house Plaintiffs in solitary confinement conditions for more than or, as in the case of Plaintiff Wilkerson, nearly, three decades is unusual, cruel and objectively unreasonable. Typical allegations in support of this claim will center on the rarity of such confinement and the deleterious impact of such confinement on Plaintiffs.

With respect to Plaintiffs' second, Fourteenth Amendment Due Process claim, the evidence at trial will show that the procedural apparatus for deciding where to house Plaintiffs—the so-called 90 day review board—is an entirely ineffective, sham proceeding. Accordingly, the 90 day review board provides an entirely inadequate protection from unnecessary and injurious long-term detention in close-custody. Typical allegations in support of this claim are that LSP's 90 day review boards are devoid of substance and actual review, and have been since Plaintiffs were moved to CCR extended lockdown in the early 1970's. Board members make no meaningful attempt to determine if Plaintiffs are fit for release into the general population or to a less restricted status, or if they constitute a danger to the inmates or employees of LSP. Inmates are effectively denied an opportunity to address why they should be released from extended lockdown. Board members have no actual authority to order the release of an inmate from extended lockdown.

With respect to Plaintiffs' third, First and Fourteenth Amendment claim, the evidence at trial will show that Defendants' decisions to house Plaintiffs in CCR in the Fall of 2008 amounted to a restraint on, or retaliation for speech and/or political affiliation that was not reasonable in light of the circumstances, was not reasonably or

rationally related to a legitimate government interest and/or was not viewpoint neutral. The evidence at trial will further show that the Defendants' decision to house Plaintiffs in CCR because of their speech and/or political affiliation was based not simply on subject matter but on particular views taken by Plaintiffs regarding certain subject matters. The evidence at trial will also show that LSP's practice of sending Plaintiffs to CCR for exercising speech and association did not further an important or substantial government interest.  Typical allegations in support of this claim will concern LSP's express grounds for sending Plaintiffs to CCR in the Fall of 2008; media access practices generally; and, media access practice with respect to Plaintiffs specifically.  Typical allegations in support of this claim will also address LSP's differential treatment of Plaintiffs compared to other inmates who violate media access rules.

With respect to Plaintiffs fourth Fourteenth Amendment Equal Protection Claim, the evidence at trial will show that Defendants' decisions to house Plaintiffs in CCR in the Fall of 2008 was animated by race conscious motivations which were not narrowly tailored to the government interests asserted.  Typical allegations in support of this claim will address LSP's CCR express grounds for sending Plaintiffs to CCR in the Fall of 2008, and evidence will be offered to support the allegation that Defendants have targeted Plaintiffs on the basis of race.

Defendants raise thirteen affirmative defenses in their Answer to Plaintiffs' Third Amended Complaint.  The evidence at trial will clearly establish that Defendants are not entitled to raise the majority of these defenses, and that Defendants have insufficient proof to substantiate the remainder.  To the extent that Defendants contend

at trial that Plaintiffs' recent disciplinaries provide a legitimate basis for continuing to incarcerate Plaintiffs in solitary confinement conditions today, the evidence at trial will establish that these newly alleged grounds are pretextual, and that, even if they were not pretextual, these interests are not rationally or reasonably related to continued confinement in extended lockdown in this case.

Numerous issues of law have been previously briefed by the parties in connection with previously filed motions to dismiss and motions for summary judgment.    Plaintiffs specifically incorporate herein, by reference, all issues of law addressed in Plaintiffs' previously filed memoranda and pleadings.

Plaintiffs specifically request the Court's permission to seasonably supplement this section of the Pre Trial Memorandum prior to trial.

### 4. DEFENDANTS' CLAIMS

This lawsuit was filed in 2000 by two current inmates (Woodfox and Wallace) (the "inmates") and one former inmate (Wilkerson) of the Louisiana Department of Corrections (hereinafter jointly referred to as the "plaintiffs").    The inmates were held in extended lockdown in LSP's and Hunt's Closed Cell Restriction Unit ("CCR") for 28 to 36 years.    The inmates' claim in this suit is that the duration of their confinement in CCR has violated their constitutional rights.    The Second Amended Complaint contains two (2) counts:

1.    violations of the Eighth Amendment of the United States Constitution and Article I, Section 2 of the Louisiana Constitution of 1974 (Cruel and Unusual Punishment); and,

2.      violations of the Fourteenth Amendment of the United States Constitution and Article I, Section 2 of the Louisiana Constitution of 1974 (Due Process).

The plaintiffs sought both damages and mandatory injunctive relief (release into general population) for these alleged constitutional violations.

By Order dated October 25, 2007, (R. 248), this Court dismissed the Eighth Amendment claim and the claim under Article I, Section 2 of the Louisiana Constitution of 1974 for damages in their entirety, with prejudice.  Only the request for injunctive relief remains under these claims.

On April 3, 2009, the plaintiffs filed a Third Amended Complaint containing the following additional counts:

3.      violations of the First and Fourteenth Amendments of the United States Constitution and Article I, Section 3 of the Louisiana Constitution of 1974 (Free Speech); and,

4.      violations of the Fourteenth Amendment of the United States Constitution and Article I,      Section 2 of the Louisiana Constitution of 1974 (Race Discrimination).

While the Third Amended Complaint continued to seek damages under the Due Process Claim and a mandatory injunction ordering the inmates placed into general population, it also asserted new claims that the inmates have been targeted because of their political beliefs, viewpoints and opinions, and for availing themselves of their right to access the courts.  The inmates also seek a new form of injunctive relief enjoining "defendants from taking other adverse actions against plaintiffs because of plaintiffs' race, their political ideology or affiliation, or in retaliation for plaintiffs' availing themselves of their right of access to courts."

By Joint Stipulation dated July 8, 2009, the plaintiffs voluntarily dismissed their claims for damages under the First and Fourteenth Amendments of the United States Constitution and  Article I, Section 3 of the Louisiana Constitution of 1974 (Free Speech); Fourteenth Amendment of the United States Constitution and Article I, Section 2 of the Louisiana Constitution of 1974. (Race Discrimination).  All that remains on these counts are claims for injunctive relief – release into general population and cessation of alleged adverse discriminatory actions.

The only claim for monetary damages remaining in this suit is under the Fourteenth Amendment of the United States Constitution and Article I, Section 2 of the Louisiana Constitution of 1974 (the Due Process Claim).  All other counts only seek injunctive relief – release into general population and cessation of alleged adverse discriminatory actions.

**A.    The State Defendants deny all allegations.**

The State Defendants deny all allegations of Constitutional violations asserted in this matter by the plaintiffs.  The State Defendants have asserted thirteen affirmative defenses in their answer which they maintain herein.

**B.    The plaintiffs are not entitled to damages (compensatory or punitive) under              their due process claim.**

The plaintiffs' only remaining damages claims are for alleged violations of the Fourteenth Amendment of the United States Constitution and Article I, Section 2 of the Louisiana Constitution of 1974 (the Due Process Claim).  The State Defendants have

- 8 -

asserted a number of defenses to this claim in their answer to the Third Amending

Complaint, including but not limited to:

Plaintiffs have no liberty interest.  The U.S. Fifth Circuit has held that the Due

Process Clause is implicated only if the inmates' confinement in extended

lockdown is not the result of the inmates' initial classification.[2]  In other

words, if, as here, the inmates' confinement in extended lockdown

resulted from the crime of their convictions, then the due process clause is

not implicated.[3]   An inmate has no liberty interest in his or her

classification.[4]  Here, the inmates were all placed in CCR as a result of

their initial classification.

Plaintiffs cannot meet the *Sandin*[5] test. Defendants will produce testimony and

other evidence to demonstrate that Inmates' housing in CCR was not an

atypical, significant hardship so as to create a liberty interest and trigger

Due Process protection under *Sandin*.

---

[2] *Wilkerson, et al.  v. Stalder, et al*., 329 F.3d 431 (5th Cir. 2003).
[3] *Id.*
[4] *Id., See also, Wilkerson v. Maggio, 703 F.2d 909* (5th Cir. 1983).
[5] *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Plaintiffs received quarterly hearings which fully complied with all due process requirements. Defendants will produce evidence that the inmates were afforded 90 day cellblock reviews that satisfied any due process.   Even if plaintiffs established a protected liberty interest (which is denied), LSP is only obligated to engage in an informal, non-adversarial review of the information supporting a prisoner's administrative confinement.[6]   The Fifth Circuit has found that where a prisoner was afforded the full process required by the Disciplinary Rules, including notice, a hearing and regular review of his status, the process more than met the due process clause.[7] The State Defendants will present testimony from both fact witnesses and experts to demonstrate that the inmates have received due process.

Any and all claims for damages (compensatory or punitive) arising prior to March 30, 1999 are prescribed by order dated March 30, 2005, Rec. Doc. No. 116.

The plaintiffs will be unable to prove the necessary elements to recover punitive damages.  Punitive damages can only be awarded if the official's conduct is "motivated by evil intent" or demonstrates "reckless or callous indifference" to a person's constitutional rights.[8]

Plaintiffs' claims for mental or emotional injury are barred by 42 U.S.C. § 1997e and LSA-R.S. 15:1184(E).

---

[6] *Woods v. Edwards*, 51 F.3d 577 (5th Cir. 1995).
[7] *Id.*
[8] *Stockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994); *Hutchins v. McDaniels*, 512 F.3d 193 (5th Cir. 2007).

This claim is also barred by *res judicata* and collateral estoppel.  These issues were litigated and lost by the plaintiffs in those matters entitled *Wilkerson v. Maggio*, 703 F.2d 909 (5th Cir. 1983); *Wallace v. Phelps*, 604 F.2d 670 (5th Cir. 1979); and *Wilkerson v. Blackburn*, C.A. 78-300 USDC, Middle District of La.

**C.      Plaintiffs are not entitled to recover attorney fees.**

Plaintiffs' claims for attorney's fees are barred by 42 U.S.C. § 1997e and LSA-R.S. 15:1185.

**D.      Wilkerson's claims for injunctive relief are moot.**

In 2001, Wilkerson was released from LSP.  Wilkerson has not been in State custody – much less housed at LSP – since 2001.  Wilkerson has not been subject to conditions at CCR for many years.  Wilkerson obviously could not be affected by any injunctive relief addressing LSP housing, and his claims for injunctive relief are moot.  Thus, Wilkerson's sole claim is for damages under the Due Process Claim.

**E.      The plaintiffs are not entitled to injunctive relief under their Due Process Claim.**

In addition to damages, Wallace and Woodfox seek to be released into general population under their Due Process Claim.  Wallace and Woodfox have a heavy burden, for Courts do not second guess prison officials.[9]  Prison officials are to be "accorded the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order."[10]  Prison officials' decisions

_____

[9] *Talib v. Gilley*, 138 F.3d 211, 214 (5th Cir. 1998).
[10]  *Wilkerson v. Stalder*, 329 F.3d 431, 436 (5th Cir. 2003).

should not be overturned so long as they are "reasonably related to legitimate penological interests."[11]

The State Defendants will show that there was and is a legitimate penological interest in continuing to confine Wallace and Woodfox in CCR. The evidence will show that the murder of a correctional officer provides ample basis for continued lockdown status. Further, Wallace and Woodfox's subsequent conduct including acts set forth in affirmative defenses twelve and thirteen provides further basis for the inmates' current lockdown status. The evidence will show that Wallace and Woodfox cannot safely or appropriately be released from CCR.

The State Defendants will present testimony from their correctional experts who have examined the record and have determined that it is good correctional practice to keep Wallace and Woodfox in CCR.

The injunctive relief sought is prohibited by 18 U.S.C. § 3626(a), 42 U.S.C. § 1997e, and LSA-R.S. 15:1182, as it is not narrowly drawn, is intrusive, and has an adverse impact on public safety.

This claim is also barred by *res judicata* and collateral estoppel. These issues were litigated and lost by the plaintiffs in those matters entitled *Wilkerson v. Maggio*, 703 F.2d 909 (5th Cir. 1983); *Wallace v. Phelps*, 604 F.2d 670 (5th Cir. 1979); and *Wilkerson v. Blackburn*, C.A. 78-300 USDC, Middle District of La.

**F.    The Plaintiffs are not entitled to injunctive relief under their Eighth Amendment Claim.**

---

[11] *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987).

Conditions in LSP and in CCR do not violate the Eighth Amendment. In order to determine whether an inmate has alleged an Eighth Amendment constitutional violation, the U.S. Fifth Circuit utilizes a two-prong test.[12]    Under the first prong, an inmate must show that he was subjected to conditions so serious as to deprive him of the minimal measures of life's necessities.[13] The Fifth Circuit has defined a basic human need as things such as food, clothing, shelter, medical care, and reasonable safety.[14] Under the second prong, an inmate must show that prison officials acted with "deliberate indifference" in subjecting the inmate to serious conditions meeting the first prong.[15] Additionally, the Fifth Circuit has held that an allegation of extended duration in administrative segregation does not give rise to cruel and unusual punishment.[16]

Here, the plaintiffs will be unable to show that at anytime since 1999[17] they were denied life's necessities or that any prison official acted with deliberate indifference. The State Defendants will present expert testimony that the conditions under which these inmates are held are humane and satisfy all basic human needs.  The State Defendants will present testimony from LSP officials and other correctional experts describing the conditions under which the inmates have been held and the need for security precautions within LSP and CCR.  The State Defendants will show that CCR

---

[12] *See Harper v. Showers*, 174 F.3d 716 (5th Cir. 1999) (*citing Woods v. Edwards*, 51 F.3d 577 (5th Cir. 1995); and *Helling v. McKinney*, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993)).
[13] *Id.* at 720.
[14] *Id.*
[15] *Id., See also Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).
[16] *See, Colgrove v. Williams*, 2004 WL 1567117 (5th Cir. 2004).
[17] 1999 is the prescription date.

meets all correctional standards, including the widely accepted standards set by the American Correctional Association.

The State's experts will testify that the inmates have not been subjected to physical or psychological harm and that the conditions within CCR meet or exceed living arrangements for similarly situated inmates in other institutions.

The injunctive relief sought is prohibited by 18 U.S.C. § 3626(a), 42 U.S.C. § 1997e, and LSA-R.S. 15:1182, as it is not narrowly drawn, is intrusive, and has an adverse impact on public safety.

The plaintiffs have failed to exhaust their available administrative remedies as required by 42 U.S.C. § 1997e(a) and La. R.S. 15:1171.

This claim is also barred by *res judicata* and collateral estoppel. These issues were litigated and lost by the plaintiffs in those matters entitled *Wilkerson v. Maggio*, 703 F.2d 909 (5th Cir. 1983); *Wallace v. Phelps*, 604 F.2d 670 (5th Cir. 1979); and *Wilkerson v. Blackburn*, C.A. 78-300 USDC, Middle District of La.

G.    **The plaintiffs are not entitled injunctive relief under their First Amendment Claim.**

The plaintiffs will be unable to show any violations of their First Amendment rights. In *Pell v. Procunier*, 417 U.S. 817, 94. S.Ct. 2800, 41 L.Ed.2d 495 (1974), the U.S. Supreme Court held that so long as reasonable and effective means of communication remain open, then "prison officials must be accorded latitude" for the institutional objectives furthered by the questioned regulation and the measure of judicial deference owed to corrections officials in their attempt to serve those interests are relevant in

gauging the validity of the regulation.[18]   Furthermore, courts will uphold a prison regulation claimed to infringe a prisoner's constitutional rights if it is "reasonably related to legitimate penological interests."[19]

Here, Wallace and Woodfox will be unable to prove violations of their First Amendment rights.  Any limitations on their First Amendment rights were reasonably related to a legitimate penological interest.

Moreover, the injunctive relief sought is prohibited by 18 U.S.C. § 3626(a), 42 U.S.C. § 1997e, and LSA-R.S. 15:1182, as it is not narrowly drawn, is intrusive, and has an adverse impact on public safety.

The plaintiffs have failed to exhaust their available administrative remedies as required by 42 U.S.C. § 1997e(a) and La. R.S. 15:1171.

### H.    The plaintiffs are not entitled to injunctive relief under their Race Discrimination Claim.

Wallace and Woodfox were not subjected to discrimination based on race or other factors.   Any different treatment was reasonably related to a legitimate penological interest.  Moreover, to prove a cause of action under § 1983, the plaintiffs must demonstrate that prison officials acted with a discriminatory purpose. "Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group."[20]

---

[18] *Pell*, 417 U.S. at 827.
[19] *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987).
[20] *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995).

Moreover the injunctive relief sought is prohibited by 18 U.S.C. § 3626(a), 42 U.S.C. § 1997e, and LSA-R.S. 15:1182, as it is not narrowly drawn, is intrusive, and has an adverse impact on public safety.

The plaintiffs have failed to exhaust their available administrative remedies as required by 42 U.S.C. § 1997e(a) and La. R.S. 15:1171.

## 5. CLAIMS OF OTHER PARTIES

There are no other parties. The DOJ has filed a Motion for a Protective Order in this case, apparently injecting itself as an intervener without first seeking the Court's permission. That motion is now pending.

## 6. ESTABLISHED FACTS[21]

**The following facts have been established by pleadings, or by stipulation between the parties.**

**Robert King Wilkerson**
.

1.    Robert King Wilkerson (hereinafter "King") was convicted of armed robbery on June 5, 1970.

2.    King was convicted of aggravated escape on August 19, 1970.

3.    King was convicted of aggravated battery in Orleans Parish on April 18, 1972, and shortly thereafter was assigned to LSP.

---

[21] The stipulations listed below are inclusive only of those both Plaintiffs and Defendants have expressly agreed upon as of the date of this filing. The Parties plan on continuing to formulate additional stipulations.

4.      King was classified as maximum security and housed in CCR.

5.      King was again classified as maximum following this conviction, and continued to be housed at CCR.

6.      King remained classified as maximum and housed at CCR for the next 26 years until his release from CCR and LSP in 2001.

**Albert Woodfox**

7.      Upon arriving at LSP, on January 20, 1972, Albert Woodfox (hereinafter "Woodfox") was classified medium custody and assigned to general population.

8.      In April, 1972, Woodfox was charged with the murder of LSP Correctional Officer Brent Miller.

9.      Woodfox's March 7, 1973 conviction was overturned in 1996; Woodfox was held in Amite in a parish jail for nearly three years until he was reconvicted on February 23, 1999.

10.     Woodfox was returned to LSP and placed again in CCR where he remained until March 24, 2008.

11.     On March 24, 2008, Woodfox was placed in a maximum security dorm with over a dozen other maximum security inmates.

12.     While in the dorm Woodfox received two disciplinary reports.

13.     On November 13, 2008, Woodfox was removed from the dormitory and placed back into CCR where he remains today.

**Herman Wallace**

14.     Herman Wallace (hereinafter "Wallace") was convicted of two counts of armed robbery in Orleans Parish in 1967 and 1968, and arrived at LSP in June, 1969.

15.     Wallace was classified medium custody and was assigned to general population.

16.     In April, 1972, Wallace was charged with murder with regard to the killing of LSP correctional officer Brent Miller.

17.     On March 24, 2008, Wallace was placed in a maximum security dormitory at LSP with over a dozen other prisoners.

18.     While in the dorm, Wallace received two disciplinary write-ups.

19.     On November 13, 2008, Wallace was moved to administrative segregation.

20.     On March 19, 2009, Wallace was transferred from LSP to Hunt and placed in CCR there.

**Conditions of Confinement**

21.     A maximum security dorm named Eagle One was created in March, 2008.

22.    Plaintiffs resided in the Eagle One dorm from March, 2008 until November, 2008.

**Other Established Facts**

23.    The Parties incorporate herein by reference the Stipulations entered into and filed with this Court on July 8, 2008.

## 7. EXHIBITS[22]

**(a)  The Plaintiffs will offer the following exhibits at trial:**

1.  The Expert Report of Brie Williams, MD, MsC including all attachments; the curriculum vitae of Brie Williams and potentially the supplemental report of Brie Williams;

2.  Articles relied on by Brie Williams and/or published by Brie Williams;

3.  The Expert Report of Craig Haney including all attachments; the curriculum vitae of Craig Haney and potentially the supplemental report of Craig Haney;

4.  Articles relied on by Craig Haney and/or published by Craig Haney;

5.  The Expert Report of Steve Martin including all attachments; the curriculum vitae of Steve Martin and potentially the supplemental report of Steve Martin;

6.  Articles relied on by Steve Martin and/or published by Steve Martin;

---

[22] The Parties have not exchanged exhibits and have not had the opportunity to consider objections to authenticity.

7. Current and former Louisiana State Penitentiary Prison ("LSP") Policies, Rules and Regulations;

8. Current and former Department of Corrections Policies, Rules and Regulations;

9. Institutional prison record of Herman Wallace

   - including all health records,

   - disciplinary records, and

   - lockdown review board records;

10. Institutional prison record of Albert Woodfox

   - including all health records,

   - disciplinary records, and

   - lockdown review board records;

11. Institutional prison record of Robert King Wilkerson

   - including all health records,

   - disciplinary records, and

   - lockdown review board records;

12. A reconstructed cell;

13. Floor plan of LSP and Hunt CCR units;

14. Floor plan of Camp D Eagle One dormitory;

15. Administrative grievances filed by LSP inmates regarding confinement in CCR, the Eagle One dorm, race conscious action on the part of LSP employees and/or media access.

16. All proposed and instituted directives related to the creation, maintenance and closing of the Camp D Eagle One dormitory;

17. All current and former LSP media access requests and responses;

18. Any LSP disciplinary files for telephone violations produced by Defendants; Any LSP disciplinaries for media access violations produced by Defendants;

19. Fifth Circuit Opinion in *Hayes Williams* case (LSP conditions in 1970s);

20. Fifth Circuit Opinion in *Hamilton v. Schapiro* case (OPP conditions in 1970s);

21. Fifth Circuit Opinion in *Wilkerson v. Cain*, 231 F.3d 886 (5th Cir. 2000);

22. Materials concerning House that Herman built project, including pictures and drawings of the house and articles concerning the project;

23. Post-2001 release articles concerning Robert King Wilkerson;

24. Material from the New Orleans Anti-violence Coordinating Committee;

25. Key to the City award issued by the city of San Francisco;

26. Robert King Wilkerson Certificate of Heroism in Race Relations;

27. Articles regarding speeches and presentations of Robert King Wilkerson;

28. NPR Article regarding Robert King Wilkerson;

29. Letter from Joseph Rainey;

30. Affidavit of Grady Brewer;

31. Testimony of Murray Henderson (during the trial of Albert Woodfox);

32. All inmate files produced to Plaintiffs' during discovery;

33. Former Angolite articles;

34. Chapters from the book *Life Sentences;*

35. Photographs and film of LSP, circa 1960 to present;

36. LSP policies, rules, regulations and correspondence concerning visitation, including letters to Robert Wilkerson from LSP concerning his post-release visit to the prison;

37. All LSP correspondence produced in discovery in this case;

38. Any exhibit attached to a deposition in this case;

39. The deposition testimony of any witness deposed by Plaintiffs;

40. Any exhibit filed by Plaintiffs attached to a motion, memorandum or pleading filed in this case;

41. All newspaper articles, judicial decisions and international authority cited by Plaintiffs' Memorandum in Opposition to Defendants' Re-Urged for Motion for Summary Judgment Dismissing all Eighth Amendment Claims;

42. Copies of LSP mail denials;

43. Copies of any literature that Plaintiffs have been denied access to by LSP officials;

44. LSP calendar regarding important gang events;

45. All documents identified by any other party;

46. All documents filed into the record by the parties;

47. All discovery and responses thereto.

**(b)  The Defendants will offer the following exhibits at trial:**

State Defendants may move to introduce any of the following exhibits:

1. The plaintiffs' entire institutional, medical, and mental health records, updated through the date of trial.

2. All lockdown review summaries concerning the plaintiffs, updated through the date of trial.

3. All administrative remedy procedures (ARPs) and appeals concerning the plaintiffs, updated through the date of trial.

4. All incident and unusual occurrence reports concerning the plaintiffs, updated through the date of trial.

5. All investigative reports and requests concerning activities of the plaintiffs, issued through the date of trial.

6. All documents or records of any type maintained by LSP or Hunt Correctional Center ("Hunt") related to the plaintiffs.

7. All disciplinary reports, disciplinary board proceedings, and appeals concerning the plaintiffs, issued through the date of trial.

8. All cell block review board records concerning the plaintiffs, issued through the date of trial.

9. The plaintiffs' inmate account records, account logs, deposits, and copies of deposits, updated through the date of trial.

10. All inmate locations sheets for the plaintiffs, updated through the date of trial.

11. Current, former, and future institutional policies, directives, and department policies, updated through the date of trial.

12. Current and historical  LSP and Hunt C-501 monthly reports, with attachments, submitted to DPSC headquarters.

13. All documentation reflecting current and historical ACA accreditation for LSP and Hunt, including certificates, ACA standards, visiting committee reports, national (ACA) compliance audits, and internal compliance audits.

14. Photographs and videos of LSP and Hunt, including the CCR units, other cellblock units, and including the former maximum security dormitory at LSP.

15. Institutional, medical, and mental health records of other current and former inmates, including, but not limited to records of inmate witnesses and other inmates now or formerly housed in CCR.

16. Disciplinary reports, disciplinary board proceedings, appeals, investigative reports, investigation requests, administrative remedy procedures, appeals, lockdown review summaries, incident reports, unusual occurrence reports, correspondence, location sheets, records/documents of any type of current or former inmates, including, but not limited to records of inmate witnesses and other inmates now or formerly housed in CCR.

17. Curriculum Vitae of Patrick W. Keohane.

18. Patrick W. Keohane's expert report, attachments, and supplements.

19. All documents, discs, and recordings, referenced or relied upon by Patrick W. Keohane in formulating his opinions in this matter.

20. Chart prepared by Patrick W. Keohane showing other inmates held in lockdown for extended periods.

21. Affidavit of Patrick W. Keohane.

22. Curriculum Vitae of Ronald J. Angelone.

23. Ronald J. Angelone's expert report, attachments, and supplements.

24. All documents, discs, and recordings referenced or relied upon by Ronald J. Angelone in formulating his opinions in this matter.

25. Chart prepared by Ronald J. Angelone showing other inmates held in lockdown for extended periods.

26. Affidavit of Ronald J. Angelone.

27. Curriculum Vitae of Joel A. Dvoskin, Ph.D.

28. Joel A. Dvoskin, Ph.D.'s expert report, attachments, and supplements.

29. All documents, discs, and recordings referenced or relied upon by Joel A. Dvoskin, Ph.D. in formulating his opinions in this matter.

30. Video taped interview of plaintiffs by Joel A. Dvoskin, Ph.D.

31. Curriculum Vitae of Raman Singh, M.D.

32. Raman Singh, M.D.'s expert report, attachments and supplements.

33. All documents, discs, and recordings referenced or relied upon by Raman Singh, M.D. in formulating his opinions in this matter.

34. Curriculum Vitae of Robert G. Foley.

35. Any report, attachment or supplemental report of Robert G. Foley.

36. Resumes for all state witnesses.

37. Master Plan for the DPSC.

38. Summary of plaintiffs' housing assignments.

39. Summary of plaintiffs' disciplinary and incident reports.

40. Summary of the plaintiffs' lockdown review summaries.

41. The plaintiffs' mail documents obtained by LSP and Hunt through mail watches.

42. Summary of the plaintiffs' mail watch documents.

43. The plaintiffs' inmate phone number request forms and replacements.

44. Investigation records and recordings from the November 13, 2008 disciplinary write ups for Woodfox and Wallace, including research, emails, telephone records, recorded phone calls and investigators' notes.

45. Internal emails, correspondence, and documents concerning the plaintiffs or Angola 3 and exchanged with third parties.

46. Files maintained by LSP on the Black Panther Party and other gangs.

47. Audio recordings of the plaintiffs' phone calls.

48. Audio recordings of the plaintiffs' disciplinary board proceedings.

49. Chart showing housing regulations.

50. Camp D daily rosters for maximum security dorm.

51. LSP Directive No. 10.026.

52. Chart showing inmate assaults from 1990 – present.

53. "Death ledger" reflecting annual causes of death at LSP since 1966.

54. The Angolite: <u>The Planted</u>, January/February 1995.

55. Correspondence dated September 9, 1973 from Albert Woodfox to Sister Dianne.

56. Correspondence dated December 7, 1972 from James Stephens to Murray Henderson.

57. "In His Own Words: Albert Woodfox of the Angola 3," Interview by Kari Lydersen, March 30, 2007.

58. "From the Bottom of the Heap" by Robert King Wilkerson.

59. "The House that Herman Built" by Jackie Sumell and Herman Wallace.

60. "Open Letter to NCFA 3" by Wallace and Woodfox.

61. "Autobiographical Essay" by Herman Wallace.

62. "Herman's Summary" posted on www.prisonactivist.org.

63. Listings of media contacts, web sites attached to depositions.

64. "King's Itinerary" attached to King's deposition.

65. Photographs of Woodfox.

66. Photographs of Wallace.

67. Timelines attached to depositions.

68. Violation Report dated March 27, 1972.

69. Arrest records of plaintiffs, including Woodfox evidencing arrests for 6 aggravated rapes and 4 armed robberies.

70. Visitation records at LSP and Hunt concerning the plaintiffs.

71. Entire trial court and appellate court record in that matter entitled *Wilkerson v. Maggio*, 703 F.2d 909 (5th Cir. 1983).

72. Entire trial court and appellate court record in that matter entitled *Wallace v. Phelps*, 604 F.2d 670 (5th Cir. 1979).

73. Entire trial court and appellate court record in that matter entitled *Wilkerson v. Blackburn*, C.A. 78-300, USDC, Middle District of La.

74. Charts and summaries showing racial makeup and violence at LSP

75. Charts and summaries of the racial composition of CCR and LSP

76. All documents posted on the Angola 3 website.

77. All documents exchanged in discovery.

78. All documents identified by any other party.

79. All documents filed into the record by the parties.

80. All depositions taken in this matter.

81. All deposition exhibits.

82. All discovery and responses thereto in this matter.

83. Any document needed for impeachment purposes.


## 8. WITNESSES

**(a)      Plaintiff's Will-Call Witnesses:**


1.  Steve Martin
        8513 Adirondack Tr.
        Austin, TX  78759

        Steve Martin is an expert witness in the field of corrections who

will testify about the matters addressed in his reports and attachments

submitted in this matter.


2.  James Aiken

James Aiken is an expert witness in the field of corrections who will

testify about the matters addressed in his reports and attachments submitted

in this matter.


3.   Brie Williams, MD, MSc
        SFVAMC
        4150 Clement Street
        Box 181-G, Building 1, 3rd Floor
        San Francisco, CA 94121

Brie Williams is an expert medical witness who will testify about

the matters addressed in her reports and attachments submitted in this

matter.


4.   Craig Haney, Ph.D., J.D.

Craig Haney is an expert in penal institution psychology the

matters addressed in his reports and attachments submitted in this matter.

**(b) Plaintiff's May-Call Witnesses:**

5.   Robert King Wilkerson
        Austin, Texas

Plaintiff may be called to testify about his personal experiences

prior to and during his incarceration as they relate to this lawsuit and his life

since his release in 2001.


6.   Albert Woodfox
        LSP

Plaintiff may be called to testify about his personal experiences prior to and during his incarceration as they relate to this lawsuit, including his personal experiences while at LSP and Amite Jail.

7.  Herman Wallace

Plaintiff may be called to testify about his personal experiences prior to and during his incarceration as they relate to this lawsuit.

8.  Warden Burl Cain

Warden Cain is the Warden of LSP and may be called to testify about his knowledge of and experience with LSP and the Plaintiffs.

9.  Raphael Augustine

Raphael Augustine is an LSP employee who may be called to testify about the Lockdown Review Board process.

10. Roy Hollingsworth
    LSP

Roy Hollingsworth may be called to testify about the Plaintiffs' positive actions towards other inmates and about his personal experiences with the Plaintiffs, with the lockdown review boards and LSP.  Mr. Hollingsworth may also be called to testify about communications with LSP officials regarding Plaintiffs by a warden.

11. Kenneth Whitmore
     LSP

Kenneth Whitmore may be called to testify about the Plaintiffs' positive actions towards other inmates and about his personal experiences with the Plaintiffs, with the lockdown review boards and LSP.

12.  Joseph Rainey
     LSP

Joseph Rainey may be called to testify about the Plaintiffs' positive actions towards other inmates and about his personal experiences with the Plaintiffs (particularly Mr. Woodfox) , with the lockdown review boards and LSP.

13. Kirt Hall
     LSP

Kirt Hall may be called to testify about his personal experience with Plaintiffs, as well as an incident in which Mr. Wallace was falsely accused of tampering with a light in his cell.

14. Shawn Anderson
     LSP

Shawn Anderson may be called to testify about the Plaintiffs' positive actions towards other inmates and about his personal experiences with the Plaintiffs, with the lockdown review boards and LSP.  Mr. Anderson

may also be called to testify as to Mr. Wallace's good conduct when he was held in general population at Orleans Parish in 1999.


15. Randolph Welch
    LSP

      Randolph Welch may be called to testify about the Plaintiffs' positive actions towards other inmates and about his personal experiences with the Plaintiffs (particularly Mr. Wilkerson), with the lockdown review boards and LSP.


16. Matthew Berland

      This witness may be called to testify about his interactions with Warden Burl Cain as it relates to Plaintiffs.


17. Michael Mable

      Michael Mable, who is Plaintiff Woodfox's brother, may be called to testify about Plaintiff Woodfox's childhood and their continuing relationship. Mr. Mable may also be called to testify about the effects that over three decades of confinement in extended lockdown has had upon Mr. Woodfox.

18. Donald Wooley
    LSP

      Donald Wooley may be called to testify about the Plaintiffs' positive actions towards other inmates and about his personal experiences with the Plaintiffs, with the lockdown review boards and LSP.

19. Trent Wells
    LSP

      Trent Wells may be called may be about his personal experiences

with the Plaintiffs, with the lockdown review boards and LSP.

20. George Gibson
    LSP

      George Gibson may be called to testify about the Plaintiffs' positive

actions towards other inmates and about his personal experiences with the

Plaintiffs, with the lockdown review boards and LSP.

21. Randi Poindexter

      Randy Poindexter may be called to testify about her personal

experience with Plaintiffs and the circumstances surrounding her denial of

visitation of Albert Woodfox.

22.  Mwalimu Johnson

      Mwalimu Johnson may be called to testify about conditions at LSP

and Orleans Parish Prison in the 1970's and his personal experience with

Plaintiffs prior, during and after his incarceration.

23. Robert Tucker

      Robert Tucker may be called to testify about his knowledge of the

racial climate in New Orleans in the 1950s through early 1970's, where

Plaintiffs grew up, and about the goals and activities of the Black Panther Party in Louisiana.

24. Wilbert Rideau

Wilbert Rideau may be called to testify about the conditions at LSP from the mid 1960s through approximately 2005, when he was at inmate at LSP, including the prevalence of rape in the prison and its impact on the institution as a whole.

25. Rheneisha Robertson

This is a witness who may testify about personal experience with Albert Woodfox, their experiences as visitors at LSP and the circumstances surrounding the bail proceedings for Albert Woodfox in 2008.

26. Bernard Robertson

This is a witness who may testify about Albert Woodfox's good character, his experience as a visitor at LSP, and the circumstances surrounding the bail proceedings for Albert Woodfox in 2008.

27. Lloyd Hoyle

This is a former LSP employee who will testify about his experiences at LSP as they relate to this case.

28. Warden Donald Barr

This is a current LSP employee who may be called to testify about his knowledge of and experience with LSP and the Plaintiffs.

29. Ernest Williams

This is an LSP employee who may be called to testify about the Lockdown Review Board process.

30. Shirly Coody

This is a current LSP employee who may be called to testify about her knowledge of and experience with LSP and the Plaintiffs.

31. Catherine Fontenot

This is a current LSP employee who may be called to testify about her knowledge of and experience with LSP and the Plaintiffs.

32. Current and former inmates at LSP

33. Current and former employees at LSP

34. Any witness needed to authenticate any document

35. Any witness listed by any other party


**(c) Defendants' Witnesses**

The State Defendants will call the following witnesses:

1.  Burl Cain - Conditions within CCR and/or within Louisiana State Penitentiary; Rule violations and other conduct involving Herman Wallace, Albert Woodfox and/or Robert King Wilkerson; Lockdown review boards, classification; Media access; Security, gangs, all aspects of LSP, the maximum security dorm, ACA accreditation, correctional practices and policies.

2.  Darrel Vannoy - Security; Conditions within CCR and/or within Louisiana State Penitentiary; Rule violations and other conduct involving Herman Wallace, Albert Woodfox and/or Robert King Wilkerson; Lockdown review boards, classification; all aspects of LSP, the maximum security dorm, and ACA accreditation; correctional practices and policies, Media access.

The State Defendants may call the following witnesses:

3.  James LeBlanc - Historical facts and headquarters involvement in conditions within CCR and/or within Louisiana State Penitentiary; Rule violations and other conduct involving Herman Wallace, Albert Woodfox and/or Robert King Wilkerson; Lockdown review boards, classification; Media access; Security, gangs, all aspects of DPSC and LSP, the maximum security dorm, and ACA accreditation.

4.  Richard Peabody - Conditions within CCR and/or within Louisiana State Penitentiary; Rule violations and other conduct involving Herman Wallace, Albert Woodfox and/or Robert King Wilkerson; Lockdown review boards, classification; Media access; Security, gangs, all aspects of LSP, correctional practices and policies, and ACA accreditation.

5. Richard Stalder - Historical facts and headquarter's involvement in conditions within CCR and/or within Louisiana State Penitentiary; Rule violations and other conduct involving Herman Wallace, Albert Woodfox and/or Robert King Wilkerson; Lockdown review boards, classification; Media access; Security, gangs, all aspects of DPSC and LSP, correctional practices and policies, and ACA accreditation.

6. John Sinquefield - Historical facts, conduct and issues involving Herman Wallace, Albert Woodfox and Robert King Wilkerson

7. Bobby Achord - Rule violations and other conduct involving Herman Wallace, Albert Woodfox and/or Robert King Wilkerson; Lockdown review boards, classification; Media access; Security, gangs, investigations generally.

8. Kevin Benjamin - Conditions within Louisiana State Penitentiary; Lockdown review boards, classification; Security, gangs.

9. Presley Bordelon - Conditions within CCR and/or within Louisiana State Penitentiary; Rule violations and other conduct involving Herman Wallace, Albert Woodfox and/or Robert King Wilkerson; Lockdown review boards, classification; Security, gangs, all aspects of LSP, correctional practices and policies, and ACA accreditation.

10. Larry Calvert - Conditions within CCR and/or within Louisiana State Penitentiary; Rule violations and other conduct involving Herman Wallace, Albert Woodfox and/or Robert King Wilkerson; Lockdown review boards, all aspects of LSP, correctional practices and policies, and ACA accreditation.

11. Timothy Delaney - Conditions within CCR and/or within Louisiana State Penitentiary; Rule violations and other conduct involving Herman Wallace, Albert Woodfox and/or Robert King Wilkerson; Lockdown review boards, classification; all aspects of the maximum security dorm, Security, gangs.

12. Andrew Dunn - Conditions within CCR and/or within Louisiana State Penitentiary; Rule violations and other conduct involving Herman Wallace, Albert Woodfox and/or Robert King Wilkerson; Lockdown review boards, classification; Security, gangs.

13. Leslie Dupont - Conditions within CCR and/or within Louisiana State Penitentiary; Rule violations and other conduct involving Herman Wallace, Albert Woodfox and/or Robert King Wilkerson; Lockdown review boards, classification; Security, gangs, all aspects of LSP, correctional practices and policies, and ACA accreditation.

14. Kenneth Dupuis - Conditions within CCR and/or within Louisiana State Penitentiary; Rule violations and other conduct involving Herman Wallace, Albert Woodfox and/or Robert King Wilkerson; Lockdown review boards, classification; Security, gangs.

15. Cathy Fontenot - Conditions within CCR and/or within Louisiana State Penitentiary; Rule violations and other conduct involving Herman Wallace, Albert Woodfox and/or Robert King Wilkerson; Media access; Security, gangs, all aspects of LSP, correctional practices and policies, and ACA accreditation.

16. Carol Duthu Gilcrease - Conditions within CCR and/or within Louisiana State Penitentiary, access to mental health care.

17. Joseph Lamartinere - Conditions within CCR and/or within Louisiana State Penitentiary; Rule violations and other conduct involving Herman Wallace, Albert Woodfox and/or Robert King Wilkerson; Lockdown review boards.

18. Ross Maggio - Conditions within CCR and/or within Louisiana State Penitentiary; Rule;

19. Paul J. Myers - Conditions within CCR and/or within Louisiana State Penitentiary; Rule violations and other conduct involving Herman Wallace, Albert Woodfox and/or Robert King Wilkerson; Lockdown review boards, classification; Security, gangs.

20. Trish Foster - Conditions within CCR and/or within Louisiana State Penitentiary; Rule violations and other conduct involving Herman Wallace, Albert Woodfox and/or Robert King Wilkerson; Lockdown review boards, classification; Security, gangs; document authentication, exhaustion of administrative remedies, ARP process.

21. Tom Norris - Conditions within CCR and/or within Louisiana State Penitentiary; Lockdown review boards.

22. Connie Jeter - Conditions within LSP and Hunt, including particularly CCR; ACA compliance and accreditation.

23. Freddie Jackson – Conditions within Hunt CCR and Hunt generally; disciplinary reports and conduct involving Herman Wallace.

24. Troy Poret - Conditions within CCR and/or within Louisiana State Penitentiary; Rule violations and other conduct involving Herman Wallace, Albert Woodfox and/or Robert King Wilkerson; Lockdown review boards, all aspects of the maximum security dorm, classification; Security, gangs.

25. Howard Prince - Conditions within CCR and/or within Louisiana State Penitentiary, and/or with Elayn Hunt Correctional Center; Rule violations and other conduct involving Herman Wallace, Albert Woodfox and/or Robert King Wilkerson; Lockdown review boards, classification; Media access; Security, gangs, all aspects of Hunt, correctional practices and policies, and ACA accreditation.

26. Robert Rachal - Conditions within CCR and/or within Louisiana State Penitentiary; Rule violations and other conduct involving Herman Wallace, Albert Woodfox and/or Robert King Wilkerson; Lockdown review boards, classification; Security, gangs.

27. Randy Ritchie - Conditions within CCR and/or within Louisiana State Penitentiary; Rule violations and other conduct involving Herman Wallace, Albert Woodfox and/or Robert King Wilkerson; Lockdown review boards.

28. Jonathan Roundtree - Conditions within CCR and/or within LSP, access to medical care at LSP

29. Clovis Tillery - Conditions within CCR and/or within Louisiana State Penitentiary; Rule violations and other conduct involving Herman Wallace, Albert Woodfox and/or Robert King Wilkerson; Lockdown review boards, classification; Security, gangs.

30. Ned Tolliver - Conditions within CCR and/or within Louisiana State Penitentiary; Rule violations and other conduct involving Herman Wallace, Albert Woodfox and/or Robert King Wilkerson; Lockdown review boards.

31. Allen Verret - Conditions within Hunt; Rule violations and conduct involving Herman Wallace.

32. Ernest Williams - Conditions within CCR and/or within Louisiana State Penitentiary; Rule violations and other conduct involving Herman Wallace, Albert Woodfox and/or Robert King Wilkerson; Lockdown review boards.

33. Vernon Branaugh – Conduct involving Herman Wallace.

34. Donald Dominick - Conditions in CCR at Hunt generally; Conduct involving Herman Wallace and/or Albert Woodfox.

35. Dwayne Foster - Conditions in CCR and/or LSP generally; Conduct involving Herman Wallace and/or Albert Woodfox.

36. Antoinette Frank - Conduct involving Herman Wallace.

37. Roy Hollingsworth - Conditions in CCR and/or LSP generally; Conduct involving Herman Wallace and/or Albert Woodfox.

38. Brandi Holmes - Conduct involving Herman Wallace.

39. Michael Mable – relationship with plaintiffs and knowledge of plaintiffs, visitation.

40. Marina Hinds – relationship with the plaintiffs and knowledge of the plaintiffs.

41. Jackie Sumell - relationship with the plaintiffs and knowledge of the plaintiffs.

42. Malik Rahim - relationship with the plaintiffs, knowledge of the plaintiffs, Black Panther Party, Common Future Collectives

43. Marina Drummer - relationship with the plaintiffs and knowledge of the plaintiffs, payments to plaintiffs, Community Future Collectives.

44. Kenneth Whitmore - Conditions in CCR and/or LSP generally; Conduct involving Herman Wallace and/or Albert Woodfox.

45. Lee Wright - Conditions in CCR and/or LSP generally; Conduct involving Herman Wallace and/or Albert Woodfox.

46. Any person listed by any other party.

47. Other current and former employees of the Louisiana Department of Public Safety and Corrections.

48. Current and former inmates at LSP.

49. Any witness needed to authenticate any document.

50. Any witness needed for rebuttal/impeachment.

51. Any witness listed by any other party.

The State Defendants may call the following expert witnesses at trial:

1. Joel A. Dvoskin, Ph.D - All matters addressed in the reports and supplemental reports and attachments submitted in this matter.

2.  Raman Singh, M.D - All matters addressed in the reports and supplemental reports and attachments submitted in this matter.

3.  Patrick W. Keohane - All matters addressed in the reports and supplemental reports and attachments submitted in this matter.

4.  Ronald J. Angelone - All matters addressed in the reports and supplemental reports and attachments submitted in this matter.

5.  Robert G. Foley - Forensic document examiner, may provide expert testimony to authenticate documents, as needed.

## 9. AMENDMENTS

There is a pending motion to strike portions of Defendants Answer to the Third Amended Complaint.

## 10. ADDITIONAL MATTERS

**(a) Plaintiffs' Additional Matters**

1.  This matter is designated as a jury trial.

2.  The parties have engaged in extensive settlement negotiations which have proved unsuccessful.

3.  Plaintiffs will object to Defendants proposed motion to arrange for trial participation by inmates to be conducted by video. Defendants fail to note that 42 U.S.C. § 1997e(f) applies to pretrial proceedings only.

**(b) Defendants' Additional Matters**

      1.    Attendance at trial of inmate witnesses. The parties will require the Court's guidance on participation in trial by inmates – including two of the plaintiffs and a number of inmate witnesses. A number of the inmate witnesses are classified as maximum security inmates at Louisiana State Penitentiary, and State Defendants object to producing these inmates physically in Baton Rouge for trial. State Defendants propose to arrange for participation by inmates through the video connection currently in place between LSP and the United States District Court for the Middle District of Louisiana in accordance with the Prison Litigation Reform Act.

      Pursuant to 42 U.S.C. 1997e(f) a prisoner's participation in these proceedings "shall be conducted by telephone, video conference, or other telecommunications technology without removing the prisoner from the facility in which the prisoner is confined."

      2.    The State Defendants request an on-site inspection of certain housing areas of LSP by the Court and the jury. This will allow the Court and the jury to see first hand the conditions of confinement in which the inmates have lived.


February 4, 2010                       _____
**DATE**                                **ATTORNEY FOR PLAINTIFF**

_____     _____
**DATE**                                **ATTORNEY FOR DEFENDANT**