UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ROBERT KING WILKERSON, ALBERT  CIVIL ACTION
WOODFOX, HERMAN WALLACE

NUMBER 00-304-RET-DLD

VERSUS

RICHARD L. STALDER, ET AL.

## MAGISTRATE JUDGE'S REPORT

This prisoner action brought under 42 U.S.C. § 1983 comes before the court on plaintiffs' motion to strike defendants' answer, or in the alternative, certain affirmative defenses (rec. doc. 351). The motion is opposed.

## Factual Background

On April 3, 2009, plaintiffs filed a third amended complaint in which they added to their complaint by reciting a number of recent events[1] and by ending with four paragraphs under "Causes of Action," two of which repeated their claims of cruel and unusual punishment and due process of law, and two of which stated as follows:

> 34. By the foregoing conduct, specifically continuing plaintiffs' confinement in extended lockdown for 28 to 36 years and taking other adverse actions against plaintiffs because of their perceived political beliefs and political affiliation, their perceived viewpoints and particular opinions and/or because of plaintiffs availing themselves of their fundamental right of court access, defendants have violated plaintiffs' rights under the First and Fourteenth Amendments of the United States Constitution and Article I, Section 3 of the Louisiana Constitution of 1974.
>
> 35. By the foregoing conduct, specifically continuing plaintiffs' confinement in extended lockdown for 28 to 36 years and taking other adverse actions against plaintiffs because of their race, defendants have violated plaintiffs'

---

[1] Plaintiffs allege, *inter alia*, that they were "victims of targeted and ongoing mistreatment by LSP officials" and were mistreated by being forced to urinate in public and subject to excessive disciplinary sanctions. Plaintiffs also quoted Warden Cain's recent statements that regardless of Woodfox's guilt or innocence of his underlying conviction, he would still keep him in lockdown because of his practicing "Black Pantherism" and if released, Woodfox would have the "blacks chasing after them." He concluded that Woodfox "has to stay in a cell while he's in Angola." (rec. doc. 269). (These statements were from a deposition; Warden Cain later changed the word transcribed as "blacks" to "whites," thus making the phrase to read "whites chasing after them.")

rights under the Fourteenth Amendment of the United States Constitution and Article I, Section 3 of the Louisiana Constitution of 1974.

The deadline to file an answer was tolled until resolution of a motion for summary judgment, so defendants' answer to the third amended complaint was not due until November 23, 2009. Defendants did not file their answer and affirmative defenses until December 4, 2009, the same day as the deadline to file dispositive motions.[2] The timeliness of the answer to the complaint, and the content of affirmative defenses 1-8, 10-11, and 13 are at issue in plaintiffs' motion to strike.

*Timeliness of Answer*

The court notes that defendants did not request an extension of time to respond to the third amended complaint, and failed to provide any reasons for their dilatory answer in their response to plaintiffs' motion to strike. Defendants argue that somehow it was plaintiffs' burden to "urge" defendants "to immediately file an answer after November 18;" that "obviously" there could be no prejudice in their delayed answer because the discovery deadline already had expired as of the date the answer was due; and the affirmative defenses "had been asserted in this litigation years earlier."[3]

These arguments are incorrect and without merit. As defendants obviously are aware, the deadline to file an answer to an amended complaint at that time was ten days,[4] and an extension of time to respond is required if defendants wish to respond outside that

---

[2] Rec. doc. 341.

[3] Rec. doc. 369, pg 6.

[4] Prior to December 1, 2009, Rule 6 excluded the day of the event, weekends and holidays from time calculations of less than 11 days, and Rule 5(b)(2)(E) allowed 3 additional days for service by electronic means; thus, the answer was not due until November 23, 2009, at the very latest, or by July 22, 2009, if the conversion of the motion to dismiss to a motion for summary judgment triggered the delay for answering. In either event, the defendants were late.

-2-

time frame.  Arguing that the discovery deadline already had expired[5] is not justification to claim there is no prejudice in the filing of an untimely answer, especially when it includes new events occurring after the close of discovery,  and the *final* pre-trial conference is set for February 23, 2010, in this ten year old case.  Moreover, it is not plaintiffs' responsibility to remind defendants to file an answer to a complaint. However, while defendants' answer to the third amended complaint is untimely and without justification for the delay, in the interests of justice, the court will not strike the answer.  It will, however, grant plaintiffs' motion to strike certain affirmative defenses.

## *GOVERNING LAW*

Under Rule 8(c) of the Federal Rule of Civil Procedure, a party must affirmatively state any avoidance or affirmative defenses, and "an affirmative defense is subject to the same pleading requirements as is the complaint." *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir.1999), Fed. R. Civ. P. 8 (c). Thus, an affirmative defense need only recite a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2).  However, the affirmative defense must be pled with enough specificity to give the plaintiff "fair notice" of the defense being advanced, although, in some instances, the mere naming of the defense will suffice. *Woodfield*, 193 F.3d at 362.

Although Rule 8(c) lists nineteen affirmative defenses, this list is non-exhaustive, and a party must set forth any other matter constituting an avoidance or an affirmative defense, which is referred to as an "unenumerated affirmative defense." An affirmative defense is defined as a defendant's assertion of facts and argument that, if true, will defeat the

---

[5]The deadline for written discovery passed on July 31, 2009.  The November 18, 2009 discovery deadline was only established for the purpose of conducting depositions.  The deadline to file dispositive motions was December 4, 2009.  Rec. docs. 290, 311.

plaintiff's claim, even if all the allegations in the complaint are true, and the defendant bears the burden of proving an affirmative defense. Black's Law Dictionary 482 (9th ed. 2009). "Avoidance" in pleadings means the "allegation or statement of new matter, in opposition to a former pleading, which, admitting the facts alleged in such former pleading, shows cause why they should not have their ordinary legal effect." Black's Law Dictionary 482 (9th ed. 2009). *See also, Ingraham v. United States,* 808 F.2d 1075 (5th Cir. 1987), Fed.R.Civ.P. Rule 8(c).

While affirmative defenses in a defendant's answer typically escape close scrutiny by a plaintiff, the law is clear that not all defenses are affirmative ones. Determining whether a challenged affirmative defense is an actual affirmative defense as contemplated by Rule 8(c), is sometimes difficult. When a court is reviewing a challenged affirmative defense, part of the analysis necessarily includes the logical relationship between the defense and the cause of action asserted by the plaintiff. *Ingraham*, at 1079; *see also, Oden v. Oktibbeha County, Mississippi*, 246 F.3d 458 (5th Cir. 2001). The Fifth Circuit analyzes challenged affirmative defenses in two ways. One way reviews three factors in making that determination: "(1) whether the matter at issue fairly may be said to constitute a necessary or extrinsic element in the plaintiff's cause of action; (2) which party, if either, has better access to relevant evidence; and (3) policy considerations: should the matter be indulged or disfavored?" *Ingraham,* at 1079; *see also* 27 Fed. Proc., L.Ed. § 62.63. Another way subjects the challenged affirmative defense to a two-step analysis: "(1) whether the matter is appropriately pleaded as an affirmative defense and (2) whether it is adequately pleaded." *Sutton v. United States,* 1993 WL 262674 (E.D. La.), *quoting Ben*

*Kozloff, Inc. V. H & G Distributors, Inc.*, 1989 WL 152280 (N.D.Ill.) (*citing Bobbitt v. Victorian House, Inc.*, 532 F.Supp. 734, 737 (N.D.Ill. 1982).

Striking affirmative defenses generally falls under Rule 12. Fed.R.Civ.P Rule 12(f) confers on the court the authority, upon motion by a party or *sua sponte*, to order as stricken from any pleading any "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "An impertinent pleading is one that is immaterial." *OKC Corp. v. Williams*, 461 F.Supp. 540, 550 (N.D.Tex.1978), *citing Mitchell v. American Tobacco Company*, 28 F.R.D. 315 (D.C. Pa. 1961). "Scandalous matters are those casting an excessively adverse light on the character of an individual or party.[6]" *OKC Corp.* at 550, *citing Budget Dress Corp. v. International Ladies Garment Workers Union, AFL-CIO*, 25 F.R.D. 506, 508 (S.C. NY 1959).

### *GENERAL ARGUMENTS BY THE PARTIES*

Plaintiffs argue that the first, sixth, seventh, eight, and tenth affirmative defenses each "separately aver that Plaintiffs failed to state claims upon which relief may be granted," and in addition to being redundant, these defenses also are insufficient as a matter of law. (rec. doc. 351-1, pg 6) Plaintiffs also contend that defendants' second, third, fourth and fifth affirmative defenses are based on failure to exhaust administrative remedies, *res judicata* and collateral estoppel, qualified immunity, and lack of liberty interest in their confinement, respectively, and that these issues have been resolved either by stipulation or by court order. Lastly, plaintiffs seek to strike part of the thirteenth affirmative defense for its lack of a factual basis and for its scandalous and prejudicial content.

---

[6]The court declines to define "redundant," as it is not necessary in this matter.

Plaintiffs argue that the allegations concerning "pornography" contained within this affirmative defense are not material or probative to this case.

In response, defendants contend that motions to strike must be filed within 20 days of the objectionable filing, and plaintiffs are "too late" in their challenging of these defenses. Fed. R. Civ. P. Rule 12 f(2) states that a motion [to strike] must be filed within 21 days of service of the responsive pleading.[7] Under Fed. R. Civ. P. Rule 6(e),[8] 3 days are added to the service time for service by electronic means of the responsive pleading. Fed. R. Civ. P. Rule 5(b)(2)(E). Defendants filed their untimely Answer on December 4, 2009, and plaintiffs' motion to strike would be due on December 28, 2009, the same day the motion was filed. Thus, the motion to strike is not untimely; the answer was untimely.

Defendants further argue that none of the first eleven affirmative defenses add anything to the existing lawsuit, and they simply have been re-urged in response to the third amended complaint as they are required to do so under Fed. R. Civ. P. Rule 8(c) under penalty of waiver.[9] Defendants acknowledge that the court has denied some of the defenses they urge, but they contend their answer to the third amended complaint presents defenses to any new claims asserted in the third amended complaint. Defendants also state that they do not intend to re-litigate any of the defenses already addressed by the court, and admit that their third, fourth and sixth affirmative defenses (*res judicata* and

---

[7]Defendants are reminded that the civil rules were amended December 1, 2009, and as their answer was not filed until December 4, 2009, the new time calculations apply.

[8]Rule 6 was also amended on December 1, 2009.

[9]It is well settled that an amended pleading supersedes the pleading it modifies. *See, e.g.*, 6 Charles A. Wright & Arthur R. Miller, Fed. Practice and Procedure § 1476, at 556 (2d ed.1990). Thus, the defendants had to re-assert all affirmative defenses or risk waiver of those defenses.

-6-

collateral estoppel, qualified immunity and prescription) are moot as plaintiffs have dismissed the objectionable claims (rec. doc. 359, pg 8 w/accompanying footnotes, pg 9).

Regarding the thirteenth affirmative defense, defendants assert that plaintiff Wallace cannot be safely or appropriately released into the general population due to his many serious rule violations. Defendants assert there is no prejudice or surprise to the plaintiffs because this defense is "principally based on documents authored by Wallace himself," and Wallace was "well aware" of the acts upon which this defense rests. (rec. doc. 359, pg 11). Defendants do not address the need for any discovery of their own investigation.

## *DISCUSSION*

For the most part, plaintiffs' third amending complaint merely restates what they have claimed previously and adds relatively recent incidents which they claim is merely further evidence of ongoing targeted treatment which results in their continuing confinement in extended lockdown based on unconstitutional reasons. And, for the most part, defendants repeat the same defenses they have raised since the outset. That the affirmative defenses are pled again does not breathe new life into an issue already decided, and striking the defense now does not eliminate an issue previously preserved for appeal. And if the so-called affirmative defense is so vague as to be incapable of identifying the particular defense, as plaintiffs claim, then it cannot later be used to create a specific identifiable defense that should have been pled with more specificity.[10]  Thus, the court

---

[10] When it comes to listing affirmative defenses, the examples of defenses and the ones used in daily practice spill over into common defenses, probably out of an abundance of caution on the part of practitioners, because cases are replete with casual references to questionable "affirmative defenses." More serious disputes arise when a party tries to raise a defense for the first time on appeal or so late in the proceeding as to prejudice the other party.

recommends that repeated defenses *one, two, five, seven, eight, ten, and eleven* to the basically repeated third amended complaint not be stricken.

Defendants have agreed, however, that affirmative defenses *three, four, and six* are moot; therefore, the court recommends that these affirmative defenses be stricken.

The last affirmative defense that is challenged, *number thirteen*, is of a different nature from the other challenged defenses. Defendants assert in this affirmative defense that plaintiff Wallace cannot be released from restricted housing because he has repeatedly engaged in "improper and prohibited contacts with other offenders and the public." Plaintiffs limit their motion to striking the references of generating and sending pornographic material which are found in parts c., d, and e. of this affirmative defense.

Defendants admit that this affirmative defense asserts new facts which only occurred in "recent months." Defendants then argue, incongruously, that "even the defense described in the Thirteenth Affirmative Defense has been central to this lawsuit from the inception of this action."[11] In support of this contention, defendants rely on the court's description that the plaintiffs' core proceeding includes the assertion that the state defendants "lack . . . valid motivation for keeping Plaintiffs in continued confinement."[12] Defendants further argue that to the extent plaintiffs engage in "new or continuing conduct" that would prevent LSP from "safely moving those inmates into general population now <u>or in the future</u>," they "must be able to identify and introduce evidence of such conduct - up to and including the time of the trial of this matter.[13]" In addition to arguing that there is no surprise to plaintiffs because Wallace was the author or actor, defendants further contend

---

[11]Rec. doc. 359, pg 3.

[12]Rec. doc. 359, quoting rec. doc. 318, pg 9.

[13]Rec. doc. 359.

-8-

Case 3:00-cv-00304-JJB-DLD    Document 384    02/22/10    Page 8 of 13

that they have produced copies of the relevant documents already, so plaintiffs are not prejudiced.

Defendants then acknowledge that none of the conduct asserted in this affirmative defense is the reason for having held Wallace in CCR since the 1970's, but this affirmative defense justifies keeping Wallace out of the general population <u>today</u>, as the lawsuit seeks <u>prospective</u> injunctive relief, and the conduct described in this affirmative defense is additional grounds for keeping Wallace in CCR. Defendants contend that plaintiffs' "recent conduct" has been a central issue throughout this litigation as plaintiffs have portrayed their recent conduct as exemplary.

Plaintiffs respond that they have been severely prejudiced by the defendants' assertion of this defense as discovery has closed and plaintiffs have had no discovery into how LSP routinely disciplines inmates accused of the same or similar violations, nor did they know to seek such information since Wallace was not then, nor has he ever been, disciplined for the pornography allegations. The allegations, argue plaintiffs, are not material or probative to the case and are prejudicial.[14]

Using defendants' logic that plaintiffs are not prejudiced because they are using plaintiffs' actions and conduct as a basis for their defense would mean that plaintiffs should not have been allowed any discovery throughout the litigation since defendants contend that it is plaintiffs' actions and conduct that form the reasons for their being held in lockdown these many years. Plaintiffs are prejudiced by this affirmative defense as

---

[14] The court reviewed the exhibits filed in support of this defense and quickly ordered the opposition brief SEALED on its own after the defendants filed their brief and attached exhibits in the public record. Most of the exhibits consisted of correspondence between consenting adults and was of a highly personal nature. The correspondence covered a period between January 1, 2009, and November 14, 2009.

plaintiffs were not able to proceed through fact discovery with notice of this defense, especially as this defense was not raised until months after the close of written discovery. *Cf. Raytheon Company v. Indigo Systems Corporation*, 2008 WL 5422874 (E.D. Tex.) Furthermore, defendants have cited to absolutely no authority for their proposition that because plaintiffs are seeking injunctive relief, which naturally is always prospective, defendants then may introduce any prospective evidence that they feel shows how bad the plaintiffs are up to and including during trial, without corresponding discovery being had from defendants on that evidence.

But even more importantly, while defendants strain to link this affirmative defense to the underlying controversy, they do not succeed. The concept of an affirmative defense requires defendants to admit the allegations in the complaint, then assert that "for some legal reason it is nonetheless excused from liability (or perhaps from full liability)." *Ries Robotics USA, Inc. V. Concept Industries, Inc.*, 462 F. Supp. 2d 897, 906 (N.D. Ill. 2006), *quoting Menchaca v. Am. Amd. Resp. Of Ill.,* 6 F. Supp. 2d 971, 972 (N.D. Illl. 1998). The conduct, which is detailed in such lengthy and intimate fashion in this one affirmative defense, together with exhibits constituting a virtual book of correspondence -- unlike in any of the other rather sparsely worded defenses -- occurred months after the third amended complaint was filed, and defendants are far from admitting the underlying allegations. Furthermore, not every incident involving the plaintiffs is relevant to the underlying merits regarding constitutional violations.

First, plaintiffs did not ask for nor could they receive some sort of *carte blanche* to do as they please should they prevail. What plaintiffs requested in their prayer for relief is that defendants be enjoined from keeping plaintiffs in lockdown "*without independent*

-10-

*intervening cause* other than the original reason" and that they be enjoined "from taking other adverse actions against plaintiffs because of plaintiffs' race, their political ideology or affiliation, or in retaliation for plaintiffs' availing themselves of their right of access to courts."[15] Defendants cannot be arguing that plaintiff's letters to his girlfriend, however explicit, are the explanation for his tenure in lockdown these many years.

Also, not only are the "pornography" allegations in this 13th affirmative defense a snapshot of a very brief period of time at the end of decades of being held in lockdown, they are premature as evidence of an intervening cause to prohibit injunctive relief, and likely will be stale information by the time this matter is finally concluded.[16] *If* plaintiffs prevail on their claim for injunctive relief, the court can address the situation *as it exists at that time* to determine whether or not an "intervening cause" prohibits their immediate placement in the general population and whether and how best to receive any relevant, timely evidence regarding such a "cause." Otherwise, these proceedings will never end.

And last, the court must question the defendants' motives, or, at the very least, their judgment, in placing completely unnecessary exhibits in the public record that contain highly personal and sexually explicit information. An affirmative defense is simply a short and plain statement giving fair notice of a defense. These exhibits served no legitimate purpose in opposition to the motion and should be stricken from the record as "immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). This court takes very seriously

---

[15] Rec. doc. 289, pp.8-9. Emphasis added.

[16] Additionally, defendants have yet to clearly explain what they contend is the violation or danger posed by the correspondence.

-11-

Case 3:00-cv-00304-JJB-DLD   Document 384   02/22/10   Page 11 of 13

its obligation to protect the integrity of these proceedings and expects the parties to do likewise.

## *RECOMMENDATION*

Accordingly, it is the recommendation of the Magistrate Judge that plaintiffs' motion to strike be **GRANTED in part and DENIED in part** as follows:

1. Affirmative defenses 2, 3, and 6 be stricken as moot.

2. All references to pornographic material in the 13th affirmative defense in sections a., b., and c., be stricken.

3. In all other respects, the motion be **DENIED.**

**IT IS FURTHER RECOMMENDED** that rec. docs. 359, 359-2 (Exhibit "B"), and 359-3 (Exhibit "C") be **UNSEALED** and placed back into the public record.

**IT IS FURTHER RECOMMENDED** that rec. docs. 359-1 (Exhibit "A"), 359-4 (Exhibit "D") and 359-5 (Exhibit "E") remain **UNDER SEAL** and available only to the court for purposes of any appeal.

Signed in Baton Rouge, Louisiana, on February 22, 2010.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**ROBERT KING WILKERSON, ALBERT WOODFOX, HERMAN WALLACE**

**VERSUS**

**RICHARD L. STALDER, ET AL.**

**CIVIL ACTION**

**NUMBER 00-304-RET-DLD**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have fpurteen days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on February 22, 2010.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**