UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROBERT KING WILKERSON, ALBERT WOODFOX, and HERMAN WALLACE, | * | CIVIL ACTION |
| | * | NUMBER 00-304-C-M3 |
| VERSUS | * | JUDGE BRADY |
| RICHARD STALDER et al. | * | MAGISTRATE BOURGEOIS |
| *    *    *    *    *    *    * | | JURY DEMAND |

## **FOURTH AMENDED COMPLAINT**

### Jurisdiction and Venue

1.  This is an action for injunctive, declaratory and monetary relief for violation of the First, Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983. Jurisdiction lies under §§ 1331, 1343(a)(3) and (4), and 2201. The complaint also asserts state law claims. This Court has supplemental jurisdiction of these state law claims under 28 U.S.C. § 1367.

2.  Venue for this action lies in this Court under 28 U.S.C. §1391(b)(2) because the events and omissions giving rise to the claims occurred in the Middle District of Louisiana.

### Parties

3.  Plaintiff Robert King Wilkerson is a person of the full age of majority who was incarcerated at Louisiana State Penitentiary in Angola, Louisiana (LSP) at all relevant times until his conviction was overturned and he was released from LSP in February 2001.

4.  Plaintiff Albert Woodfox is a person of the full age of majority who was incarcerated at Louisiana State Penitentiary in Angola, Louisiana until his transfer to David Wade Correctional Center ("Wade") in November 2010, where he is currently incarcerated.

1

5.  Plaintiff Herman Wallace is a person of the full age of majority who was incarcerated at Louisiana State Penitentiary in Angola, Louisiana until his transfer to Elayn Hunt Correctional Center ("Hunt") in March 2009, where he is currently incarcerated.

6.  Defendant Richard Stalder was the Secretary of the Louisiana Department of Public Safety and Corrections at various times pertinent herein.  He was responsible for the overall operation of the Department, including the Louisiana State Penitentiary at Angola, Louisiana. Defendant Stalder is sued in his official and individual capacities.

7.  Defendant James M. LeBlanc is the Secretary of the Louisiana Department of Public Safety and Corrections.  He is responsible for the overall operation of the Department, including the Louisiana State Penitentiary at Angola, Louisiana; the Elayn Hunt Correctional Center in St. Gabriel, Louisiana; and the David Wade Correctional Center in Homer, Louisiana.  Defendant LeBlanc is sued in his official capacity.

8.  Defendant Burl Cain is the Warden of the Louisiana State Penitentiary at Angola and a Regional Warden supervising, *inter alia*, the Elayn Hunt Correctional Center in St. Gabriel, Louisiana.  Defendant Cain is aware of the situation of which plaintiffs complain and has refused to take action to correct the situation.  He is sued in his official and individual capacities.

9.  Defendant Richard Peabody was deputy warden in charge of security at the Louisiana State Penitentiary at Angola at various times pertinent herein.  He is sued in his official and individual capacities.

10. Defendant R. Rachal is a major at the Louisiana State Penitentiary at Angola, and at various times pertinent herein was a member of the Lockdown Review Board.  He is sued in his official and individual capacities.

11. Defendant Randy Ritchie is a classification officer at the Louisiana State Penitentiary at Angola, and at various times pertinent herein was a member of the Lockdown Review Board. He is sued in his official and individual capacities.

12. Defendant Sam Smith is a colonel at the Louisiana State Penitentiary at Angola, and at various times pertinent herein was a member of the Lockdown Review Board. He is sued in his official and individual capacities.

13. Defendant Paul J. Myers is a major at the Louisiana State Penitentiary at Angola, and at various times pertinent herein was a member of the Lockdown Review Board. He is sued in his official and individual capacities.

14. Defendant Tom Norris is a classification officer at the Louisiana State Penitentiary at Angola, and at various times pertinent herein was a member of the Lockdown Review Board. He is sued in his official and individual capacities.

15. Defendant Jerry Goodwin is the Warden of the David Wade Correctional Center in Homer, Louisiana. Defendant Goodwin is aware of the situation of which plaintiffs complain and has refused to take action to correct the situation. He is sued in his official and individual capacities.

16. Defendant James Arnold is deputy warden in charge of security at David Wade Correctional Center in Homer, Louisiana. He is sued in his official and individual capacities.

17. Defendant Lonnie Nail is a lieutenant colonel at David Wade Correctional Center in Homer, Louisiana, and at various times pertinent herein was a member of the Lockdown Review Board. He is sued in his official and individual capacities.

18. Defendant Chris Evans is a lieutenant colonel at David Wade Correctional Center in Homer, Louisiana, and at various times pertinent herein was a member of the Lockdown Review Board. He is sued in his official and individual capacities.

19. Defendant Mark Hunter is a classification officer at David Wade Correctional Center in Homer, Louisiana, and at various times pertinent herein was a member of the Lockdown Review Board. He is sued in his official and individual capacities.

20. Defendant Howard Prince is the Warden of the Elayn Hunt Correctional Center in St. Gabriel, Louisiana. Defendant Prince is aware of the situation of which plaintiffs complain and has refused to take action to correct the situation. He is sued in his official and individual capacities.

21. Defendant Greg McKey is assistant warden in charge of security at Elayn Hunt Correctional Center in St. Gabriel, Louisiana. He is sued in his official and individual capacities.

22. Defendant Betty Johnson is a lieutenant colonel at Elayn Hunt Correctional Center in St. Gabriel, Louisiana, and at various times pertinent herein was a member of the Lockdown Review Board. She is sued in her official and individual capacities.

23. Defendant Kevin Durbin is a lieutenant colonel at Elayn Hunt Correctional Center in St. Gabriel, Louisiana, and at various times pertinent herein was a member of the Lockdown Review Board. He is sued in his official and individual capacities.

24. Defendant Jeffrey Gladney is a classification officer at Elayn Hunt Correctional Center in St. Gabriel, Louisiana, and at various times pertinent herein was a member of the Lockdown Review Board. He is sued in his official and individual capacities.

Factual Allegations

25. Plaintiffs Herman Wallace, Albert Woodfox and Robert King Wilkerson were inmates incarcerated at the Louisiana State Penitentiary at Angola. Plaintiff Wilkerson was held in

extended lockdown status for a period of approximately 28 years, from 1972 until his release from LSP in 2001.  Plaintiff Wallace has been held in extended lockdown status for a period of approximately 41 years, from approximately 1972 to the present, except for an intervening period in a highly restrictive dormitory from March 2008 until November 2008.  Plaintiff Woodfox has been held in extended lockdown status from 1972 to the present, except for an intervening three-year hiatus at a parish jail and an intervening period in a highly restrictive dormitory from March 2008 until November 2008.  Mr. Wallace and Mr. Woodfox today remain classified as extended lockdown status inmates.

26. In mid-November 2008, Mr. Wallace and Mr. Woodfox were removed from the dormitory and placed back into lockdown cells, in administrative segregation, or an area of LSP commonly known as "the dungeon."  Over one month later, Mr. Wallace and Mr. Woodfox were transferred once again into extended lockdown.

27. The conditions under which plaintiffs are or have been incarcerated in extended lockdown are the effective equivalent of solitary confinement.  Each plaintiff has been continuously incarcerated alone in a cell of approximately 55 to 60 square feet for 23 hours each day.  One hour a day, plaintiffs may shower.  During this hour, three times a week, weather permitting, plaintiffs may elect to be escorted to a fenced exercise yard, where they may exercise without companions.  Severe restrictions are placed on items of personal property, the number of books and types of reading material allowed.  Access to legal materials and to inmate counsel is also substantially more restricted than in the general prison population, as is contact visitation.  Restrictions in administrative segregation are even greater.

28. By contrast, inmates in the general prison population work and socialize.  They live in dormitories, and have educational, training and recreational opportunities.

29.     The conditions of plaintiffs' incarceration in extended lockdown almost totally deprive them of human contact, mental stimulus, physical activity, personal property and human dignity.  Continued and continuing confinement under these conditions for 28 to 41years is inhumane, and imposes atypical and significant hardship compared to ordinary prison life.

30.     On 90-day intervals, an entity called the Lockdown Review Board reviews plaintiffs' continued confinement in extended lockdown.  At each review, the Board continues plaintiffs' classification due to "nature of original reason for lockdown." This has been the pattern for 28 to 41 years.

31.     Among the members of the Lockdown Review Boards that reviewed and extended plaintiffs' confinement in extended lockdown since March 30, 1999 are defendants Rachal, Ritchie, Smith, Myers, Norris, Nail, Evans, Hunter, Johnson, Durbin, and Gladney.

32.     The review by the Lockdown Review Board is a sham proceeding, totally devoid of any meaning or substance.  No review actually takes place.  Board members discuss unrelated matters, such as hunting, fishing, or the purchase of an old car motor, rather than the inmate's case.  If the inmate tries to address why he should be released from extended lockdown, Board members tell him "We're not here to litigate.  Litigate somewhere else." Extension of confinement in extended lockdown is automatic.  No meaningful attempt is made to determine if plaintiffs are fit for release into the general population or to a less restricted status, or if they constitute a danger to the inmates or employees of the prison.

33.     Upon information and belief, as at LSP, at Wade and Hunt there is no objective point scoring model for custody designations, nor is there any application of independent policy criteria.  There remains no rational penological basis that requires the current placement in extended lockdown.

34. On information and belief, defendants Cain, Peabody, Goodwin, Arnold, Prince and McKey influenced or participated in the decisions of the Lockdown Review Board to refuse to release plaintiffs from extended lockdown.

35. Defendants Cain, Prince and Goodwin know of plaintiffs' 28-to-41 year confinement in extended lockdown, and also know that the Lockdown Review Board will not release plaintiffs into the general prison population without direction from higher up. Nevertheless, with deliberate indifference to plaintiffs' rights, each has failed to take any action to facilitate plaintiffs' release from extended lockdown or to secure them a fair hearing on whether they would pose a danger in the general prison population.

36. In particular, in mid-October, 2000, Warden Cain spoke to students at a school in New Orleans. After the speech, a teacher approached Warden Cain and asked about the "Angola Three," as plaintiffs publicly are known. Warden Cain immediately indicated that he knew of whom the teacher spoke and explained that they would not be released from extended lockdown because they had not reformed their political beliefs.

37. In an October 2008 sworn deposition—taken in connection with bail proceedings for plaintiff Albert Woodfox after Mr. Woodfox's underlying conviction was overturned—Warden Cain made a number of statements demonstrating that he is penalizing plaintiffs because of their perceived political affiliation and political beliefs, as well as their race. Among other things, when asked to assume that Mr. Woodfox was not guilty of his underlying conviction, Warden Cain stated: "I would still keep him in CCR [an extended lockdown unit]. I still know that he is trying to practice Black Pantherism, and I still would not want him walking around my prison because he would organize the young new inmates. I would have me all kind of problems, more than I could

7

stand, and I would have the blacks chasing after them." Warden Cain added that Mr. Woodfox "has to stay in a cell while he's in Angola."

38. Mr. Wallace and Mr. Woodfox have been the victims of targeted mistreatment by prison officials. Among other things, at LSP, Mr. Woodfox was forced to urinate with a bathroom door open in close proximity to two female friends who were visiting him and Mr. Wallace, and Mr. Woodfox and Mr. Wallace were given excessive disciplinary sanctions for minor alleged rule violations. According to disciplinary reports concerning these alleged rule violations, plaintiffs were placed in administrative segregation and then returned to further extended lockdown for, *inter alia,* self-identifying as members of the Black Panther Party, and for making statements that "provoke unfavorable public opinion" about LSP and the Attorney General's office, as well as statements that are "derogatory" to the New Orleans Police Department and District Attorney's Office.

39. LSP officials went to extraordinary lengths in initiating and conducting an investigation of potential administrative rule violations by Mr. Wallace and Mr. Woodfox in order to pretextually justify sending Plaintiffs back to administrative segregation and extended lockdown. Contrary to standard practice, prison officials and staff of the Attorney General's office listened to over a year of recorded phone calls made by Mr. Wallace and Mr. Woodfox—including privileged attorney-client calls—and read all of their mail. This exhaustive review was undertaken for the express purpose of finding pretextual violations that could be cited "as sufficient justification for stiff disciplinary action," and then used as a basis for returning Mr. Wallace and Woodfox to indefinite extended lockdown confinement. After this exhaustive investigation, the only rule violations prison officials could come up with were for minor infractions.

40.     The extraordinary lengths to which the Attorney General and LSP officials went to justify returning Plaintiffs to indefinite extended lockdown were revealed in e-mails between the Attorney General and LSP officials. The Attorney General and LSP officials wrongfully withheld these e-mails for over two years in an attempt to conceal their actions. The e-mails were only produced to Plaintiffs after extensive litigation to compel production.

41.     Defendants' return of Plaintiffs to segregated status, for minimal and pretextual "violations," in spite of Plaintiffs' success in a dormitory setting, emphasizes that there was and is no rational penological justification for placing or keeping Mr. Wallace and Mr. Woodfox in indefinite extended lockdown confinement.

42.     Even after Mr. Woodfox and Mr. Wallace were subsequently transferred from LSP to, respectively, Wade and Hunt, such targeted mistreatment has continued. At Wade and Hunt, prison officials continue to hold Mr. Woodfox and Mr. Wallace in extended lockdown, and continue to target Mr. Woodfox and Mr. Wallace for unnecessarily restrictive confinement. For example, at Wade, for no legitimate reason, Mr. Woodfox was prohibited from receiving such publications as the periodical *The Black Panther*. At Hunt, for no legitimate reason, Mr. Wallace's phone privileges were restricted after he participated in what the prison deemed an "interview" with a law professor, even though she was on his approved call list. At both Wade and Hunt, respectively, Mr. Woodfox and Mr. Wallace have been advised that they cannot be released from extended lockdown because they continue to litigate in federal courts.

43.     Upon information and belief, Louisiana prison officials intend to keep Mr. Wallace and Mr. Woodfox under lockdown until they are permanently physically disabled, or dead.

44.     Upon information and belief, prison officials' actions are not common practice, nor are they justified by legitimate penological interests. In addition, upon information and belief,

9

prison officials allow inmates to give media statements that, in their view, create "good" publicity. Rather, these incidents reflect targeted and ongoing mistreatment based on plaintiffs' race, perceived political ideology and association, perceived viewpoints and particular opinions, and/or perceived success in this lawsuit and in separate proceedings challenging their convictions. Upon information and belief, Defendants, including Warden Cain, Warden Prince and Warden Goodwin have either directed or facilitated this targeted mistreatment of plaintiffs, or are aware of this targeted mistreatment but have taken no steps to rectify it.

45. On information and belief, defendants Stalder and LeBlanc are aware that plaintiffs have been confined in extended lockdown for 28 to 41 years and have refused to take any action to end this inhumane situation. Plaintiffs base this belief on the high-profile nature of their case, on previous litigation, and on the third-step consideration of plaintiff Woodfox's grievance.

46. Plaintiffs attempted to remedy this situation through administrative grievances, but were told decisions of the Lockdown Review Board were not grievable.

47. At all times, defendants' refusal to release plaintiffs from extended lockdown was made with deliberate indifference to their condition, and in reckless disregard for or knowing violation of their rights.

48. As a result of defendants' acts and omissions, plaintiffs have suffered severe mental anguish and other psychological damage, along with an unwarranted deprivation of the liberties and privileges granted other prisoners. The conditions of their confinement in extended lockdown for this extended status have caused them daily mental anguish and pain and have exposed them to an unduly high risk of psychological harm. Plaintiffs also have suffered physical injury as a result of their extended confinement in extended lockdown, including damage to their eyesight and hypertension/high blood pressure.

Causes of Action

49.     By the foregoing conduct, specifically continued confinement in extended lockdown for 28 to 41 years, defendants have violated plaintiffs' right to be free of cruel and unusual punishment, as guaranteed by the Eighth Amendment of the United States Constitution and Article I, Section 20 of the Louisiana Constitution of 1974.

50.     By the foregoing conduct, specifically sham review of plaintiffs' continued confinement in extended lockdown after well-over a quarter of a century, defendants have violated plaintiffs' right to due process of law, as guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, Section 2 of the Louisiana Constitution of 1974.

51.     By the foregoing conduct, specifically continuing plaintiffs' confinement in extended lockdown for 28 to 41 years and taking other adverse actions against plaintiffs because of their perceived political beliefs and political affiliation, their perceived viewpoints and particular opinions and/or because of plaintiffs' availing themselves of their fundamental right of court access, defendants have violated plaintiffs' rights under the First and Fourteenth Amendments of the United States Constitution and Article I, Section 3 of the Louisiana Constitution of 1974.

52.     By the foregoing conduct, specifically continuing plaintiffs' confinement in extended lockdown for 28 to 41 years and taking other adverse actions against plaintiffs because of their race, defendants have violated plaintiffs' rights under the Fourteenth Amendment of the United States Constitution and Article I, Section 3 of the Louisiana Constitution of 1974.

Prayer for Relief

WHEREFORE, plaintiffs pray that this Honorable Court grant the following relief

A.      Declare defendants' conduct unlawful;

  B. Enjoin and restrain defendants from incarcerating plaintiffs in extended lockdown or other similar condition without independent intervening cause other than the original reason for the classification, and further, ordering plaintiffs' placement in the general prison population;

  C. Enjoin and restrain defendants from taking other adverse actions against plaintiffs because of plaintiffs' race, their political ideology or affiliation, or in retaliation for plaintiffs' availing themselves of their right of access to courts.

  D. Award compensatory damages;

  E. Award punitive damages;

  F. Grant attorneys' fees and costs;

  G. Trial by jury; and

  H. Such other relief as the Court deems just and proper.

          Respectfully submitted,


          George H. Kendall
          Carine M. Williams
          Squire Sanders (US) LLP
          30 Rockefeller Plaza, 23rd Floor
          New York, NY 10112
          212.872.9800


          Nicholas J. Trenticosta
          LSBA Roll No. 18475
          7100 St. Charles Avenue
          New Orleans, LA 70118
          504.864.0700