UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ROBERT KING WILKERSON, ET AL.,<br><br>          Plaintiffs,<br><br>     v.<br><br>RICHARD STALDER, ET AL.,<br><br>          Defendants. | CIVIL ACTION<br>NUMBER 00-304-C-M3<br><br>JUDGE BRADY<br><br>MAGISTRATE JUDGE BOURGEOIS |

**PLAINTIFFS' SUPPLEMENTAL BRIEFING ON PENDANT JURISDICTION**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff Albert Woodfox, who, pursuant to this Court's August 26, 2013 order, submits this Supplemental Brief on the issues of jurisdiction and exhaustion as they pertain to Defendants' unlawful strip searches of him at the David Wade Correctional Center.

**I.     PROCEDURAL HISTORY**

On August 23, 2013, Mr. Woodfox filed a motion for a temporary restraining order seeking to enjoin Defendants from strip searching him every time he enters or leaves his cell. *See* Doc. 477. On August 26, 2013, this Court held a telephonic hearing on the motion. *See* Doc. 478. Plaintiffs presented facts which Defendants did not deny.

Defendants did not deny that they were strip searching Mr. Woodfox up to six times a day – despite him being shackled at the hands, waist, and feet, and under constant observation when outside of his cell. Defendants made no reply to the fact that Mr. Woodfox does not interact with inmates or other persons who may pass him contraband. Defendants advanced no argument that Mr. Woodfox has ever been found to have possessed contraband. Furthermore,

Defendants did not deny that a court order and a Consent Agreement precludes Defendants from engaging in these very practices, tacitly conceding that they are legally bound to "cease requiring anal examinations before or after a segregated inmate is moved within the segregation area or anywhere in the prison while under escort or observation." *See* Doc. 477 at pp. 3.

However, rather than address the merits, Defendants argued instead that this Court should turn a blind eye to the unlawfulness of their actions on two procedural grounds. First, Defendants argued that this Court should ignore the unlawful strip searches because a state court should hear these arguments. Second, Defendants argued that this Court should wait until Mr. Woodfox exhausted his grievances **on the identical issue he already won** before the late Judge LeBlanc in state court proceedings. This Court ordered that the Parties brief these arguments and set a preliminary injunction hearing for September 17, 2013. *See* Doc. 479.

**II.     DISCUSSION**

    **A.     There are Multiple Grounds on Which This Court Can Properly Exercise Jurisdiction.**

As a general matter, this Court has original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States. 42 U.S.C. § 1331. Even where a deprivation arises under color of State law, this Court's original jurisdiction is not abrogated. *Id.* § 1343(a)(3) and (4).

28 U.S.C. § 1367(a) governs this Court's authority to exercise supplemental jurisdiction, including the exercise of pendant jurisdiction over matters that might otherwise fall under the state court's jurisdiction. Under § 1367(a), the question is whether the facts giving rise to the new issue are so related to the original claims that they derive from a common nucleus of operative fact. *Id. See also City of Chi. v. Int'l College of Surgeons*, 522 U.S. 156, 164 (U.S. 1997) (discussing the "common nucleus of operative fact" test); *United Mine Workers v. Gibbs*,

383 U.S. 715, 725 (1966); *Halmekangas v. State Farm Fire & Cas. Co.*, 603 F.3d 290, 293 (5th Cir. 2010).

The Fifth Circuit's "general rule" favors the exercise of pendant jurisdiction unless "all federal claims are dismissed or otherwise eliminated from a case prior to trial." *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir.1999) (citation omitted); *accord*, *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). However, this rule is "neither mandatory nor absolute." *Batiste*, 179 F.3d at 227. A court may decline to exercise supplemental jurisdiction when:

(1)   the claim raises a novel or complex issue of State law,

(2)   the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3)   the district court has dismissed all claims over which it has original jurisdiction, or

(4)   in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

      1.    <u>This Court Has Original Jurisdiction As The Strip-Searches Are A Component of the Underlying Claims In This Matter.</u>

Plaintiff Woodfox brought the above-captioned § 1983 suit based on the fact that he has been subject to highly restrictive conditions in CCR without legitimate penological interests for so long that his continuing incarceration under these conditions is unconstitutional, inhumane, and imposes atypical and significant hardships compared to ordinary prison life.

Defendants' recent addition of regularly strip-searching Mr. Woodfox whenever he enters or exits his cell in CCR to the other highly restrictive measures Mr. Woodfox must endure in

3

CCR is merely another facet of the issue already before the Court. Defendants have wrongfully misclassified Mr. Woodfox, thereby subjecting him to CCR confinement, and regularly denied him meaningful review – despite the fact that he has had an exemplary conduct record without a single write up for *anything* (much less contraband) the entire time he has been at David Wade Correctional Center. As applied to him, Defendants' closed-cell restriction strip searching policy and practice is further proof that Mr. Woodfox's confinement is cruel and unusual and in violation of Plaintiff Woodfox's Fourteenth Amendment due process rights.

The fact that Defendants long ago entered into a consent decree in state court does not strip this Court of its original subject matter jurisdiction over Plaintiff Woodfox's § 1983 claims. The duration of his confinement under such conditions that now include wrongful strip searching is indeed the subject of this suit.[1]

### 2. Even If It Did Not Exercise Original Jurisdiction, This Court Can and Should Exercise Pendant Jurisdiction.

To the extent that Defendants' wrongful strip searching and violation of a standing consent decree create grounds for separate, additional state law claims, this Court has supplemental jurisdiction over any such claims under 28 U.S.C. § 1391(b)(2). The strip searching derives from "a common nucleus of operative fact" because Mr. Woodfox's CCR status—the factual underpinning of his Complaint—is precisely the justification Defendants rely on to authorizes their unlawful conduct. As Defendants represented to this Court, Defendants believe they have the right to subject Mr. Woodfox to multiple strip searches each day because he is housed in CCR.

---

[1] Moreover, as discussed at some length in Sec. II (A) of Plaintiffs' Memorandum In Support of Temporary Restraining Order, the legality of the stripping of Mr. Woodfox could be challenged properly in federal court as a free-standing federal claim even if it were not already a component of the present litigation. *See* Doc. 477 at pp. 7-10. As such, Mr. Woodfox properly brings forth federal issues before this Court.

A review of a number of additional paragraphs in Plaintiffs' Fourth Amended Complaint (hereinafter "Complaint") further confirms the "common nucleus of operative fact" between the strip searching and the pending claims in this case. Indeed, Defendants' resumption of unlawful strip searching practices is no more "justified by legitimate penological interests" than any of the other matters detailed in the complaint. *See*, *e.g.*, Complaint at ¶ 41. Moreover, these degrading strip searches cause Mr. Woodfox "daily mental anguish and pain." *Id.* ¶ 48. As well, Defendants' strip searching is "inhumane, and imposes atypical and significant hardship." *Id.* ¶ 21. The requisite common nucleus of operative facts is present. Therefore, even if the purported state claims "do not independently come within the court's jurisdiction," "they form part of the same case or controversy as the claims which do fall within the court's original jurisdiction. *Halmekangas v. State Farm Fire & Cas. Co.*, 603 F.3d 290, 293 (5th Cir. 2010); *see also* 28 U.S.C. § 1367(a).

Moreover, the factors articulated in 28 U.S.C. § 1367(c) which might nonetheless speak against an exercise of pendant jurisdiction are *not* present. First, Mr. Woodfox has each of his federal claims pending before this Court – claims that have not been "dismissed or otherwise eliminated from a case prior to trial." *Batiste*, at 227. Second, as discussed in some length in the prior briefing, Mr. Woodfox's call for a cessation of the daily strip searches is neither (1) novel or complex,[2] nor (2) an issue of state law alone. *See* Doc. 477. Third, Defendants' conduct does not "substantially predominate" over Mr. Woodfox's pending claims. Even treating the Defendants' unlawful strip searching as a stand-alone issue does not require this Court to retread the majority of claims in this case for a complete adjudication on the merits. Lastly, there are no

---

[2] For example, the plain language of the order and Consent Agreement is not only easily understood but dispositive of Defendants obligations to refrain from wantonly strip searching Mr. Woodfox. *Woodfox v. Phelps*, No. 209, 535 "H", 19th JDC (1978). ("defendants must cease requiring anal examinations before or after a segregated inmate is moved within the segregation area or anywhere in the prison while under escort or observation…").

5

"compelling reasons" why this Court should not exercise supplemental jurisdiction over Defendants' unlawful strip searching. In fact, the only compelling circumstance at issue here is the immediate need to enjoin Defendants from subjecting a 68 year-old man with an impeccable record at Wade to such humiliating and degrading practices multiple times a day.

### B. There is No Exhaustion Bar to the Court Acting Here.

Pursuant to 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The failure to exhaust is an affirmative defense and, under the PLRA, inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Rebaldo v. Jenkins*, 660 F.Supp.2d 755, 761 (E.D. La. 2009) (quoting *Jones v. Bock*, 549 U.S. 199, 216 (2007)) (internal quotation marks omitted). Accordingly, Defendants bear the burden of proof concerning any failure to exhaust defense.

Exhaustion requirements are animated by two purposes. One is to spare the courts of meritless lawsuits. *See Wendell v. Asher*, 162 F.3d 887, 890-91 (5th Cir.1998) (§ 1997e(a) "plainly requires that administrative remedies be exhausted before the filing of a § 1983 suit . . . [t]o hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation."). The second is to ensure that prison and individual officials are on notice of the claims so that that they have time and opportunity to address complaints before the intervention of the Courts.

It is unsurprising, then, that *no court*—federal or state—has ever held that the PLRA requires administrative grievances to be exhausted ***after the exact same conduct has been fully***

6

*<u>litigated, adjudicated, and court ordered elsewhere</u>*. Where, as here, the Defendants are fully on notice of the issue because they have already litigated and lost the matter – a loss which speaks to the merits of the claims – there is no justification for why additional exhaustion might nonetheless be required.

Mr. Woodfox's claims[3] are neither premature nor unexhausted as he already won them. If Defendants would comply with Judge LeBlanc's order and the Consent Agreement, both of which are "final" as a matter of law, then Mr. Woodfox would not be here seeking a preliminary injunction now. *See Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 391 (1992). Defendants' exhaustion argument relies on the inference that they have not had sufficient notice of complained-of conduct, absurdly ignoring the lawful order of the Louisiana court and of Defendants' own consent decree that has been in effect since 1978.

### III. <u>CONCLUSION</u>

Mr. Woodfox attempted to avoid burdening the Court with this seemingly straightforward matter by writing Defendants directly and by raising the matter through Counsel. As this Court is already aware, Defendants have indicated that they are unwilling to stop their strip searching of Mr. Woodfox absent Court intervention. Defendants' arguments that this Court is somehow precluded from acting on jurisdictional or exhaustion grounds are little more than an attempt to evade review and delay an adjudication on the merits. The Court should not allow the

---

[3] It is unclear whether Mr. Woodfox even presents a "claim" for purposes of triggering an exhaustion requirement under the PLRA. Indeed, Mr. Woodfox's preliminary injunction application is not solely one "with respect to prison conditions," nor does resolution of this matter necessarily lead to the filing of a § 1983 suit. *Wendell*, *supra*. Even if this Court did not have original jurisdiction over this issue as a component of the ongoing litigation, this preliminary injunction hearing then could be viewed as a show cause hearing where Defendants must explain why they are in blatant defiance of Judge LeBlanc's order. Reducing Defendants un-denied disregard of a lawful court order into a "claim" for PLRA purposes would be absurd and unprecedented. *See* Doc. 477, FN 1 (requesting this hearing only if Defendants denied the factual allegations of their unlawful strip searching, which they did not.) To hold otherwise would suggest that binding court orders on recalcitrant defendants must be grieved before relief may actually be realized.

unnecessary, unsupportable and unconstitutional conduct of Defendants to continue because of legal technicalities that are inapplicable in the present circumstances.

September 10, 2013                                    Respectfully submitted,

                                                      By: *s/ Katherine Kimpel*
                                                      Katherine M. Kimpel
                                                      Sheridan L. England
                                                      SANFORD HEISLER, LLP
                                                      1666 Connecticut Ave. NW
                                                      Suite 300
                                                      Washington, DC 20009
                                                      202.499.5202

                                                      George H. Kendall
                                                      Carine Williams
                                                      Victor Genecin
                                                      SQUIRE SANDERS (US), LLP
                                                      30 Rockefeller Plaza
                                                      New York, NY 10112
                                                      212.892.9800

                                                      Nicholas J. Trenticosta
                                                      LSBA Roll No. 18475
                                                      7100 St. Charles Avenue
                                                      New Orleans, LA 70118
                                                      504.864.0700

                                                      *Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing pleading was served on September 10, 2013 by tendering same through ECF, electronic e-mail, on all counsel of record, namely:

>M. Brent Hicks, Esq.
>Richard A. Curry, Esq.
>MCGLINCHEY STAFFORD, PLLC
>One American Place, 14th Floor
>Baton Rouge, LA 70825


>By: *s/ Katherine Kimpel*
>Katherine M. Kimpel
>Sheridan L. England
>SANFORD HEISLER, LLP
>1666 Connecticut Ave. NW
>Suite 300
>Washington, DC 20009