UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ROBERT KING WILKERSON, ET AL

CIVIL ACTION

VERSUS

NO. 00-304-JJB

RICHARD STALDER, ET AL

## RULING ON DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on the Defendants' motion to dismiss. (Docs. 484 and 510). Plaintiff has filed an opposition. (Doc. 490). Additionally, pursuant to the Court's request, Plaintiff submitted a supplemental brief on pendant jurisdiction. (Doc. 486). Oral argument is not necessary. For the reasons stated herein, the Defendants' motion to dismiss is DENIED.

### I.      Background

This case has a long and storied history with the Court. The complaint alleges that the Louisiana Department of Public Safety and Corrections has held the three plaintiffs,[1] including the plaintiff involved in the present matter, Albert Woodfox ("Woodfox"), in extended lockdown, or solitary confinement. The complaint alleges that Woodfox has been in extended lockdown for 41 years in violation of his constitutional rights. Specifically, the complaint asserts claims under the First, Eighth, and Fourteenth Amendments, as well as corresponding state laws.

The present matter before the Court involves invasive strip searches of Woodfox as he leaves and enters his cell. During these searches, Woodfox, at 68 years-old, is forced to strip until he is naked, bend at the waist, lift his genitals, and spread his buttocks so that officers may inspect his anus. These invasive searches are conducted as often as six times a day despite the fact that Woodfox is shackled at his wrists, ankles, and waist when outside of his cell; is under constant observation or escort; and typically has no contact with individuals other than prison

---

[1] Mr. Herman Wallace is now deceased. A motion to substitute party (doc. 517) is pending before the Court.

personnel.   Woodfox contends that these searches are done in violation of his Fourth Amendment rights and has petitioned the Court seeking to enjoin any further constitutional violations.

Similar to the underlying litigation, the present matter has a storied, albeit shorter, history with the Court.  Woodfox originally sought injunctive relief by way of a temporary restraining order ("TRO"). (Doc. 477).   The motion requesting the TRO relied heavily upon a consent decree obtained in Louisiana state court, which prevented the Defendants from conducting the invasive strip searches under certain circumstances.   On August 27, 2013, this Court held a telephonic conference on the merits of the TRO.  The Court denied the TRO and set a date for the preliminary injunction hearing.[2] (Doc. 479).   Additionally, given Woodfox's apparent reliance upon the state court consent decree, the Court requested supplemental briefing on whether or not it should assert jurisdiction over any claim for injunctive relief that was allegedly bound by a state court decision.  A hearing date was set on the issues of the Court's jurisdiction and the merits of a preliminary injunction.

Pursuant to the Court's request for briefing, Woodfox filed a supplemental brief on jurisdiction and argued that this Court had both original and pendant jurisdiction over this matter. (Doc. 486).  The Defendants filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure asserting several theories explaining why this Court lacked jurisdiction and why the preliminary injunction should be dismissed on the merits. (Doc. 484). On the date set to hear arguments, and upon the Court's observation that Woodfox had not requested a preliminary injunction, the Court decided to pass without prejudice on deciding the merits of the preliminary injunction until Woodfox submitted a proper motion and to rule on the

---

[2] However, unbeknownst to the Court, Woodfox had not sought a preliminary injunction in his motion for a TRO as is customarily done.

jurisdictional issues based upon the motions already submitted. (Doc. 492).   Woodfox subsequently filed a motion for a preliminary injunction. (Doc. 505).   In response, the Defendants submitted a supplemental motion to dismiss. (Doc. 510).

## II.   Discussion

Originally, Woodfox argued that there are two grounds upon which the Court may assert jurisdiction.   First, Woodfox argued that this Court has original jurisdiction over his constitutional claim.  He avers that the strip searching policy and practice is "further proof that [his] confinement is cruel and unusual and in violation of [his] Fourteenth Amendment due process rights." (Doc. 486).  In the alternative, Woodfox argued that the Defendants violation of a standing state issued consent decree provided grounds for the Court to exercise supplemental jurisdiction.  However, as the briefing process on this issue has progressed, Woodfox has all but abandoned any argument touching upon the state consent decree and focused exclusively on the underlying unconstitutionality of the invasive strip searches.

Concomitantly, the focus of the Defendants' arguments has changed.  The Defendants have asserted a whole host of arguments, most of them completely lacking in merit, contending that this Court lacks supplemental jurisdiction to enforce the state court issued consent decree. However, now realizing that Woodfox's position has changed, the Defendants argue that this Court lacks original jurisdiction to entertain Woodfox's request for injunctive relief because the state court retains exclusive jurisdiction over this issue regardless of whether Woodfox asserts his claim under, or independently of, the consent decree.  Simply put, "Woodfox cannot ignore the Consent Agreement and pretend it does not exist" because "his claims are merged under this Agreement." (Doc. 510-1).

In support of this argument, the Defendants cite two Fifth Circuit cases.  The first, *Haspel & Davis Milling & Planting Co. Ltd. v. Bd. of Levee Comm'r of the Orleans Levee Dist.*, 493 F.3d 570 (5th Cir. 2007), involved a group of landowners who had originally filed suit against the state in state court.  This original litigation resulted in a settlement agreement approved by the court through a consent decree. *Id.* at 573.  Years later, the landowners filed suit in federal court arguing that the state's failure to pay the amount set by the consent judgment constituted an unconstitutional taking. *Id.*  The federal court held that by entering into the settlement agreement, the landowners had compromised their takings claim and their only recourse was to enforce their rights under the settlement agreement. *Id.* at 576.  The court reasoned that this holding was required by the terms of the settlement agreement which explicitly released all of the landowners' claims. *Id.* at 576-77.

The second, *Jackson v. Alabama Dep't of Pub. Safety*, 657 F.2d 689 (5th Cir. 1981), involved a plaintiff who instituted a Title VII action against his former employer in federal court arguing that his employment termination should be reviewed and he should be rehired pursuant to a consent decree entered in state court.  The federal court characterized the subsequent federal suit as an attempt to enforce the state issued consent decree. *Id.* at 690.  Viewed through this lens, the court held that the plaintiff's only remedy was found in the enforcement of the consent decree because it "created" the right that the plaintiff sought to invoke. *Id.*

Defendants cite each case for two propositions.  Defendants rely upon *Haspel* for the proposition that when a plaintiff enters into a consent judgment, he compromises any claims that he might have under the agreement.  Defendants cite *Jackson* for the proposition that when a plaintiff enters into a consent decree, his sole remedy is found in the enforcement of that decree because it is the decree that creates the rights that he is trying to enforce.  However, reliance

4

upon these cases is inapposite as both cases are easily distinguishable from the matter presently before the Court.  Unlike the consent decree in *Haspel*, the consent decree in the present case does not explicitly release Woodfox's claims.  Likewise, unlike the plaintiffs in *Jackson*, Woodfox is not specifically attempting to enforce the consent decree in federal court.  Instead, his original intention for mentioning the consent decree was to demonstrate a likelihood of success on the merits, rather than as a primary means of asserting jurisdiction. (Doc. 490, at 5). Furthermore, unlike the plaintiff's right to review of his termination, Woodfox's right to protect his constitutional interests is found outside of the consent decree.

These cases do not support the Defendants' argument that Woodfox's claims are merged under the consent agreement thereby precluding the Court's assertion of original jurisdiction. Instead, the cases stand for the proposition that when claims are explicitly released or when the consent decree creates the right sought to be enforced, then the consent decree provides the only avenue by which the plaintiff may seek and attain relief.  These rules are not implicated by the present facts.  The Defendants do not cite, nor could the Court find, any case law that would preclude a court from asserting jurisdiction under the present circumstances.  Therefore, the Court holds that it has original jurisdiction pursuant to 28 U.S.C. § 1331 to adjudicate Woodfox's motion for a preliminary injunction seeking to protect his constitutional rights.[3]

---

[3] Finding that it has original jurisdiction over Woodfox's motion for a preliminary injunction, the Court believes that it is unnecessary to entertain the Defendants' arguments concerning supplemental jurisdiction.  However, out of an abundance of caution, the Court will summarily address some of these arguments.  The Court finds that the doctrines upon which the Defendants attempt to rely are inapplicable to the present matter.  Sovereign immunity does not bar a claim for prospective injunctive relief against state actors. *Edelman v. Jordan*, 415 U.S. 651, 664 (1978).  This Court has decided, and the Fifth Circuit has affirmed, that qualified immunity does not apply in this case.  *See* Doc. 62.  The *Younger* abstention doctrine, as well as the Anti-Injunction Act, 28 U.S.C. § 2283, are not implicated here because there is no pending or ongoing state court proceeding.  *See Texas Ass'n of Business v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004) (requiring that the "[criminal] dispute must involve an 'ongoing state judicial proceeding'" for *Younger* abstention to apply); *Village of Bolingbrook v. Citizens Utilities Co. of Illinois*, 864 F.2d 481, 481 (7th Cir. 1998) (affirming the district court's holding that under § 2283, "the federal court is not authorized to enjoin *ongoing* proceedings.") (emphasis added).  Finally, the *Buford* abstention doctrine is not implicated because the ultimate issue of whether or not the invasive strip searches, like the other contested conditions of confinement, violate Woodfox's constitutional rights is not a "difficult question[] of state law," *Health Net, Inc. v. Wooley*, 534 F. 3d 487,

The Court will now turn to the Defendants' affirmative defense.[4]  Defendants contend that collateral estoppel prevents Woodfox from re-litigating the issue of the strip searches' legality because of the previous state court litigation that resulted in the consent agreement.

When a federal court is called upon to determine the preclusive effect of a state court judgment, the full faith and credit statute, 28 U.S.C. § 1738, requires it to refer to the preclusion law of the state that rendered the judgment.  *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985).  Since a Louisiana state court issued the consent agreement, Louisiana law governs its preclusive effect.

Under Louisiana's collateral estoppel, or issue preclusion, doctrine, "once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue in a different cause of action between the same parties." *Hudson v. City of Bossier*, 766 So. 2d 738, 743 (La. App. 2 Cir. 2000).  While collateral estoppel is premised on a final judgment, it also applies when the parties enter into a settlement or compromise.  *Bailey v. Martin Brower Co.*,  658 So. 2d 1299, 1301 (La. App. 1 Cir. 1995).  However, such settlements are only given preclusive effect if both parties mutually intended to put an end to the litigation. *Rivett v. State Farm Fire and Cas. Co.*, 508 So. 2d 1356, 1359 (La. 1987).  The party proffering the defense of res judicata bears the burden of proving by a preponderance of the evidence such an intent. *Id.*

The State's position is consistent with both Supreme Court and Fifth Circuit jurisprudence. *See Arizona v. California*, 530 U.S. 392, 414 (2000) ("But settlements ordinarily

---

496 (5th Cir. 2008), but rather a question of federal law.  In a similar vein, since the Court is asserting jurisdiction over the constitutional claim independently of the consent decree, there is no need to determine whether the state court has exclusive jurisdiction.  The Court believes that if the consent decree is to play any role in the determining the propriety of a preliminary injunction, it would solely be for evidentiary purposes.

[4] Since there are no arguments in the motions to dismiss touching upon the merits of the preliminary injunction and it is the only argument not addressing the Court's jurisdiction, the Court is left to surmise, perhaps in error, that the Defendants' collateral estoppel argument speaks to the 12(b)(6) element of the Defendants' motions.  However, collateral estoppel is an affirmative defense brought under Rule 8(c) of the Federal Rules of Civil Procedure.  Finding no 12(b)(6) arguments, the Court must deny the Defendants' motions on 12(b)(6) grounds.

occasion no issue preclusion…unless it is clear…that the parties intended their agreement to have such an effect."); *Hughes v. Santa Fe Intern. Corp.*, 847 F.2d 239, 241 (5th Cir. 1988) (holding that a consent decree does not generally give rise to issue preclusion unless the parties intended that it have preclusive effect).  Indeed, it is well established that "consent judgments ordinarily support *claim* preclusion but not *issue* preclusion." 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4443, pp. 384-85 (1981) (emphasis added).  The parties' intent must be clearly reflected in the record and by the words of their agreement. *Kaspar Wire Works, Inc. v. Leco Engineering & Mach., Inc.*, 575 F.2d 530, 540 (5th Cir. 1978).

Here, Defendants have not provided the Court with the record of the state trial court to clearly demonstrate the parties' intent.  Furthermore, the consent agreement does not contain language that clearly reflects the parties' intention to preclude further litigation. *Cf. Mansel v. Builders Gypsum Supply*, No. 05-CV-0965-RF, 2006 WL 3062898, at *2 (W.D. Tex. Oct. 16, 2006) (finding that the consent decree made the intent of the parties' clear by specifically designating which claims would not be precluded in future litigation).  Therefore, the Court finds that Woodfox is not barred from seeking injunctive relief as it pertains to the invasive strip searching practice and policy.

Finally, the Defendants argue that Woodfox's motion for a preliminary injunction is procedurally flawed because it is not tied to any permanent relief.  This is a needlessly technical argument.  The Court finds that the preliminary injunction is of the same character and seeks the same relief as the underlying cause of action as both the injunction and the underlying cause of action involve alleged violations of Woodfox's constitutional rights and request injunctive relief. *Kaimowitz v. Orlando, Fla.*, 122 F. 3d 41, 43 (11th Cir. 1997).  Therefore, the Court will

7

exercise its discretion and hear the merits of whether to grant or deny the preliminary injunction. *Vault Corp. v. Quaid Software Ltd.*, 655 F. Supp. 750, 757 (E.D. La. 1987).

### III.   Conclusion

Woodfox is seeking injunctive relief pursuant to a claim that the Defendants have violated his constitutional right to be free from unreasonable searches which is also part and parcel of his claims asserting cruel and unusual conditions of confinement.  The rights which he seeks to redress are not "created" by consent decree, but rather by federal law.  Additionally, the consent decree does not preclude this Court from ruling on the merits of the preliminary injunction as issue preclusion does not apply under the present circumstances.  Therefore, finding no bar to exercising its jurisdiction, the Court will hear arguments on the propriety of a preliminary injunction.

Accordingly, the Defendants' motions to dismiss (docs. 484 and 510) are DENIED.

Defendants may file a joint motion in opposition to injunctive relief no later than November 7, 2013, or maintain motions already filed.

A hearing is set on the merits of the preliminary injunction for November 13, 2013 at 9:30 A.M.

Signed in Baton Rouge, Louisiana, on November 1, 2013.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**