UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ROBERT KING WILKERSON, ET AL

VERSUS

RICHARD STALDER, ET AL

CIVIL ACTION

NO. 00-304-JJB

## RULING ON PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

This matter is before the Court on a motion for a preliminary injunction (doc. 505) brought by Plaintiff, Albert Woodfox. Defendants[1] have filed a joint opposition (doc. 536). An evidentiary hearing was held on November 13, 2013. Supplemental briefs were ordered and filed by the Defendants (doc. 548) and Plaintiff (doc. 555) concerning the Court's jurisdiction to enforce a state issued consent decree. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons stated herein, the Plaintiff's motion for a preliminary injunction is GRANTED.

### I.   Factual and Procedural Background

This case has a long and storied history with the Court. The complaint alleges that the Louisiana Department of Public Safety and Corrections ("DPSC") has held the three plaintiffs, including the plaintiff involved in the present matter, Albert Woodfox ("Woodfox"), in extended lockdown, or solitary confinement. The complaint alleges that Woodfox has been in extended lockdown for 41 years in violation of his constitutional rights. Specifically, the complaint asserts claims under the First, Eighth, and Fourteenth Amendments, as well as corresponding state laws.

The present matter before the Court involves invasive strip searches of Woodfox as he leaves and enters his cell. During these searches, Woodfox, at 66 years-old, is forced to strip

---

[1] James LeBlanc, Secretary, Louisiana Department of Public Safety and Corrections; Burl Cain, Richard Peabody, Robert Rachal, Randy Ritchie, and Tom Norris (collectively "LSP Defendants") and Jerry Goodwin, James Goodwin, James Arnold Lonnie Nail, Chris Evans and Mark Hunter (the "Wade Defendants"), and Howard Prince, Greg McKey, Betty Johnson, Kevin Durbin, and Jeffery Gladney (the "Hunt Defendants").

1

until he is naked, bend at the waist, lift his genitals, and spread his buttocks so that officers may inspect his anus. These invasive searches are conducted as often as six times a day despite the fact that Woodfox is shackled at his wrist, ankle, and waist when outside of his cell; under constant observation or escort; and typically has no contact with individuals other than prison personnel. Woodfox contends that these searches are done in violation of his Fourth Amendment rights and has petitioned the Court seeking to enjoin any further constitutional violations.

Similar to the underlying litigation, the present matter has a storied, albeit shorter, history with the Court. Woodfox originally sought injunctive relief by way of a temporary restraining order ("TRO"). (Doc. 477). The TRO motion relied heavily upon a consent decree obtained in Louisiana state court, which prevented the defendants from conducting the invasive strip searches under certain circumstances.[2] On August 27, 2013, this Court held a telephonic conference on the merits of the TRO. The Court denied the TRO and set a date for the preliminary injunction hearing. (Doc. 479).[3] Additionally, given Woodfox's apparent reliance upon the state court consent decree, the Court requested supplemental briefing on whether or not it should assert jurisdiction over any claim for injunctive relief that was allegedly bound by a state court decision. A hearing date was set on the issues of the Court's jurisdiction and the merits of a preliminary injunction.

Pursuant to the Court's request for briefing, Woodfox filed a supplemental brief on jurisdiction and argued that this Court had both original and pendant jurisdiction over this matter.

---

[2] The consent decree allowed visual body cavity searches under certain circumstances but specifically prohibited them when "a segregated inmate/student is moved within the segregation area or anywhere within the institution while the inmate/student is under escort or observation, unless there is probable cause to believe that the inmate has secreted contraband into a body cavity." *Consent Decree,* Hearing, State Exh. 1.

[3] However, unbeknownst to the Court, Woodfox had not sought a preliminary injunction in his motion for a TRO as is customarily done.

2

(Doc. 486). The defendants filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) asserting several theories as to why this Court lacked jurisdiction and why the preliminary injunction should be dismissed on the merits. (Doc. 484). On the date set to hear arguments, and upon the Court's observation that Woodfox had not requested a preliminary injunction, the Court decided to pass without prejudice on deciding the merits of the preliminary injunction until Woodfox submitted a motion for a preliminary injunction, and to rule on the jurisdictional issues based upon the motions. (Doc. 492). Woodfox subsequently filed a motion for a preliminary injunction. (Doc. 505). In response, the Defendants submitted a supplemental motion to dismiss. (Doc. 510). After duly considering the Defendants' motion to dismiss, the Court held that it had jurisdiction to decide the issues presented by Woodfox's motion for injunctive relief. (Doc. 534).[4] After finding that it had jurisdiction, the Court set an evidentiary hearing to hear the merits of issuing a preliminary injunction for November 13, 2013. The follow are findings of fact from that evidentiary hearing:

Albert Woodfox was transferred from Louisiana State Penitentiary ("LSP") to the David Wade Correctional Facility ("Wade") in November 2010. He has been housed on the A Tier of the N1 cellblock while at Wade in what is referred to as closed cell restriction ("CCR"). Inmates living in CCR are confined alone to their cells 23 hours a day and allowed 15 minutes a day outside of their cell to shower. When weather permits, inmates are afforded 45 minutes of recreation time outside on the yard.[5] Cells in CCR consist of a concrete bunk at the bottom, a

---

[4] Defendants reurge their motion to dismiss maintaining that this Court lacks jurisdiction to entertain the issue presented by Woodfox's motion for injunctive relief by asserting the same arguments that the Court has previously found failed. Presented with nothing new to persuade it otherwise, the Court maintains that it has jurisdiction over the present matter.

[5] The recreational area at Wade has three exercise yards with one being devoted to the exclusive use of CCR inmates during their designated recreation time. The exercise yard reserved for CCR inmates is separated from the other two yards by a narrow walkway. The exercise yard used by CCR inmates is divided by a chain-linked fence into seven individual pens. One CCR inmate is allowed per exercise pen. Once inside the exercise pen, correctional officers remove the inmate's restraints and they are permitted to move freely within their assigned exercise pen.

metal bunk at the top, two metal locker boxes, and a toilet and sink combination attached to the back wall.  There is also a food slot in the door.  Woodfox is also allowed to a have a few pieces of personal property including books, magazines, newspapers, and items purchased from the canteen.  Inmates living in CCR are not allowed to congregate or otherwise engage with other inmates.  They are not allowed out of their cells for religious worship or educational services with other inmates.

Pursuant to Louisiana Department of Corrections ("DOC") and Wade policies, inmates are subjected to visual body cavity searches every time they leave and enter a segregated area.  For Woodfox, that means that every time he leaves his cellblock for things such as recreation, attorney phone calls, or trips to the infirmary, he is subjected to a visual body cavity search by at least two correctional officers.  After stripping naked and handing the officers his clothes[6] through an opening in the door to be searched, Woodfox is made to open his mouth and raise his tongue, raise his arms, raise his genitals, turn around, bend over at the waist and then spread his buttocks apart for visual inspection.  After the visual body cavity search, the officers hand Woodfox back his clothes and allow him to dress.  Once dressed, he sticks his hands through the door opening to be chained.  He then pulls his handcuffed hands back through the opening and the officers open the doors.  The officers then place leg irons around Woodfox's feet.  Thus, at the time that Woodfox is ready to be escorted from the cellblock, his hands and legs are restrained by waist chains that go around his wrists and wrap around his back with a lock and leg irons.

Once outside of his cell, Woodfox is made to walk alongside the wall opposite of the other cells.  There is a yellow line on the floor which operates as a boundary between inmates

---

[6] The clothing typically worn around the cellblock is an orange one-piece jumpsuit that buttons to the front.  During colder weather, inmates may also wear sweatpants, a sweatshirt, t-shirt, socks, and tennis shoes.

walking outside of their cells and the cells themselves. This yellow line is strictly enforced by correctional officers who ensure that inmates do not cross it. While outside of his cell, Woodfox is escorted by two officers and always under the officers' constant supervision. The noted exception to this individualized attention is when Woodfox is in an exercise pen during recreational time. There, though still under constant supervision, officers may be responsible for watching up to 21 inmates at a time.

Upon returning to the segregated cell block area, inmates are again placed in their cells and subjected to a visual body cavity search in the same manner as described above. It does not matter how many times that day an inmate has left and reentered his cell, he is still subjected to the same procedure. Woodfox contends that he has been searched up to six times in one day on several occasions.

The policy, pursuant to which the visual cavity searches are conducted, states,

Visual Body Cavity Search: A visual body cavity search may be conducted ROUTINELY, without a showing of reasonable suspicion and special documentation, under the following circumstances:

1) When an offender is entering or leaving the facility for a court appearance, trip or work detail;
2) After the offender participated in any physical contact visit;
3) When an offender is entering or leaving a segregation area;
4) After unescorted contact with general population offenders by an offender in segregation status;
5) Otherwise, a visual body cavity search may be conducted only upon a specific and particular showing of reasonable suspicion towards that offender in accordance with the following procedures:
    a. Prior written approval of the Warden or designee;
    b. The search shall be conducted by one officer and witnessed by one additional officer or staff member of the same sex as the offender;
    c. The employees conducting the search shall document the visual body cavity search in the post or shift log. Documentation shall indicate the specific and particular showing of reasonable suspicion which gave rise to the search and the results of the search;

5

>   d.  Further documentation shall be governed by the requirements of Department Regulation No. C-05-001 "Activity Reports/Unusual Occurrence Reports/Operational Units."

State of Louisiana Dept. of Pub. Safety & Corr., *Searches of Offenders*, Dept. Regulation No. C-02-003 (Nov. 12, 2008).  Though this policy has been in effect since November 2008, correctional officers began conducting routine visual body cavity searches in May 2013 after being directed to do so by their supervisors.  Warden Jerry Goodwin testified that the policy should have been enforced the entire time but that an incident where an inmate had several pieces of contraband in his possession motivated him to instruct all staff to follow the procedures.

The overarching purposes of the visual body cavity searches are to detect and deter the possession of contraband.  Contraband at Wade comes in several forms and can be anything from a CD player and cigarettes, to a homemade handcuff key capable of unlocking the handcuffs used by the institution.  The goal of detecting and deterring contraband is to ensure the health and safety of the prison population, the correctional officers, and staff.  While contraband is a serious issue in all of the nation's prisons, the Defendants' expert Patrick Keohane opined that the number of incidents involving contraband at Wade was miniscule as compared to other institutions.  That said, after reviewing the policy and visiting Wade, he concluded that the searches are reasonable and appropriate.

At the conclusion of the hearing, the Court ordered both sides to file supplemental briefs addressing whether the Court could enforce the state issued consent decree which resulted from an earlier lawsuit.[7]

## II.     Discussion

---

[7] After reviewing the briefs, the Court declines to enforce or adopt the state issued consent decree.

Woodfox urges the Court to enjoin the Defendants from performing visual body cavity searches that are conducted based solely on the fact that he is entering or leaving a segregated area. He contends that the visual body cavity searches performed on this basis are unreasonable and in violation of his Fourth Amendment rights. To obtain a preliminary injunction, the plaintiff must show 1) that there is a substantial likelihood that he will succeed on the merits, 2) that there is a substantial threat that the he will suffer irreparable injury if the district court does not grant the injunction, 3) that his threatened injury outweighs the threatened injury to the defendants, and 4) that granting the preliminary injunction will not disserve the public interest. *See Walgreen Co. v. Hood,* 275 F.3d 475, 477 (5th Cir. 2001).

### A. Likelihood of Success on the Merits

To succeed on this prong of the preliminary injunction standard, Woodfox must show that the searches in questions are constitutionally unreasonable under the Fourth Amendment. While an inmate's constitutional rights must yield to legitimate penological interests, "[t]here is no iron curtain drawn between the Constitution and the prisons of this country." *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974). Indeed, prisoners have the right to be free from unreasonable searches and seizures. *See Bell v. Wolfish*, 441 U.S. 520, 558 (1979); *United States v. Lilly*, 576 F.2d 1240, 1245 (5th Cir. 1978). Though considered one of the most degrading and invasive attacks on one's personhood, visual body cavity searches are not *per se* unconstitutional. Rather, "[u]nder appropriate circumstances, visual body cavity searches can be constitutionally reasonable." *Elliot v. Lynn*, 38 F.3d 188, 191 (5th Cir. 1994). The circumstances under which a search is reasonable cannot be described with pinpoint accuracy. That said, the Supreme Court has offered the following guidance:

7

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell*, 441 U.S. at 559. The Fifth Circuit has found that this statement directs courts to strike a balance "in favor of deference to prison authorities' views of institutional safety requirements against the admittedly legitimate claims of inmates not to be searched in a humiliating and degrading manner." *Elliot*, 38 F.3d at 191 (internal quotation marks omitted). Thus, courts will "defer to the judgment of correctional officers unless the record contains substantial evidence showing that their policies are an unnecessary or unjustified response to problems of jail security." *McCreary v. Richardson*, 738 F.3d 651, 657 (5th Cir. 2013) (internal quotation marks omitted).

Defendants oppose the motion for injunctive relief, arguing that the visual body cavity searches are necessary to detect and deter the flow of contraband which is detrimental to the safety and security of inmates, correctional officers, and prison staff. Defendants urge this Court to defer to its decision to routinely use visual body cavity searches to achieve this most important end. Woodfox does not challenge the reasonableness of the DOC policy and therefore, the Court will not pass judgment on whether the policy is constitutional on its face. Instead, Woodfox challenges the policy as it applies to him.[8] Its focus thereby narrowed, the Court finds that

---

[8] *Bell* stands for the proposition that inmates may assert "as applied" challenges to the constitutionality of a prison's strip search policy because it requires that each performed strip search be reasonable under the Fourth Amendment. 441 U.S. at 559; *see also Martinez v. Warner*, Civil Action No. 07-3213, 2008 WL 2331957, *15 fn. 18 (E.D. Pa. June 5, 2008) (citing *Bell* in support of a plaintiff's "as applied" challenge to a prison's strip search policy). The Sixth Circuit has allowed an "as applied" challenge to a prison strip search policy which had similarities to the one involved in the present matter. *See Perotti v. Morris*, 865 F.2d 1269 (6th Cir. 1989) (per curiam) ("[Plaintiff] claims that he is not challenging the defendant's right to conduct inmate strip searches. Rather he is challenging their right to conduct strip searches under circumstances where the inmate has had no outside contact…"). Moreover, the Fifth Circuit has allowed "as applied" challenges to prison policies. *See e.g. Watt v. City of Richardson Police Dept.*, 849 F.2d 195 (5th Cir. 1988) (finding a facially valid strip search policy unconstitutional "as applied" to a particular

Woodfox has demonstrated a substantial likelihood of success on the merits of his Fourth Amendment claim.

The record shows that Woodfox is a 66 year-old man who has weathered over four decades of living in isolation. Presumably, such prolonged isolation has rendered him in poor health.[9] He is shackled at his hands, waist, and ankles wherever he goes outside of his cell, and he is escorted by, and under the constant supervision of, prison correctional officers. He is not afforded the opportunity to congregate with, approach, or even touch another inmate. Therefore, he has little to no opportunity to pass along or be passed contraband. Given this lack of contact with other inmates coupled with his constant supervision by correctional officers, he does not appear to be at risk of being used as a "mule," or clandestine carrier of contraband, for other prisoners. Furthermore, inmates from other tiers who enter the A Tier N1 Cellblock are subjected to visual body cavity searches, all but eliminating the chance that an inmate could bring contraband into the segregated area. He has not had any disciplinary infractions during his time at Wade and not been found in possession of any contraband. Indeed, based upon the incident reports submitted, it appears that no one on A Tier N1 Cellblock has been written up for being in possession of contraband.[10] Finally, Defendants own expert opined that the incidents of contraband were miniscule in comparison to other institutions.

Considering the facts presented, the Court finds that conducting visual body cavity searches of Woodfox based solely on his entering or leaving a segregated area is unnecessary given his age, housing in complete isolation under constant supervision, and clean disciplinary

---

plaintiff); *see also Leachman v. Thomas*, 229 F.3d 1148 (5th Cir. 2000) (considering an inmate's "as applied" challenge to a prison's publication approval policy under the First Amendment).

[9] Indeed the record developed earlier in this case supports this presumption. *See Wilkerson v. Stalder*, 639 F. Supp.2d 654, 663-66 (M.D. La. 2007).

[10] Woodfox testified that he could remember only one occurrence when an inmate on his tier was caught with contraband. (Tr. at 70). That incident involved an inmate who had removed a blade from a disposable razor purchased at the prison's canteen to cut paper designs for craft projects. *Id.*

record. Furthermore, the Court finds that the response to fighting contraband is unnecessary given the infrequent reported incidents of contraband and the Defendants' own expert's conclusion that the incidents of contraband are miniscule. *But Cf. Elliot*, 38 F.3d 188 (finding a visual body cavity search which compromised an inmate's privacy reasonable in light of the emergency situation caused by an extraordinary number of murders, suicides, and stabbings). Therefore, striking a balance between Woodfox's human dignity protected by his Fourth Amendment rights and the Defendants' legitimate penalogical interest in the detection and deterrence of contraband, the Court finds that there is a substantial likelihood that the scales will tip in Woodfox's favor.

### B. Other Prerequisites for a Preliminary Injunction

Woodfox correctly asserts that the other prerequisites for a preliminary injunction are met. First, Woodfox asserts that he will suffer irreparable harm if he is continually subjected to these humiliating and degrading searches. After being prompted to describe how these invasive strip searches cause him harm, Woodfox responded:

> You know, it's hard to put into words how humiliating it is to be standing in front of two men and have all your clothes taken off and to have to open your mouth, raise your tongue, raise your arms, raise your genitals, raise your feet, turn around and spread your buttocks for them to look at, just to go on the yard or to go to a hospital call-out or to go talk to my attorneys on the phone, or for an attorney visit. And there is no sight. It's like, how I conduct myself, how I carry myself, how I go out of my way not to be a problem prisoner don't mean anything. It don't count for anything.

*Transcript*, at 65. In response, the Defendants contend that Woodfox's alleged embarrassment or inconvenience does not constitute irreparable harm. While embarrassment or inconvenience standing alone may not rise to the level of irreparable harm, continued deprivations of one's constitutional rights unquestionably does. *See Springtree Apartments, ALPIC v. Livingston Parish Council,* 207 F. Supp. 2d 507, 515 (M.D. La. 2001) (citing *Elrod v .Burns*, 427 U.S. 347

10

(1976)) ("It has been repeatedly recognized by the federal courts that violation of constitutional rights constitutes irreparable injury as a matter of law."); 11A CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2948.1 (2d ed.) ("When an alleged deprivation of a constitutional right is involved… most courts hold that no further showing of irreparable injury is necessary."). Accordingly, Woodfox has demonstrated that he will suffer irreparable harm absent injunctive relief.

Second, Woodfox contends that the Defendants will not suffer any harm from injunctive relief because it is impossible for him to secret contraband under the circumstances and therefore, Defendants will suffer no harm. Defendants argue that their penalogical interests will be harmed if they are not able to search Woodfox to deter and detect the possession of contraband. Additionally, the Defendants' expert focused on the importance of consistent application of the prison policy to all inmates. Lack of consistency, he argued, could lead to issues including Woodfox being targeted by other inmates because of perceived favoritism. The Court is unpersuaded by these arguments. As the Court has already found, Woodfox has neither been found in possession of contraband nor is he given much if any opportunity to receive it from, or pass it to, other prisoners. Furthermore, the Court is not concerned that Woodfox will be a target of other inmates as he is kept in isolation with no contact with other prisoners. Therefore, the Court agrees that Defendants harm does not outweigh that suffered by Woodfox.

Finally, the Court finds that though the public interest is served by preventing the flow of contraband in our prison institutions, there is little to no risk that Woodfox would become a possessor or purveyor of contraband. The Court further finds that the public interest would be better served by the preservation and protection of a person's fundamental Fourth Amendment rights.

For the reasons stated herein, the Court GRANTS Woodfox's motion for a preliminary injunction.

## C. Scope of the Injunction

Woodfox requests that the Court enjoin Defendants from unlawful strip searches. The Court must therefore determine what would be lawful under the circumstances. After reviewing the applicable case law as articulated above and applying it to the facts of this case, the Court finds that the DOC's policy governing the permissibility of routine visual body cavity searches is reasonable in all respects other than its requirement that Woodfox be searched when he is entering or leaving a segregation area. *Searches of Offenders*, Dept. Regulation No. C-02-003(E)(3). Therefore, Defendants are enjoined from conducting visual body cavity searches of Woodfox predicated solely on the fact that he is entering or leaving a segregated area unless there is reasonable suspicion that Woodfox is secreting contraband. If reasonable suspicion exists, visual body cavity searches must be done in accordance with the following procedures provided by the DOC's regulation:

a. Prior written approval of the Warden or designee;
b. The search shall be conducted by one officer and witnessed by one additional officer or staff member of the same sex as the offender;
c. The employees conducting the search shall document the visual body cavity search in the post or shift log. Documentation shall indicate the specific and particular showing of reasonable suspicion which gave rise to the search and the results of the search;
d. Further documentation shall be governed by the requirements of Department Regulation No. C-05-001 "Activity Reports/Unusual Occurrence Reports/Operational Units."

*Searches of Offenders*, Dept. Regulation No. C-02-003(E)(5).

## III. Conclusion

For the reasons stated herein, the Court GRANTS Woodfox's motion for a preliminary injunction (doc. 505). Defendants are enjoined from conducting visual body cavity searches

12

based upon Woodfox entering or leaving a segregated area unless there is reasonable suspicion to conduct such a search.

Plaintiffs shall file a proposed order in conformity herewith after attaining approval as to form from Defendants within 7 days of the date of this ruling.

Signed in Baton Rouge, Louisiana, on January 31, 2014.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**