# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ROBERT KING WILKERSON, et. al.**             **CIVIL ACTION**

**VERSUS**             **NO. 00-304-JJB-RLB**

**RICHARD STALDER, et. al.**

## ORDER

Before the court is Defendants'[1] Motion to Take Deposition by Remote Means (R. Doc. 629) filed on April 15, 2015. This motion seeks an order pursuant to Rule 30(b)(4) of the Federal Rules of Civil Procedure to allow the noticed deposition of non-party Tory Pegram in Springfield, Missouri, to be taken by telephone or videoconference. Plaintiff has filed an Opposition. (R. Doc. 634). The court granted expedited consideration of this motion. (R. Doc. 633).

Also before the court is Plaintiffs' Motion for a Protective Order Precluding the Depositions of Tory Pegram and Malik Rahim Pursuant to Federal Rule of Civil Procedure 26 (R. Doc. 634) filed on April 16, 2015. Defendants have filed an Opposition. (R. Doc. 638). Plaintiffs have filed a Reply. (R. Doc. 645).

Also before the court is non-party Malik Rahim's Motion to Quash (R. Doc. 641) filed on April 30, 2015. Defendants have filed an Opposition. (R. Doc. 643).

Because the foregoing discovery motions and accompanying briefing are interrelated, the court considers them together.

---

[1] The "Defendants" are James M. Leblanc, Burl Cain, Richard Peabody, Robert Rachal, Randy Ritchie, Tom Norris, Jerry Goodwin, James Arnold, Lonnie Nail, Chris Evans, and Mark Hunter.

I.  **Procedural and Factual Background**

In 2000, Plaintiffs Robert King Wilkerson, Albert Woodfox, and Herman Wallace (collectively, "the Angola 3") brought this action alleging their continued confinement in extended lockdown at the Louisiana State Penitentiary in Angola, Louisiana ("LSP") violated their rights under the Eight and Fourteenth Amendments of the United States Constitution and Article I, Section 20 of the Louisiana Constitution of 1974.  In 2001, Mr. Wilkerson's conviction was overturned and he was released from LSP.  In 2009, Mr. Wallace was transferred to Elayn Hunt Correctional Center ("Hunt").  In 2010, Mr. Woodfox was transferred to the David Wade Correctional Center ("Wade").  Mr. Wallace died in 2013.

On November 16, 2009, the court denied Defendants' motion for leave to take the depositions of the Community Futures Collective ("CFC") and its director, Marina Drummer. (R. Doc. 335).  Plaintiffs represent that Ms. Pegram was hired as a consultant by the CFC in January of 2008 and continues to work for the CFC today. (R. Doc. 634-2 at 2).  Plaintiffs further represent that Mr. Rahim directs a non-profit relief organization called the Common Ground Connective, which is fiscally connected to the CFC. (R. Doc. 634-2 at 3, 10).  Plaintiffs suggest that Defendants are attempting to depose Ms. Pegram and Mr. Rahim as an end-run around the court's refusal to allow the depositions of CFC and Ms. Drummer to proceed in 2009.

Plaintiffs once identified Mr. Rahim as a potential "may call" witness for the purposes of providing testimony as to three areas: (a) "the goals and activities of the Black Panther Party in Louisiana;" about, (b) "meeting Plaintiffs Woodfox and [former Plaintiff] Wallace in Orleans Parish Prison (OPP) and the positive influence they had at OPP;" and about, (c) "the conditions at OPP in the early 1970s." (R. Doc. 634-2 at 3-4).  On December 1, 2009, Plaintiffs agreed to the deposition of Mr. Rahim.  (R. Doc. 638-10).  Prior to service of a subpoena for the

deposition, Plaintiffs removed Mr. Rahim from their preliminary witness list. (R. Doc. 634-2). Defendants served a subpoena on Mr. Rahim on December 30, 2009, and the parties convened in New Orleans for his deposition on January 7, 2010. (R. Doc. 634-2 at 4; R. Doc. 638-2). After Mr. Rahim refused to proceed without an attorney, plaintiffs' counsel agreed to reconvene the deposition when Mr. Rahim obtained counsel and the deposition was adjourned. (R. Doc. 638-2 at 4).

On February 1, 2010, Defendants served their second subpoena on Mr. Rahim for a deposition to take place in New Orleans on February 24, 2010. (R. Doc. 372). Plaintiffs withdrew their agreement to continue the deposition in light of an on-going criminal investigation by the Louisiana Department of Justice ("LDOJ") discussed in a sealed motion for protective order filed by the LDOJ on January 15, 2010 (R. Doc. 360). On February 16, 2010, Plaintiffs filed their sealed motion for protective order to preclude the deposition of Mr. Rahim based on this ongoing investigation and the possibility that Plaintiffs and Mr. Rahim might become subject to criminal liability. (R. Doc. 378).[2] On August 25, 2010, in a sealed order, the court dismissed the Plaintiffs' motion for protective order, without prejudice to refile, on the basis that it was unclear from the record whether the action had been stayed. (R. Doc 405). On September 7, 2011, the court made it clear that a stay was put in place in February of 2010, and lifted that stay. (R. Doc. 410).

On October 7, 2013, Defendants served their third subpoena on Mr. Rahim and noticed his deposition to take place in New Orleans on October 25, 2013. (R. Doc. 506-1). On October 17, 2013, the Hunt/Wade defendants (who were added through the Fourth Amended Complaint) moved for a stay of discovery in light of their defense of qualified immunity and motion for a

---

[2] Mr. Rahim states that he "showed up for the second subpoena as well, but before [he] could provide testimony, the parties contacted the Magistrate [Judge] who suspended the deposition until she could rule on the Plaintiffs' motion for protective order." (R. Doc. 641-1 at 3).

3

Rule 7 reply (R. Docs. 512, 513). That stay was granted on January 21, 2014 (R. Doc. 568) and lifted on February 10, 2015 (R. Doc. 619). Defendants assert that their third attempt to depose Mr. Rahim was upset by this stay. (R. Doc. 638 at 13).

On February 13, 2015, the court issued an Amended Scheduling Order setting the deadline to complete fact depositions by May 8, 2015. (R. Doc. 620 at 1).

On April 9, 2015, Defendants informed Plaintiffs that they would again seek to depose Mr. Rahim and would also seek to depose Ms. Pegram. (R. Doc. 629-2 at 1). Defendants requested Plaintiffs to stipulate that Ms. Pegram's deposition could be taken remotely by telephone or videoconference. (R. Doc. 629-2 at 1). Plaintiffs refused to enter the requested stipulation, and stated that the depositions of both Mr. Rahim and Ms. Pegram would be opposed if noticed. (R. Doc. 629-2 at 1).

On April 15, 2015, Defendants filed their motion seeking leave to take Ms. Pegram's deposition in Springfield, Missouri, by remote means. (R. Doc. 629).

On April 16, 2015, Plaintiffs responded with a motion seeking a protective order precluding the depositions of Ms. Pegram and Mr. Rahim. (R. Doc. 634).

On April 17, 2015, the court held a telephone conference regarding the two foregoing motions. (R. Doc. 636).

On April 30, 2015, on the eve of his noticed deposition, Mr. Rahim filed (through counsel) a motion to quash the subpoena served on him by Defendants. (R. Doc. 641).

## II. Law and Analysis

### A. Legal Standards

Rule 26(b)(1) of the Federal Rule of Civil Procedure provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." To be relevant, "information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The rules governing discovery are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Hebert v. Lando*, 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). It is well established that the scope of discovery is within the sound discretion of the trial court. *See Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 724 (5th Cir. 1990) ("the district court has wide discretion in determining the scope and effect of discovery").

Rule 26(c) allows the court to issue a protective order after a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending. . . ." Fed. R. Civ. P. 26(c)(1). In addition, Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Rule 45 governs the issuance of subpoenas, and provides that on a timely motion, the court for the district where compliance is required must quash or modify a subpoena that fails to allow a reasonable time to comply or subjects a person to undue burden. Fed. R. Civ. P. 45 (d)(3)(A). Subpoenas issued for discovery purposes, such as those at issue here, are also subject to the discovery limitations outlined in Rule 26(b). *See Hussey v. State Farm Lloyds Ins. Co.*, 216 F.R.D. 591, 596 (E.D. Tex. 2003); 9A Wright & Miller, Federal Practice & Procedure 2d § 2459 ("Of course, the matter sought by the party issuing the subpoena must be reasonably calculated to lead to admissible evidence as is required by the last sentence of Rule 26(b)(1).").

B.     **Standing and Forum**

Although no returns of service have been filed in the record, and none of the motions discussed in this order attaches the relevant subpoenas, there does not appear to be a dispute that Defendants have served Rule 45 subpoenas on Ms. Pegram and Mr. Rahim. Because the court is faced with motions brought pursuant to Rule 26(c) and Rule 45(d), it shall briefly discuss whether the moving parties have proper standing to bring their motions and whether this court is the proper forum for bringing those motions.

Parties have limited standing to quash subpoenas served on non-parties pursuant to Rule 45. *See Frazier v. RadioShack Corp.*, No. 10-855, 2012 WL 832285, at *1 (M.D. La. Mar. 12, 2012) ("[A] plaintiff cannot challenge a Rule 45 subpoena directed to a third party on the basis that it violates another person's privacy rights . . ., that the subpoena is overly broad, or that the subpoena seeks information that is irrelevant because only the responding third party can object and seek to quash a Rule 45 subpoena on those grounds."). Nevertheless, a party has standing to move for a protective order pursuant to Rule 26(c) seeking to limit the scope of discovery, even if the party does not have standing pursuant to Rule 45(d) to bring a motion to quash a third-

6

party subpoena. *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 240 n. 2 (E.D. Va. 2012); *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005); *Washington v. Thurgood Marshall Acad.*, 230 F.R.D. 18, 22 (D.D.C. 2005).

Here, Plaintiffs have standing because they have moved for a protective order pursuant to Rule 26(c) to limit the scope of discovery to exclude the depositions of Ms. Pegram and Mr. Rahim, rather than for an order pursuant to Rule 45(d) quashing the underlying subpoenas. This court is the "court where the action is pending" and, therefore, the proper court to file a motion for protective order pursuant to Rule 26(c)(1). Accordingly, the court will determine whether the information sought by Defendants through the depositions of Ms. Pegram and Mr. Rahim is relevant to the claims or defenses of any party in this action.

Mr. Rahim, a non-party, has standing to bring his motion to quash the subpoena served upon him pursuant to Rule 45(d). Because the issued subpoena has not been provided to the court, however, the court is unable to determine the court of compliance and whether it was appropriate to first file the motion in this court. *See* Fed. R. Civ. P. 45(d)(3)(A). Regardless, because this court will deny Plaintiff's motion for protective order with regard to Mr. Rahim's deposition, it will also address Mr. Rahim's motion to quash assuming it should have been filed in this district.[3]

---

[3] A motion to quash a Rule 45 subpoena must be filed in "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(3)(A). Defendants represent that the subpoena served on Mr. Rahim seeks compliance in New Orleans, Louisiana, which would make the court of compliance the Eastern District of Louisiana. There is no dispute that Defendants seek to take the deposition of Ms. Pegram in Springfield, Missouri, which would make the court of compliance the Western District of Missouri. Should those non-parties file any motions to quash in the courts of compliance, the parties to this litigation are ordered to provide a copy of this order to the court in which the motion to quash is filed. Because this court rules that the depositions of Mr. Rahim and Ms. Pegram should proceed, any such motions could be properly transferred to this court "in order to avoid disrupting the issuing court's management of the underlying litigation." Fed. R. Civ. P. 45(f) (2013 advisory committee's note).

7

### C. The Deposition of Tory Pegram

Ms. Pegram's deposition is noticed to take place in Springfield, Missouri, which is within a few miles of her place of residence in Ozark, Missouri. The following are the categories of documents and testimony sought by Defendants from Ms. Pegram in relation to the deposition:

1. Documents or communications which in any way reference or refer to Albert Woodfox;

2. Documents or communications which in any way reference or refer to Robert King Wilkerson;

3. Documents or communications which in any way reference or refer to the "Angola 3";

4. Documents or communications which in any way reference or refer to "The National Coalition to Free the Angola 3";

5. Documents or communications which in any way reference or refer to donations made to "The National Coalition to Free the Angola 3";

6. Documents or communications which in any way reference or refer to any payments or contributions or donations made to or on behalf of Albert Woodfox;

7. Documents or communications which in any way reference or refer to any payments or contributions or donations made to or on behalf of Robert King Wilkerson;

8. Any and all documents which in any way reference or refer to payments, donations, and/or contributions made on behalf of or for the benefit of Albert Woodfox and/or Robert King Wilkerson, "Angola 3," National Coalition to Free the Angola 3, and/or the House that Herman Built;

9. Any and all documents which in any way reference or refer to payments made on behalf of or for the benefit of Albert Woodfox, and/or Robert King Wilkerson, "Angola 3," National Coalition to Free the Angola 3, and/or the House that Herman Built;

10. Any and all documents which in any way reference or refer to payments, donations and/or contributions sent to Albert Woodfox and/or Robert King Wilkerson;

11. Any and all banking records, including deposits and withdrawals, which in any way reference or relate to any and all funds received and/or paid on behalf of

> Albert Woodfox, and/or Robert King Wilkerson, "Angola 3," National Coalition to Free the Angola 3, and/or the House that Herman Built.
>
> 12. Any agenda, minutes, notes or any other documents referencing any meeting at which Albert Woodfox and/or Robert King Wilkerson, "Angola 3," National Coalition to Free the Angola 3, and/or the House that Herman Built were discussed.

(R. Doc. 638-1).[4]

Plaintiffs argue that the deposition of Ms. Pegram should not proceed because it is an attempted end-run around the court's refusal, in 2009, to allow the depositions of CFC and Ms. Drummer to proceed. Plaintiff's reliance on this court's previous ruling made over five years ago with regard to different potential deponents, and in light of a different procedural context, is misplaced. The court's prior ruling denying leave to take the deposition of Ms. Drummer and CFC was in response to Defendants' request to take those depositions in light of the 10 deposition limit provided by Rule 30(a)(2). That limitation is no longer a factor in this action, as the parties have agreed to take depositions exceeding the 10 deposition limit and have, in fact, taken over 50 depositions. (R. Doc. 638 at 3; R. Doc. 634-2 at 9).

Moreover, the court's previous ruling regarding the depositions of Ms. Drummer and CFC specifically noted that Defendants had failed to adequately address the relevance of the depositions and documents sought. (R. Doc. 335 at 5). Here, Defendants have provided sufficient bases for the relevance of Ms. Pegram's deposition. Defendants assert that Ms. Pegram's anticipated testimony "is highly relevant to the defense of this litigation" as it will bear upon Plaintiff Woodfox's "high profile status," which Defendants claim is a "legitimate penological reason to subject Plaintiff Woodfox to confinement more restrictive than the

---

[4] The foregoing categories of documents are listed in a draft notice and subpoena of Ms. Pegram's deposition attached to Defendants' Opposition to Plaintiffs' Motion for Protective Order. Defendants represent they were prepared to send out on April 21, 2015. (R. Doc. 638 at 1). Neither party has submitted the actual subpoena that was served.

9

ordinary incidents of general population." (R. Doc. 638 at 7-8). In particular, Defendants believe that Ms. Pegram's (and Mr. Rahim's) testimony "will confirm an extensive support network, publicity, efforts, and financial backing" for Plaintiff Woodfox (and Wilkerson), which Defendants claim is relevant to the reasonableness of any decision regarding where he is appropriately housed. Defendants represent that the "wardens at Wade will testify that housing decisions must always take into account an inmate's notoriety and high profile." (R. Doc. 638 at 9). Finally, Defendants argue that the testimony of Ms. Pegram (and Mr. Rahim) is relevant to whether Plaintiff Woodfox was actually "held in anything remotely resembling solitary confinement or isolation." (R. Doc. 638 at 10).

In light of the categories of documents and testimony sought by Defendants,[5] as well as the foregoing arguments, the court agrees with Defendants that the deposition of Ms. Pegram will likely reveal information relevant to claims and defenses in this litigation.

Plaintiffs further argue that, even if relevant, the discovery sought must be limited because it "can be obtained from some other source" that is "more convenient, less burdensome, or less expensive," namely Defendants' own testimony and records. (R. Doc. 645 at 5-7 (quoting Fed. R. Civ. P. 26(b)(2)(C)(i)).[6] Plaintiffs argue that information regarding whether Plaintiff Woodfox is "high profile" is not "privately and exclusively" maintained by Ms. Pegram. (R. Doc. 645 at 4). Plaintiffs suggest that Defendants' own testimony is available with regard to how they concluded that Plaintiff Woodfox "is so notorious and high profile that he cannot be released from solitary confinement." (R. Doc. 645 at 5). Similarly, Plaintiffs argue that Defendants' own records of Plaintiff Woodfox's daily interactions with other people (including visit logs, call logs, and recordings of calls) are the more appropriate source of information

---

[5] Plaintiffs have complained about the broad nature of the documents requests at issue, but provide no specifics as to what a search and production of responsive documents would entail.
[6] Plaintiffs mistakenly cite Fed. R. Civ. P. 26(b)(3)(i).

regarding whether Plaintiff Woodfox was indeed held in solitary confinement. (R. Doc. 645 at 6-7).

That Defendants may also testify, or provide information already in their possession, regarding whether Plaintiff Woodfox is a "high profile inmate" and actually held in "solitary" confinement does not provide good cause for precluding Ms. Pegram's deposition. Discovery allows Defendants the opportunity to access information from other sources, particularly when testimony from those other sources may bolster their own positions or provide more compelling evidence at trial than the Defendants' own testimony. Considering the nature of this case and the breadth of discovery that has already been undertaken by both Defendants and Plaintiffs, the minor inconvenience and costs to Plaintiffs with regard to this additional deposition does not outweigh its potential benefits to the Defendants.

The court finds no prejudice or undue burden would result in allowing the deposition of Ms. Pegram to proceed. Defendants represent that Ms. Pegram lives less than 8 miles from where the deposition is noticed to proceed. (R. Doc. 638 at 5). Defendants have sought to depose Ms. Pegram within the time allowed by the court's current deadlines. That Plaintiffs have not identified Ms. Pegram as a witness is not alone a reason to preclude the deposition. This action is still in its discovery phase. Even if Ms. Pegram is never called as a witness, she likely has information relevant to the claims and defenses in this action.

Finally, Defendants have moved to take Ms. Pegram's deposition remotely, which would reduce any costs to Plaintiffs (and their counsel) should they decide to join the deposition remotely by telephone or videoconference. The court agrees with Defendants that requiring the parties to travel to Springfield, Missouri, for Ms. Pegram's deposition would lead to inefficiencies and increased costs to this litigation. Accordingly, pursuant to Rule 30(b)(4), the

11

court will grant Defendants' motion to take the deposition of Ms. Pegram by remote means (R. Doc. 629).[7]

In short, the court does not find any good cause for issuing a protective order precluding Ms. Pegram's deposition from taking place. The court does find good cause, however, for allowing her deposition to proceed by remote means.

### D. The Deposition of Malik Rahim

Although a properly issued and served subpoena is not located in the record, Mr. Rahim represents that the fourth subpoena issued for his deposition seeks documents and testimony regarding the following three categories:

> 1. Any and all documents, photographs or any other evidence of any kind regarding Angola 3, Albert Woodfox or Robert King Wilkerson.
>
> 2. Any and all documents, photographs or any other evidence that relate or pertain in any way to Black Panthers at Louisiana State Penitentiary at any time from 1970 to the present.
>
> 3. Any and all documents, photographs or any other evidence that pertain in any way to Community Futures Collective, Marina Drummer or Tory Pegram.

(R. Doc. 641-1 at 3).

Plaintiffs seek a protective order with regard to Mr. Rahim's noticed deposition on the same grounds discussed above with regard to Ms. Pegram's noticed deposition. Plaintiffs do not, however, explain the connection between Mr. Rahim and Ms. Drummer/CFC in detail. Plaintiffs note that Mr. Rahim's organization Common Ground Connective is a member of the CFC Fiscal Sponsorship Program, but do not assert that Mr. Rahim is a consultant for, or employee of, CFC. (R. Doc. 645 at 3 n. 1). Mr. Rahim's own motion to quash confirms that "he is not in charge of or employed by CFC, Ms. Drummer, or Ms. Pegram." (R. Doc. 641-1). That Defendants are

---

[7] By allowing Defendants to take the deposition of Ms. Pegram by remote means, the court is not precluding Plaintiffs' counsel from attending the deposition in person.

seeking documents and testimony related to CFC and Ms. Drummer from Mr. Rahim does not provide good cause for precluding the deposition of Mr. Rahim. For the same reasons discussed above with regard to Ms. Pegram's deposition, the court does not find good cause for precluding the deposition of Mr. Rahim based on the court's earlier ruling on Ms. Drummer and CFC, or for any of the other grounds raised by Plaintiffs.[8]

In allowing the deposition of Mr. Rahim to proceed, the court also considers arguments raised in Mr. Rahim's motion to quash. Mr. Rahim states that the Defendants' request for information relating to the "Black Panthers at Louisiana State Penitentiary at any time from 1970 to the present" is overly broad in scope and time, seeks irrelevant information, and is more properly obtained from other sources. (R. Doc. 641-1 at 9). Contrary to Mr. Rahim's assertions, this information is relevant to the case because Plaintiffs explicitly allege that they were placed in lockdown, in part, for "self-identifying as members of the Black Panther Party." (R. Doc. 483 at 8). Plaintiffs have previously identified Mr. Rahim to provide testimony on "the goals and activities of the Black Panther Party in Louisiana" and have stated that this information is arguably relevant to this case. (*See* R. Doc. 634-2 at 3-4; R. Doc. 378 at 7). Although Defendants may have access to additional information regard the Black Panthers at LSP from other sources, Mr. Rahim's position and interactions with Plaintiff Woodfox may lead to additional information. Furthermore, as discussed above, Defendants should be allowed the opportunity to obtain testimony from witnesses that may prove more compelling at trial then their own.

---

[8] Even if Mr. Rahim was employed by the CFC or Ms. Drummer, the court would allow his deposition to proceed for the same reasons the court is allowing the deposition of Ms. Pegram to proceed. Again, the court's previous ruling with regard to the CFC and Ms. Drummer was partially premised on a lack of argument regarding the relevance of those depositions. Here, Defendants have convincingly demonstrated that both Ms. Pegram and Mr. Rahim may have information relevant to whether Plaintiff Woodfox is a "high profile" inmate; whether and to what extent he has access to outside visitors; and, as discussed below, his involvement with the Black Panther Party.

Mr. Rahim's argument that he has not had sufficient notice to gather this information falls flat because it is the same information sought by Defendants when they first sought to depose Mr. Rahim in 2009. (R. Doc. 641-1 at 9). Defendants have provided sufficient notice to Mr. Rahim and, in light of the extension granted by this court to take his deposition, Mr. Rahim will have additional weeks to prepare for the deposition with the aid of counsel.

The court finds no prejudice or undue burden would result in allowing the deposition of Mr. Rahim to proceed. Defendants represent that they have noticed the deposition in New Orleans within 3 miles of the address where Mr. Rahim has been served. (R. Doc. 638 at 4-5). He has voluntarily appeared at two previously noticed depositions in New Orleans without objection. He is also now represented by pro bono counsel. Accordingly, there is little or no concern that he will be intimated or harassed at the deposition.

### III. Conclusion

For the reasons provided above, the court does not find good cause for precluding the depositions of Tory Pegram and Malik Rahim as requested by Plaintiffs pursuant to Rule 26(c). The court does, however, find good cause for allowing the deposition of Tory Pegram to proceed by remote means as requested by Defendants pursuant to Rule 30(b)(4).

**IT IS ORDERED** that Plaintiff's Motion for Protective Order (R. Doc. 634) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion to Take Deposition by Remote Means (R. Doc. 629) is **GRANTED.**

**IT IS FURTHER ORDERED** that Non-Party Malik Rahim's Motion to Quash Subpoena and Deposition (R. Doc. 641) is **DENIED**.

**IT IS FURTHER ORDERED** that Pursuant to Rule 16(b), the court's Amended Scheduling Order is modified to allow for the depositions of Tory Pegram and Malik Rahim to take place no later than **May 25, 2015**.[9]

Signed in Baton Rouge, Louisiana, on May 11, 2015.

                                                                     _____
                                                                     **RICHARD L. BOURGEOIS, JR.**
                                                                     **UNITED STATES MAGISTRATE JUDGE**

---

[9] Defendants represent that the parties have agreed to proceed with Mr. Rahim's deposition on May 18, 2015, if allowed by the court. (R. Doc. 643 at 2).